# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| STEVE R. ROJAS and ANDREA N. ROJAS, on behalf of themselves and all others similarly situated, | Case No. 18-cv-05841-BLF |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT, WITHOUT LEAVE TO AMEND** |
| v. | |
| BOSCH SOLAR ENERGY CORPORATION, | [Re: ECF 62] |
| Defendant. | |

In this putative consumer class action, Plaintiffs Steve and Andrea Rojas ("Plaintiffs") seek to represent a class and subclasses of persons and entities who are "the final customers, end-users or subsequent owners" of solar panels manufactured by Defendant Bosch Solar Energy Corporation ("Defendant" or "Bosch"). Second Amended Complaint ¶ 216. Plaintiffs allege that Bosch's model number c-Si M 60 NA30119 solar panels ("NA30119 Panels"), suffer from two defects – excessive heat generated at the panels' solder joints and "delamination" of the panels' backsheets.

With respect to the solder joint defect, Bosch initiated a voluntary recall of roof-mounted NA30119 Panels based on a determination that the solder joints generate excessive heat, posing a safety risk that roofing materials could be ignited. SAC ¶¶ 10-11. Plaintiffs claim that the recall was ineffective to cure the solder joint defect, because most consumers of roof-mounted NA30119 Panels never received notice of the recall, and consumers with ground-mounted NA30119 Panels were not covered by the recall. With respect to the delamination defect, Plaintiffs allege that the NA30119 Panels suffer from an undisclosed defect that causes peeling and cracking of the plastic

backsheet that protects the panels from moisture penetration. Plaintiffs assert putative class claims for breach of warranty with respect to both the solder joint and delamination defects. In the alternative to the warranty claims, Plaintiffs assert a putative class claim for unjust enrichment.

Plaintiffs also assert putative class claims for unfair competition and statutory consumer remedies based on allegedly unconscionable warranty provisions governing the requirements for making a warranty claim.

Defendant Bosch moves to dismiss the operative second amended complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons discussed below, the motion is GRANTED IN PART AND DENIED IN PART, WITHOUT LEAVE TO AMEND.

## I. BACKGROUND[1]

Plaintiffs reside in Moreno Valley, California. SAC ¶ 32. In 2012, Plaintiffs contacted non-party Sullivan Electric ("Sullivan"), a solar contractor, about installing solar panels on their property. SAC ¶¶ 149, 157-57, ECF 53. On October 23, 2012, a Sullivan salesman and solar engineer named Hans Berg ("Berg") met with Plaintiffs at their home. SAC ¶ 158. Berg inspected the property, examined Plaintiffs' electric bills, and told Plaintiffs he would work up a quote. SAC ¶ 159. On October 28, 2012, Berg telephoned Plaintiff Steve Rojas ("Rojas") and recommended that Plaintiffs enter into a "prepaid lease" rather than purchasing solar panels. SAC ¶¶ 160-61. Berg suggested having Bosch solar panels placed on Plaintiffs' property in a ground-mounted array. SAC ¶¶ 160-63. Berg stated that: the panels would be covered by a Bosch warranty guaranteeing that they would be free of defects; the Bosch panels would produce 90% of the promised power for the first ten years and then 80% for the duration of the warranty; and if anything went wrong Bosch would repair or replace the panels. SAC ¶¶ 164-65. Berg "explained the essential terms" of the Bosch warranty to Rojas, and "Berg's assurances made to Plaintiffs regarding the substance of the Bosch Limited Warranty were accurate and precisely mirrored the

---

[1] Plaintiff's well-pled factual allegations are accepted as true for purposes of the motion to dismiss. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

written language" of the warranty.  SAC ¶¶ 164, 167.

On October 28, 2012 – the same date of the telephone conversation between Berg and Rojas – Plaintiffs entered into a "Prepaid Solar Power Agreement" with non-party Kilowatt Systems, LLC ("Kilowatt").  SAC ¶ 32.  Under the Prepaid Solar Power Agreement, Plaintiffs acquired the use of forty-two Bosch NA30119 Panels, to be mounted on their property, at a cost of $25,339.22.  SAC ¶ 32.  Kilowatt used the monies paid to it by Plaintiffs to purchase the Panels.  SAC ¶¶ 32, 311.  The initial term of the Prepaid Solar Power Agreement was twenty years.  Prepaid Solar Power Agreement, Exh. A to Reply, ECF 71-1.[2]  Under the terms of the Prepaid Solar Power Agreement, Kilowatt agreed to "insure, monitor, maintain and repair the System at no cost" to Plaintiffs.  *Id*. at 1.  Kilowatt also guaranteed that the solar panels would produce specified minimum power production.  *Id*.  Plaintiffs could terminate the Prepaid Solar Power Agreement only by selling their home or purchasing the solar panels.  *Id*.  The Bosch NA30119 Panels owned by Kilowatt were installed on Plaintiffs' property by Sullivan in a ground array, and for several years thereafter Plaintiffs had virtually no electric bills.  SAC ¶¶ 132, 150, 209, 212.

In April 2017, Bosch voluntarily recalled 28,000 roof-mounted NA30119 Panels due to fire hazard.  SAC ¶¶ 9, 50.  Bosch informed the United States Consumer Product Safety Commission ("CPSC") that defects in the solder joints of the NA30119 Panels generate excessive heat, posing a safety risk that roofing materials could be ignited.  SAC ¶¶ 10-11.  Bosch represented to the CPSC that ground-mounted NA30119 Panels should not be included in the recall because even if grass or other ground material were to ignite, the damage would be solely to property and not to persons, who could walk or run away from any fire.  SAC ¶ 11.  The CPSC accepted Bosch's proposed notice plan, under which consumers of the Recalled Panels were to be notified directly.  SAC ¶¶ 16-17.  Bosch sent letters to its 42 distributors, requesting that the distributors obtain consumers' names and contact information for Bosch.  SAC ¶ 56.  Bosch's

---

[2] While Plaintiffs have not attached the Prepaid Solar Power Agreement to their SAC, Bosch has provided it as an exhibit to its reply.  The Court considers the Prepaid Solar Power Agreement, which is referenced in the SAC, under the incorporation by reference doctrine. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (incorporation by reference doctrine permits a court to consider documents referenced in but not physically attached to the complaint).

notice plan failed to reach majority of the end users of the 28,000 roof-mounted Recalled Panels. SAC ¶¶ 17, 63.

Plaintiff Rojas became aware of the recall and contacted Sullivan in September 2017. SAC ¶ 178. Sullivan was unaware of the recall. *Id.* Sullivan contacted Kilowatt, which also was unaware of the recall. SAC ¶ 179. Sullivan and Kilowatt both informed Rojas that they were researching whether the solar panels on Plaintiffs' property were covered by the recall. SAC ¶¶ 179-81. Neither Sullivan nor Kilowatt got back to Plaintiffs about the recall. SAC ¶ 181.

Rojas found a telephone number for Bosch online and called Bosch on November 1, 2017. SAC ¶ 182. Rojas informed Bosch that the panels on his property were ground-mounted and Bosch stated that the panels were not included in the recall. SAC ¶ 183. Rojas told Bosch that he believed the ground-mounted panels posed the same fire hazard as the roof-mounted panels, that he was making a claim, and that he wanted the panels replaced. *Id.* Bosch stated that it would process Rojas's claim. SAC ¶ 184. Bosch emailed Rojas a form letter requesting a copy of the invoice or bill of sale from the panel installer and photographs of the panels. *Id.* Rojas contacted Sullivan asking for the "Bill of Sale or the Interconnector Agreement." SAC ¶ 185. Sullivan stated that it would forward a copy to Rojas and Bosch. *Id.* Meanwhile, Rojas immediately sent Bosch photographs of the ground-mounted panels on his property. SAC ¶ 186.

Bosch responded by letter dated November 3, 2017, stating that it would replace Rojas's "roof mounted" panels. SAC ¶¶ 187-88. The November 3, 2017 letter from Bosch stated that Rojas would be contacted by a Bosch approved installer to replace the panels. SAC ¶ 191. Rojas called Bosch and clarified that the panels on his property were ground-mounted. SAC ¶ 189. Bosch confirmed that it knew the panels were ground-mounted and stated that Rojas's claim was approved and that the entire array of solar panels would be replaced. *Id.* On November 28, 2017, a Bosch approved installer, Baker Electric Solar ("Baker"), informed Rojas that Sullivan – the original installer – would inspect and replace the panels. SAC ¶ 192.

Sullivan did not replace the panels. SAC ¶¶ 193-94. On May 31, 2018, seven months after Bosch agreed to replace the panels, Baker emailed Rojas to schedule a survey of the property. SAC ¶ 194. Baker enclosed a "Baker-Bosch Construction Contract for Sullivan Customers," for

4

the full replacement of the panels. *Id.* On June 6, 2018, Baker surveyed Plaintiffs' property and informed them that at least 10 panels were not functioning. SAC ¶¶ 195-96. Prior to that inspection, Plaintiffs did not know why the panels seemed to be underperforming. SAC ¶ 196. When the Bosch NA30119 Panels were installed on their property, Plaintiffs had virtually no electric bills. SAC ¶ 132. Plaintiffs learned in March or April 2018 that their electric bill had jumped to $3,000 for 2017. SAC ¶¶ 132, 202. Plaintiffs did not learn about the bill increase for 2017 until 2018, because Southern Edison bills on an annual basis for properties containing solar arrays. SAC ¶ 202. Rojas signed the contract to replace all of the Bosch panels and emailed the executed copy to Baker on June 6, 2018. SAC ¶ 196. Four more months passed with no progress. SAC ¶ 197. When Rojas complained to Baker, Rojas was advised that because the panels were owned by a third party, the third party's installer would contact Plaintiffs about replacement. SAC ¶ 198. Kilowatt, the owner of the panels, did not contact Plaintiffs about replacement. *Id.*

On September 24, 2018, Rojas sent Bosch a "CLRA Notice and Breach of Warranty Notice." SAC ¶ 199. Plaintiffs filed this putative class action against Bosch on the same date, September 24, 2018. Compl., ECF 1. On October 18, 2018, several weeks after filing suit, Plaintiffs bought the Bosch solar panels from Kilowatt. SAC ¶ 211. A subsequent inspection of the solar panels on December 19, 2018 revealed that approximately 30 of the 42 panels had experienced "delamination and cracking in the backsheet." SAC ¶ 83. "Delamination occurs when the bond between the plastics on the back side of the panel separate." SAC ¶ 77. "Delamination destroys the safe and effective functionality of the solar panel because it allows air and moisture to creep inside of the panel in between the layers of the components of the solar panels." SAC ¶ 79.

The operative SAC asserts claims for: (1) breach of express warranty under the common law of Arizona, California, Hawaii, Missouri, and North Carolina; (2) breach of express warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310; (3) breach of express warranty under Ariz. Rev. Stat. § 47-2313; Cal. Com. Code § 2313; Haw. Rev. Stat. § 490:2-313; Mo. Rev. Stat. § 400.2-313; and N.C. Gen. Stat. § 25-2-313; (4) violation of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq*.; (5) unjust enrichment under the common law

of Arizona, California, Hawaii, Missouri, and North Carolina; and (6) violation of California's Consumer Legal Remedy Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*

## II.    LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (internal quotation marks and citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When evaluating a Rule 12(b)(6) motion, the district court must consider the allegations of the complaint, documents incorporated into the complaint by reference, and matters which are subject to judicial notice. *Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

## III.    DISCUSSION

Bosch moves to dismiss all claims in the SAC.  The claims fall into two categories.  The first category includes Claims 1, 2, 3, and 5.  Claims 1-3 assert that Defendant Bosch breached its "Limited Warranty for photovoltaic modules" ("Limited Warranty"), discussed in detail below. *See* Limited Warranty, SAC Exh. A, ECF 53.  Plaintiffs never received a copy of the Limited Warranty prior to the filing of this lawsuit.  SAC ¶¶ 168-70.  However, Plaintiffs allege that during the October 28, 2012 telephone call between Rojas and Berg, Berg stated that the panels would be backed by a Bosch warranty and accurately explained the essential terms of the warranty.  SAC ¶¶ 164, 167.  Plaintiffs assert warranty claims based on both the alleged solder joint defect and alleged delamination defect.  Claim 5 asserts an alternative claim for unjust enrichment, alleging: "Pleading in the alternative to an express warranty, Bosch has been unjustly enriched in that Bosch received the purchase price of the panels, a benefit which Defendant retained at Plaintiffs'

expense." SAC ¶ 304.[3]

The second category includes Claims 4 and 6, brought under California's UCL and CLRA respectively, which are grounded in the Limited Warranty's allegedly unconscionable requirements for making a warranty claim.

Before addressing the parties' specific arguments with respect to these two sets of claims, the Court takes up the more general questions of Plaintiffs' standing to assert claims on behalf of putative class members residing in states other than California, and what state law(s) apply to Plaintiffs' claims.

## A.    Standing to Assert Claims on Behalf of Non-California Residents

As Bosch points out in its motion, Plaintiffs are residents and citizens of California and all their alleged injuries occurred in California. Plaintiffs nonetheless assert common law and statutory claims not just under the laws of California on behalf of California residents, but also under the laws of Arizona, Hawaii, Missouri, and North Carolina on behalf of residents of those states. Bosch asks the Court to dismiss for lack of standing all claims brought on behalf of residents of states other than California. Plaintiffs assert that this issue should be deferred to the class certification stage.

"[W]hile the Ninth Circuit has yet to weigh in, the majority of courts in this district have held that in a putative class action, claims arising under the laws of states in which no named plaintiff resides should be dismissed for lack of standing at the motion to dismiss stage." *Snarr v. Cento Fine Foods Inc.*, No. 19-CV-02627-HSG, 2019 WL 7050149, at *8 (N.D. Cal. Dec. 23, 2019) (collecting cases); *see also Cadena v. Am. Honda Motor Co.*, No. CV 18-4007-MWF (PJWx), 2019 WL 6646700, at *2 (C.D. Cal. July 17, 2019) ("[T]he majority of courts . . . have

---

[3] In its prior order granting Bosch's motion to dismiss the FAC, the Court grouped Claim 5 for unjust enrichment with Claim 4 for violation of California's UCL and Claim 6 for violation of California's CLRA. *See* Prior Dismissal Order at 4-5, ECF 49. The Court did so because it appeared that the warranty claim was based on the same allegedly unconscionable claim procedures that underpin the UCL and CLRA claims. *See id.* In the SAC, however, Plaintiffs allege that the unjust enrichment claim is pled in the alternative to the warranty claims, and seeks recovery of the monies Plaintiffs paid under the Prepaid Solar Power Agreement. *See* SAC ¶ 304. Accordingly, in this order the Court groups the warranty and unjust enrichment claims in one category, and the UCL and CLRA claims in another category.

concluded that when a representative plaintiff is lacking for a particular state, all claims based on that state's laws are subject to dismissal." (internal quotation marks and citation omitted)).  This Court follows the majority approach and on that basis the motion to dismiss is GRANTED as to all claims asserted on behalf of residents of states other than California.

### B.      Applicable Law

Bosch contends that because Plaintiffs are residents of California and allege injury occurring in California, their claims should be analyzed under California law except as to certain claims that Bosch asserts are subject to a choice of law provision in the Limited Warranty specifying application of Michigan law.  The Limited Warranty provides in relevant part that "[a]ll disputes arising from this warranty shall be governed by the laws of the State of Michigan and conflict of law rules shall not apply."  Limited Warranty ¶ 3.5.  Bosch argues that pursuant to this provision, Michigan law applies to Plaintiffs' warranty claims (Claims 1-3), and unjust enrichment claim (Claim 5).  Plaintiffs contend that Bosch has waived the right to enforce the Limited Warranty's choice of law provision; the choice of law provision cannot be enforced against Plaintiffs because they never saw or agreed to it; and even if the choice of law provision applies to the warranty claims, it does not apply to the unjust enrichment claim.

#### 1.      Waiver

The Court finds Plaintiffs' waiver argument, which is asserted in a footnote of their opposition brief, to be unpersuasive.  Plaintiffs' SAC supersedes their prior pleadings.  *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original.").  Plaintiffs have not cited any authority for the proposition that a choice of law provision is a "defense or objection" that is subject to waiver if not raised in the defendant's first Rule 12 motion.  *See* Fed. R. Civ. P. 12(g) (With certain exceptions, "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.").

Even if the Court were to conclude that the choice of law provision should have been raised in Bosch's earlier motions to dismiss, "courts faced with a successive motion often exercise

8

their discretion to consider the new arguments in the interests of judicial economy." *Cover v. Windsor Surry Co.*, No. 14-CV-05262-WHO, 2016 WL 520991, at *4 (N.D. Cal. Feb. 10, 2016). In *Cover*, the district court considered the defendant's choice of law argument raised in a motion to dismiss the second amended complaint even though the argument could have been raised in a prior motion to dismiss. *See id.* The district court determined that "[d]isregarding the choice of law analysis would neither resolve the underlying issues nor lead to a speedier trial; Windsor would be entitled to renew its arguments in a Rule 12(c) motion for judgment on the pleadings after filing an answer." *Id.* Because the defendant Windsor would have been entitled to raise the choice of law issue "sooner or later," the district court found that no purpose would be served by declining to consider the issue at the motion to dismiss stage. *See id.*

Applying the above authorities, this Court concludes that Bosch may raise the choice of law provision in its current Rule 12(b)(6) motion filed in response to the SAC. The cases cited by Plaintiffs do not compel a contrary result. In *Ellison Framing*, the parties cited California law in the motion and opposition papers, ignoring a choice of law provision in the relevant agreement that specified New York law. *See Ellison Framing, Inc. v. Zurich Am. Ins. Co.*, 805 F. Supp. 2d 1006, 1011 n.1 (E.D. Cal. 2011). The defendant raised the choice of law provision in its reply brief, but the district court declined to consider an argument raised for the first time on reply. Under those circumstances, the district court found that "the parties have by their conduct waived the New York law provision." *Id.* In *Nagrampa*, although the operative franchise agreement provided that Massachusetts law governed, both parties "proceeded throughout the district court and on appeal on the assumption that the franchise agreement [was] governed by California law." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1267 (9th Cir. 2006). The Ninth Circuit concluded that "the parties through their course of conduct have waived the provision of the agreement that specifies the application of Massachusetts law." *Ellison Framing* and *Nagrampa* are factually distinguishable from the present case, in which Bosch raised the Limited Warranty's choice of law provision in its Rule 12(b)(6) motion filed in response to the operative SAC.

Accordingly, the Court finds that Bosch has not waived enforcement of the choice of law provision in the Limited Warranty.

### 2.     Enforceability of Choice of Law Provision

Turning to the enforceability of the choice of law provision, "[a] federal court sitting in diversity applies the forum state's choice of law rules." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1002 (9th Cir. 2010).  The SAC alleges subject matter jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  *See* SAC ¶ 35, ECF 53.[4]  "Subject to certain limitations, the CAFA confers federal diversity jurisdiction over class actions where the aggregate amount in controversy exceeds $5 million." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 571 (2005).  Because jurisdiction is based on CAFA, which is a diversity statute, this Court applies California's choice of law rules to determine whether the Michigan choice of law provision is enforceable.  *See Lefevre v. Five Star Quality Care, Inc.*, No. EDCV 15-1305-VAP (SPx), 2015 WL 13688460, at *2 n.1 (C.D. Cal. Dec. 11, 2015), *aff'd*, 705 F. App'x 622 (9th Cir. 2017) ("Given that CAFA relies on the diversity of the parties for removal, the Court applies the choice-of-law rules of the forum state.").

"When an agreement contains a choice of law provision, California courts apply the parties' choice of law unless the analytical approach articulated in § 187(2) of the Restatement (Second) of Conflict of Laws . . . dictates a different result." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1002 (9th Cir. 2010) (internal quotation marks and citation omitted).  "Under the Restatement approach, the court must first determine 'whether the chosen state has a substantial relationship to the parties or their transaction, . . . or whether there is any other reasonable basis for the parties' choice of law.'" *Id.* (quoting *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 466 (1992)).  If either of those tests is met, "the court must next determine whether the chosen state's law is contrary to a fundamental policy of California." *Id.* (internal quotation marks and citation omitted).  If such a conflict exists, the court must determine "whether California has a materially greater interest than the chosen state in the determination of the particular issue." *Id.* (internal quotation marks and citation omitted).  "If California possesses

---

[4] While the SAC also contains a claim asserted under federal law, the Magnuson-Moss Warranty Act, the SAC does not allege subject matter jurisdiction based on federal question.  *See* SAC at 35, ECF 53.

the materially greater interest, the court applies California law despite the choice of law clause." *Id.* at 1003.

The party seeking to enforce the choice of law provision has the burden of demonstrating that the chosen state has a substantial relationship to the parties or their transaction, or that a reasonable basis otherwise exists for the choice of law. *See Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 917 (2001). If the proponent of the choice of law provision satisfies either test, the provision "generally will be enforced unless the other side can establish both that the chosen law is contrary to a fundamental policy of California and that California has a materially greater interest in the determination of the particular issue." *Id.*

"Of course, the Court must first determine whether Plaintiffs actually agreed to be bound to the choice-of-law provision." *Han v. Samsung Telecommunications Am.*, LLC, No. CV 13-3823-GW AJWX, 2013 WL 7158044, at *3 (C.D. Cal. Dec. 16, 2013) (internal quotation marks and citation omitted). In *Han*, cited by both Plaintiffs and Bosch, the court determined that the plaintiffs had agreed to be bound by the terms of a Standard Limited Warranty contained in a Samsung User Manual that accompanied smart phones they purchased. *See id.* at *4. The court rejected one plaintiff's argument that he did not actually see and was not aware of the terms at issue, noting that "competent adults may be bound by such documents, read or unread." *Id.* (internal quotation marks and citation omitted). The court found that "Plaintiffs here do not credibly dispute that the Standard Limited Warranty is 'contractual' in nature – indeed, Plaintiffs in the *Han* case actually seek to *enforce* the Standard Limited Warranty by bringing various breach of warranty claims." *Id.*

For similar reasons, Plaintiffs in the present case cannot credibly dispute that they are bound by the choice of law provision in Bosch's Limited Warranty. Plaintiffs argue that the choice of law provision is not enforceable against them because they did not receive the Limited Warranty prior to filing this lawsuit. However, Plaintiffs allege that "[t]he Bosch warranties alleged herein were part of the 'basis of the bargain' of the purchase of the 42 Panels by Kilowatt, and Kilowatt also relied upon the existence of the warranty in entering the transaction, as otherwise, Kilowatt would not have entered into the Prepaid Solar Power Agreement with

Plaintiffs." SAC ¶ 32. Plaintiffs seek to enforce Bosch's Limited Warranty in this suit, claiming that even though Kilowatt actually purchased the NA30119 Panels, "Plaintiffs have always been intended beneficiaries of the warranty provided in conjunction with the purchase of the Panels by Kilowatt, as Plaintiffs have been the 'end-users' of the panels" under the Limited Warranty. *Id.* Plaintiffs allege that before they entered into the Prepaid Solar Power Agreement, Berg "explained the essential terms" of the Bosch warranty to Rojas, and "Berg's assurances made to Plaintiffs regarding the substance of the Bosch Limited Warranty were accurate and precisely mirrored the written language" of the warranty. SAC ¶¶ 32, 164, 167. Given Plaintiffs' assertion that the Limited Warranty may be invoked and enforced by them, the Court perceives no basis for Plaintiffs' assertion that they are not bound by the Limited Warranty's choice of law provision. Plaintiffs have cited no case supporting their position that they can take the parts of the Limited Warranty they like, leave behind the parts they dislike, and thereby enforce a warranty that Bosch never offered to anyone. The Court concludes that to the extent Plaintiffs are entitled to enforce the Limited Warranty, they are bound by the choice of law provision contained therein.

The Court therefore must determine whether the Limited Warranty's choice of Michigan law may be enforced pursuant to California's choice of law rules. Under California's Restatement approach, discussed above, the Court first must decide whether Bosch has established that Michigan has a substantial relationship to the parties or the transaction, or that a reasonable basis otherwise exists for the choice of law. *See Bridge Fund*, 622 F.3d at 1002. This requirement is satisfied here, as Bosch is incorporated under Michigan law and maintains executive offices there. SAC ¶ 29. "A substantial relationship exists between a party and the state in which that party is domiciled, resides, or is incorporated." *Weber v. Amazon.com, Inc.*, No. CV 17-8868-GW(EX), 2018 WL 6016975, at *6 (C.D. Cal. June 4, 2018)

The Court next must determine whether Plaintiffs have met their burden to show that Michigan law is contrary to a fundamental policy of California and that California possesses a materially greater interest than Michigan in the outcome of the case. *See Wash. Mut. Bank*, 24 Cal. 4th at 917. Plaintiffs have not done so, instead asserting that it is premature to perform a choice of law analysis. *See* Opp. at 7, ECF 66. The Court disagrees with Plaintiffs' assertion.

The Court must determine which state's law applies in order to evaluate Bosch's motion to dismiss, as Michigan and California law differ with respect to warranty and unjust enrichment claims.

The Court concludes that Bosch has demonstrated a reasonable basis for the choice of Michigan law, and Plaintiffs have failed to meet their burden of showing that Michigan law is contrary to a fundamental policy of California and that California has a materially greater interest in the determination of the suit. The Court therefore applies Michigan law to Plaintiffs' warranty claims (Claims 1-3). The Court agrees with Plaintiffs, however, that the choice of law provision does not support application of Michigan law to Plaintiffs' unjust enrichment claim (Claim 5). As Plaintiffs point out, the choice of law provision is limited by its own terms to "disputes arising from this warranty." Limited Warranty ¶ 3.5, SAC Exh. A, ECF 53. Plaintiffs' unjust enrichment claim does not arise from the warranty, but rather is pled in the alternative to Plaintiffs' warranty claims. In other words, the unjust enrichment claim will come into play only if the claims based on Bosch's Limited Warranty fail. Under these circumstances, the Court finds that the unjust enrichment claim falls outside the scope of the Limited Warranty's choice of law provision.

In summary, the Court will apply Michigan law to Plaintiffs' warranty claims (Claims 1-3) and California law to Plaintiffs' unjust enrichment claim (Claim 5).

**C.     Warranty Claims (Claims 1, 2, and 3)**

Claims 1, 2, and 3 assert that Bosch breached its Limited Warranty, covering both material and workmanship ("Product Warranty") and loss of performance ("Performance Warranty"). *See* SAC Exh. A, ECF 53.

### 1.     State Law Warranty Claims (Claims 1 and 3)

Claims 1 and 3 are for breach of express warranty under state common law and state statutory warranty law, respectively. Plaintiffs seek to proceed under California common law (Claim 1) and California Commercial Code § 2313 (Claim 3). As discussed above, however, Bosch has demonstrated that Michigan law applies to Plaintiffs' warranty claims. The Court therefore evaluates the adequacy of Claims 1 and 3 under Michigan Common law and Michigan's Uniform Commercial Code.

The Product Warranty guarantees that the solar panels are free of defects in material and workmanship for a period of ten years from the date of delivery. Limited Warranty ¶ A. The Performance Warranty guarantees that the solar panels, also referred to as the "Module," will: "a) within a period of ten years from the date of delivery provide at least 90%; and b) within a period of 25 years from the date of delivery provide at least 80% of the minimum performance set forth in the data sheet. . . ." Limited Warranty ¶ B. "These Warranties are granted to the Consumer or shall transfer from the Consumer to subsequent buyers / end users for the remainder of the warranty period, provided the subsequent buyers / end users can show that the Modules have not been modified or relocated from their originally installed location." Limited Warranty ¶ C.1.1. The "Consumer" is defined as "the final customer or end-user that properly places the Modules into operation for the first time." Limited Warranty ¶ A.

Plaintiffs claim that the Product Warranty has been breached "because the panels have solder joint and delamination defects." SAC ¶ 239. Plaintiffs allege that "Bosch has admitted that the solder joint defect causes a fire hazard and safety risk" and that "[t]he delamination defect also causes a fire and safety risk." *Id.* Plaintiffs claim that the Performance Warranty has been breached because "Plaintiffs have experienced a degradation of power below the output promised by Bosch." SAC ¶ 240. They claim that "Bosch has further breached the Performance Warranty because implicit in the power output promise is that such power output will be generated safely." *Id.*

Bosch argues that Plaintiffs have not alleged that the Limited Warranty, containing the Product Warranty and the Performance warranty, was part of the basis of any bargain; Plaintiffs' warranty claims based on the delamination defect fail because Plaintiffs did not give pre-suit notice of that defect as required under Michigan law; Plaintiffs' warranty claims fail because Plaintiffs did not comply with the Limited Warranty's 90-day notice provision; and Plaintiffs have not alleged recoverable damages for breach of warranty. Plaintiffs argue that they have shown that the Limited Warranty was part of the basis of the bargain; they complied with all applicable notice provisions; and the damages issue is not appropriate for adjudication a motion to dismiss.

### a. Basis of the Bargain

Bosch moves to dismiss Plaintiffs' warranty claims on the ground that they have not alleged facts showing that the warranty was part of the basis of any relevant bargain. The Court previously dismissed Claims 1 and 3 as alleged in the first amended complaint ("FAC") on this ground. *See* Order Granting in Part and Denying in Part Motion to Dismiss First Amended Complaint ("Prior Dismissal Order") at 8, ECF 49. The Court observed that Plaintiffs alleged that they never received the Limited Warranty, and it found "fairly sparse" Plaintiffs' allegations that the Limited Warranty's essential terms were communicated to them by Berg. *Id.* The Court granted leave to amend so that Plaintiffs could allege the circumstances and content of Berg's statements with more specificity. *Id.* Bosch contends that Plaintiffs have not added sufficient facts to cure this pleading defect.

Plaintiffs have expanded on their allegations regarding Berg's role. *See* SAC ¶¶ 156-67. In particular, Plaintiffs have described the circumstances of their interactions with Berg, stated that Berg informed them of the Bosch Limited Warranty, alleged that Berg explained the essential terms of the Bosch Limited Warranty, and alleged that Berg's representations regarding the terms of the Limited Warranty were accurate. *See id.* Plaintiffs allege that the Bosch Limited Warranty was critical to Kilowatt in deciding to purchase the NA30119 Panels for placement on Plaintiffs' property, and to both Kilowatt and Plaintiffs in deciding to enter into the Prepaid Solar Power Agreement. *See* SAC ¶¶ 32, 166. Finally, Plaintiffs allege that they "have always been intended beneficiaries of the warranty provided in conjunction with the purchase of the Panels by Kilowatt, as Plaintiffs have been the 'end-users' of the panels as defined by the Bosch Express Warranty." SAC ¶ 32. The Court concludes that for pleading purposes, these allegations are adequate to show that the Bosch Limited Warranty was part of the basis of the bargain for both Kilowatt's purchase of the 42 NA30119 Panels and the Prepaid Solar Power Agreement between Kilowatt and Plaintiffs.

Bosch contends that Plaintiffs appear to be proceeding on both a direct beneficiary theory and a third-party beneficiary theory with respect to their warranty claims. Bosch argues that Plaintiffs' third-party beneficiary theory fails under California law, citing to the California

Commercial Code and Witkin.  *See* Motion at 11, ECF 62.  Because Bosch successfully has established that Plaintiffs' warranty claims are governed by Michigan law, not California law, Bosch's arguments based on California law are not on point.  Bosch does not challenge Plaintiffs' third-party beneficiary theory under applicable Michigan law.

The motion to dismiss Plaintiffs' state law warranty claims (Claims 1 and 3) for failure to allege that the warranty was part of the basis of the bargain is DENIED.

### b.     Statutory Pre-suit Notice

Bosch contends that Plaintiffs' warranty claims based on the alleged delamination defect are subject to dismissal for failure to allege compliance with Michigan's statutory pre-suit notice requirements.  Under Michigan's Uniform Commercial Code, "'the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy'" for breach of warranty.  *Johnston v. PhD Fitness, LLC*, No. 16-CV-14152, 2018 WL 646683, at *3 (E.D. Mich. Jan. 31, 2018) (quoting Mich. Comp. Laws § 440.2607(3)(a)).  Michigan courts have held "that a buyer's failure to provide a remote manufacturer with pre-suit notice bars the buyer's breach of warranty claims."  *Id.*  "Michigan's notice requirement is not just a formality."  *Id.*  It serves "(1) to prevent surprise and allow the seller the opportunity to make recommendations how to cure the nonconformance, (2) to allow the seller the fair opportunity to investigate and prepare for litigation, (3) to open the way for settlement of claims through negotiation, and (4) to protect the seller from stale claims and provide certainty in contractual arrangements."  *Id.* (citation omitted).

Plaintiffs allege that "[o]n November 1, 2017 Plaintiffs provided direct notice to Bosch of its warranty claims for both the product and performance warranties."  SAC ¶ 238.  As set forth above, November 1, 2017 is the date upon which Rojas telephoned Bosch to request replacement of the panels on his property.  SAC ¶¶ 182-83.  When Bosch stated that ground-mounted panels were not included in the recall, Rojas informed Bosch that:  "the panels were defective and a fire hazard"; "the power output of the panels was variable and seemed to be underperforming"; he was "making a claim"; and he "wanted all of his panels replaced."  SAC ¶ 183.  Bosch stated that it would process the claim.  SAC ¶ 184.  Rojas emailed photographs of the ground mounted panels

on this property the same date, November 1, 2017.  SAC ¶ 186.  Plaintiffs assert that these allegations are sufficient to establish that they gave Bosch notice of their warranty claims on November 1, 2017.

Bosch argues that the November 1, 2017 notice was not sufficient as to the delamination defect, because Rojas did not specifically mention the delamination defect.  However, Bosch has cited no authority for the proposition that a warranty claim must include a technical term such as "delamination defect."  Rojas reported that the panels were a fire hazard and were underperforming.  SAC ¶ 183.  Plaintiffs allege that the delamination defect causes a fire hazard and underperformance.  SAC ¶¶ 81-82, 239.  Finally, Plaintiffs allege that "[d]elamination is obvious to solar panel experts but Plaintiffs and average consumers are not aware how to identify delamination or of its significance."  SAC ¶ 81.  The Court concludes that Plaintiffs' allegations that they gave notice of symptoms that are caused by delamination – fire hazard and underperformance – are sufficient to allege the requisite pre-suit notice.  Plaintiffs specifically allege that they did not have the knowledge to report "delamination" by its technical name, and Bosch has not cited cases requiring that level of specificity to satisfy Michigan statutory notice requirements.

The motion to dismiss Plaintiffs' state law warranty claims (Claims 1 and 3) for failure to allege pre-suit notice of the delamination defect is DENIED.

### c.     90-Day Notice Provision in Limited Warranty

Bosch moves to dismiss Plaintiffs' state law warranty claims on the ground that Plaintiffs have not alleged compliance with the 90-day warranty provision in the Limited Warranty.  The Court previously dismissed Claims 1 and 3 as alleged in the FAC on this ground.  *See* Prior Dismissal Order at 10, ECF 49.  The Limited Warranty requires that a claim for breach of the express warranty must be submitted "within three (3) months of the occurrence of an event placing the Consumer on notice that a claim under one of the warranties has or may have arisen."  Limited Warranty ¶ C.3.4.  In its prior dismissal order, the Court found that Plaintiffs' conclusory allegations of compliance with the 90-day requirement were insufficient, as Plaintiffs had not provided "any specifics as to the nature of the notice given to Bosch or the date of such notice."

17

Prior Dismissal Order at 10, ECF 49.

Bosch contends that Plaintiffs have not cured this defect. Specifically, Bosch argues that "it appears on the face of the SAC that Plaintiffs' obligation to notify Bosch Solar was triggered in 'mid-September 2017' or (at the latest) in April 2018 when Plaintiffs received their electricity bill." Motion at 14, ECF 62. Bosch contends that Plaintiffs did not give notice of their claims under the Limited Warranty until September 2018 when they filed this action, which was more than 90 days after the contractual notice obligation was triggered. *See id.*

In their opposition, Plaintiffs argue that they gave Bosch the requisite 90-day notice of their warranty claims on November 1, 2017. *See* Opposition at 10-12. In particular, Plaintiffs point to allegations that during the November 1, 2017 telephone call between Rojas and Bosch, Bosch stated that the ground-mounted array was not covered by the recall and that Bosch would process Plaintiffs' "claim." SAC ¶¶ 182-84. These allegations are sufficient to support Plaintiffs' position that the November 1, 2017 notification to Bosch was notice of Plaintiffs' warranty claims. The November 1, 2017 notice is within 90 days of the earliest trigger date argued by Bosch, September 2017. Bosch does not respond to this argument in its reply. Bosch's reply argument regarding notice is limited to its contention that any pre-suit notice given by Plaintiffs did not encompass the delamination defect. As discussed above, that contention does not entitle Bosch to dismissal of Plaintiffs' warranty claims at the pleading stage.

The Court notes that Bosch's Limited Warranty requires that the 90-day notice be submitted "in writing." Limited Warranty ¶ 3.1. Bosch has not argued that Plaintiffs' alleged November 1, 2017 notice to Bosch was verbal rather than written. In any event, Plaintiffs allege that in addition to telephoning Bosch on November 1, 2017, Rojas also engaged in written correspondence with Bosch on that date via email. *See* SAC ¶¶ 184-86.

The motion to dismiss Plaintiffs' state law warranty claims (Claims 1 and 3) for failure to allege compliance with the Limited Warranty's 90-day notice requirement is DENIED.[5]

---

[5] Having concluded that Plaintiffs have pled compliance with the Limited Warranty's 90-day notice provision, the Court need not address Plaintiffs' alternative argument that they are excused from compliance on the ground that the 90-day notice requirement is unconscionable.

#### d. Recoverable Damages

Bosch argues that Plaintiffs' warranty claims are subject to dismissal because they have not alleged damages that are recoverable on a breach of warranty theory. The warranty provides that "THE LIABILITY OF BOSCH SOLAR ENERGY CORP. UNDER THESE WARRANTIES SHALL NOT EXCEED THE PURCHASE PRICE PAID BY THE CONSUMER FOR THE MODULE(S), AND UNDER NO CIRCUMSTANCES SHALL BOSCH SOLAR ENERGY CORP. OR ANY OF ITS AFFIIATES, BE LIABLE TO THE CONSUMER OR ANY OTHER THIRD PARTY FOR ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT, COMMERCIAL (LOSS OF USE, REVENUE, PROFITS, OR DOWNWTIME) OR PUNITIVE DAMAGES WHATSOEVER." Limited Warranty ¶ C.2.3. Bosch contends that Plaintiffs seek only consequential damages, which are prohibited under the warranty terms.

Citing *Ducharme v. A & S RV Ctr., Inc.*, 321 F. Supp. 2d 843 (E.D. Mich. 2004), *aff'd*, 127 F. App'x 204 (6th Cir. 2005), Bosch argues that Plaintiffs' warranty claims must be dismissed. The *Ducharme* decision was issued at the summary judgment stage. The court relied on evidence that the defendant had repaired the cracked engine block that gave rise to the warranty claim, and agreed to repair the engine leak under warranty. *See id.* at 851. The court concluded based on that evidence that the defendant was entitled to summary judgment on the warranty claim, and that judgment was not precluded by the plaintiffs' claims of consequential damages that were expressly excluded by the warranty. *See id.* at 851-52. The case does not speak to the pleading requirements for a warranty claim.

This Court previously denied Bosch's motion to dismiss the warranty claims for failure to allege recoverable damages. *See* Prior Dismissal Order at 11, ECF 49. In its prior dismissal order, the Court noted: "That certain elements or forms of relief might be unavailable under a stated cause of action does not render that cause of action susceptible to a motion to dismiss." *Glob. Res. Mgmt. Consultancy, Inc. v. Geodigital Int'l Corp.*, No. 2:15-cv-08477-ODW(AFMx), 2016 WL 1065796, at *3 (C.D. Cal. Mar. 17, 2016) (internal quotation marks and citation omitted). The Court determined that Bosch's damages argument did not show that Plaintiffs had failed to state a claim for breach of warranty. Nothing in Bosch's current motion persuades the Court that its

earlier determination on that point was in error.

The motion to dismiss Plaintiffs' state law warranty claims (Claims 1 and 3) for failure to allege recoverable damages is DENIED.

## 2. Magnuson-Moss Warranty Act (Claim 2)

Claim 2 is asserted under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2310. It is based on Claim 1 for breach of express warranty under common law. *See* SAC ¶ 256. Bosch asserts that Plaintiffs' MMWA claim is subject to dismissal because the underlying state law claim is subject to dismissal, and Plaintiffs did not give Bosch pre-suit notice of the class claims for breach of warranty. The Court previously dismissed Plaintiffs' MMWA claim on those grounds. Bosch argues that Plaintiffs have not cured the pleading defects that led to the prior dismissal of their MMWA claim.

With respect to the prior dismissal based on the failure of the underlying state law claim, the Court noted that where a MMWA claim is based on a claim for breach of warranty under state law, the MMWA claim generally rises or falls with the state law claim. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) ("[T]his court's disposition of the state law warranty claims determines the disposition of the Magnuson-Moss Act claims."). Because Claim 1 as alleged in the FAC was subject to dismissal, so too was the MMWA claim. *See* Prior Dismissal Order at 13, ECF 49. In the present case, however, the Court denies Bosch's motion to dismiss Claim 1. Accordingly, Bosch's argument based on the inadequacy of Claim 1 is without merit.

With respect to the prior dismissal based on Plaintiffs' failure to give pre-suit notice of the class warranty claims, the Court determined that the MMWA requires such notice. "[A] class of consumers may not proceed in a class action" under the MMWA for failure to comply with the terms of a warranty "unless the person obligated under the warranty . . . is afforded a reasonable opportunity to cure such failure to comply." 15 U.S.C. § 2310(e). "[S]uch reasonable opportunity will be afforded by the named plaintiffs and they shall at that time notify the defendant that they are acting on behalf of the class." *Id*. The Court rejected Plaintiffs' argument that pre-suit notice is not required for class actions under the MMWA, citing district court cases that have construed §

2310(e) to require pre-suit notice and opportunity to cure before a class action may be brought under the MMWA.  *See* Prior Dismissal Order at 13, ECF 49.

Plaintiffs still have not alleged pre-suit notice of warranty claims asserted on a class basis. The November 1, 2017 notice discussed herein did not inform Bosch that Plaintiffs were acting on behalf of a class.  However, Plaintiffs now contend that they have alleged facts showing that pre-suit notice would have been futile.  Some district courts within the Ninth Circuit have declined to dismiss MMWA claims for failure to comply with the pre-suit notice requirement where the plaintiff has alleged that compliance would have been futile.  *See, e.g., In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1189 (C.D. Cal. 2010).  In the present case, Plaintiffs have provided detailed allegations regarding their year-long attempt to get Bosch to replace the solar panels on their property after Bosch agreed to do so.  *See* SAC ¶¶ 182-200.  The Court finds that these allegations give rise to a reasonable inference that Plaintiffs would have had no better luck had they informed Bosch that they were acting on behalf of a class of individuals with warranty claims.  The Court therefore concludes that, for pleading purposes, Plaintiffs have alleged facts excusing them from compliance with the MMWA's pre-suit notice requirement.

The motion to dismiss Plaintiffs' MMWA claim (Claim 2) is DENIED.

### D.     Unjust Enrichment (Claim 5)

Claim 5, pled in the alternative to Plaintiffs' express warranty claims, alleges that Bosch was unjustly enriched by receiving the purchase price of the solar panels and retaining that benefit at Plaintiffs' expense.  Plaintiffs allege that they paid Kilowatt $25,089.22 pursuant to the Prepaid Solar Power Agreement described herein.  SAC ¶ 310.  "Kilowatt then paid Sullivan, using Plaintiffs' money, for the cost of the Bosch solar panels and materials to be purchased by Sullivan to build Plaintiffs' solar array."  SAC ¶ 311.  "Sullivan bought the NA30119 panels used on Plaintiffs' property after Plaintiffs paid Kilowatt the $25,089.22 which Kilowatt paid to Sullivan." *Id.*  Plaintiffs allege that in this manner "[t]he benefit of the purchase price was conferred on Bosch and retained at Plaintiffs' expense."  SAC ¶ 316.  Plaintiffs claim that "[a]s between Plaintiffs and Bosch, it is unjust for Bosch to retain the benefit conferred upon it by Plaintiffs in

that Plaintiff paid $25,089.22 for the installation of the Bosch panels based upon the promises from Bosch that the panels would be free from defects and would safely supply certain minimum power output performance, none of which were delivered or fulfilled as promised by Bosch." SAC ¶ 317.[6]

Bosch contends that the unjust enrichment claim must be dismissed under Michigan law, citing *Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, 32 F. Supp. 3d 824 (E.D. Mich. 2014). In *Bowlers' Alley*, the court observed that to plead a claim of unjust enrichment under Michigan law, "a plaintiff must establish that the defendant has received and retained a benefit from the plaintiff and inequity has resulted." *Id.* at 833. "Michigan courts will then imply a contract to prevent unjust enrichment." *Id.* "However, courts will not imply a contract where there is an express contract governing the same subject matter." *Id.* "[T]he law operates to imply a contract in order to prevent unjust enrichment, and . . . this will not occur if there is already an express contract on the same subject matter." *Id.* (internal quotation marks and citation omitted). Bosch argues that "because there is no dispute that an express agreement exists between the parties," Plaintiffs' unjust enrichment claim must be dismissed.

As discussed above, Bosch has failed to demonstrate that Plaintiffs' unjust enrichment claim falls within the scope of the Limited Warranty's choice of law provision. Accordingly, Bosch's argument based on Michigan law fails. Moreover, Plaintiffs' assertion of an unjust enrichment claim in the alternative to their warranty claims – that is, in the event that the warranty is found *not* to apply – does not appear to run afoul of the Michigan law principles articulated above. If it is determined that the parties' relationship is governed by the Limited Warranty, the unjust enrichment claim will fall by the wayside. Finally, this Court has held that a claim for unjust enrichment may be asserted under California law, and that such a claim is not subject to dismissal at the pleading stage even if duplicative of other claims. *See Romero v. Flowers*

---

[6] Plaintiffs also allege that "Bosch has been further unjustly enriched in that the price paid by Plaintiffs and Class members for the panels did not contemplate that consumers would bear the cost of testing their panels in order to assert a performance warranty claim." SAC ¶ 318. This aspect of the unjust enrichment claim is grounded in Plaintiffs' allegations that the warranty claim procedures were unconscionable. For the reasons discussed below in connection with Plaintiffs' claims under California's UCL and CLRA, that theory is not viable.

*Bakeries, LLC*, No. 14-CV-05189-BLF, 2015 WL 2125004, at *9 (N.D. Cal. May 6, 2015).

Bosch makes a passing reference to the Court's prior dismissal of Plaintiffs' unjust enrichment claim under California law. The Court found that the FAC had not identified a benefit that Bosch retained at Plaintiffs' expense, and that all of Plaintiffs' allegations supporting their unjust enrichment claim were conclusory. *See* Prior Dismissal Order at 16-17, ECF 49. As recited above, Plaintiffs have cured that defect in the SAC, and now have alleged the basis for their unjust enrichment claim with specificity.

The motion to dismiss Plaintiffs' unjust enrichment claim (Claim 5) is DENIED.

### E.  UCL and CLRA (Claims 4 and 6)

Claims 4 and 6, for violation of California's UCL and CLRA respectively, are based on Plaintiffs' assertion that the Warranty Claim Verification and Procedure provisions of the Limited Warranty are unconscionable. Specifically, Plaintiffs object to requirements that warranty claims must be verified by testing the solar panels under "standard test conditions" which must be maintained by the consumer. *See* Limited Warranty ¶¶ 3.2, 3.3. "The Consumer is responsible for maintaining the standard test conditions while producing evidence that the performance has fallen below the guaranteed minimum performance." Limited Warranty ¶ 3.3. The "standard test conditions" are defined in technical terms: "(25°C cell temperature, irradiation 1,000 W/m2 and spectrum AM 1.5)." Limited Warranty ¶ 3.3. If testing under standard test conditions determines that the solar panels meet minimum performance requirements, or if certain other circumstances occur, the consumer who made the warranty claim must reimburse Bosch for its testing costs. Limited Warranty ¶ 3.3. Plaintiffs allege that "[u]nbeknownst to end users of Bosch panels, the 'standard test conditions,' to which Bosch requires adherence to assert a warranty claim, are enormously costly and technically complex and must be performed in the controlled environment of a solar laboratory utilizing sophisticated equipment and machinery." *Id.* Plaintiffs claim that "[t]he cost of such testing likely exceeds the entire cost of the solar array itself, thus creating and unconscionable barrier to legitimate warranty claims." *Id.* Plaintiffs allege that these requirements violate California's UCL and CLRA. *See* SAC ¶¶ 281-302, 320-337.

The Court previously dismissed Plaintiffs' UCL and CLRA claims based on the standard

test conditions for failure to allege concrete injury. *See* Prior Dismissal Order at 15, ECF 49. In order to state a claim under the UCL, Plaintiffs must allege facts showing that the challenged conduct caused them to suffer an "injury in fact" and that they "lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *see also Hall v. Time Inc.*, 158 Cal. App. 4th 847, 852 (2008). In order to state a claim under the CLRA, Plaintiffs must allege facts showing that the challenged conduct caused them to suffer "some kind of damage." *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641 (2009). The Court found that the FAC did not allege any injury to Plaintiffs resulting from the standard test conditions and related requirements in the Limited Warranty. *See* Prior Dismissal Order at 15, ECF 49. The Court was not persuaded by Plaintiffs' argument that Bosch may enforce the standard test conditions requirements in the future. The Court found that Plaintiffs' alleged injury was hypothetical, citing *Lee v. Chase Manhattan Bank*, No. C07-04732 MJJ, 2008 WL 698482, at *2 (N.D. Cal. Mar. 14, 2008), in which allegations about "what might happen" were insufficient to state a claim under California's UCL and CLRA. As stated in *Lee*, "to establish injury in fact in this case, Plaintiffs must do more than allege that the provisions are unconscionable – they must show that insertion of these provisions has caused or will cause them concrete harm." *Id.*

Bosch argues that Plaintiffs have failed to remedy this pleading defect. The Court agrees. Plaintiffs repeat their prior allegation that the standard test conditions terms "remain in the Bosch Limited Warranty and could be invoked by Bosch at any time." SAC ¶ 292. As discussed above, this Court has determined that the possibility Bosch might invoke the standard test conditions provisions does not meet the statutory requirements for injury under the UCL and CLRA. Plaintiffs attempt to plead around the Court's prior order by alleging that the mere presence of the standard test conditions provisions "has an immediate, detrimental and concrete impact on the value of Plaintiff's property." SAC ¶ 292. Plaintiffs allege that "[h]omebuyers would refuse to purchase, or would require a steep discount to purchase, Plaintiffs' property which is saddled with defective panels that constitute an admitted fire risk while Bosch retains the right to invoke a clause requiring such homebuyers to expend as much as the panels are worth." SAC ¶ 292. These allegations of impairment to Plaintiffs' property value are purely speculative. Plaintiffs allege no

24

facts supporting an inference that the standard test conditions in the Limited Warranty have caused any potential buyer to refuse to purchase Plaintiffs' home or lowered the market value of the home. Accordingly, Plaintiffs have failed to allege injury and loss of money or property with respect to their UCL claim, or some kind of damage with respect to their CLRA claim.

In another effort to meet the injury requirement, Plaintiffs allege that on December 19, 2018, a consultant hired by Plaintiffs' counsel conducted an investigation of Plaintiffs' solar panels. SAC ¶ 289. Plaintiffs' counsel paid the consultant approximately $6,000. SAC ¶ 291. Plaintiffs themselves have not paid the consultant anything, but they allege that they "have a contingent liability to reimburse" the consultant's fees if they and the class prevail in this action. *Id*. Plaintiffs allege that "[t]his obligation constitutes injury-in-fact caused by the unconscionable warranty terms requiring claimants to submit testing data." *Id*. In addition to the "contingent liability" for the consultant's fees, Plaintiffs allege that Rojas missed approximately five hours of work to meet with the consultant and accommodate the consultant's inspection and testing. SAC ¶ 298. Plaintiffs allege that Rojas earns $105 per hour and therefore lost $525 as a result of complying with the testing requirements in the Limited Warranty. *See id.*

These allegations do not satisfy the pleading requirements for the UCL and CLRA. As an initial matter, the contingent liability for the $6,000 does not establish that Plaintiffs have lost money or property, or been damaged. *Cf. Marino v. Countrywide Fin. Corp.*, 26 F. Supp. 3d 955, 961 (C.D. Cal. 2014), *aff'd*, 602 F. App'x 403 (9th Cir. 2015) ("[A] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (internal quotation marks and citation omitted)). Moreover, Plaintiffs have not alleged facts suggesting that the consultant's fees and loss of income were incurred as a result of the standard test conditions provisions. Plaintiffs do not allege that Bosch demanded the testing done by Plaintiffs' consultant, and in fact Bosch has made clear throughout this lawsuit that it has never enforced the standard test conditions provisions and has no intention of doing so against Plaintiffs.

Even if Plaintiffs legitimately could have believed that retention of the consultant in December 2018 – *after* they filed this suit – was necessary to pursue their warranty claims, they

have not alleged facts showing that was their motive for hiring the consultant. There is no

allegation that Plaintiffs conveyed the consultant's findings to Bosch as support for their warranty

claims. At the hearing, Bosch's counsel represented that Plaintiffs in fact have never sent Bosch

the consultant's report event though the inspection was performed almost a year prior to the

hearing. Plaintiffs' allegations therefore suggest that the fees and loss of income were incurred

voluntarily to investigate their claims. Costs incurred to investigate a claim for litigation "do not

establish standing to bring a UCL claim because they are not an economic injury caused by the

business practices" complained of. *Two Jinn, Inc. v. Gov't Payment Serv., Inc.*, 233 Cal. App. 4th

1321, 1334 (2015); see also Meyer, 45 Cal. 4th at 643 ("[I]t would contort the statutory language

to conclude that the preemptive expenditure of fees for this litigation means that Sprint's alleged

unlawful practices had caused 'damage' at the time the lawsuit was filed.").

At the hearing, Plaintiffs' counsel asked the Court to consider two cases with respect to the

type of injury/damage that must be alleged to state a claim under the UCL and CLRA, *Hale v.

Sharp Healthcare*, 183 Cal. App. 4th 1373, 1383 (2010), and *Sarun v. Dignity Health*, 232 Cal.

App. 4th 1159 (2014), *as modified* (Jan. 13, 2015). The Court has reviewed both cases – neither

of which was cited in Plaintiffs' opposition brief – but neither advances Plaintiffs' position here.

In *Hale*, an uninsured patient who received treatment at a hospital filed a putative class

action against the hospital and its owner, asserting among other claims violations of California's

UCL and CLRA. The plaintiff's theory was that the hospital "deceptively and unfairly charged

her and other uninsured patients fees for medical services that substantially exceeded the fees it

accepted from patients covered by Medicare or private insurance." *Hale*, 183 Cal. App. 4th at

1377. In reversing the trial court's dismissal of the UCL and CLRA claims, the appellate court

held that the plaintiff had alleged standing under the UCL and CLRA based on allegations that she

had received a medical bill in the amount of $14,447.65, of which she had paid $500. *Id*. at 1383-

84. The appellate court determined that because the plaintiff had signed an admission agreement

obligating her to pay the full amount of the bill, she faced "at least an *imminent* invasion or injury

to a legally protected interest." *Id*. at 383-84. The appellate court also determined that the

plaintiff had alleged that this injury was the result of the hospital's challenged practices. *See id.* at

1385-87.

*Hale* is distinguishable from the present case, in which Plaintiffs are not subject to a charge like a medical bill, and do not face an "imminent" injury resulting from the allegedly unlawful practice. To the extent Plaintiffs are asserting a similarity between the debt actually owed by the plaintiff in Hale and the potential imposition of expenses under the standard testing condition provisions, the assertion is not well-taken. In *Hale*, the plaintiff alleged that the defendants overcharged her and she actually received a bill, of which she paid a portion, resulting from that alleged overcharge. In the present case, Plaintiffs allege that Bosch might require them to incur testing costs at some future date, and they might be required to pay voluntarily incurred consultant's fees at some future date; neither allegation shows that Plaintiffs face the type of imminent injury at issue in *Hale*. To the extent Rojas did incur costs, in the form of missing work, *Hale* does nothing to persuade the Court that those missed hours *resulted from* the standard test conditions provisions.

*Sarun* also involved a class action brought by an uninsured patient who received treatment at a hospital. The appellate court determined that a hospital bill which the plaintiff partially paid was sufficient to establish loss of "money or property" under the UCL, and to establish "any damage" under the CLRA. *See Sarun*, 232 Cal. App. 4th at 1167-69. For the reasons discussed above with respect to *Hale*, that scenario is factually distinguishable from the present case.

The Court therefore concludes that Plaintiffs have failed to allege facts establishing the loss of money or property, or any damage, as required to state a claim under the UCL and CLRA. The motion to dismiss Plaintiffs' UCL and CLRA claim (Claims 4 and 6) is GRANTED.[7]

### F.    Leave to Amend

Having determined that Plaintiffs' UCL and CLRA claims are subject to dismissal, the Court must decide whether leave to amend those claims is warranted. Leave ordinarily must be granted unless one or more of the following factors is present: (1) undue delay, (2) bad faith or

---

[7] Having concluded that Plaintiffs' UCL and CLRA claims are subject to dismissal on the above grounds, the Court need not reach Bosch's alternative arguments that Plaintiffs have not adequately alleged unconscionability and impermissibly have added a new claim under the CLRA.

dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (discussing *Foman* factors).

The Court finds no undue delay (factor 1) or bad faith (factor 2). However, despite the Court's prior order dismissing Plaintiffs' UCL and CLRA claims for failure to allege concrete harm, Plaintiffs still have not alleged a viable claim (factor 3). Granting further opportunity to amend would impose undue prejudice on Bosch, which already has had to bring multiple Rule 12(b)(6) motions (factor 4). Moreover, given Plaintiffs' failure to allege viable UCL and CLRA claims to date, and the Court's determination that their latest effort based on investigation costs is unavailing, it appears that granting further leave to amend the UCL and CLRA claims would be futile (factor 5). After weighing these factors, the Court concludes that further leave to amend is not warranted. Accordingly, the UCL and CLRA claims (Claims 4 and 6) are dismissed WITHOUT LEAVE TO AMEND.

## IV.   ORDER

Defendant Bosch's motion to dismiss the second amended complaint is GRANTED IN PART AND DENIED IN PART, WITHOUT LEAVE TO AMEND, as follows:

(1)   The motion is GRANTED WITHOUT LEAVE TO AMEND as to all claims asserted on behalf of residents of states other than California. This ruling is without prejudice to a future noticed motion for leave to amend to add new class representatives.

(2)   The motion is GRANTED WITHOUT LEAVE TO AMEND as to Claim 4 under California's UCL and Claim 6 under California's CLRA;

(3)   The motion is DENIED as to Claims 1-3 for breach of warranty and Claim 5 for unjust enrichment;

(4)   Defendant shall file an answer to the second amended complaint on or before March 27, 2020; and

(5)   This order terminates ECF 62.

Dated:  March 6, 2020

_____
BETH LABSON FREEMAN
United States District Judge