David M. Birka-White (State Bar No. 85721)
dbw@birka-white.com
Steven T. Knuppel (State Bar No. 164710)
sknuppel@birka-white.com
BIRKA-WHITE LAW OFFICES
178 E. Prospect Avenue
Danville, CA 94526
Telephone: (925) 362-9999


John D. Green (State Bar No. 121498)
jgreen@fbm.com
FARELLA BRAUN & MARTEL LLP
235 Montgomery Street, Suite 1700
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile:  (415) 954-4480

[Additional Counsel Listed on Signature Page]

Attorneys for Individual and Representative
Plaintiffs STEVE R. ROJAS and ANDREA N. ROJAS,
on behalf of themselves and all others similarly situated

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## (SAN JOSE DIVISION)

| | |
|---|---|
| STEVE R. ROJAS and ANDREA N. ROJAS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BOSCH SOLAR ENERGY CORPORATION; and DOES 1-20, inclusive,<br><br>Defendants. | Case No.  5:18-cv-5841BLF<br><br>**PLAINTIFFS' NOTICE OF MOTION TO COMPEL AND FOR SANCTIONS**<br><br>DATE:        June 3, 2020<br>TIME:         2:00 p.m.<br>LOCATION:  San Jose Federal Courthouse<br>                    280 South First Street<br>                    Courtroom 5, 4th FL<br>                    San Jose, CA  95113<br>                    (Via Zoom)<br><br>Trial Date:         April 11, 2022<br>The Honorable Judge Beth Labson Freeman<br>Magistrate Judge Nathanael M. Cousins |

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

Case No. 5:18-cv-5841BLF

**PLAINTIFFS' NOTICE OF MOTION TO COMPEL AND FOR SANCTIONS**

# TABLE OF CONTENTS

PAGE

I.     NOTICE OF MOTION AND MOTION.................................................... 1

II.    CONCISE STATEMENT OF RELIEF ................................................... 2

III.   MEMORANDUM OF POINTS AND AUTHORITIES.................................. 2

A.     INTRODUCTION......................................................................... 2

B.     STATEMENT OF FACTS ............................................................. 3

C.     LEGAL ARGUMENT .................................................................. 9

D.     CONCLUSION.......................................................................... 20

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- i -                                    Case No. 5:18-cv-5841BLF
PLAINTIFFS' NOTICE OF MOTION TO COMPEL AND FOR SANCTIONS

1

## TABLE OF AUTHORITIES

2

PAGE

3

### CASES

*Accord Accessdata Corp. v. ALSTE Tech. GMBH,* No. 2:08 CV 569 (D. Utah 2010) ........................................................................................................... 15

*Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 237 (N.D. Cal. 2015) ................................. 19

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court*, 408 F.3d 1142, 1148-49 (9th Cir. 2005) ........................................................................................................... 18

*Burlington Northern & Santa Fe Railway v. U.S. District Court* ......................................... 19

*Choice-Intersil Microsystems, Inc. v. Agere Sys., Inc.*, 224 F.R.D. 471, 472–73 (N.D. Cal. 2004) .................................................................................................. 17

*Finjan, Inc. v. Zscaler, Inc.*, No. 17-cv-06946, 2019 WL 618554 (N.D. Cal. Feb. 14, 2019) .......................................................................................................... 15

*Herrera v. AllianceOne Receivable Management, Inc.*, 2016 WL 1182751, at *3 (S.D. Cal. Mar. 28, 2016) .................................................................................... 13

*Holt v. Nicholas*, No. 1:09–cv–00800, 2014 WL 250340, at *3 (E.D. Cal. Jan. 22, 2014) .......................................................................................................... 13

*In re Citric Acid Litigation*, 191 F.3d 1090 (9th Cir. 1999) ................................................ 16

*Kaiser v. BMW of N. Am., LLC*, No. 12–cv–01311 DMR, 2013 WL 1856578, at *3 (N.D.Cal. May 2, 2013) ......................................................................................... 12

*Khasin v. Hershey Company*, No. 5:12–cv–01862, 2014 WL 690278, at *2 (N.D. Cal. Feb. 21, 2014) ....................................................................................... 19

*Live Nation Merchandise, Inc. v. Miller*, No. 13–cv–03936, 2014 WL 1877912, at *2 (N.D. Cal. May 9, 2014) ......................................................................................... 11

*Loop AI Labs Inc v. Gatti*, No. 15-cv-00798, 2016 WL 3001158, at *2 (N.D. Cal. May 25, 2016) ..................................................................................................... 18

*Loop AI Labs Inc. v. Gatti*, No. 15-cv-00798, 2016 WL 2908415, at *3 (N.D. Cal. May 13, 2016) ..................................................................................................... 20

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) ............................................ 11

*Porter v. City and County of San Francisco*, No. 16-cv-03771, 2018 WL 4215602, at *5 (N.D. Cal. Sept. 5, 2018) ................................................................................ 18

*Porter*, 2018 WL 4215602, at *6 .............................................................................. 20

*Sandigo v. Ocwen Loan Servicing, LLC*, No. 17-cv-002727, 2018 WL 4293339, at *1 (N.D. Cal. July 18, 2018) .................................................................................. 11

*Sandigo*, 2018 WL 4293339, at *2 ............................................................................ 13

*Silgan Containers v. National Union Fire Ins.*, No. C 09–05971, 2011 WL 1058861, at *9 (N.D. Cal. Mar. 23, 2011) ............................................................... 12

*Societe Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 544 n.29 (1987) ............................................................................. 15

*Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995) ......................................... 11

*St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 305 F.R.D. 630, 638 (D. Or. 2015) ................... 16

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- ii -

**PLAINTIFFS' NOTICE OF MOTION TO COMPEL AND FOR SANCTIONS**

*Thompson v. C & H Sugar Company, Inc.*, No. 12–cv–00391, 2014 WL 595911, at
   *2 (N.D. Cal. Feb. 14, 2014) .................................................................................. 9

*Tierno v. Rite Aid Corp.*, 05–cv–02520 TEH, 2008 WL 3876131, at *2 (N.D. Cal.
   Aug. 19, 2008) ...................................................................................................... 10

*Woodard v. Labrada*, No. ED CV 16–189, 2017 WL 1018306, at *4 (C.D. Cal.
   Mar. 6, 2017) ........................................................................................................ 13

## RULES

Civil L. R. 37 .................................................................................................................. 1

Fed. R. Civ. P. 26(b)(1) ............................................................................................ 11, 12

Fed. R. Civ. P. 34(b)(2)(B) ........................................................................................... 13

Fed. R. Civ. P. 37 ............................................................................................................ 1

Fed. R. Civ. P. 37(a)(4) .................................................................................................. 9

Fed. R. Civ. P. 37(a)(5)(A) ........................................................................................... 18

Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii) ................................................................................ 17

Rule 33.Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv) .................................................................. 9

Rule 34 ................................................................................................................... 9, 10

Rule 37 .......................................................................................................................... 10

Rule 37(a)(3)(B) .............................................................................................................. 9

Rule 37(a)(5)(A) ............................................................................................................ 17

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

Case No. 5:18-cv-5841BLF

**PLAINTIFFS' NOTICE OF MOTION TO COMPEL AND FOR SANCTIONS**

## I.    NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on June 3, 2020, at 2:00 p.m., in Courtroom 5 of the above-entitled Court, located at 280 South First Street, San Jose, California 95113, Plaintiffs Steve R. Rojas and Andrea N. Rojas (collectively, "Plaintiffs") will move the Court pursuant to Fed. R. Civ. P. 37 and Civil L. R. 37 of the Northern District of California, for an order compelling Defendant Bosch Solar Energy Corporation to do the following:

1.  Produce the documents described in Plaintiffs' First Request for Production of Documents and Third Request for Production of Documents (the "Document Requests") in the manner described in the Proposed Order submitted herewith.

2.  Provide amended, responsive responses to Plaintiffs' First Set of Interrogatories and Second Set of Interrogatories in the manner described in the Proposed Order submitted herewith.

3.  Produce solar panels for inspection pursuant to Plaintiffs' Second Request for Production of Documents and to preserve the solar panels until inspection can be accomplished, in the manner described in the Proposed Order submitted herewith.

4. To not destroy, recycle or otherwise dispose of Bosch solar panels, model number c-SI M 60 NA3011, ("NA30119 panels") that are currently being stored or which may hereafter be de-installed, without a Court order or stipulation of the parties.

5. To store all NA30119 panels pending inspection.

6.  To return to California for inspection and testing the approximately one hundred NA30119 panels which were previously in California after de-installation but which were removed to Arkansas by Bosch; Plaintiffs request that the Court order Bosch to ship said panels to Arnold Rodio of Evaluation and Remediation Services located at 43141 Business Center Parkway, Suite #202, Lancaster, CA 93535.

PLEASE TAKE NOTICE that Plaintiffs will also and hereby move the Court for an order under Fed. R. Civ. P. 37 and Civil L. R. 37 and Civil L. R. 37-4 sanctioning Bosch Solar Energy Corporation.

Case No. 5:18-cv-5841BLF
**PLAINTIFFS' NOTICE OF MOTION TO COMPEL AND FOR SANCTIONS**

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

1   The motions are based on this Notice of Motion and Motion, the Memorandum of Points
2   and Authorities contained herein, the Declaration of David M. Birka-White and accompanying
3   exhibits, the Declaration of Arnold A. Rodio, the Separate Statement of Discovery to be
4   Compelled (the "Statement"), the Proposed Orders filed concurrently herewith, upon reply papers
5   that Plaintiffs may file, upon all pleadings and papers on file in this action, and upon such further
6   evidence and arguments as may be presented to the Court prior to or at the hearing on the
7   motions.

8   **II.    CONCISE STATEMENT OF RELIEF**

9   The relief Plaintiffs seek is an order requiring Bosch to 1) produce all documents
10   responsive to the First and Third Document Request; 2) provide supplemental responses to
11   Interrogatories, Sets 1 and 2; 3) permit inspection of all Bosch NA30119 panels; 4) order
12   sanctions against Bosch for attorney fees and costs ; and 5) for leave to file a motion of
13   evidentiary preclusion as a result of spoliation of evidence.  In addition, a proposed order is filed
14   herewith.

15   Plaintiffs also seek is an order requiring Bosch to pay Plaintiffs' reasonable expenses,
16   including attorney fees, incurred in making its motion to compel Bosch to comply with pending
17   discovery and this motion.  Those expenses are detailed in the accompanying Declaration of
18   David M. Birka-White.  In addition, a proposed Order is filed herewith.

19   **III.    MEMORANDUM OF POINTS AND AUTHORITIES**

20   **A.    INTRODUCTION**

21   This motion to compel and for sanctions is being filed with leave of the Court, (Doc 99).
22   This punitive class action was filed on behalf of the owners of approximately 44,500 defective
23   solar panels manufactured and sold by Bosch under model number c-SI M 60 NA30119
24   ("NA30119 panels") between 2011 and 2013.  In an acknowledgment that the defective NA30119
25   panels pose a fire hazard and safety risk due to a soldering defect, Bosch recalled 28,000 "roof-
26   mounted" panels on April 3, 2017, in conjunction with the United States Consumer Product
27   Safety Commission ("CPSC").  SAC, Doc 53, ¶ 50.  Although all NA30119 panels were
28   uniformly designed and manufactured, and thus suffer from identical defects, Bosch recalled only

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 2 -                                                      Case No. 5:18-cv-5841BLF
PLAINTIFFS' NOTICE OF MOTION TO COMPEL AND FOR SANCTIONS

1   roof-mounted panels, arbitrarily excluding over 16,000 ground mounted panels from the recall.

2   Plaintiffs Steve and Andrea Rojas own ground-mounted NA30119 panels and were therefore

3   excluded from the recall. Whether ground- or roof-mounted, all NA30119 panels suffer from the

4   same defects, and no matter where installed, the panels were manufactured to identical

5   specifications.

6   **B.    STATEMENT OF FACTS**

7       Judge Freeman opened discovery on May 30, 2019 (ECF 52). On July 22, 2019, Plaintiffs

8   served Bosch with Plaintiffs' First and Second sets of Interrogatories, and First, Second and Third

9   sets of Request for Production of Documents. The Second Set of Requests for Production

10  requested permission to inspect all panels that had previously been removed and to attend future

11  "de-installations" of the panels.  Birka-White Declaration, ¶ 6.

12      Bosch's responses, served September 20, 2019, consisted almost exclusively of boilerplate

13  objections.  Birka-White Declaration, ¶ 8.  To date, more than *nine* months after Plaintiffs served

14  their discovery requests, Bosch has not produced a *single* document and has provided virtually no

15  substantive information in response to Plaintiffs' Interrogatories.  Similarly, Bosch has refused to

16  allow the inspection of any removed panels.  (Birka-White Declaration, ¶ 7)  Notwithstanding

17  numerous lengthy meet and confer conferences, Bosch would not commit to any date for a

18  production of documents or supplementing interrogatory responses until Plaintiffs sent Bosch a

19  draft of their half of a Joint Discovery Statement to the Court, on May 6, 2020.  Later that day,

20  Bosch promised to supplement its interrogatory responses by May 15, 2020.  That date has come

21  and gone without further responses.[1]  Bosch also indicated that it would begin a rolling document

22  production by May 22, 2020, but limited to only a small subset of the requested documents.

23      **1.    Bosch Has Implemented Four Overarching Bad Faith Strategies to**

24      **Underpin Its Numerous Objections to Plaintiffs' Discovery.**

25      First, Bosch has wrongfully destroyed hundreds of NA30119 panels during the pendency

26  of this case, thereby engaging in the spoliation of evidence, and has refused to allow plaintiffs to

27

28  ───────────────
[1] Today, May 20, 2020, Bosch forwarded supplemental answers to interrogatories too late to be addressed in this Motion.  Plaintiffs will address the supplemental responses in their Reply.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 3 -                                    Case No. 5:18-cv-5841BLF

**PLAINTIFFS' NOTICE OF MOTION TO COMPEL AND FOR SANCTIONS**

1    inspect any remaining stored panels previously removed pursuant to the recall. Second, Bosch

2    asserts that the recall's Corrective Action Plan ("CAP"), agreed to between Bosch and the CPSC,

3    requires destruction of the panels and disallows their storage during the pendency of this case.

4    Third, Bosch asserts that the GDPR prohibits it from producing relevant records, the vast majority

5    of which pose no risk of disclosing the consumer confidential information that the GDPR is

6    intended to protect. Finally, Bosch asserts that Defendant Bosch Solar Energy Corporation has no

7    legal right to request documents from Bosch affiliates, with whom it is regularly working in

8    connection with the recall (without disclosing who they are), and therefore contends that it lacks

9    control over the requested documents and thus cannot legally be compelled to produce them.

10                          **a.       Inspection of the panels.**

11          Bosch has strategically refused to allow Plaintiffs to inspect the NA30119 panels removed

12   pursuant to the recall, under the pretense that the recall CAP approved by the CPSC requires that

13   the panels be destroyed or "recycled." This notwithstanding the numerous demands by Plaintiffs

14   to (1) store the removed panels in order to allow inspection, (2) permit Plaintiffs to select random

15   samples of the stored panels, and (3) develop appropriate testing protocols, after which Plaintiffs

16   have agreed that most of the panels can be destroyed pending trial.  (Birka-White Declaration ¶¶

17   22-32)  (Rodio Declaration ¶¶ 29 31)  In fact, there is nothing in the CAP that requires that the

18   panels be destroyed.  (Birka-White Declaration ¶ 32)  Nor is there any evidence to suggest that

19   the CPSC has *any* objection to the panels *being stored* to allow for inspection and testing by

20   Plaintiffs.  It is obvious that Bosch and the CPSC would not want the recalled defective panels to

21   be resold or returned to the market.  Emphatically, there is no risk of the panels returning to the

22   market by storing the panels to facilitate either parties' right to inspect and test.  It means only

23   that the panels will be destroyed at a modestly later date.

24          Dating back to the Rule 26 meet and confer conference held on May, 2019, Plaintiffs'

25   counsel has demanded that the panels not be destroyed and insisted on the right to inspect and test

26   the removed panels. Birka-White Declaration, ¶¶ 33-39)  A formal request to inspect all stored

27   panels was served on Bosch on July 22, 2019.  (Birka-White Declaration, ¶ 7)  Bosch has refused

28   to provide Plaintiffs with any dates on which they may inspect the panels, relying on two excuses:

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 4 -                                             Case No. 5:18-cv-5841BLF
**PLAINTIFFS' NOTICE OF MOTION TO COMPEL AND FOR SANCTIONS**

(1) the CAP prevents storage of the panels, a position unsupported by any evidence and (2) that inspections cannot be allowed until a protective order regarding the inspections and specifying a testing protocol is in place.

For over a year, Plaintiffs' consistent position has been simply that Bosch must first store the removed panels and then must allow the inspection of the panels.  Only after inspection can a testing protocol be determined by solar engineers, in order to facilitate study and develop opinions as to the root cause of the defects.  Bosch has it backwards.  Bosch disingenuously demands that the cart go before the horse by insisting that the testing protocol *precede* the inspection and observation of the panels – leading to an irreconcilable impasse and thus preventing *any* inspections of the panels.

Indeed, a review of the documents subpoenaed by Plaintiffs from Baker Electric ("Baker"), Bosch's solar contractor responsible for removing recalled panels in California, Arizona, and perhaps other states, reveals that hundreds of the panels have been destroyed by Baker during the pendency of the lawsuit.

Bosch has thus not only refused to provide Plaintiffs with dates on which to inspect stored panels, it has actively engaged in conduct specifically intended to prevent Plaintiffs from inspecting removed panels.  (Birka-White Declaration, ¶¶ 38, 47, 48-49) (Rodio Declaration, ¶ 18)

### b.      Hawaii Inspections.

During September 2019, Bosch's counsel informed Plaintiffs' counsel that Bosch was planning to undertake the replacement of panels on approximately 11 properties in Hawaii. Plaintiffs requested that they be given the opportunity to observe these "deinstallations."  Given the distance, Plaintiffs requested that they be provided with adequate notice to arrange for their consultant to attend.  Bosch then proceeded to go forward with various "deinstallations" without providing adequate notice to Plaintiffs, and on several occasions provided no notice. At considerable expense and over Bosch's objection, Plaintiffs' counsel sent their solar consultant, Arnold Rodio, to Hawaii to the business premises of RevoluSun, Bosch's Hawaii solar contractor

**PLAINTIFFS' NOTICE OF MOTION TO COMPEL AND FOR SANCTIONS**

1  responsible for removing the recalled panels, in an effort to control the destruction of evidence.

2  (Rodio Declaration ¶¶ 13-18)

3      While there, Mr. Rodio learned that RevoluSun had disposed of untold numbers of the

4  NA30119 panels.  Bosch refused to allow Mr. Rodio permission even to photograph what panels

5  were stored.  (Rodio Declaration ¶ 18)  The purpose of such photographs would have been to

6  determine what defects were observable and to develop a testing protocol, employing electrical

7  tests that were diagnostically relevant, a task that can be accomplished only *after* observing the

8  panels.  (Rodio Declaration ¶¶ 27-30)  Bosch refused to allow Mr. Rodio to photograph the panels

9  under the guise that they would need to have their expert present.  (Birka-White Declaration ¶ 48)

10  Plaintiffs' counsel reminded Bosch that the panels were being stored by RevoluSun, Bosch's

11  experts; that there would be no destructive testing or any testing of the panels; and that Bosch was

12  free to observe Plaintiffs' consultant photographing the panels.  This proposal was refused.

13  (Birka-White Declaration ¶¶ 48-49)  As a result, Plaintiffs' opportunity to inspect the stored

14  panels was squandered.  The cost of returning to Hawaii to inspect these panels is now duplicative

15  and wasteful. (Birka-White Declaration, ¶ 49)  The inability to observe the panels has had

16  significant consequences, not the least of which has been to prevent Plaintiffs' experts the

17  opportunity to analyze the defect early in the case and wasted valuable time to develop the

18  evidence of the defects.

19      Plaintiffs' counsel has repeatedly attempted to resolve this dispute by explaining to

20  Bosch's counsel that a testing protocol cannot be developed until after a meaningful sample of the

21  panels can be inspected.  (Birka-White Declaration, ¶¶ 28-30)  (Rodio Declaration ¶ 29)  All

22  failure analysis begins with inspections. The selection of a testing protocol thus cannot precede

23  the observation of the defective product.  In addition, in order to choose a plan for selecting a

24  random sample, it is necessary to know what the available sample consists of, before a

25  methodology can be determined for the selection of a random sample.  (Rodio Declaration, ¶ 31)

26  Birka-White Declaration, ¶¶ 53-54)

27      In short, Bosch has deliberately placed the cart before the horse in order to prevent any

28  inspections and now blames Plaintiffs for refusing to sign Bosch's wrong-handling inspection

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 6 -                                           Case No. 5:18-cv-5841BLF
PLAINTIFFS' NOTICE OF MOTION TO COMPEL AND FOR SANCTIONS

1  protocol.  Inspections must precede the development of testing protocols, not the opposite.

2  Bosch's strategy is not benign.  It was designed and implemented to delay and prevent the

3  inspection of the panels.[2]

4              c.      **First Citizens Bank.**

5         The First Citizens Bank debacle is an extreme example of Bosch's abuse of the discovery rules.

6  From at least May, 2019, Plaintiffs' counsel made it abundantly clear that it wanted to inspect stored

7  panels and to observe panels that were being removed.  The inspection of any large commercial array and

8  the ability to secure a random sample was, and remains an essential element to gathering evidence for

9  class certification and trial.  In November, 2019, Bosch notified Plaintiffs' counsel that a 7,000 panel array

10  was going to be replaced in the upcoming months. Between November 2019 and April 2020, Plaintiffs'

11  counsel submitted to Bosch no less than six written requests and multiple verbal requests for the contact

12  information for the 7,000 panel array.  Notwithstanding request after request, Bosch's counsel refused to

13  provide plaintiff with the contact information.  It was a repeatedly explained that Plaintiffs' counsel would

14  need time to work out the necessary arrangements to inspect and select a random sample of the panels

15  before they were destroyed.  (Birka-White Declaration ¶¶ 50–54).

16         Then on April 14, 2020 Joseph Wylie wrote stating the that it had just come to his attention that

17  the owner of a large roof mounted installation in had begun removing and destroying the 7,000 panels

18  array.  The events that followed in the next two weeks for disturbing and chaotic. It was only through the

19  cooperation of FCB counsel, Chris Kiger, and of last second work by Plaintiffs' counsel and experts that

20  Plaintiff secured 400 panels from the array.

21  _____

22         [2] Based upon the destruction of the panels and potential spoliation of evidence, Plaintiffs

23  request that the Court retain jurisdiction related to the potential for issue preclusion or evidence

24  sanctions.  Plaintiffs are not in a position to fully analyze and argue a request for issue preclusion

25  or evidence sanctions until they have had an opportunity to review the discovery produced as a

26  result of this motion.  Plaintiffs also reserve all rights with respect to seeking evidentiary

27  preclusions based upon the late notice regarding the First Citizens Bank removal and replacement

28  of the NA30119 panels.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 7 -                                                      Case No. 5:18-cv-5841BLF
**PLAINTIFFS' NOTICE OF MOTION TO COMPEL AND FOR SANCTIONS**

1  The fiasco was utterly in the control of Bosch's counsel to avoid.  They intentionally refused to

2  inform Plaintiffs' counsel of the owner until after this the dismantling of the array was well underway.  It

3  was no surprise to Bosch that FCB was about to remove and replace the panels. Indeed, Bosch had been

4  negotiating with them for at least six months prior to the beginning of the job. On three separate occasions

5  in the week prior to Mr. Wylie's April 14, 2020 letter, Bosch's counsel remained silent.  Birka-White

6  Declaration ¶¶ 55 -60.  The cost of securing the panels was dramatically increased as a result of these

7  tactics for which plaintiffs request partial reimbursement.  Total cost is $24,350 for which Plaintiffs

8  request $12,500.00 reimbursed from Bosch for the waste occasion by their intentional failure to provide

9  notice to Plaintiffs' counsel of the impending replacement of the large solar array, the largest in the United

10 States with the NA30119 panels. (Birka-White Declaration ¶¶ 61–64).

### d.      CPSC Corrective Action Plan

12 As far back as May 2019 Bosch took the position that during our Rule 26 conference that it was

13 required to dispose of the NA30119 panels because of the directive of the United States Consumer Product

14 Safety Commission ("CPSC") pursuant to the Corrective Action Plan ("CAP") as part of the recall.

15 Bosch's counsel also represented that it could not store the panels at Plaintiffs' request without the

16 permission of the CPSC.  (Birka-White Declaration ¶ 32)  Both statements were false.  The CAP states the

17 following:

> "Fifth, Bosch will arrange for the safe disposal of all Bosch panels
>
> identified as having poor solder joints. Bosch will reuse panels without
>
> poor solder joints, if at all, only for non-rooftop installations such as
>
> solar parks."

Nothing prevents Bosch from storing the panels before safe disposal.  The use of the CPSC correct

of action plan agreement by Bosch to deny plaintiffs repeated request to inspect the panels was an abuse of

the discovery system and an active bad faith.

### e.      GDPR and Control of Documents

27 Lastly, as discussed below, Bosch's reliance on the GDPR as a basis for not being able to produce

28 relevant documents is unfounded and unsupported by the law.  Similarly, Bosch's contention that it has no

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 8 -                                              Case No. 5:18-cv-5841BLF
**PLAINTIFFS' NOTICE OF MOTION TO COMPEL AND FOR SANCTIONS**

1    legal right to request Bosch affiliates to produce responsive documents, because it has no "control" of the

2    documents, is yet another abusive tactic and unsupported by the law.

3    **C.      LEGAL ARGUMENT**

4        **1.      Bosch's Evasion of Its Discovery Obligations Necessitates Court**

5            **Intervention**

6        Rule 37(a)(3)(B) permits a party seeking discovery to request the intervention of the Court

7    to compel responses in three circumstances that Bosch has created in this case:  (1) a failure to

8    produce documents as requested under Rule 34; (2) a failure to permit inspection as requested

9    under Rule 34; and (3) a failure to answer interrogatories submitted under Rule 33.Fed. R. Civ. P.

10   37(a)(3)(B)(iii)-(iv). As stated above, in more than nine months, Bosch has failed to produce a

11   single document. Bosch has also failed to permit Plaintiffs to inspect stored panels and has

12   deliberately obstructed Plaintiffs' ability to inspect panels at numerous deinstallations, in direct

13   contradiction of Plaintiffs' requests to inspect under Rule 34. Finally, Bosch has so thoroughly

14   avoided substantively responding to the bulk of Plaintiffs interrogatories, primarily by means of

15   evasive general objections and disclaimers, that subdivision (a)(4) of Rule 37 requires that, "[f]or

16   purposes of this subdivision (a), an evasive or incomplete . . . response must be treated as a failure

17   to . . . respond," thereby bringing Bosch's nominal responses under the permitted motions to

18   compel. Fed. R. Civ. P. 37(a)(4).

19       Mindful of the Court's admonition that the parties must cooperate "to iron out discovery

20   wrinkles on their own," Plaintiffs attempted for months to persuade Bosch to voluntarily comply

21   with its discovery obligations, prior to seeking the Court's intervention through initiating the

22   filing of the joint discovery letter (ECF 98) that led to this motion.  Birka-White Declaration, ¶

23   66; *Thompson v. C & H Sugar Company, Inc.*, No. 12–cv–00391, 2014 WL 595911, at *2 (N.D.

24   Cal. Feb. 14, 2014). Plaintiffs have attempted to act in accordance with—and have brought to the

25   attention of counsel for Bosch to no avail—the importance to the judicial system of good faith

26   cooperation between the parties in resolving discovery disputes, as reiterated by this Court:

27           The discovery system depends absolutely on good faith and common sense
             from counsel. The courts, sorely pressed by demands to try cases promptly

28           and to rule thoughtfully on potentially case dispositive motions, simply do

**PLAINTIFFS' NOTICE OF MOTION TO COMPEL AND FOR SANCTIONS**

1      not have the resources to police closely the operation of the discovery
    process. The whole system of Civil adjudication would be ground to a
2      virtual halt if the courts were forced to intervene in even a modest
    percentage of discovery transactions. That fact should impose on counsel an
3      acute sense of responsibility about how they handle discovery matters. They
    should strive to be cooperative, practical and sensible, and should turn to the
4      courts (or take positions that force others to turn to the courts) only in
    extraordinary situations that implicate truly significant interests.

5
*Id.* at *2 (quoting *Tierno v. Rite Aid Corp.*, 05–cv–02520 TEH, 2008 WL 3876131, at *2 (N.D.
6  Cal. Aug. 19, 2008)).

7      Bosch has created such an extraordinary situation, and has taken advantage of Plaintiffs'

8  good faith efforts at self-resolution to make this situation even worse, by cyclically raising a

9  series of unexplained and unfounded excuses in order to both (1) delay its production of

10  documents or substantive interrogatory responses, and (2) obstruct Plaintiffs' efforts to inspect the

11  solar panels that are at the center of this case. Every time Plaintiffs have attempted in good faith

12  to resolve one of these excuses, Bosch has thrown up yet another roadblock, in a relentless effort

13  to evade its discovery obligations.

14      In fact, Bosch's efforts to prevent Plaintiffs from having access to the information to

15  which they are entitled have extended far beyond the technical boundaries of Rule 37. Not

16  satisfied with hiding its own documents from Plaintiffs, Bosch has also squandered considerable

17  Court time on three separate motions attempting to prevent Plaintiffs from seeing the documents

18  produced under subpoena by Baker Electric, the contractor Bosch hired to remove recalled panels

19  from putative class members' properties in California.  And while it has been making excuses for

20  refusing to permit the panel inspections Plaintiffs requested under Rule 34, Bosch has apparently

21  put to use the months of unexcused delay to surreptitiously destroy or remove from the country

22  the recalled panels that it complained were too expensive to store and that it has prevented

23  Plaintiffs from inspecting. In other words, Bosch's nine months of discovery delays have

24  significantly prejudiced Plaintiffs by (1) depriving them of evidence in support of their motion for

25  class certification, (2) thereby ultimately causing a delay in the class certification hearing date,

26  and (3) requiring significant expenditures on Plaintiffs' part in order to fight discovery battles on

27  the multiple fronts described above.

28      Even worse, Bosch has been taking advantage of these manufactured discovery delays by

**PLAINTIFFS' NOTICE OF MOTION TO COMPEL AND FOR SANCTIONS**

1  systematically destroying or removing from Plaintiffs' reach the evidence that it has been

2  obligated to preserve since this case was filed in 2018.   Birka-White Declaration, ¶ 24-32)

3       Plaintiffs are therefore in need of assistance from the Court to compel Bosch to recognize

4  and adhere to its discovery and other evidentiary obligations. Furthermore, as discussed below, in

5  circumstances as egregious as these, Rule 37 gives courts broad discretion to impose appropriate

6  sanctions in an effort to redress the considerable prejudice to Plaintiffs.

7       **2.**     **The Parties Have Taken Opposite Approaches to the Rules Governing**

8       **Discovery**

9       As this Court recently observed in an analogous case, "[w]hen it comes to civil discovery,

10  there is an easy way and a hard way. The easy way is to comply with the procedural tools and

11  deadlines set forth in the Federal Rules of Civil Procedure. The hard way is to delay; obfuscate;

12  object; change course; object again; delay; and then object one more time." *Sandigo v. Ocwen*

13  *Loan Servicing, LLC*, No. 17-cv-002727, 2018 WL 4293339, at *1 (N.D. Cal. July 18, 2018).

14  Bosch and its counsel "have repeatedly chosen the hard way. This decision has frustrated justice

15  and has caused needless expense and delay for [Plaintiffs] and [their] counsel." *Id.*

16       By contrast, Plaintiffs have consistently striven to follow the easy way, which permits

17  "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."

18  Fed. R. Civ. P. 26(b)(1). A relevant matter is defined by Rule 26(b)(1) as any matter that "bears

19  on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in

20  the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The question of

21  relevancy should be "construed liberally and with common sense and discovery should be

22  allowed unless the information sought has no conceivable bearing on the case." *Soto v. City of*

23  *Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995) (internal quotation omitted). In addition, "[f]or

24  good cause, the court may order discovery of any matter relevant to the subject matter involved in

25  the action." Fed.R.Civ.P. 26(b)(1); *see also Live Nation Merchandise, Inc. v. Miller*, No. 13–cv–

26  03936, 2014 WL 1877912, at *2 (N.D. Cal. May 9, 2014) ~~(needs internal quotation)~~. In resolving

27  discovery disputes, the court should endeavor to "strike[] the proper balance between permitting

28  relevant discovery and limiting the scope and burdens of the discovery to what is proportional to

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 11 -

Case No. 5:18-cv-5841BLF

**PLAINTIFFS' NOTICE OF MOTION TO COMPEL AND FOR SANCTIONS**

1   the case." *Id.* (quoting Kaiser v. BMW of N. Am., LLC, No. 12–cv–01311 DMR, 2013 WL

2   1856578, at *3 (N.D.Cal. May 2, 2013)). In determining what is proportional to the case, a court

3   should consider "the importance of the issues at stake in the action, the amount in controversy,

4   the parties' relative access to relevant information, the parties' resources, the importance of the

5   discovery in resolving the issues, and whether the burden or expense of the proposed discovery

6   outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

7        Plaintiffs' discovery requests to Bosch fall within the broad scope contemplated by Rule

8   26.  The information requested is both relevant and proportional to the needs of the case. To

9   whatever extent that Plaintiffs' requests might be considered excessive or unduly burdensome,

10   Plaintiffs' counsel has repeatedly offered to counsel for Bosch that Plaintiffs are willing to narrow

11   definitions, interrogatories, and/or requests for documents in order to address any such concerns.

12   In most cases, however, Bosch has declined to provide the necessary information concerning its

13   objections.  Birka-White Declaration, ¶ 10)

14        **3.      Bosch's Unexplained Excuses Constitute a Tactical Evasion of Its**
            **Discovery Obligations**
15
            **a.   Bosch's Boilerplate and General objections should be overruled,**
16            **and Bosch should be ordered to withdraw its conditional responses**

17        As described above, Bosch raises numerous general objections and incorporates them by

18   reference into each of its itemized responses. Plaintiffs have repeatedly requested during meet and

19   confers that Bosch withdraw these objections, and have explained that Bosch's numerous

20   boilerplate objections render its discovery responses ambiguous and unclear as to what

21   documents are being withheld. Yet counsel for Bosch refused repeatedly to withdraw these

22   objections.  In the joint statement, Bosch defended its general objections as follows: "This is

23   standard practice in federal litigation.  Bosch Solar has complied with its obligations under Rule

24   26 . . . . Bosch Solar is under no obligation to withdraw well-founded objections, and Plaintiffs

25   have identified no prejudice that they have suffered." (ECF 98)

26        The Court has disapproved of this kind of "don't have to" stance in a discovery letter brief

27   because it "drives up client costs, and it slows down discovery." *Silgan Containers v. National*

28   *Union Fire Ins.*, No. C 09–05971, 2011 WL 1058861, at *9 (N.D. Cal. Mar. 23, 2011). More

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 12 -                                Case No. 5:18-cv-5841BLF
**PLAINTIFFS' NOTICE OF MOTION TO COMPEL AND FOR SANCTIONS**

1   importantly, Bosch's insistence on maintaining numerous general objections has made it

2   impossible for Plaintiffs to "discern whether [Bosch] has or will produce all responsive

3   documents or whether it is shielding responsive documents behind one of its many objections."

4   *Sandigo*, 2018 WL 4293339, at *2.

5        Bosch's reliance on general objections also violates Rule 34's requirement that, for each

6   item or category of items requested, "the response must either state that inspection and related

7   activities will be permitted as requested or state with specificity the grounds for objecting to the

8   request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B); *see also Holt v. Nicholas*, No. 1:09–

9   cv–00800, 2014 WL 250340, at *3 (E.D. Cal. Jan. 22, 2014) ("[g]eneric, boilerplate objections to

10  discovery are not sufficient," because Rule 34 requires that a responding party "include the

11  specifics of the objection and how that objection relates to the documents" sought) (citations

12  omitted).

13       The inappropriateness of Bosch's numerous general objections and the resulting prejudice

14  to Plaintiffs are compounded by the fact that Bosch has explicitly made its itemized responses to

15  Plaintiffs' interrogatories and requests for production "[s]ubject to and without waiving" the full

16  list of general objections.  Birka-White Declaration, ¶ 12)  Discovery responses including such

17  provisions "can confuse or mislead the requesting party as to whether the responding party has

18  fully or only partially responded to the discovery request." *Sandigo*, 2018 WL 4293339, at *2.

19  (citation omitted).  As a result, Plaintiffs cannot discern whether Bosch "is shielding responsive

20  documents behind one of its many objections." *Id.*

21       One court has actually labeled the use of this conditional language "evasive as to whether

22  all requested documents have been produced or withheld," because it amounts to an indication

23  that the producing party "will produce some responsive documents but may be withholding other

24  responsive documents." *Woodard v. Labrada*, No. ED CV 16–189, 2017 WL 1018306, at *4

25  (C.D. Cal. Mar. 6, 2017). The ultimate consequence is that "[c]onditional responses and/or the

26  purported reservation of rights by a responding party are improper and ultimately have the effect

27  of waiving the objections to the discovery requests." *Id.* (quoting *Herrera v. AllianceOne*

28  *Receivable Management, Inc.*, 2016 WL 1182751, at *3 (S.D. Cal. Mar. 28, 2016)).

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

Case No. 5:18-cv-5841BLF

**PLAINTIFFS' NOTICE OF MOTION TO COMPEL AND FOR SANCTIONS**

1    Plaintiffs' counsel has repeatedly requested that Bosch withdraw both its general

2    objections and the corresponding "[s]ubject to and without waiving" provisions; however,

3    counsel for Bosch has consistently declined to do so.  Birka-White Declaration, ¶12)  Plaintiffs

4    therefore request that the Court order Bosch's general objections overruled and the corresponding

5    conditional language withdrawn.

6                    **b.  Bosch's Unexplained References to the General Data Protection**
                          **Regulation Are Without Merit**
7

8    In its discovery responses, Bosch repeatedly asserted a general objection to any of

9    Plaintiffs' requests, instructions, or definitions potentially calling for "the production of

10   documents or information in contravention or violation of any federal, state or foreign Data

11   Protection Laws or other privacy obligations."  As examples of such laws, Bosch provided a

12   boilerplate list including banking and health insurance data protection laws and the General Data

13   Protection Regulation ("GDPR" ). Without providing further explanation, Bosch categorically

14   stated: "Bosch Solar is not producing documents in contravention or violation of any federal, state

15   or foreign Data Protection Laws or other privacy obligations." Birka-White Declaration, ¶¶ 14-

16   17)

17   In meet and confer discussions, counsel for Bosch has repeatedly returned to this

18   unexplained general objection, citing the term GDPR as a blanket excuse for not producing

19   documents.  To cite just the most recent example, Bosch's counsel acknowledged during the

20   parties' May 14 meet and confer that Bosch Solar Services GmbH ("BSSG")  had acted on behalf

21   of defendant Bosch Solar in the recall; however, when asked whether Bosch would produce

22   BSSG's documents if Plaintiffs subpoenaed them, he responded without offering any elaboration

23   that "[t]he major guiding concern is the GDPR." (Birka-White Declaration ¶ 18)

24   Despite repeatedly raising the specter of the GDPR as a wholesale excuse for its failure to

25   produce documents, Bosch has offered no explanation for any of the following:

26

27   (1)    Which documents Bosch claims the GDPR prohibits it from producing;
28   (2)    Why the GDPR prevents Bosch from producing documents that contain no
            personal identifying information;

**PLAINTIFFS' NOTICE OF MOTION TO COMPEL AND FOR SANCTIONS**

(3)     Why Bosch cannot not produce redacted versions of any documents that might contain information protected by the GDPR; or

(4)     Why the protective order executed more than seven months ago, which prohibits the disclosure of confidential information, would not provide adequate protection for any material falling within the scope of the GDPR, which is especially puzzling given that Bosch promised in its discovery responses to produce numerous categories of documents once a confidentiality order was in place.

Nor has Bosch offered an explanation of why its repeated citation of the GDPR should exempt it from the obligations imposed on other litigants in United States courts to comply with the United States Supreme Court's rejection of blanket refusals to produce documents that might come into conflict with European data protection laws. *See Societe Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 544 n.29 (1987) ("It is well settled that such statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute. . . . It is clear that American courts are not required to adhere blindly to the directives of such a statute.").

Applying the test set forth in *Aérospatiale* for resolution of potential conflicts between domestic discovery obligations and foreign law, this Court has rejected claims that the GDPR justifies withholding information that includes personal data, even when asserted far more narrowly than Bosch's wholesale GDPR objection to producing anything at all. *See Finjan, Inc. v. Zscaler, Inc.*, No. 17-cv-06946, 2019 WL 618554 (N.D. Cal. Feb. 14, 2019); *accord Accessdata Corp. v. ALSTE Tech. GMBH*, No. 2:08 CV 569 (D. Utah 2010) (*Aérospatiale* test supported application of the FRCP, rendering conflicting German privacy laws irrelevant). To the extent that Bosch does offer a potentially valid substantive argument in support of its GDPR excuse for nonproduction, Plaintiffs request an opportunity to brief this issue more thoroughly for the Court, in accordance with the test applied in *Aerospatiale* and related cases.

### c.  Bosch's Disingenuous Assertion of Absence of Control Should Not Excuse Its Obligation to Produce Documents from Entities Acting on Its Behalf

Similarly unavailing is Bosch's reliance on the argument that it is so lacking in control

**PLAINTIFFS' NOTICE OF MOTION TO COMPEL AND FOR SANCTIONS**

1    over every entity that possesses responsive documents that it is unable to demand that a single

2    document be produced in response to Plaintiffs' requests. Bosch initially responded to virtually

3    every one of Plaintiffs' document requests with the assertion that it would not even search for

4    responsive documents that were not in its possession, custody, or control. Bosch's counsel has

5    repeatedly recited the same objection as a blanket excuse for Bosch's failure to produce,

6    maintaining that Bosch has no legal right to require that other Bosch entities produce documents,

7    even where such entities have been acting on its behalf in connection with the handling of recall

8    or warranty claims. In the joint letter brief, Bosch asserts that it has no legal right to demand

9    documents from "an indirect corporate affiliate of Bosch Solar located in Germany," which

10   "Bosch Solar does not own or control." Without possessing this right, Bosch concludes, it "cannot

11   be compelled"—by Plaintiffs or the Court—"to produce such documents." (ECF 98) Documents

12   produced by Baker Electric in response to Plaintiffs' subpoena reveal that this unnamed indirect

13   corporate affiliate is Bosch Solar Services GmbH, a company that acted "on behalf of Bosch

14   Solar Energy Corporation" in connection with the recall, and which is identified in a 2017 recall-

15   related letter sent to the CPSC as the company to which Bosch assigned all customer guarantee

16   and warranty services." (Birka-White Declaration ¶ 32)  Yet despite this close affiliation between

17   these two companies and the acknowledgment that BSSG has been acting on Bosch's behalf,

18   Bosch steadfastly continues to maintain that it lacks a sufficient relationship with BSSG to obtain

19   its responsive documents for production to Plaintiffs.

20         Bosch attempts to draw support for the position that it "must produce only documents in

21   its control, which does not include indirect corporate affiliates," from the Ninth Circuit's decision

22   in *In re Citric Acid Litigation*, 191 F.3d 1090 (9th Cir. 1999). Yet this case is easily

23   distinguishable because the Court was examining the relationship between two autonomous firms

24   that were members of the same worldwide organization, which shared nothing more than a name.

25   *See id.* at 1106. By contrast, what Plaintiffs have independently been able to learn about the

26   relationship between Bosch and BSSG belies Bosch's position that it lacks sufficient control to be

27   required to produce BSSG's responsive documents. *See St. Jude Med. S.C., Inc. v. Janssen-*

28   *Counotte*, 305 F.R.D. 630, 638 (D. Or. 2015) ("The control analysis for Rule 34 purposes does

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 16 -

Case No. 5:18-cv-5841BLF

PLAINTIFFS' NOTICE OF MOTION TO COMPEL AND FOR SANCTIONS

1  not require the party to have actual managerial power over the foreign corporation, but rather that

2  there be close coordination between them.") (citation, footnote and quotations omitted). Although

3  Bosch has not revealed the precise nature of its relationship with this other Bosch company, the

4  fact that it may lack corporate control over BSSG does not preclude a finding of control for

5  purposes of Rule 34. *See id.* ("Even documents held by a parent company have been held to be

6  within the control of a subsidiary when there is a sufficiently close nature in the actual corporate

7  relationship."); *see also Choice-Intersil Microsystems, Inc. v. Agere Sys., Inc.*, 224 F.R.D. 471,

8  472–73 (N.D. Cal. 2004) (finding access and control over documents arising from an analogous

9  relationship).

10  **4.      Sanctions Are Warranted by Bosch's Persistent Bad Faith Conduct**

11  **a.  Rule 37 Mandates that Bosch Pay Plaintiffs' Reasonable Costs and**
12  **Fees Incurred in Bringing this Motion**

13  Rule 37(a)(5)(A) provides that, when a motion to compel discovery is filed, "[i]f the

14  motion is granted—or if the requested discovery is provided after the motion was filed—the court

15  must, after giving an opportunity to be heard, require the party or deponent whose conduct

16  necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's

17  reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P.

18  37(a)(5)(A). Rule 37 provides for only three possible exceptions to this requirement:

19  (i) the movant filed the motion before attempting in good faith to obtain the discovery
20  without court action;
21  (ii) the opposing party's response or objection was substantially justified; or
     (iii) other circumstances make an award of expenses unjust.

22  Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).
23

24  None of these exceptions applies in this case. Prior to filing this motion, Plaintiffs made

25  numerous good faith attempts to obtain Bosch's discovery without court action.  (Birka-White

26  Declaration, ¶¶ 10, 66)  Furthermore, as thoroughly argued herein, Bosch's many attempts to

27  evade its discovery obligations were not substantially justified. Nor do any circumstances exist

28  that would make an award of expenses unjust, particularly in light of the prejudice to Plaintiffs

**PLAINTIFFS' NOTICE OF MOTION TO COMPEL AND FOR SANCTIONS**

1   resulting from Bosch's behavior. Because Bosch has yet to produce any documents or to provide

2   substantive responses to Plaintiffs' interrogatories—and has not even produced the amended

3   responses to several of Plaintiffs' interrogatories that Bosch's counsel promised would be

4   produced by May 15–the Court should require Bosch and/or its counsel to pay Plaintiffs'

5   reasonable expenses incurred in making this motion, including attorney's fees, as provided by

6   Fed. R. Civ. P. 37(a)(5)(A). To this end, Plaintiffs' counsel has submitted evidence of the fees

7   and costs incurred solely as a result of the preparation of the instant motion. (Birka-White

8   Declaration ¶¶ 67-86)

9
10                  **b.  The Court Should Find that Bosch Has Waived Its Privilege
                        Objections Due to Untimely and Inadequate Information**

11
12          Rule 34(b) requires that a party seeking to object to a document request on the ground of

13   privilege "must respond within thirty days after service of the request; if any request is objected

14   to, the reason for the objection must be stated." Fed. R. Civ. P. 34(b); *see also Loop AI Labs Inc*

15   *v. Gatti*, No. 15-cv-00798, 2016 WL 3001158, at *2 (N.D. Cal. May 25, 2016) (quotation and

16   citation omitted). "The 30-day deadline is the default deadline, unless a Court orders otherwise."

17   *Id*. Rule 26(b)(5) imposes an additional requirement that a party withholding information under a

18   claim of privilege must "(i) expressly make the claim; and (ii) describe the nature of the

19   documents, communications, or tangible things not produced or disclosed in a manner that,

20   without revealing information itself privileged or protected, will enable the parties to assess the

21   claim." *Porter v. City and County of San Francisco*, No. 16-cv-03771, 2018 WL 4215602, at *5

22   (N.D. Cal. Sept. 5, 2018) (citing Fed. R. Civ. Proc. 26(b)(5)). By contrast, "[b]oilerplate

23   assertions of privilege do not satisfy this requirement." *Id*. (citing *Burlington N. & Santa Fe Ry.*

24   *Co. v. U.S. Dist. Court*, 408 F.3d 1142, 1148-49 (9th Cir. 2005)). This requirement is ordinarily

25   met by production of a privilege log, which must specify not only (a) the privilege asserted, but

26   also "(b) the nature of the document, (c) all persons or entities shown on the document to have

27   received or sent the document, (d) all persons or entities known to have been furnished the

28   document or informed of its substance, and (e) the date the document was generated, prepared, or

- 18 -                                          Case No. 5:18-cv-5841BLF
**PLAINTIFFS' NOTICE OF MOTION TO COMPEL AND FOR SANCTIONS**

1   dated." *Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 237 (N.D. Cal. 2015). "The party

2   asserting the attorney-client privilege has the burden of proving that the privilege applies to a

3   given set of documents or communication." *Khasin v. Hershey Company*, No. 5:12–cv–01862,

4   2014 WL 690278, at *2 (N.D. Cal. Feb. 21, 2014).

5           Bosch cannot possibly meet this burden, because it has failed to produce the

6   required information to support its privilege objections for more than nine months since it was

7   served with Plaintiffs' document requests, not only within the default 30-day deadline, but now

8   more than nine months past the date when the 30-day clock began to run. In such circumstances,

9   courts have repeatedly sanctioned litigants far less uncooperative than Bosch has been, by finding

10  that they have waived any privilege objections. In *Burlington Northern & Santa Fe Railway v.*

11  *U.S. District Court*, for instance, the leading Ninth Circuit case on this form of sanction, the Court

12  upheld the Magistrate and District Judges' findings that the privilege objection had been waived

13  by a sophisticated corporate litigant, like Bosch, which in that case had *actually produced* an

14  untimely privilege log, a mere *five* months past the 30-day deadline. *See Burlington Northern &*

15  *Santa Fe Ry. Co. v. U.S. Dist. Court*, 408 F.3d 1142, 1149–50 (9th Cir. 2005). Rather than

16  establishing a bright-line rule that failure to produce a privilege log within 30 days necessarily

17  constitutes a waiver of the privilege objection, the *Burlington* Court held that the 30-day period

18  should serve "as a default guideline," but left open the possibility of an exception in cases where

19  mitigating factors exist.

20          The *Burlington* Court identified four factors to be considered in determining whether the

21  objection has been waived by failure to produce a timely privilege log: (1) "the degree to which

22  the objection or assertion of privilege enables the litigant seeking discovery and the court to

23  evaluate whether each of the withheld documents is privileged"; (2) "the timeliness of the

24  objection and accompanying information about the withheld documents"; (3) "the magnitude of

25  the document production"; and (4) "other particular circumstances of the litigation that make

26  responding to discovery unusually easy ... or unusually hard." *Id*. at 1149. The *Burlington* Court

27  also added the instruction that "[t]hese factors should be applied in the context of a holistic

28  reasonableness analysis, intended to forestall needless waste of time and resources, as well as

**PLAINTIFFS' NOTICE OF MOTION TO COMPEL AND FOR SANCTIONS**

1   tactical manipulation of the rules and the discovery process." *Id.* Finally, courts are to apply

2   these factors subject to "applicable local rules, agreements or stipulations among the litigants, and

3   discovery or protective orders." *Id.*

4          None of these four factors weighs in Bosch's favor.  Given the complete nonexistence of a

5   privilege log, Bosch's boilerplate privilege objections leave Plaintiffs and the Court with *no*

6   possibility of evaluating whether any of the withheld documents is privileged. Second, the fact

7   that none of the information required to accompany the objection has been produced, more than

8   nine months after the 30-day time period began to run, means that the timeliness factor weighs

9   strongly in Plaintiffs' favor. Third, because Bosch has yet to produce even one document, the

10  magnitude of the production is, like Bosch's privilege log, currently nonexistent. With respect to

11  the fourth factor, as discussed above, Bosch's unsupported claims regarding impediments to

12  production, such as the GDPR or issues of control, appear to be more spurious than real. Taking

13  into account the protective order signed by the parties more than seven months ago adds more

14  support to this conclusion. The overarching purpose specified by the Ninth Circuit of preventing

15  "tactical manipulation of the rules and the discovery process" also weighs strongly in Plaintiffs'

16  favor when considered in the context of Bosch's systematic evasion of its discovery obligations.

17         Application of the *Burlington* analysis suggests that the Court would be amply justified in

18  finding that Bosch has waived its privilege objections.  "Although waiver is a harsh sanction,

19  courts have not hesitated to find waiver where a party repeatedly engages in inexcusable or

20  unjustifiable conduct." *Porter*, 2018 WL 4215602, at *6 (finding waiver warranted by

21  defendant's "prior actions in this case which render the current circumstances inexcusable"); *see

22  also Loop AI Labs Inc. v. Gatti*, No. 15-cv-00798, 2016 WL 2908415, at *3 (N.D. Cal. May 13,

23  2016) ("Applying the *Burlington* factors 'in the context of a holistic reasonableness analysis,' the

24  court concludes that Plaintiff has waived any privilege or protection it has belatedly asserted in its

25  April 2016 privilege log based on the log's untimeliness and deficiencies.") (quoting *Burlington*,

26  408 F.3d at 1149).

27

28

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 20 -                                           Case No. 5:18-cv-5841BLF
**PLAINTIFFS' NOTICE OF MOTION TO COMPEL AND FOR SANCTIONS**

1

### D.    CONCLUSION

2

Plaintiff respectfully requests that this Motion be granted and that sanctions be imposed.

3

DATED:  May 20, 2020                           BIRKA-WHITE LAW OFFICES

4

5                                                        By:/s/ David M. Birka-White
                                                         DAVID M. BIRKA-WHITE

6

7                                                        David M. Birka-White (State Bar No. 85721)
                                                         dbw@birka-white.com
8                                                        Steven T. Knuppel (State Bar No. 164710)
                                                         sknuppel@birka-white.com
9                                                        BIRKA-WHITE LAW OFFICES
                                                         178 E. Prospect Avenue
10                                                       Danville, CA 94526
                                                         Telephone: (925) 362-9999
11

12                                                       John D. Green (State Bar No. 121498)
                                                         jgreen@fbm.com
13                                                       FARELLA BRAUN & MARTEL LLP
                                                         235 Montgomery Street, Suite 1700
14                                                       San Francisco, CA 94104
                                                         Telephone: (415) 954-4400
15                                                       Facsimile:  (415) 954-4480

16

17                                                       Charles E. Schaffer (State Bar No. PA76259)
                                                         cschaffer@lfsblaw.com
                                                         David C. Magagna, Jr. (State Bar No. PA 322463)
18                                                       dmagagna@lfsblaw.com
                                                         LEVIN SEDRAN & BERMAN, LLP
19                                                       510 Walnut Street, Suite 500
                                                         Philadelphia, Pennsylvania 19106
20                                                       Telephone: (215) 592 1500
                                                         Facsimile: (215) 592-4662
21

22                                                       Attorneys for Individual and Representative Plaintiffs
                                                         STEVE R. ROJAS and ANDREA N. ROJAS, on behalf
23                                                       of themselves and all others similarly situated

24

25

26

27

28