David M. Birka-White (State Bar No. 85721)
dbw@birka-white.com
Steven T. Knuppel (State Bar No. 164710)
sknuppel@birka-white.com
BIRKA-WHITE LAW OFFICES
178 E. Prospect Avenue
Danville, CA 94526
Telephone: (925) 362-9999

John D. Green (State Bar No. 121498)
jgreen@fbm.com
FARELLA BRAUN & MARTEL LLP
235 Montgomery Street, Suite 1700
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile:  (415) 954-4480

[Additional Counsel Listed on Signature Page]

Attorneys for Individual and Representative
Plaintiffs STEVE R. ROJAS and ANDREA N. ROJAS,
on behalf of themselves and all others similarly situated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE R. ROJAS and ANDREA N. ROJAS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BOSCH SOLAR ENERGY CORPORATION; and DOES 1-20, inclusive,<br><br>Defendants. | Case No.  5:18-cv-5841BLF<br><br>**PLAINTIFFS' REPLY TO BOSCH SOLAR ENERGY CORPORATION'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTIONS**<br><br>DATE:         June 3, 2020 (Via Zoom)<br>TIME:         2:00 p.m.<br>LOCATION: San Jose Federal Courthouse<br>                    280 South First Street<br>                    Courtroom 5, 4th FL<br>                    San Jose, CA  95113<br><br>Trial Date:         April 11, 2022<br><br>The Honorable Judge Beth Labson Freeman<br>Magistrate Judge Nathanael M. Cousins |

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

Case No. 5:18-cv-5841BLF
**PLAINTIFFS' REPLY TO BOSCH SOLAR ENERGY CORPORATION'S RESPONSE
IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTION**

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION ................................................................................................................. 1

II.  PRELIMINARY STATEMENT ......................................................................................... 1
    A.   Bosch has an independent, affirmative duty to preserve the panels as evidence .............. 3
    B.   The destruction of the 12,000 panels constitutes spoliation of evidence .......................... 4

III. LEGAL ARGUMENT .......................................................................................................... 6
    A.   Bosch's Proportionality and Burden Arguments Are Red Herrings. ................................. 6
    B.   Bosch Has Been Evading Its Responsibilities Under Rule 34 for Almost a year ............. 8
        1.   Bosch Must Produce Responsive Documents in Its Possession or Its Counsel's Possession ............................................................................................................ 8
        2.   Bosch Must Produce Responsive Documents Held by Entities Acting as Its Agents with Respect to the Subject Matter of this Case ....................................... 9
        3.   Bosch Cannot Hide Behind Lack of Legal Control to Avoid Explaining Itself to the Court ............................................................................................................. 11
    C.   Bosch's Conduct Warrants Ordinary and Extraordinary Discovery Sanctions .............. 13

IV.  CONCLUSION ................................................................................................................... 15

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

*Al Otro Lado, Inc. v. Nielsen*, 328 F.R.D. 408, (S.D. Cal. 2018) ................................................. 7

*Allen v. Woodford*, No. CVF051104, 2007 WL 309945, at *2 (E.D. Cal. Jan. 30, 2007) ........................................................................................................................................ 11

*Bodum*. See *M.G. v. Bodum USA, Inc.*, No. 19-cv-01069-JCS, 2020 WL 1667410 (N.D. Cal. Apr. 3, 2020) ....................................................................................................... 10

*Bullion Monarch Mining, Inc. v. Newmont USA Ltd.*, 271 F.R.D. 643, 649 (D. Nev. 2010) ........................................................................................................................... 15

*Burch v. Regents of Univ. of Cal.*, No. CV.S-04-0038, 2005 WL 6377313, at *2 (E.D. Cal. Aug. 30, 2005) .................................................................................................. 14

*Burlington Northern & 15 Santa Fe Ry. Co. v. US. Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005) ............................................................................................................ 14

*Gorrell v. Sneath*, 292 F.R.D. 629, 632 (E.D. Cal. 2013) (citing *Soto v. City of Concord*, 162 F.R.D. 603, 620 (N.D.Cal.1995) .................................................................. 9

*Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019) ................. 11

*Illumina Cambridge Ltd. v. Complete Genomics, Inc.*, No. 19-MC-80215, 2020 WL 820327, at *8 (N.D. Cal. Feb. 19, 2020) ............................................................................ 8

*In re Citimortgage, Inc., Home Affordable Modification Program Litig.*, No. MDL 11-2274, 2012 WL 10450139, at *4-*5 (C.D. Cal. June 7, 2012) ...................................... 13

*In re Citric Acid Litig.*, 191 F.3d 1090, 1106 (9th Cir. 1999) ....................................................... 9

*Meeks v. Parsons*, No. 1:03–cv–6700, 2009 WL 3003718, at *3 (E.D. Cal. Sept. 18, 2009) ................................................................................................................. 12

*Nat'l Labor Relations Bd. v. Sanders-Clark & Co.*, No. 216CV02110, 2016 WL 2968014, at *8 (C.D. Cal. Apr. 25, 2016) ................................................................... 14, 15

*Porter v. City & Cty. of San Francisco*, No. 16-CV-03771-CW(DMR), 2018 WL 4215602, at *6 (N.D. Cal. Sept. 5, 2018) ....................................................................... 14

*Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012) ....................................................... 12

*S.E.C. v. Sells*, No. 11-CV-04941, 2013 WL 450844 (N.D. Cal. Feb. 4, 2013) ......................... 15

*Schlumberger Tech. Corp. v. Greenwich Metals, Inc.*, No. 07-2252-EFM, 2009 WL 5252644, (D. Kan. Dec. 31, 2009) ....................................................................................... 7

*Soto v. City of Concord*, 162 F.R.D. 603, 619 (N.D. Cal. 1995) ................................................. 8

*St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 104 F. Supp. 3d 1150, 1159 (D. Or. 2015) ............................................................................................................................... 9, 10

PLAINTIFFS' REPLY TO BOSCH SOLAR ENERGY CORPORATION'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTION

## I. INTRODUCTION

For over a year, Plaintiffs have sought, with virtually no progress, to inspect all stored Bosch Solar Energy Corporation ("Bosch") solar panels that have been or are in the process of being "deinstalled," and to obtain documents and information relevant to class certification and trial. Bosch's resistance to those efforts have been multilayered, deceptive and insidious, thereby depriving Plaintiffs of valuable information and knowledge of key Bosch affiliates who we now learn, have been assigned the task, likely by contract, to facilitate the recall and warranty claims of Defendant Bosch. Notwithstanding the formal discovery served on Bosch over ten months ago, not a single document was served on Plaintiffs until after the filing of this motion, (94 documents), shrouded behind indecipherable objections, and virtually no substantive interrogatory responses were served until May 20, 2020, the day the Court ordered this motion to be filed. (ECF 99). To date, although Plaintiffs' formal Request to Inspect was served on July 22, 2019, Plaintiffs have been generally allocated a grand total of two hours to photograph 24 panels, and only then after Plaintiffs' consultant was dispatched to Hawaii, over Bosch's objection, after learning that Bosch was destroying panels and conducting "deinstallations" without adequate notice for Plaintiffs to attend.

## II. PRELIMINARY STATEMENT

Plaintiffs' demands to inspect the stored panels has remained consistent throughout the case. Plaintiffs' proposal is simple and the offer stands: allow Plaintiffs to inspect the panels and establish a testing protocol and methodology for selection of a random sample *after* which the panels can be *immediately* destroyed.

As a condition to inspection of the panels, Bosch has steadfastly insisted that Plaintiffs agree to an unworkable "protective order," a requirement found nowhere in Rule 34, and then misleadingly argues that this approach was blessed by Judge Freeman. What Judge Freeman actually said was: "So we just need a schedule for whatever testing the plaintiffs want to do on these panels so that you can then destroy them... but I really need the two of you to sit down and talk about what needs to happen. You need to sit down with your expert to find out what your expert needs to do and what time frame. And then I'm going to leave it to the two of you to work

- 1 -   Case No. 5:18-cv-5841BLF

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

**PLAINTIFFS' REPLY TO BOSCH SOLAR ENERGY CORPORATION'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTION**

out a schedule. But yes, it's not going to be throughout the life of the case." Nothing about a "protective order" was mentioned. Plaintiffs have faced intractable resistance from Bosch to even begin inspections, much less allow the experts to work out a testing protocol as Judge Freeman instructed. Plaintiffs demand to inspect applied simply to panels that are presently stored and those that will soon be "deinstalled," and not, as Bosch insists, to store *all* 28,000 panels. Similarly, Plaintiffs have never expected or requested Bosch to store all 28,000 panels, *indefinitely*. Both arguments are out of context and absurd, but more to the point — evasive and disingenuous.

Bosch "cries wolf" in page after page of opposition asserting that Plaintiffs have made "unreasonable" demands and unfairly caused Bosch to suffer disproportionate "costs" and "inconvenience" for storing panels. This argument is belied by Bosch's own belated admissions. Scarcely 600 of the 28,000 recalled panels are now in storage, approximately 500 in Hawaii with Bosch's solar contractor, RevoluSun, and 100 at Bosch's facility in Arkansas, likely at minimal cost and in less space than a two car garage. Nothing in the Opposition addresses any expenses associated with the currently stored panels, a cost that Bosch insists be illegitimately transferred to Plaintiffs.

Furthermore, Bosch attempts to subordinate the authority of this Court to its "Corrective Action Plan, ("CAP") Bosch's deal with the Consumer Product Safety Commission, to thereby circumvent its duty to preserve the panels. The relevant portion of the CAP, addressing disposal of the panels, in fact, gives Bosch full authority, without CPSC oversight, to destroy, recycle and store the removed panels as it sees fit. (ECF 102. Ex. A) Notably, Bosch submits no evidence to the contrary.

The authority to order inspection of the panels is not the CPSC – and the CPSC has never said otherwise. Bosch has every right to permit inspections and the CPSC has no right to prevent them. Indeed, while permitting Bosch to store or destroy the panels, the CPSC made one critical admonition: *Bosch was warned to preserve all evidence for future litigation.* Instead, Bosch destroyed over 10,000 panels *after* the filing of this lawsuit, while simultaneously blocking Plaintiffs' requests to inspect and test the panels. Bosch now admits in Supplemental Interrogatory Responses, served on May 20, 2020, the day this motion was filed, to the destruction of over 12,000

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 2 -                                                                           Case No. 5:18-cv-5841BLF
**PLAINTIFFS' REPLY TO BOSCH SOLAR ENERGY CORPORATION'S RESPONSE
IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTION**

of the 119 panels. See Birka-White Declaration ("DBW Decl.") thus raising the unfortunate and vivid specter of methodical spoliation of substantial evidence critical to this case.

### A.   Bosch has an independent, affirmative duty to preserve the panels as evidence

"The duty to preserve documents is triggered when a party should have known that the evidence may be relevant to future litigation… Once triggered, a litigant must preserve evidence which it knows, or would reasonably know, is relevant to the parties' claims or defenses…The duty to preserve evidence also includes an obligation to identify, locate ***and maintain***, relevant information." *Al Otro Lado, Inc. v. Nielsen*, 328 F.R.D. 408, 416 (S.D. Cal. 2018) [emphasis added; internal punctuation and citation omitted]

"While plaintiffs are required to articulate defined requests for preservation and/or production, so too must defendants take seriously their ***independent obligation to preserve*** information, and to arrive at workable preservation solutions, which ***balance the proportionality of preservation against the need for eventual production of information***. *Id.* at 418. [emphases added]. Parties are not excused from this obligation because it may be complex, because it selectively chooses to preserve information differently for its own operational purposes and the fact that it may be costly or inconvenient does not, by definition, relieve them of this obligation. *Id.* at 418, 420.

In a disturbing revelation, just discovered by Plaintiffs' counsel in CPSC documentation, on May 16, 2017, by letter to Bosch's counsel, the CPSC ordered Bosch to preserve all 119 panels as well as relevant documentation. The formal governmental litigation hold was issued under a section of the letter entitled "Continuing Obligation and duty to Preserve" the CPSC ordered the following:

> "Until this matter and any related matters are resolved, there will remain the possibility of further enforcement action, including reasonably anticipated litigation. Therefore, the Firm must abide by the continuing *legal obligation* to preserve all information, documents, electronically-stored data, and samples, now in existence or created hereafter, related to the Subject Products." (emphasis added)

(DBW Decl. ¶ 22, Ex. B)

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 3 -                                         Case No. 5:18-cv-5841BLF
**PLAINTIFFS' REPLY TO BOSCH SOLAR ENERGY CORPORATION'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTION**

B. **The destruction of the 12,000 panels constitutes spoliation of evidence**

The latest date when Bosch's duty to preserve was "triggered" is not open to debate. On May 16, 2017, before a single panel was destroyed, the United States Consumer Product Safety Commission ordered Bosch to "abide by the continuing legal obligation to preserve all information…" Worse, after this lawsuit had commenced on September 24, 2018 (ECF 1), and with full knowledge that the CPSC had alerted and cautioned Bosch of "the possibility of further enforcement action, including reasonably anticipated litigation," Bosch's Attorney, Chip Magid, on November 1, 2018, cajoled the CPSC to approve destruction of removed panels. Mr. Magid states the following:

> "Is there any way to prod your colleagues to approve recycling/destruction of the removed panels. Our contractors are waiting in patiently. Thanks!" (DBW Decl. ¶ 25, Ex D)

While the CPSC could authorize the destruction of panels *for recall purposes*, the CPSC had no authority, and never intended to relieve Bosch of its preservation obligations at least not until the CPSC was duped by Bosch into doing so.

The notice of recall was issued on April 3, 2017. The litigation hold from the CPSC was issued on May 16, 2017. The class action lawsuit was filed on September 24, 2018. (ECF 1) All the 12,000 panels were destroyed by Bosch *after* the May 16, 2017 CPSC notice to Bosch of its duty to issue a litigation hold. As a part of the recall, Bosch was required to submit monthly progress reports indicating the number of panels that had been replaced as a part of the recall. In the August, 2018 report, the last report before the lawsuit was filed, Bosch indicated that just 1708 panels had been replaced. (DBW Decl. ¶¶ 23-24, Ex C) Bosch has now admitted, *finally* that of the 12,276 panels removed, only 600 remain stored, which means, *Bosch destroyed well over 10,000 panels after the commencement of this action.*

Bosch has engaged in the spoliation of critical evidence and justifies the sanctions requested herein and will be the subject of a second motion for evidentiary preclusion.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 4 -

Case No. 5:18-cv-5841BLF

**PLAINTIFFS' REPLY TO BOSCH SOLAR ENERGY CORPORATION'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTION**

Regarding First Citizens Bank ("FCB"), Mr. Wylie admits that the proposal being negotiated called for FCB's contractor to perform the replacement of the 7,000 panels. (Wylie Decl. ¶¶ 25–26) Those negotiations had been going on for over six months without notifying Plaintiffs. The 7,000 panels are now destroyed. Mr. Wylie offers no excuse for his failure to respond to ten or more requests to provide the contact information to Plaintiffs' counsel with adequate time to negotiate access to the FCB array.

Bosch says nothing in its Opposition regarding what happened to the panels stored in California. These California panels were admittedly destroyed under Bosch's direction during the pendency of this case. As to the 100 panels which plaintiffs were recently informed are stored in Arkansas, Bosch did not offer to return those panels to California until *after* this motion was filed. (DBW Decl. ¶ 7, 20)

Finally, a revealing example of the depths of Bosch's bad faith is revealed by the documents produced in response to Plaintiffs' subpoena by Bosch's recall replacement contractor, Baker Electric—documents that Bosch asked the Court three times to prevent Plaintiffs from seeing. Baker and Bosch corresponded in May and June about 51 "bad" panels removed pursuant to the recall, which Baker was told to send to BSSG in Germany. (DBW Decl. ¶¶ 27-28) The 51 panels remained in storage at Baker's California warehouse for approximately three months without further instruction from Bosch. In the meantime, Plaintiffs served a formal discovery request on July 22, 2019, asking to inspect all panels removed pursuant to the recall, and specifying an inspection date of September 11, 2019. Plaintiffs had already offered on August 19, 2019, to transport and store all recalled panels that Bosch had stored in California, an offer to which Bosch never responded. Then suddenly, on September 5, 2019, on the eve of the September 11 Rule 34 inspection date,, BSSG sent an email to Baker with the subject line, "Urgent question about Shipment to Germany," asking "can you please let me know this morning if the panels are still at Baker in California? . . . This morning, our legal counsels ask me about the panels if they are still located at Baker, and I have to give the answer very quickly." (DBW Decl. ¶ 29, Baker 359454) After Baker replied that the panels were still in California, Baker was informed on September 6 that the panels would be picked up the following week, once Baker indicated that they were ready

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 5 -                                                                 Case No. 5:18-cv-5841BLF

**PLAINTIFFS' REPLY TO BOSCH SOLAR ENERGY CORPORATION'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTION**

to be shipped. (DBW Decl. ¶ 29) On September 13, 2019, the 51 bad panels were transported from Baker's Escondido warehouse to Los Angeles, eventually bound for Germany. (DBW Decl. ¶ 29) The cost to Bosch of rushing these 51 bad panels out of the country at the apparent behest of their counsel was over $20,000. (DBW Decl. ¶ 31) Baker confirmed to BSSG on September 19, 2019, that "the 51 panels have been picked up and are in route." On November 19, 2019, Plaintiffs served a subpoena on Baker in connection with this case. On December 2, 2019, Bosch asked Baker to edit its invoice for this shipment to remove the designation of "Customer" from Robert Bosch Tool Corporation. (DBW Decl. ¶ 31). This email exchange was forwarded internally at Baker and flagged as a potentially important document, with the following explanation:

> These are the 51 'bad panels' (from our testing) that we removed from our San Diego jobs (10 of these 51 were shipped to us from Arizona) and we then sent to Germany for their internal analysis.
>
> ***There was a slight weird interaction about them regarding Rojas where I was advised by BOSCH to tell anyone who asked, that they had already been sent and were not in our possession. We sent them about a week later....***

(DBW ¶ 31) (emphasis added). In January 2020, Baker produced a copy of this email expressing concern over having been asked by Bosch to lie about the whereabouts of these panels during the week preceding their actual shipment to Germany in the event that someone associated with Rojas asked to see them.[1]

### III. LEGAL ARGUMENT

#### A. Bosch's Proportionality and Burden Arguments Are Red Herrings.

Bosch's argument that Plaintiffs have made a "disproportionate" demand that the panels be preserved is based upon a false premise. As set forth in the accompanying Birka-White declaration, Plaintiffs have never demanded that all panels be preserved throughout the pendency of the case.

---

[1] The Baker documents also reveal that Bosch lied to the Court in the parties' joint discovery statement, when it said, "[t]here is no mystery regarding the 51 panels previously stored by Baker. Due to a miscommunication, they were shipped by Baker to Bosch Solar's German affiliate; they were then returned to the United States and are located in Walnut Ridge, Arkansas. Plaintiffs' counsel knows this: it was disclosed during a meet-and-confer." (ECF 98) As the Baker documents show, the arrangements to covertly ship these 51 bad panels to Germany were far from an innocent miscommunication. Moreover, the first time Plaintiffs learned that the panels had been returned from Germany to Arkansas was not during a meet and confer, but on reading Bosch's portion of the joint statement to the Court.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 6 -   Case No. 5:18-cv-5841BLF

**PLAINTIFFS' REPLY TO BOSCH SOLAR ENERGY CORPORATION'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTION**

Rather, Plaintiffs demand that the removed panels be preserved until Plaintiffs are allowed to inspect them. Bosch's argument appears even more disingenuous in light of the evidence discussed above of Bosch's long-term campaign to destroy panels while this lawsuit was pending.

Furthermore, every case cited by Bosch on "proportionality" is either distinguishable or misleadingly quoted. For example, Bosch cites *Schlumberger Tech. Corp. v. Greenwich Metals, Inc.*, No. 07-2252-EFM, 2009 WL 5252644, (D. Kan. Dec. 31, 2009) for the proposition that "the duty to preserve evidence is not boundless"; however, the full quotation actually makes the opposite point:

> While the scope of the duty to preserve evidence is not boundless, at a minimum, an opportunity for inspection should be afforded a potentially responsible party before relevant evidence is destroyed. *Schlumberger,* pp. 14-15.

In fact, the *Schlumberger* court set a further hearing for consideration of the appropriate sanctions against the destroying party.

Similarly inapposite is *Al Otro Lado, Inc. v. Nielsen*, 328 F.R.D. 408, (S.D. Cal. 2018), in which the defendant U.S. Customs and Border Patrol ("CBP") **affirmatively sought a court order** to permit it to dispose of video and audio data collected on cameras with limited storage, which were designed to periodically overwrite existing data. Despite the significant burdens and costs of a process employed by CBP to retrieve data relevant to specific incidents, the *Al Otro Lado* court found that CBP "failed to adequately fulfill their affirmative preservation obligations" and largely denied CBP's request. *Id.* at 418. The *Al Otro Lado* required preservation even though the facts were much more favorable to CBP's position than the facts of this case are to Bosch's position. Yet the responding party in *Al Otro Lado* actually sought prospective permission from the court before disposing of evidence, whereas here, Bosch has taken it upon itself to destroy numerous panels with full knowledge of the litigation. Finally, in *Al Otro Lado*, the CBP was required to take affirmative and costly action to retrieve the evidence to be preserved. Here, Bosch is already gathering the panels as a part of the recall and only needs to **refrain** from taking affirmative action to destroy the evidence before inspections. If Bosch had not dragged its feet in allowing inspections, it could have avoided much of the cost of which it now complains.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 7 -   Case No. 5:18-cv-5841BLF

**PLAINTIFFS' REPLY TO BOSCH SOLAR ENERGY CORPORATION'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTION**

### B. Bosch Has Been Evading Its Responsibilities Under Rule 34 for Almost a Year

Bosch argues that it cannot be compelled to produce BSSG's responsive documents because *"there is no evidence* that Bosch Solar has the legal right to obtain documents from [BSSG]" and because *"there is no evidence* that . . . Bosch Solar US shares access" to these documents. Bosch offers a similar excuse for why production of documents from other Bosch affiliates such as Bosch Tool cannot be compelled. These arguments ignore the fact that Rule 34 does not turn exclusively on "control," but also requires production of responsive documents within Bosch's possession or custody. Furthermore, the control contemplated by Rule 34 is not confined to the narrow legal control test that Bosch borrows from the context of production obligations regarding arms'-length affiliates, but is also established by an agency relationship in which one entity acts on behalf of another, as BSSG and Bosch Tool have acted on behalf of the defendant in conducting recall- and warranty-related activities. Not only is there evidence that numerous unproduced documents are within Bosch's possession for purposes of Rule 34. Contrary to Bosch's contentions, there is also significant evidence of an agency relationship with BSSG that provides a basis for compelling production.

#### 1. Bosch Must Produce Responsive Documents in Its Possession or Its Counsel's Possession

Bosch rests its defense for failing to produce documents almost entirely on a misapplication of the Ninth Circuit's reasoning in the very different circumstances present in *In re Citric Acid Litigation,* hoping to convince the Court that, absent proof of a particular form of legal control, Bosch is free to ignore its obligations under Rule 34. This Court recently rejected an analogous argument, pointing out that the phrase *possession, custody or control* "'is in the disjunctive and only one of the numerated requirements need be met.'" *Illumina Cambridge Ltd. v. Complete Genomics, Inc.*, No. 19-MC-80215, 2020 WL 820327, at *8 (N.D. Cal. Feb. 19, 2020) (quoting *Soto v. City of Concord*, 162 F.R.D. 603, 619 (N.D. Cal. 1995) (additional quotation and citation omitted). Because legal ownership is therefore not determinative in the case of actual possession, the *Citric Acid* test "applies only when deciding whether a party has documents or information in its 'control.'" *Id*. As the *Illumina* court elaborated:

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 8 -

Case No. 5:18-cv-5841BLF

**PLAINTIFFS' REPLY TO BOSCH SOLAR ENERGY CORPORATION'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTION**

The Ninth Circuit implicitly confirmed as much in *In re Citric Acid Litig.*, writing, "[t]he documents in question are neither in the possession nor custody of C&L-US. Thus, the only question before us is whether C&L-US has 'control' over documents in the possession of [its association co-member]." 191 F.3d at 1107. In other words, it is sufficient for Respondents to have possession or custody of documents or information for Respondents to have a duty to produce them. *Id.*

Not only does Bosch now admit for the first time to possessing documents of its own, which it has offered no excuse for not producing during the past ten months. Bosch also admits to being in possession of more than 200,000 documents provided to it by Bosch Tool and possibly by BSSG. Bosch is obligated to produce any of these documents in its possession that are responsive, and whether it had a legal right to demand them is irrelevant. Furthermore, because actual possession is not required under Rule 34, Bosch can also be ordered to produce any responsive documents in the possession of its counsel. *See Gorrell v. Sneath*, 292 F.R.D. 629, 632 (E.D. Cal. 2013) (citing *Soto v. City of Concord*, 162 F.R.D. 603, 620 (N.D.Cal.1995)); *see also Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, No. 16CV06370EJDVKD, 2019 WL 428782, at *2 (N.D. Cal. Feb. 4, 2019) ("documents that happen to be in the possession of a party's counsel are generally considered within that party's possession, custody or control for purposes of discovery").

###   2.   Bosch Must Produce Responsive Documents Held by Entities Acting as Its Agents with Respect to the Subject Matter of this Case

Contrary to Bosch's depiction of the legal landscape as governed exclusively by the test applied in *Citric Acid*, the appropriate test for interpreting "possession, custody, or control" in discovery disputes depends on the particular facts at issue. In *Citric Acid*, the court looked for legal control due to the absence of more primary factors such as possession, custody, or any indicia of an agency relationship. The ability to compel production thus ultimately depended on legal control of the documents sought, precisely because there was no relationship between the U.S. firm subject to the discovery requests and the Swiss firm holding the documents, other than membership in an international association allowing them "to utilize the Coopers & Lybrand name." *In re Citric Acid Litig.*, 191 F.3d 1090, 1106 (9th Cir. 1999); *see also St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 104 F. Supp. 3d 1150, 1159 (D. Or. 2015) ("*Citric Acid* only considered 'control' in the context of a contractual relationship among entities when there was no allegation of any agency relationship").

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 9 -

Case No. 5:18-cv-5841BLF

**PLAINTIFFS' REPLY TO BOSCH SOLAR ENERGY CORPORATION'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTION**

By contrast, the control analysis need not even be reached in cases like this one, where a party seeking to avoid its discovery obligations tries to disavow an agency relationship or to pretend it has no access to documents created on its behalf. In fact, *St. Jude* denied a motion for reconsideration based on the same argument Bosch is making, explaining that:

> The Court correctly applied the Ninth Circuit's standard in *Citric Acid,* and the facts of that case are not relevantly similar to the present dispute. Indeed, it is this factual distinction that explains how this Court correctly applied the *Citric Acid* standard yet arrived at a different result. In short, *Citric Acid* involved a contractual relationship among affiliated entities and the parties' contract did not provide that one party had the right to control documents owned by the other. There was no agency relationship alleged in *Citric Acid.*

*St. Jude*, 104 F. Supp. 3d at 1157–58. In that case, the control requirement discussed in *Citric* Acid was satisfied by the agency relationship "unlike *Citric Acid,* does present the "right to control" documents owned by another (namely, the agent of the subpoenaed party) and thereby *Id.* As discussed below, the elements of an agency relationship are also present here, satisfying the control requirement underlying the Citric Acid decision without any need to look for the legal control specifically sought in that case.

Bosch attempts to distinguish *St. Jude* by implying that Judge Spero recently disapproved of it as a rogue analysis in *Bodum*. See *M.G. v. Bodum USA, Inc.*, No. 19-cv-01069-JCS, 2020 WL 1667410 (N.D. Cal. Apr. 3, 2020). But Judge Spero did not disagree with *St. Jude* on the law. *Bodum* simply turned on different facts, making it inapposite here. Judge Spero distinguished the facts in *St Jude* because, like the facts here, they differed so dramatically from the "typical relationship between a distributor subsidiary, a manufacturing subsidiary, and their parent corporation," at issue in *Bodum. Id.* at *2. What made *St Jude* different from both *Citric Acid* and *Bodum* was the very thing that also distinguishes this case: that officers of the parent corporation had acted "as the subsidiary's agent with respect to the specific subject matter of that case," by negotiating the contract that was at the heart of the case on the subsidiary's behalf, which provided "sufficient indicia of effective control to require the European affiliates . . . to conduct a reasonable and diligent search" for responsive documents and information. *Id* at *3.

Numerous courts tasked with resolving discovery disputes have found that "'[c]ontrol' may

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 10 -   Case No. 5:18-cv-5841BLF

PLAINTIFFS' REPLY TO BOSCH SOLAR ENERGY CORPORATION'S RESPONSE
IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTION

be established by the existence of a principal-agent relationship." *Allen v. Woodford*, No. CVF051104, 2007 WL 309945, at *2 (E.D. Cal. Jan. 30, 2007), modified on reconsideration, No. 1:05-CV-1104, 2007 WL 9747771 (E.D. Cal. Mar. 16, 2007); *see also Hayles v. Wheatherford*, No. 09-CV-3061, 2010 WL 4739484, at *2 (E.D. Cal. Nov. 16, 2010); *St. Jude*, 104 F. Supp. 3d at 1159 (citing cases). This is because "[a]n agent has a duty to comply with all lawful instructions received from the principal . . . concerning the agent's actions on behalf of the principal." Restatement (Third) Of Agency § 8.09 (2006); *see also id.* § 8.11 (agent's duty to use reasonable effort to provide principal with facts "material to the agent's duties to the principal"). Thus, a principal has the "legal right to obtain documents" from its agent that are material to the agent's duties. In determining whether an agency relationship exists, "it is appropriate to consider whether the parties are trying to limit or prevent liability by characterizing their relationship as something other than an agency relationship." *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019); *see also* Restatement (Third) of Agency § 1.02 (2006) ("Whether a relationship is characterized as agency in an agreement between parties in the context of industry or popular usage is not controlling.").

In this case, according to Bosch's president, BSSG "has performed a number of activities with respect to the Recall, including overseeing the Recall, delegating certain tasks to Bosch Tool, and performing tests and analyses of Model '119 panels." (ECF 107-3) BSSG has also represented to the CPSC that "Bosch Solar Energy Corporation assigned all customer guarantee and warranty services to. . . Bosch Solar Services GmbH." (ECF 102, Ex A)  Further, in letters to customers who purchased Bosch panels, BSSG defined "Bosch" as "Bosch Solar Services GmbH on behalf of Bosch Solar Energy Corporation." (DBW Decl. ¶ 58). BSSG has also entered into numerous contracts while conducting its recall and warranty work on behalf of Bosch, including contracts with multiple California Kilowatt customers in circumstances legally indistinguishable from those of Plaintiffs at the time this case was filed. On the basis of this agency relationship, the Court can compel Bosch to produce BSSG's documents.

3. **Bosch Cannot Hide Behind Lack of Legal Control to Avoid Explaining**

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 11 -

Case No. 5:18-cv-5841BLF

PLAINTIFFS' REPLY TO BOSCH SOLAR ENERGY CORPORATION'S RESPONSE
IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTION

1 **Itself to the Court**

2 Bosch falls far short of meeting the requirements routinely imposed on a party claiming not to have responsive documents to explain its search efforts "with sufficient specificity to allow the court to determine whether the party made a reasonable inquiry and exercised due diligence." *Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012). Such information is generally required in the form of declarations under oath detailing the nature of the efforts to locate responsive documents. *See Meeks v. Parsons*, No. 1:03–cv–6700, 2009 WL 3003718, at *3 (E.D. Cal. Sept. 18, 2009). Furthermore, "if there is reason to believe that a discovery response is incomplete or incorrect, the court may require a certification that the respondent has conducted a search for the information reasonably available to them through their agents, attorneys, or others subject to their control and has determined that the information requested either does not exist or that it has been produced." *Id.* (internal quotations and citation omitted).

A situation similar to that presented by the current discovery was discussed in detail in *Meeks v. Parsons*, where the court explained that without a sworn declaration detailing search efforts, the requesting party would be "unable to determine whether to search elsewhere, or whether the only existing copies were destroyed, thus making further search futile." *Id.* (internal quotations and citation omitted). Similar to Bosch, the defendant in *Meeks* claimed that "it has retained none of the requested documents" related to the litigation, and that "even if it had maintained such records, looking for them would be too expensive and burdensome." *Id.* at *4. The court found that the defendant's "declarations that a few . . . employees conducted perfunctory search of a few limited, yet undisclosed, locations" failed to satisfy its affirmative duty to seek information reasonably available from employees, agents, or others subject to its control. *Id.* Rejecting responses indicating that the requested materials were unknown or not maintained as "evasive and insufficient," the *Meeks* court determined that the defendant could demonstrate that it had made the required reasonable inquiry as follows:

> [B]y providing plaintiff with declarations under oath detailing the nature of recipient's efforts to locate responsive documents, addressing each inquiry on a request-by-request basis. Similarly, when a recipient maintains that requested documents were purged in the ordinary course of business, it should provide declarations from the officers or employees

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 12 -

Case No. 5:18-cv-5841BLF

**PLAINTIFFS' REPLY TO BOSCH SOLAR ENERGY CORPORATION'S RESPONSE
IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTION**

who carried out the purges, attesting to the documents' destruction, the dates of destruction, and authority under which the purges were carried out. A recipient's certification should include sufficient detail to demonstrate that they have conducted a search for information reasonably available to them through their agents, attorneys, or others subject to their control and have determined that the information requested either does not exist or that it has been produced.

*Id.* at *4-*5 (internal quotations and citation omitted); *see also In re Citimortgage, Inc., Home Affordable Modification Program Litig.*, No. MDL 11-2274, 2012 WL 10450139, at *4-*5 (C.D. Cal. June 7, 2012) (collecting cases demonstrating well-established rule that "the burden is on the objecting party to show grounds for failing to provide the requested discovery"). In light of Bosch's conduct during the past ten months of discovery, it would be appropriate for the Court to exercise its broad discretion to require that Bosch document its efforts under oath and provide the necessary declarations to inform Plaintiffs which requested information still exists and where it can be found.

C. **Bosch's Conduct Warrants Ordinary and Extraordinary Discovery Sanctions**

Bosch argues incorrectly that discovery sanctions are inappropriate in the absence of a finding of bad faith. Furthermore, Bosch disingenuously asserts that "[t]here plainly is no evidence of bad faith in this dispute." (ECF 107) Ordinary sanctions are clearly warranted, however, by both the fact that Bosch did not produce a single document until May 22, several; days *after* Plaintiffs' Motion to Compel was filed in accordance with the Court's order, and the fact that Bosch's production to date of a mere 94 documents does not even come close to providing the discovery requested. This in itself already satisfies Rule 37, which provides for sanctions relating to a motion to compel "if the requested discovery is provided *after the motion was filed*." Fed. R. Civ. P. 37(a)(5)(A). None of the possible exceptions to this requirement is present in this case. *See* Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii). As Plaintiffs previously argued, Plaintiffs' counsel made numerous good faith efforts to attempt to obtain discovery from Bosch with the necessity of court action. (ECF 106; ECF 98) As the entirety of this Reply makes clear, Bosch cannot demonstrate that its discovery delays and failures have been substantially justified, nor that other circumstances exist that would make an award of expenses unjust.

Because the egregiousness of Bosch's conduct goes far beyond the delays ordinarily contemplated by Rule 37, Plaintiffs also ask the Court to exercise its discretion to impose more

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 13 -   Case No. 5:18-cv-5841BLF

**PLAINTIFFS' REPLY TO BOSCH SOLAR ENERGY CORPORATION'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTION**

extreme discovery sanctions commensurate with Bosch's consistent bad faith discovery conduct, including finding that Bosch has waived its privilege objections. *See Porter v. City & Cty. of San Francisco*, No. 16-CV-03771-CW(DMR), 2018 WL 4215602, at *6 (N.D. Cal. Sept. 5, 2018) ("Although waiver is a harsh sanction, courts have not hesitated to find waiver where a party repeatedly engages in inexcusable or unjustifiable conduct."). Bosch's long delay renders any future privilege log it might produce presumptively untimely, which alone could be sufficient reason to find the objection waived absent mitigating circumstances. *See Burlington Northern & Santa Fe Ry. Co. v. US. Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005) (pointing out that "the log not only was not filed during the Rule 34 time limit, but was filed *five months* later," and that, "[i]n the absence of mitigating considerations, this fact alone would immunize the district court's [finding of waiver] from reversal"); *see also Nat'l Labor Relations Bd. v. Sanders-Clark & Co.*, No. 216CV02110, 2016 WL 2968014, at *8 (C.D. Cal. Apr. 25, 2016) ("roughly year-long delay in producing an adequate privilege log is inexcusable," so that "respondent has waived any assertion of the attorney-client privilege"); *Burch v. Regents of Univ. of Cal.*, No. CV.S-04-0038, 2005 WL 6377313, at *2 (E.D. Cal. Aug. 30, 2005) (privilege log produced after *six months* was presumptively untimely).

Furthermore, as Plaintiffs have previously argued, the four relevant factors set forth in *Burlington* weigh in favor of a finding of waiver. (ECF 106) To elaborate on Plaintiffs' earlier arguments, Bosch's boilerplate privilege objections strongly support a conclusion that the first two *Burlington* factor's weigh in Plaintiffs' favor. *See Porter*, 2018 WL 4215602, at *6 (first and second *Burlington* factors "weigh in favor of waiver" where timely objections "are boilerplate, and are therefore insufficient to assert claims of privilege or to enable a court to evaluate them," and the defendant "still has not produced a privilege log" nearly 5 months after serving its original responses) (citation omitted); *see also Burlington*, 408 F.3d at 1149 ("We hold that boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege."). The third and fourth factors also weigh in favor of waiver, due to Bosch's failure to take *any* ascertainable actions toward providing Plaintiffs with a privilege log—even in conjunction with its recent production of only 94 documents, produced

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 14 -   Case No. 5:18-cv-5841BLF

PLAINTIFFS' REPLY TO BOSCH SOLAR ENERGY CORPORATION'S RESPONSE
IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTION

subject to its originally asserted privilege objections, but without any privilege log, and its concomitant failure to take reasonable steps to prevent a waiver. *See, e.g., Bullion Monarch Mining, Inc. v. Newmont USA Ltd.*, 271 F.R.D. 643, 649 (D. Nev. 2010) (even in document-intensive case, magnitude of production factor favored waiver due to bad faith shown by absence of "any effort . . . to communicate . . . about the status of the privilege log, or to seek assistance from the court to establish a realistic time frame to produce the privilege log—either in stages or all at once"); *Porter*, 2018 WL 4215602, at *6 (rejecting argument that broad scope of RFPs made it too burdensome to provide privilege log because, "[t]o the extent that CCSF believed that the RFPs were problematic, it should have met and conferred with Plaintiff to narrow their scope without prompting from the court"). Here, although Plaintiffs have repeatedly offered to narrow the scope of their discovery requests, Bosch has consistently declined to respond with the specific information necessary for Plaintiffs to address its objections. Finally, a finding of waiver is also supported by the fact that Bosch's failure to produce a privilege log has prejudiced Plaintiffs by making it impossible to assess Bosch's claims of privilege or whether Bosch is actually properly withholding such documents. *See Nat'l Labor Relations Bd.*, 2016 WL 2968014, at *7 (finding prejudice due to *failure* to produce privilege log).

Not only have Bosch's carefully calculated discovery delays and obfuscations set Plaintiffs' case back by at least six months and cost significant time and effort to Plaintiffs' counsel and the Court. Even more seriously, Bosch's delay scheme has deliberately resulted in the destruction of much of the evidence critical to proving Plaintiffs' case. These circumstances are even worse than the situation confronted by this Court in *S.E.C. v. Sells*, No. 11-CV-04941, 2013 WL 450844 (N.D. Cal. Feb. 4, 2013) (granting motion to compel). The Court's reasoning there is even more applicable here:

> Sunshine is ordinarily the best medicine for a party that is keeping discoverable information hidden in the dark. But where, as here, one party is repeatedly withholding relevant information, stronger medicine may be required.

*Id.* at *2.

## IV.  CONCLUSION

Plaintiffs respectfully request that the Motion to Compel and for Sanctions be granted.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 15 -                                                            Case No. 5:18-cv-5841BLF

**PLAINTIFFS' REPLY TO BOSCH SOLAR ENERGY CORPORATION'S RESPONSE
IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTION**

DATED: June 1, 2020                    BIRKA-WHITE LAW OFFICES

By: /s/ *David M. Birka-White*
    DAVID M. BIRKA-WHITE

David M. Birka-White (State Bar No. 85721)
dbw@birka-white.com
Steven T. Knuppel (State Bar No. 164710)
sknuppel@birka-white.com
BIRKA-WHITE LAW OFFICES
178 E. Prospect Avenue
Danville, CA 94526
Telephone: (925) 362-9999

John D. Green (State Bar No. 121498)
jgreen@fbm.com
FARELLA BRAUN & MARTEL LLP
235 Montgomery Street, Suite 1700
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

Charles E. Schaffer (State Bar No. PA76259)
cschaffer@lfsblaw.com
David C. Magagna, Jr. (State Bar No. PA 322463)
dmagagna@lfsblaw.com
LEVIN SEDRAN & BERMAN, LLP
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106
Telephone: (215) 592 1500
Facsimile: (215) 592-4662

Attorneys for Individual and Representative Plaintiffs
STEVE R. ROJAS and ANDREA N. ROJAS, on behalf
of themselves and all others similarly situated

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 16 -

Case No. 5:18-cv-5841BLF

**PLAINTIFFS' REPLY TO BOSCH SOLAR ENERGY CORPORATION'S RESPONSE
IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTION**