1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

STEVE R. ROJAS and ANDREA N.
ROJAS, on behalf of themselves and all
others similarly situated,

            Plaintiffs,

      v.

BOSCH SOLAR ENERGY
CORPORATION,

            Defendant.

Case No.  18-cv-05841-BLF

**ORDER GRANTING IN PART
AND DENYING IN PART
PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION**

[Re:  ECF 165]

In this putative consumer class action, Plaintiffs Steve and Andrea Rojas ("Plaintiffs")
claim that certain solar panels manufactured by Defendant Bosch Solar Energy Corporation
("Defendant" or "Bosch") are defective and do not generate the amount of power promised.
Specifically, Plaintiffs allege that excessive heat generated at the panels' solder joints creates a fire
hazard; delamination causes peeling and cracking of the panels' protective back sheets; and the
panels' power output degrades too much over time.  Based on these allegations, Plaintiffs assert
claims for breach of warranty and unjust enrichment against Bosch.  They seek certification of a
nationwide class and a California subclass of persons and entities who are consumers, final
customers, end users, subsequent buyers, and subsequent owners of Bosch's model number c-Si M
60 NA30119 solar panels.

Bosch does not dispute the existence of defects in their c-Si M 60 NA30119 solar panels
("119 Panels"), also referred to as solar modules.  However, Bosch argues that a class action is

1   unnecessary in light of Bosch's voluntary recall of its 119 Panels.  Bosch also argues that

2   certification of a nationwide class would be contrary to the Court's prior ruling that Plaintiffs lack

3   standing to assert claims on behalf of residents of states other than California.  Finally, Bosch

4   argues that Plaintiffs have not satisfied the requirements of Federal Rule of Civil Procedure 23 for

5   certification of any class.

6          For the reasons discussed below, Plaintiffs' motion for class certification is GRANTED IN

7   PART AND DENIED IN PART.

8   **I.     BACKGROUND**

9          *Bosch's 119 Panels*

10         Bosch's 119 Panels were manufactured in Korea and shipped to the United States in 2011

11  and 2012.  *See* Report dated 11/3/2016 at 2-5, Birka-White Decl. Exh. K, ECF 166-11.

12  Approximately 44,500 of the 119 Panels were manufactured in all.  *See id.* at 5.  They were sold

13  exclusively to dealers and installers, who installed them primarily in the United States.  *See id*. at

14  5-6.  Bosch estimates that 27,250 units were installed on rooftops in the United States, 200 were

15  installed on rooftops in Canada, 15,850 were ground-mounted in the United States, and the

16  remainder were left in a Bosch warehouse.  *Id*. at 5.  Bosch has exited the solar panel business in

17  the United States.  *See id*.

18         Bosch provides a "Limited Warranty" for its 119 Panels, covering both material and

19  workmanship ("Product Warranty") and loss of performance ("Performance Warranty").  *See*

20  Limited Warranty, Birka-White Decl. Exh. P, ECF 166-16.  The Product Warranty guarantees that

21  the 119 Panels are free of defects in material and workmanship for a period of ten years from the

22  date of delivery.  *See id*. ¶ A.  The Performance Warranty guarantees that the 119 Panels will

23  deliver specified amount of power for a period of twenty-five years.  *See id.* ¶ B.

24         *Installation of 119 Panels on Plaintiffs' Property*

25         In 2012, Plaintiffs Steve and Andrea Rojas began considering a solar panel installation at

26  their home in Moreno Valley, California.  *See* Steve Rojas Decl. ¶¶ 5-7, ECF 167.  They met with

27  a representative of a solar installment company, Sullivan Electric ("Sullivan"), at their home on

28  October 23, 2012.  *See id*.  Later that month, Plaintiffs entered into a Prepaid Solar Power

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Agreement with Kilowatt Systems, LLC ("Kilowatt"), under which Plaintiffs acquired the use of

2  42 Bosch panels installed on their property by Sullivan.  *See* Steve Rojas Decl. ¶¶ 8-12; Prepaid

3  Solar Power Agmt, Mueller Decl. Exh. A, ECF 189-6.  Sullivan installed 42 119 Panels on

4  Plaintiffs' property in a ground array, and Kilowatt retained ownership of the panels.  *See* Steve

5  Rojas Decl. ¶ 9; Prepaid Solar Power Agmt.  The cost to Plaintiffs was approximately $25,000.

6  *See* Steve Rojas Decl. ¶ 11; Prepaid Solar Power Agmt.

7  *Bosch's Recall of Roof-Mounted 119 Panels*

8  In November 2016, Bosch submitted a report to the U.S. Consumer Product Safety

9  Commission, advising that its 119 Panels posed a possible fire hazard due to overheating at the

10  solder joints.  *See* Report dated 11/3/2016, Birka-White Decl. Exh. K, ECF 166-11.  The report

11  described Bosch's proposed corrective action plan, which included instructing

12  distributers/installers not to ship or install 119 Panels; replacing all roof-mounted 119 Panels; and

13  monitoring all ground-mounted 119 Panels for signs of solder degradation.  *See id.* at 7-8.  Bosch

14  explained the difference in approach with respect to roof-mounted and ground-mounted panels as

15  follows:  "This program differs from the rooftop-mounted replacement program because the risk

16  of injury from a ground-mounted module is low (there is no building to be ignited, and people do

17  not live or work beneath the ground-mounted panels, which are used exclusively as part of

18  commercial solar energy farms) and because only a fraction of the modules are expected to

19  experience any solder degradation."  *Id.* at 8.

20  On April 13, 2017, Bosch voluntarily recalled all roof-mounted 119 Panels due to the

21  solder defect and potential fire hazard.  *See* Recall Summary, Birka-White Decl. Exh. X, ECF 166-

22  24.  An estimated 28,000 roof-mounted panels were subject to the recall.  *See id.*  The U.S.

23  Consumer Product Safety Commission accepted Bosch's proposed corrective action plan as

24  adequate.  See CPSC Letter dated 5/16/2017, Birka-White Decl. Exh. L, ECF 166-12.  As noted

25  above, that plan required notice of the recall to distributers/installers, but not to homeowners or

26  other end users.  *See id.*

27  *Plaintiffs' Attempts to Participate in the Recall*

28  Plaintiffs did not receive notification of the recall from Bosch.  *See* Steve Rojas Decl. ¶ 14.

3

They learned of the recall from putative class counsel David M. Birka-White in September 2017. *See id.* ¶ 15.  Mr. Birka-White advised Plaintiffs that he was investigating a potential lawsuit against Bosch and had gotten Plaintiffs' name from Sullivan.  *See id.*  Plaintiffs called Sullivan, the company that had installed the solar panels on Plaintiffs' property, but Sullivan had not been informed of the recall.  *See id.* ¶ 20.  Sullivan reached out to Kilowatt, the company from which Plaintiffs purchased solar power, but Kilowatt did not know of the recall either.  *See id.* ¶ 21.

Plaintiffs then contacted Bosch, which agreed to replace the solar panels on Plaintiffs' property even though the panels were ground-mounted.  *See* Steve Rojas Decl. ¶¶ 25-30. However, months passed without any action by Bosch.  *See id.* ¶¶ 31-33.  On May 31, 2018, Plaintiffs were contacted by a company called Baker Electric Solar to schedule an inspection of their property prior to replacement of the solar panels.  *See id.* ¶ 34.  The inspection occurred on June 6, 2018.  *See id.* ¶ 35.  After the inspection, another four months passed without action.  *See id.* ¶ 36.  On August 31, 2018, Plaintiffs received an email from Bosch stating that the panels on their property were owned by a third party, and that a qualified installer would contact them about replacement.  *See id.* ¶ 37.  Plaintiffs previously had informed Bosch that the panels on their property were owned by a third party.  *See id.*  Plaintiffs felt that Bosch was simply stalling on replacing the panels.  *See id*.

*Present Lawsuit*

Plaintiffs contacted Mr. Birka-White in September 2018 and requested representation.  *See* Steve Rojas Decl. ¶ 38.  That same month, Plaintiffs filed the present suit against Bosch and filed a separate suit against Kilowatt.  *See id.* ¶ 48.  Plaintiffs settled the action against Kilowatt in October 2018 in return for title to the 119 Panels on their property.  *See id.* ¶ 49.  Since being made aware of potential issues with the 119 Panels, Plaintiffs have noticed that the back sheets of their solar panels are cracked.  *See id.* ¶ 54.  Plaintiffs also have noticed a 50% reduction in the power output of their solar panels.  *See id.* ¶ 52.  Almost a year into this litigation, Bosch offered to replace Plaintiffs' solar panels.  *See id.* ¶ 39.  Plaintiffs declined on the grounds that the offer was "too little too late," and would impair their ability to act as class representatives in the present suit.  *See id.* ¶ 40.

4

United States District Court
Northern District of California

1    The operative pleading is the second amended complaint ("SAC"), which asserts claims

2    under the laws of California, Arizona, Hawaii, Missouri, and North Carolina on behalf of residents

3    of those states. *See* SAC, ECF 53.  On March 6, 2020, the Court issued an order granting in part

4    and denying in part Bosch's motion to dismiss the SAC ("Dismissal Order"). *See* Dismissal

5    Order, ECF 89.  The Court determined that Plaintiffs, who are California residents, lack standing

6    to assert claims on behalf of residents of states other than California. *See* Dismissal Order at 7.

7    Accordingly, the Court dismissed all claims asserted on behalf of residents of Arizona, Hawaii,

8    Missouri, and North Carolina. *See id*. at 28.  The Court also dismissed all claims other than Claim

9    1 for breach of warranty under state common law, Claim 2 for breach of warranty under the

10   Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2310, Claim 3 for breach of warranty

11   under state statutory law, and Claim 5 for unjust enrichment. *See id.*  Finally, the Court found

12   persuasive Bosch's argument that Plaintiffs' warranty claims are governed by Michigan law under

13   a choice of law provision contained in the Limited Warranty. *See id.* at 13.  The Court determined

14   that Plaintiffs' unjust enrichment claim is governed by California law. *See id.*  Bosch filed an

15   answer to the SAC on April 17, 2020. *See* Answer, ECF 96.

16   Plaintiffs now seek class certification with respect to the warranty and unjust enrichment

17   claims remaining in the SAC.  However, rather than seeking certification of a California class,

18   Plaintiffs seek to amend their class definition to encompass a nationwide class on the warranty

19   claims and a California subclass on the unjust enrichment claim. *See* Prop. Order, ECF 171.

20   **II.   LEGAL STANDARD**

21   Federal Rule of Civil Procedure 23 governs class certification.  "The party seeking class

22   certification has the burden of affirmatively demonstrating that the class meets the requirements of

23   [Rule 23]." *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1066 (9th Cir. 2021) (internal quotation

24   marks and citation omitted).  "As a threshold matter, a class must first meet the four requirements

25   of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of

26   representation." *Id*.  "In addition to Rule 23(a)'s requirements, the class must meet the

27   requirements of at least one of the three different types of classes set forth in Rule 23(b)." *Id*.

28   (internal quotation marks and citation omitted).

United States District Court
Northern District of California

III.   **DISCUSSION**

Plaintiffs seek certification of a nationwide class on the warranty claims and a California subclass on the unjust enrichment claim, defined as follows:

> All persons or entities in the United States who are the consumers, final customers, end users, subsequent buyers, and subsequent owners of Bosch solar panels module number NA30119, on breach of warranty claims.

> All persons or entities in the State of California who are the consumers, final customers, end users, subsequent buyers, and subsequent owners of Bosch solar panels module number NA30119, on unjust enrichment claims.

Prop. Order, ECF 171.  Plaintiffs acknowledge that the SAC does not allege a nationwide class, and they request leave to amend their class definition to encompass a nationwide class and a California subclass.  In the alternative, Plaintiffs seek certification of a five-state class consisting of California, Arizona, Hawaii, Missouri, and North Carolina.  Plaintiffs argue that that the Rule 23 requirements are satisfied with respect to the proposed nationwide class and California subclass or, alternatively, a five-state class.

In opposition, Bosch objects to Plaintiffs' proposed amendment of the class definition as a blatant end-run around the Court's Dismissal Order.  Bosch contends that the proposed amendment would prejudice it and derail the case schedule.  Bosch also contends that the Rule 23 requirements are not satisfied with respect to any class.

The Court first addresses Plaintiffs' request to amend the class definition.  Next, the Court summarizes evidentiary rulings it previously issued with respect to evidence submitted with Plaintiffs' reply in support of their motion for class certification.  The Court then turns to the Rule 23 requirements.

A.        **Plaintiffs' Request to Amend the Class Definition**

Some district courts have found it appropriate to allow amendment of the class definition at the certification stage where "the proposed modifications are minor, require no additional discovery, and cause no prejudice to defendants."  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 591 (N.D. Cal. 2010).  However, amendment is inappropriate where the plaintiffs seek to certify "a completely different class" from that alleged in the complaint, particularly where the defendant would be prejudiced and additional discovery would be required.  *See Davis v.*

6

*AT&T Corp.*, No. 15cv2342-DMS (DHB), 2017 WL 1155350, at *4 (S.D. Cal. Mar. 28, 2017).

In the present case, the Court has no difficulty concluding that the requested amendment goes far beyond allowable "minor" modifications to the class definition.  Plaintiffs propose to expand the California class contemplated by the Dismissal Order to a nationwide class with a California subclass or, alternatively, to the very five-state class the Court expressly rejected in the Dismissal Order.  Plaintiffs have not cited, and the Court has not discovered, any authority permitting such a major amendment to the class definition at the certification stage.

Plaintiffs assert that a nationwide class on the warranty claims would be consistent with the Court's ruling that all warranty claims are subject to Michigan law.  *See* Dismissal Order at 13.  Plaintiffs argue that if all warranty claims are governed by Michigan law, Plaintiffs' individual standing to sue on the Limited Warranty gives them standing to represent anyone in the country suing on the same Limited Warranty.  While that argument may have merit, a motion for class certification is not the appropriate vehicle for it.

Plaintiffs' request to amend the class definition to encompass a nationwide class, or alternatively a five-state class, is DENIED.  The Court will consider Plaintiffs' motion for class certification only with respect to a California class.  This ruling is without prejudice to a properly noticed motion for leave to amend the class definition.

### B.   Ruling on Bosch's Objections to Reply Evidence

After Plaintiffs filed their reply in support of their motion for class certification, Bosch filed an objection to certain reply evidence.  *See* Def.'s Obj., ECF 197.  The Court ruled on Bosch's objection in a separate order issued on November 23, 2021.  *See* Order Sustaining Objection, ECF 204.  The Court summarizes its ruling here to make clear what evidence it has and has not considered in addressing Plaintiffs' class certification motion.

Bosch objected to three pieces of reply evidence: (1) the affidavit of Plaintiffs' notice expert, Todd B. Hilsee, ECF 196-12; (2) Paragraphs 2-10 and Exhibits A and D to the supplemental declaration of David M. Birka-White, ECF 196-1, 196-2, 196-5; and (3) the reply declaration of Michael V. Garcia, ECF 196-13.  The Court SUSTAINED Bosch's objection in its entirety.  *See* Order Sustaining Objection at 3.  Mr. Hilsee has not previously been disclosed as an

1    expert in this case and now offers expert opinion on a key issue, the adequacy of Bosch's recall of

2    the 119 Panels.  *See id.* at 1-2.  The identified portions of Mr. Birka-White's supplemental

3    declaration and Mr. Garcia's reply declaration contain new factual matter on the issue of damages.

4    *See id.* at 2.  Accordingly, the Court has not considered Mr. Hilsee's affidavit or the identified

5    declaration evidence submitted by Mr. Birka-White and Mr. Garcia.

6    **C.    Rule 23(a) Requirements**

7    **1.    Numerosity**

8    Rule 23(a)(1) requires that the size of the proposed class be "so numerous that joinder of

9    all the class members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "No exact numerical cut-off is

10   required; rather, the specific facts of each case must be considered."  *Litty v. Merrill Lynch & Co.*,

11   No. CV 14-0425 PA (PJWx), 2015 WL 4698475, at *3 (C.D. Cal. Apr. 27, 2015).  "[N]umerosity

12   is presumed where the plaintiff class contains forty or more members."  *Id.*  However, a class as

13   small as twenty properly may be certified when the other Rule 23 factors are satisfied.  *See Rannis*

14   *v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (affirming district court's certification of 20-

15   member class).

16   Plaintiffs submit evidence that 4,086[1] 119 Panels were sold to distributers and installers in

17   California.  *See* Birka-White Reply Decl. ¶ 13 & Exh. N, ECF 196-1, 196-4.  Although it is

18   impossible to tell precisely how many homes or commercial sites were outfitted with those 4,086

19   panels, it is reasonable to infer that the number exceeds 40.  Plaintiffs assert that the average

20   residential solar array consists of approximately 25 panels, *see* Mot. at 13, ECF 165, and Bosch

21   does not dispute that assertion, *see* Opp. at 11-12, ECF 189.  If all panels distributed in California

22   were used in residential arrays, an average residential array of 25 panels would result in

23   approximately 160 homes with 119 Panels in California.  An average residential array of 42

24   panels, as at Plaintiffs' residence, would result in approximately 97 homes with 119 Panels in

25

26   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

27   [1] At the hearing, Plaintiffs' counsel suggested that the number of panels sold in California might be closer to 3,500 panels.  *See* Hrg. Tr. 12:5-10, ECF 211.  If the lower number is correct, an average residential array of 25 panels would result in 140 homes with 119 Panels in California,

28   and an average residential array of 42 panels, as at Plaintiffs' residence, would result in approximately 83 homes with 119 Panels in California.

United States District Court
Northern District of California

1    California.  Even if the Court were to assume that a substantial number of the panels were used in

2    commercial arrays, it appears that the number of end users would exceed 40.  The Court notes that

3    Plaintiffs' proposed class definition encompasses both residential and commercial end users.

4         Bosch does not suggest that its 119 Panels are installed in fewer than 40 residential or

5    commercial arrays in California.  Instead, Bosch argues that not all of those end users are class

6    members.  Bosch contends that the class must be limited to end users who are entitled to enforce

7    the Limited Warranty, who have made a claim under the warranty that was not honored, and who

8    have not been offered complete relief under the recall.  As discussed below with respect to the

9    predominance and superiority requirements of Rule 23(b)(3), Plaintiffs contend that all end users

10   are entitled to enforce the Limited Warranty under a third party beneficiary theory, that any notice

11   requirements under Michigan warranty law or the MMWA are excused, and that the recall has

12   been ineffective.  Given Plaintiffs' theory of the case, all end users of 119 Panels are potential

13   class members, with the exception of those who already have received replacement panels from

14   Bosch through the recall.

15        As of April 30, 2020, Bosch had replaced only 12,276 of the 44,500 panels shipped to the

16   United States.  *See* Def.'s Resp. to Interrog. No. 9, Birka-White Reply Decl. Exh. F, ECF 196-7.

17   In California, the company hired to store 119 Panels as they are replaced by Bosch has received a

18   total of 66 panels.  *See* Rodio Decl. ¶¶ 1, 12-16, ECF 170.  In their papers, Plaintiffs represent that

19   Bosch has removed and destroyed an additional 300 panels in California, although no evidence is

20   cited for this representation.  *See* Reply at 1, ECF 202.  Bosch does not dispute Plaintiffs'

21   representation and does not provide any information as to how many 119 panels it has replaced in

22   California.  Accepting Plaintiffs' undisputed figures, it appears that Bosch has replaced only a

23   small fraction of the 119 panels installed in California, and that the number of end users in

24   California exceeds 40.

25        Based on this record, the Court finds that the numerosity requirement is satisfied.

26              **2.    Commonality**

27        Rule 23(a)(2) requires the plaintiff to show that "there are questions of law or fact common

28   to the class."  Fed. R. Civ. P. 23(a)(2).  The requirement cannot be satisfied with any common

9

United States District Court
Northern District of California

1    question, however.  *See Dukes*, 564 U.S. at 349.  "Commonality requires the plaintiff to

2    demonstrate that the class members have suffered the same injury."  *Id.* at 349-50 (internal

3    quotation marks and citation omitted).  The claim of common injury must depend on a common

4    contention "of such a nature that it is capable of classwide resolution – which means that

5    determination of its truth or falsity will resolve an issue that is central to the validity of each one of

6    the claims in one stroke."  *Id.* at 350.  "[F]or purposes of Rule 23(a)(2) even a single common

7    question will do."  *Id.* at 359 (internal quotation marks, citation, and alterations omitted); *see also*

8    *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) ("[C]ommonality only requires

9    a single significant question of law or fact.").

10                   **a.       Claims 1-3 for Breach of Express Warranty**

11              Claims 1 and 3 are for breach of express warranty under state common law and state

12   statutory law, respectively.  Claim 2, for breach of express warranty under the MMWA, is based

13   on Claim 1 for breach of express warranty under state common law.  The Court has held that

14   Michigan law applies to all three warranty claims.  *See* Dismissal Order at 13.

15              Plaintiffs assert claims under the Product Warranty provision of the Limited Warranty

16   based on two defects, the solder defect and the delamination defect.  The claims of all prospective

17   class members involve the same solder and delamination defects, based on the same warranty,

18   regarding the same solar panel model.  In *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d

19   1168, 1172  (9th Cir. 2010), the Ninth Circuit found that the plaintiffs had "easily" satisfied the

20   commonality requirement where "[t]he claims of all prospective class members involve the same

21   alleged defect, covered by the same warranty, and found in vehicles of the same make and model."

22   Applying the reasoning of *Wolin* to the present case, the Court concludes that the commonality

23   requirement is satisfied as to claims under the Product Warranty provision of the Limited

24   Warranty.  Common questions include whether all 119 Panels have the solder defect, whether all

25   119 Panels have the delamination defect, and whether Bosch is obligated to pay for or replace

26   class members' 119 Panels under its express warranty.

27              Plaintiffs also assert claims under the Performance Warranty provision of the Limited

28   Warranty based on a significant reduction in the panels' power output over time.  The claims of all

United States District Court
Northern District of California

prospective class members involve reduction in power output, based on the same warranty provision, regarding the same model solar panel.  Common questions include whether there is a defect in the 119 Panels that causes reduction in power output over time, and whether Bosch is obligated to pay for or replace the 119 Panels under its express warranty.  While Plaintiffs' claims under the Performance Warranty clearly will involve individual questions regarding the extent that power output has been reduced, and the cause of that reduction, the Court concludes that the common questions identified by Plaintiffs satisfy "their limited burden under Rule 23(a)(2) to show that there are 'questions of law or fact common to the class.'"  *Mazza*, 666 F.3d at 589.

The Court is unpersuaded by Bosch's argument that the commonality requirement is not satisfied because Bosch has conceded the alleged defects in the 119 Panels and its obligation to replace roof-mounted 119 Panels.  That Bosch has conceded issues central to Plaintiffs' claims does not negate the commonality of those issues, and Bosch cites no authority to the contrary.  The Court observes that Bosch has litigated this case vigorously since its inception, and has given no previous indication that it would concede central issues.  While those concessions will simplify Plaintiffs' task in meeting their burden of proof going forward, Plaintiffs still must meet that burden with respect to the common issues identified above.

The Court finds that the commonality requirement is satisfied with respect to Plaintiffs' warranty claims.

### b.    Claim 5 for Unjust Enrichment

Claim 5, pled in the alternative to Plaintiffs' express warranty claims, asserts that Bosch was unjustly enriched by receiving the purchase price of the solar panels and retaining that benefit at Plaintiffs' expense.  California law applies to the unjust enrichment claim.  *See* Dismissal Order at 13.  Under California law, "[t]he elements of an unjust enrichment claim are the receipt of a benefit and [the] unjust retention of the benefit at the expense of another."  *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008) (internal quotation marks and citation omitted).

Plaintiffs' theory is that the distribution chain for 119 Panels worked in such a way that when an end user contracted with a power supplier like Kilowatt, or an installer like Sullivan, for installment of a solar panel array, the end user's money was funneled to Bosch to pay for the

United States District Court
Northern District of California

1    panels.  *See* SAC ¶ 315.  Plaintiffs allege that in their case, they paid Kilowatt in excess of

2    $25,000 to purchase solar power; Kilowatt transmitted that money to Sullivan; Sullivan used that

3    money to purchase the panels from a Bosch subsidiary; and the money thereafter was transmitted

4    to Bosch.  *See id.* ¶¶  310-14.  Plaintiffs claim that Bosch's retention of that money is unfair given

5    defects in their solar panels.  *See id.* ¶ 317.

6         The claims of all prospective class members involve the same defects discussed above with

7    respect to the warranty claims, namely the solder defect, the delamination defect, and the

8    reduction in power output.  This is sufficient to establish commonality.  While there will be

9    individual questions regarding each putative class members' payment, and tracing that payment to

10   Bosch, the existence of some individual questions does not defeat commonality under Rule

11   23(a)(2).  *See Mazza*, 666 F.3d at 589.  Moreover, it is the Court's view that individual questions

12   regarding each putative class member's transaction goes "to preponderance under Rule 23(b)(3),

13   not to whether there are common issues under Rule 23(a)(2)."  *Id.*  Bosch does not address the

14   commonality requirement with respect to Plaintiffs' unjust enrichment claim.

15        The Court finds that the commonality requirement is satisfied with respect to Plaintiffs'

16   unjust enrichment claim.

17                    **3.    Typicality**

18        Rule 23(a)(3) requires that "the [legal] claims or defenses of the representative parties [be]

19   typical of the claims or defenses of the class."  Typicality is satisfied "when each class member's

20   claim arises from the same course of events, and each class member makes similar legal

21   arguments to prove the defendants' liability."  *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir.

22   2010) (internal quotation marks and citation omitted).  "The requirement is permissive, such that

23   representative claims are typical if they are reasonably coextensive with those of absent class

24   members; they need not be substantially identical."  *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116

25   (9th Cir. 2017) (internal quotation marks and citation omitted).  However, "[a] court should not

26   certify a class if there is a danger that absent class members will suffer if their representative is

27   preoccupied with defenses unique to it."  *Id.* (internal quotation marks and citation omitted).

28        Plaintiffs argue that the typicality requirement is met because all claims, including their

                                             12

1   own and those of class members, arise from the same alleged defects in the 119 Panels and

2   Bosch's alleged breaches of its express warranties.  Plaintiffs assert that there is no difference

3   between the defects in roof-mounted panels and ground-mounted panels.

4        In opposition, Bosch asserts that there are several bases for concluding that Plaintiffs'

5   claims are not typical and that they are subject to unique defenses.  First, Bosch contends that

6   Plaintiffs' 119 Panels are ground-mounted but Plaintiffs have not identified any other residential

7   ground-mounted arrays.  Bosch fails to explain why that makes any difference.  It is undisputed

8   that all 119 Panels were uniformly designed and manufactured, whether they ultimately were

9   ground-mounted or roof-mounted.  *See* Report dated 11/3/2016 at 2-5, Birka-White Decl. Exh. K,

10  ECF 166-11.  Under those circumstances, there does not appear to be any reason why Plaintiffs

11  cannot assert warranty and unjust enrichment claims on behalf of all end users, whether their

12  panels are roof-mounted or ground-mounted.  Moreover, the Court is puzzled by Bosch's

13  emphasis on Plaintiffs' asserted failure to identify any other *residential* ground-mounted arrays.

14  Plaintiffs' claims are not limited to residential arrays.  They seek to represent "[a]ll persons or

15  entities in the United States who are the consumers, final customers, end users, subsequent buyers,

16  and subsequent owners of Bosch solar panels module number NA30119. . . ."  Prop. Order, ECF

17  171.  Accordingly, this attack on Plaintiffs' typicality is without merit.

18       Second, Bosch argues that Plaintiffs have not identified any other putative class members

19  who notified Bosch of defects subject to the Limited Warranty but did not receive replacement

20  panels.  Bosch ignores Plaintiffs' theory that notice requirements under Michigan warranty law

21  and the MMWA are excused.  If Plaintiffs prevail on that theory, any differences among putative

22  class members regarding notice to Bosch will be irrelevant.

23       Third, Bosch contends that Plaintiffs are subject to a unique defense because they took title

24  to their 119 Panels with knowledge that they were defective.  Bosch argues that under these

25  circumstances, Plaintiffs may not be able to bring a warranty claim at all, because under Michigan

26  law a defect of which the plaintiff had knowledge cannot be relied on as a basis for an action for

27  breach of warranty.  *See Upjohn Co. v. Rachelle Lab'ys, Inc.*, 661 F.2d 1105, 1109 (6th Cir. 1981).

28  The authorities filed by Bosch are factually distinguishable from the present case.  Plaintiffs filed

United States District Court
Northern District of California

13

United States District Court
Northern District of California

1   this suit in September 2018, before they took title to the panels, based on their status as an end

2   user of the panels as of the time of installation.  Plaintiffs could have maintained the suit as an end

3   user even if they had never acquired title to the panels.  None of the authorities cited by Bosch

4   suggest that Plaintiffs' acquisition of title to the panels during this litigation, in settlement of a

5   separate lawsuit against Kilowatt, would subject them to a unique defense.

6        Fourth, Bosch argues that Plaintiffs cannot prevail on a claim for breach of warranty under

7   Michigan law, because Bosch offered to replace Plaintiffs' 119 Panels but Plaintiffs refused.  *See*

8   *Computer Network, Inc. v. AM Gen. Corp.*, 265 Mich. App. 309, 314 (2005) (affirming summary

9   judgment for defendant on express warranty claim where warranty repairs were made each time

10  plaintiff presented vehicle for service).  Bosch asserts that to the extent Plaintiffs are suffering an

11  ongoing injury with respect to their 119 Panels, it is an injury of their own making.  In response,

12  Plaintiffs contend that Bosch's offer to replace their panels was an impermissible attempt to pick

13  them off as class representatives.

14        In *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086 (9th Cir. 2011), the Ninth Circuit

15  held that a rejected Rule 68 offer of judgment made before the filing of a motion for class

16  certification does not moot the putative class action claims.  Recognizing that a defendant may use

17  a Rule 68 offer of judgment to "pick off" lead plaintiffs and avoid class actions, the *Pitts*

18  held that class certification would relate back to the filing of the complaint so class claims could

19  not evade review simply because the defendant had offered the representative plaintiff all the

20  individual relief she sought.  *See id.* at 1090-91.  *Pitts* is not directly on point, because Bosch did

21  not make a formal Rule 68 offer of judgment.  However, the rationale of *Pitts* applies here, as it

22  appears that Bosch sought to pick off Plaintiffs as class representatives by offering to replace their

23  panels.  Plaintiffs' counsel inquired whether Bosch would forego a challenge to Plaintiffs' status

24  of class representatives if they accepted replacement panels, and Bosch did not agree.  *See* Birka-

25  White Decl. ¶ 38.  Under these circumstances, Bosch's assertion that Plaintiffs' continuing injury

26  is "of their own making" is not well-taken.

27        Fifth, Bosch asserts that Plaintiffs are subject to the defense of untimely notice.  Under

28  Michigan law, "a buyer who seeks to assert a warranty claim must within a reasonable time after

1    he [or she] discovers or should have discovered any breach notify the seller of breach or be barred

2    from any remedy." *Danielkiewicz v. Whirlpool Corp.*, 426 F. Supp. 3d 426, 433 (E.D. Mich.

3    2019) (internal quotation marks and citation omitted).  The Limited Warranty on the 119 Panels

4    requires that a warranty claim must be submitted to Bosch within three months after the consumer

5    is placed on notice that a warranty claim may have arisen.  *See* Limited Warranty ¶ 3.4, Birka-

6    White Decl. Exh. P, ECF 166-16.  Bosch contends that Plaintiffs were on notice of their warranty

7    claim in October 2016, pointing to Steve Rojas's deposition testimony that Plaintiffs received

8    notice from Kilowatt in October 2016 that their solar panel array was underperforming.  *See* Steve

9    Rojas Dep. 71:23-72:11, Mueller Decl. Exh. A, ECF 189-6.  Plaintiffs did not contact Bosch for

10   replacement of their panels until November 2017.  *See id.* at 126:16-19.

11          While the panels' underperformance perhaps could have put Plaintiffs on notice that they

12   had a claim under the Performance Warranty, Steve Rojas's testimony certainly does not establish

13   as much.  Moreover, Bosch has not explained how the panels' underperformance could have put

14   Plaintiffs on notice of the solder and delamination defects, which give rise to claims under the

15   Product Warranty.  Steve Rojas testified that Plaintiffs did not suspect that the panels were

16   defective until they learned of the recall, and they contacted Bosch promptly after that.  *See* Steve

17   Rojas Decl. ¶¶ 14, 25-30.

18          In conclusion, the Court finds that Plaintiffs have established that their claims are

19   coextensive with those of absent putative class members, and that Bosch has not identified any

20   unique defenses that would call into doubt their ability to represent the class.  Plaintiffs have

21   satisfied the typicality requirement.

22                          **4.      Adequacy**

23          To determine Plaintiffs' adequacy as a class representative, the Court "must resolve two

24   questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other

25   class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously

26   on behalf of the class?"  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011)

27   (internal quotation marks and citation omitted).  There do not appear to be any conflicts of interest,

28   and Plaintiffs and class counsel have demonstrated the ability and intention of prosecuting this

United States District Court
Northern District of California

United States District Court
Northern District of California

action vigorously on behalf of the class.

Bosch asserts that Plaintiffs lack credibility based on "purportedly detailed recollection of a single conversation six years prior to filing suit," their failure to mitigate the fire hazard posed by their solar panel array, and "their motivation in taking extreme measures to preserve their ability to prosecute this action."  Opp. at 11, ECF 189.

In is unclear what "single conversation" Bosch is referencing as a basis for its attack on Plaintiffs' credibility.  The Court presumes that Bosch is alluding to a conversation that Plaintiffs had with a Sullivan representative who met with Plaintiffs at their home.  The Court perceives no basis for questioning Plaintiffs' credibility based on their recollection of that conversation.  Steve Rojas is a pipe welder in his mid-60s and Andrea Rojas is a full-time caregiver to the Rojas's adult disabled daughter.  Steve Rojas Decl. ¶¶ 3-4.  Steve Rojas explains in his declaration he and his wife have lived in the same home for almost twenty years, which they purchased for $215,000.00, and that deciding to spend more than $25,000 on a solar panel array was a big financial decision for them.  *See id.* ¶ 5.  Under those circumstances, it is understandable that Plaintiffs remember the details surrounding their decision to go solar.

As to Plaintiffs' asserted failure to mitigate and "extreme measures" to continue with this litigation, Andrea Rojas explains as follows:

> 17.  In August, 2019, about a year after we filed the lawsuit, Mr. Birka-White informed us that Bosch corresponded with him and offered to replace our panels. However, Bosch would not agree that they would not challenge our ability to serve as class representatives if they replaced our panels.

> 18.  My husband and I discussed their offer to replace the panels.  Because we had made this commitment to serve as class representatives, we felt it would not be right to accept the panels and walk away from the class.  We felt the Bosch offer was dishonest and a trap.  We were worried about the fire hazard that the panels posed but, as I said in my deposition, it was too little too late.

Andrea Rojas Decl. ¶¶ 17-18, ECF 168.  This explanation is entirely plausible.  Nothing in the record before the Court suggests that Plaintiffs are less than honest or that their motives for pursuing this lawsuit are other than those expressed above.  Plaintiffs and their counsel have demonstrated the ability and the will to provide excellent representation for the putative class, in the face of notably aggressive litigation tactics on the part of Bosch.

1    The adequacy requirement is satisfied.

2    **D.    Rule 23(b)**

3        "In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must

4    show that the action is maintainable under Rule 23(b)(1), (2), or (3)."  *Amchem Prod., Inc. v.*

5    *Windsor*, 521 U.S. 591, 614 (1997).  Plaintiffs initially sought certification under both Rule

6    23(b)(2), which permits certification where injunctive or declaratory relief is appropriate for the

7    class as a whole, and Rule 23(b)(3), which permits certification where common questions of law

8    or fact predominate over individual questions.  *See* Fed. R. Civ. P. 23(b)(2), (b)(3).  However,

9    Plaintiffs did not argue Rule 23(b)(2) in their reply brief, and at the hearing Plaintiffs' counsel

10   advised the Court that Plaintiffs no longer seek injunctive relief.  *See* Hrg. Tr. 10:17-25, ECF 211.

11   As Plaintiffs no longer seek certification under Rule 23(b)(2),  Plaintiffs' motion turns on their

12   showing with respect to Rule 23(b)(3).

13       A class may be certified under Rule 23(b)(3) only if "the court finds that the questions of

14   law or fact common to class members predominate over any questions affecting only individual

15   members, and that a class action is superior to other available methods for fairly and efficiently

16   adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "Further, parties seeking to certify a Rule

17   23(b)(3) class must also demonstrate that the class is sufficiently ascertainable."  *Datta v. Asset*

18   *Recovery Sols., LLC*, No. 15-CV-00188-LHK, 2016 WL 1070666, at *2 (N.D. Cal. Mar. 18,

19   2016).

20       **1.    Ascertainability**

21       "[A] class is ascertainable if the class is defined with objective criteria and if it is

22   administratively feasible to determine whether a particular individual is a member of the class."

23   *Huynh v. Harasz*, No. 14-CV-02367-LHK, 2015 WL 7015567, at *13 (N.D. Cal. Nov. 12, 2015)

24   (internal quotation marks and citation omitted).  Plaintiffs point out that the class definitions in

25   this case rely on objective criteria, use or ownership of 119 panels.  That criteria can be verified

26   based on panel serial number, panel model number, or date of purchase of panels or power

27   generated by panels.  Verification should be straightforward in light of the Court's limitation of

28   the class definition to a California class.  Bosch does not dispute the ascertainability of the class.

United States District Court
Northern District of California

17

United States District Court
Northern District of California

1    The Court finds that the putative California class is ascertainable.

2              **2.      Predominance of Common Questions**

3    Plaintiffs assert that common questions of law and fact predominate over individual

4    questions with respect to both liability and damages.  In opposition, Bosch contends that Plaintiffs

5    have not shown that common questions predominate as to either liability or damages.

6                    **a.      Liability**

7    As discussed herein, Plaintiffs assert warranty claims and a claim for unjust enrichment.

8              **i.      Claims 1-3 for Breach of Express Warranty**

9    Plaintiff asserts three warranty claims:  Claim 1 for breach of warranty under state

10   common law, Claim 2 for breach of warranty under the MMWA, Claim 3 for breach of warranty

11   under state statutory law.  The Court has determined that all three claims are governed by

12   Michigan law.  *See* Dismissal Order at 13, ECF 89.  The warranty claims are based on two

13   separate provisions contained within the Limited Warranty on the 119 Panels, the Product

14   Warranty and the Performance Warranty.  For the following reasons, the Court finds that common

15   questions predominate as to claims under the Product Warranty, but not as to claims under the

16   Performance Warranty.

17   In distinguishing between the Product Warranty and Performance Warranty, this Court

18   relies on the Ninth Circuit's discussion of two warranty provisions in *Wolin*.  In *Wolin*, the Ninth

19   Circuit considered automobile owners' claims under two separate warranties issued by the

20   defendant, Jaguar Land Rover North America, LLC ("Land Rover").  *See Wolin*, 617 F.3d at 1170.

21   The "Limited Warranty" covered repairs to correct defects in factory supplied materials or

22   workmanship with the exception of tires.  The "Tire Warranty" covered replacement of tires and

23   vehicle realignment in the event that excessive tire wear was caused by a manufacturing defect

24   elsewhere in the vehicle.  *See id.*  The plaintiffs asserted claims under both warranties based on an

25   "alignment geometry defect" that caused tires to wear prematurely.  *See id.*  The Ninth Circuit held

26   that the predominance requirement of Rule 23(b)(3) was satisfied with respect to claims under the

27   Limited Warranty, as all proposed class members claimed that their vehicles suffer from the same

28   defect in alignment.  *See id.* at 1174.  The *Wolin* court held that those claims required "common

18

1    proof of the existence of the defect and a determination whether Land Rover violated the terms of

2    its Limited Warranty." *Id*. The plaintiffs were not required to prove manifestation of the defect to

3    go forward with their claim under the Limited Warranty. *See id*.

4    However, the Ninth Circuit opined that "[c]laims for breach of the Tire Warranty do not

5    easily satisfy the predominance test." *Wolin*, 617 F.3d at 1174. "[T]he Tire Warranty, provides

6    that when tire wear is *caused* by a defect in the vehicles, Land Rover will replace the tires and/or

7    pay for realignment." *Id*. The Ninth Circuit stated that "[a] determination whether the defective

8    alignment caused a given class member's tires to wear prematurely requires proof specific to that

9    individual litigant." *Id*. Explaining that "[t]ires deteriorate at different rates depending on where

10   and how they are driven," the *Wolin* court observed that "[w]hether each proposed class member's

11   tires wore out, and whether they wore out prematurely and as a result of the alleged alignment

12   defect, are individual causation and injury issues that could make classwide adjudication

13   inappropriate." *Id*. The Ninth Circuit directed the district court to address this issue on remand.

14   *See id*.

15           *Product Warranty*

16           Turning to the Product Warranty in the present case, that provision guarantees that the 119

17   Panels are free of defects in material and workmanship for a period of ten years from the date of

18   delivery. *See* Limited Warranty ¶ A, Birka-White Decl. Exh. P, ECF 166-16. Plaintiffs claim that

19   the 119 Panels have two defects in material and workmanship, the solder defect and the

20   delamination defect; all of the 119 Panels were identically designed and manufactured such that all

21   of the 119 Panels have these defects; and these defects constitute a breach of the Product Warranty

22   as to all end users. Plaintiffs argue that their claims are subject to common proof as to whether all

23   119 Panels have the solder defect, whether all 119 Panels have the delamination defect, and

24   whether Bosch is obligated to pay for or replace class members' 119 Panels under the Product

25   Warranty provision of the Limited Warranty.

26           Plaintiffs argue that their warranty claims present common questions similar to those

27   presented by *Wolin*, and that the predominance requirement is satisfied here for the same reasons

28   found by the Ninth Circuit as to the Limited Warranty in *Wolin* in that case. The Court agrees.

United States District Court
Northern District of California

19

Case 5:18-cv-05841-BLF   Document 213   Filed 03/09/22   Page 20 of 29

United States District Court
Northern District of California

1  Bosch does not dispute that the common questions identified by Plaintiffs exist with
2  respect to their claims under the Product Warranty.  However, Bosch contends that other issues
3  will require individualized inquiries that will overwhelm the common questions.  Bosch argues
4  that each putative class member must establish a contractual right to enforce the Limited
5  Warranty.  The Limited Warranty is "granted to the Consumer or shall transfer from the Consumer
6  to subsequent buyers / end users for the remainder of the warranty period, provided the subsequent
7  buyers / end users can show that the Modules have not been modified or relocated from their
8  originally installed location."  Limited Warranty ¶ C.1.1.  Bosch asserts that whether any
9  particular class member comes within this provision is a question of contract formation governed
10  by the law of the state in which the contract was made or was to be performed, and that factual
11  inquiries regarding contract formation would be compounded by differences in state laws in a
12  nationwide or multi-state class.  Because the Court has limited any potential class to California
13  residents, the Court need not consider complications relating to application of the laws of
14  multiples states.

15  With respect to the putative California class, the parties disagree whether contract
16  formation issues would be governed under California law (Bosch's view) or Michigan law
17  (Plaintiffs' view).  However, Plaintiffs contend that under either California law or Michigan law,
18  common questions govern whether class members have the right to enforce the Limited Warranty.
19  For example, Plaintiffs contend that all end users are entitled to enforce the Limited Warranty
20  under a third party beneficiary theory.  Both California and Michigan recognize the rights of
21  intended third party beneficiaries to enforce an express warranty.  *See Balsam v. Tucows Inc.*, 627
22  F.3d 1158, 1161 (9th Cir. 2010) ("Under California law, a contract, made expressly for the benefit
23  of a third party, may be enforced by him at any time before the parties thereto rescind it." (internal
24  quotation marks and citation omitted)); *Koenig v. City of S. Haven*, 460 Mich. 667, 679-80 (1999)
25  (under Michigan law, third party beneficiaries may enforce a contract if the class of intended third
26  party beneficiaries is reasonably identifiable from the contract).  Plaintiffs' third party beneficiary
27  theory presents a common question that could give all putative class members rights under the
28  Limited Warranty.

20

1    Bosch argues that individual questions regarding putative class members' compliance with

2    statutory and contractual notice requirements for warranty claims will predominate over common

3    questions.  Those notice requirements, which do not relate to contract formation, clearly are

4    governed by Michigan law under this Court's prior Dismissal Order.  Under Michigan's Uniform

5    Commercial Code, "'the buyer must within a reasonable time after he discovers or should have

6    discovered any breach notify the seller of breach or be barred from any remedy'" for breach of

7    warranty.  *Johnston v. PhD Fitness, LLC*, No. 16-CV-14152, 2018 WL 646683, at *3 (E.D. Mich.

8    Jan. 31, 2018) (quoting Mich. Comp. Laws § 440.2607(3)(a)).  Moreover, the Limited Warranty

9    on the 119 Panels requires that a warranty claim be submitted to Bosch within three months after

10   the consumer is placed on notice that a warranty claim may have arisen.  *See* Limited Warranty ¶

11   3.4.  Plaintiffs argue that Bosch is estopped from enforcing any warranty notice requirements

12   based on its knowledge of the defects.  That theory presents a common question that could obviate

13   the individual inquiries identified by Bosch.  Plaintiffs need not "prove that the predominating

14   question will be answered in their favor" in order to meet the requirements of Rule 23(b)(3).

15   *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013).

16   The Court is satisfied that common questions of law and fact predominate individual

17   questions with respect to liability on the warranty claims asserted under the Product Warranty.

18        *Performance Warranty*

19   The Performance Warranty guarantees that the 119 Panels will deliver specified amount of

20   power for a period of twenty-five years.  *See* Limited Warranty ¶ B.  Plaintiffs claims that the

21   panels are defective in that the power output degrades more over time than promised.  Unlike the

22   claims under the Product Warranty, which do not depend on manifestation of the manufacturing

23   defects, this claim depends on a manifestation of power loss suffered after installation of the 119

24   Panels.  In the Court's view, the claims under the Performance Warranty are akin to the claims

25   under the Tire Warranty in *Wolin*.  Putative class members seeking recovery under the

26   Performance Warranty in this case will have to demonstrate, on an individualized basis, that their

27   power loss was caused by a defect in the 119 Panels, just as class members in *Wolin* had to

28   demonstrate that their tire wear was caused by a defect in the vehicles.  *See Wolin*, 617 F.3d at

1174.  The Ninth Circuit suggested that the individual issues attendant upon such showing could make classwide adjudication inappropriate, and this Court concludes that classwide adjudication would be inappropriate here with respect to claims under the Performance Warranty.

The Court's conclusion is strengthened by Plaintiffs' concession that they do not seek Rule 23(b)(3) certification as to damages under the Performance Warranty.  *See* Reply at 12 n. 1, ECF 202.  Plaintiffs suggest that the Court could certify a Rule 23(b)(3) class on liability with respect to claims under the Performance Warranty, and leave the question of damages for "individual prove-ups" by class members.  *Id.*  The Court declines to do so.  In the Court's view, individual questions would predominate with respect to both liability and damages on Plaintiffs' warrant claims for power loss under the Performance Warranty.

### ii.    Claim 5 for Unjust Enrichment

Claim 5 is for unjust enrichment.  Under applicable California law, Plaintiffs must show that Bosch received and unjustly retained a benefit at their expense.  *See Peterson*, 164 Cal. App. 4th at 1593.  Plaintiffs' theory is that the $25,000 they paid Kilowatt under the Prepaid Solar Power Agreement was transmitted to Sullivan, and then to a Bosch subsidiary, and then to Bosch. Plaintiffs claim that Bosch's retention of that money is unfair given defects in their solar panels.  It is Plaintiffs' contention that the monies paid by all putative class members in their solar panel transactions likewise were funneled to Bosch, and that Bosch's retention of those monies is unjust as to all class members for the same reason, the defects in the 119 Panels.  Plaintiffs argue that any individual questions regarding tracing class members' payments through distributors/installers to Bosch will be resolvable through Bosch's own records and the records of its distributors.

Bosch offers no argument in opposition to Plaintiffs' Rule 23(b)(3) predominance argument with respect liability on the unjust enrichment claim.  Bosch's opposition mentions the unjust enrichment claim only in opposition to certification of a Rule 23(b)(2) class.  As noted above, Plaintiff has abandoned its motion for certification under Rule 23(b)(2).  District courts within the Ninth Circuit have certified unjust enrichment claims under circumstances similar to those presented here.  *See, e.g., Cartwright v. Viking Indus., Inc.*, No. 2:07-CV-02159-FCD-EFB, 2009 WL 2982887 (E.D. Cal. Sept. 14, 2009).  In *Cartwright*, cited by Plaintiffs, homeowners

1    brought a class action on behalf of themselves and persons who owned homes in which Viking

2    Window Products were installed, asserting that the windows were defective in that they failed to

3    resist water and air intrusion.  *See id.* at *1.  Like the solar panels in the present case, the Viking

4    Window Products were purchased through distributors.  *See id.*  The district court found that the

5    Rule 23(b)(3) predominance requirement was satisfied with respect to the putative unjust

6    enrichment claim certified a class as to that claim, among others.  *See id.* at 13-16.

7         Based on this authority, and absent opposition as to this aspect of Plaintiffs' motion, the

8    Court finds that common questions of law and fact predominate individual questions with respect

9    to liability on the unjust enrichment claim.

10                      **iii.     Conclusion Re Predominance Showing on Liability**

11        In conclusion, the Court finds that Plaintiffs have demonstrated that common questions

12   predominate with respect to liability on Claims 1-3 for breach of warranty to the extent those

13   claims are brought under the Product Warranty, and with respect to liability on Claim 5 for unjust

14   enrichment.  Plaintiffs have not established that common questions predominate with respect to

15   liability on Claims 1-3 to the extent those claims are brought under the Performance Warranty.

16                           **b.      Damages**

17        "Rule 23(b)(3)'s predominance requirement takes into account questions of damages."

18   *Just Film*, 847 F.3d at 1120.  The Supreme Court has held that absent an appropriate methodology

19   for measuring damages on a classwide basis, "[q]uestions of individual damage calculations will

20   inevitably overwhelm questions common to the class."  *Comcast Corp. v. Behrend*, 569 U.S. 27,

21   34 (2013).  "Calculations need not be exact."  *Id.* at 35.  In fact, the Ninth Circuit has made clear

22   both before and after *Comcast* that "'damage calculations alone cannot defeat certification.'"

23   *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013) (quoting *Yokoyama v. Midland*

24   *Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010)).  However, "at the class-certification

25   stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its

26   liability case."  *Id.* (internal quotation marks and citation omitted).  "If the plaintiffs cannot prove

27   that damages resulted from the defendant's conduct, then the plaintiffs cannot establish

28   predominance."  *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1154 (9th Cir. 2016).

United States District Court
Northern District of California

As noted above, the Court has determined that, with respect to liability, Plaintiffs have established the requisite predominance of common questions only as to Claims 1-3, and those only to the extent they are brought under the Product Warranty.  Accordingly, with respect to damages, the Court limits its predominance inquiry to Claims 1-3 for breach of warranty to the extent those claims are brought under the Product Warranty based on the alleged solder and delamination defects.

Under applicable Michigan law, "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."  Mich. Comp. Laws Ann. § 440.2714(2).  In certain cases, incidental and consequential damages also may be recovered.  *See* Mich. Comp. Laws Ann. §§ 440.2714(3), § 440.2715.  Recoverable consequential damages include "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise."  Mich. Comp. Laws Ann. §  440.2715(2)(a).  Thus, "[u]nder Michigan law, as generally, consequential damages are available in breach of warranty suits if the standard criterion for an award of such damages – foreseeability – is satisfied."  *Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 220 (7th Cir. 1996).

Plaintiffs contend that all 119 Panels need to be replaced in light of the nature of the undisputed solder and delamination defects posing a fire hazard.  *See* Mot. at 2, 18, ECF 165.  Plaintiffs' expert Bill Brooks, an engineer who works in the field of solar systems, opines that the solder and delamination defects require that all 119 Panels be replaced, whether roof-mounted or ground-mounted.  *See* Brooks Report at 5, Exh. U to Birka-White Decl., ECF 166-21 ("[A]ll 119 modules be removed from service and replaced.").  Plaintiffs' expert Joseph Zicherman, a fire safety engineer, agrees that all 119 Panels should be removed even if ground-mounted rather than roof-mounted.  *See* Zicherman Report at 8, Exh. W to Birka-White Decl., ECF 166-23 ("The subject NA30119 Solar Panels are known to be defective.  In my opinion with a reasonable degree of scientific certainty, their continued use poses a clear fire safety threat when installed directly

over grassy ground surfaces.").  Although Bosch limited its voluntary recall to only roof-mounted panels, Bosch now appears to concede that all 119 Panels "are prone to failure, and should be replaced."  Opp. at 1, ECF 189.  Based on this evidence, it appears that replacement cost is at least one appropriate method for calculating damages.

Plaintiffs submit the report of their expert Michael V. Garcia to show the cost of replacing the 119 Panels.  *See* Garcia Report, Exh. Z to Birka-White Decl., ECF 166-26.  Mr. Garcia is a renewable energy industry expert with experience in the installation, installation training, sales, and sales training of solar energy systems.  He opines that the replacement cost of a NA30119 solar module is $1,079.00 per panel (module), including inspection, labor and material.  *See id.* at 5.  He provides a chart showing "replacement cost and inspection breakdown."  *Id.*  Mr. Garcia states that "[t]he cost to replace a solar module such as NA3011 for all class members can be calculated using the methodology discussed" in his report.  *Id.*

Bosch argues that Plaintiffs' showing does not satisfy *Comcast*, pointing to some unfortunately vague language in Plaintiffs' motion:  "While the exact contours of what will be awarded is not known yet, it will consist of some or all of: the panels' purchase price, the difference in power generation between the allegedly defective panels and properly functioning panels, and the inspection and replacement of panels."  Mot. at 23.  As is clear from the context, that statement reflected Plaintiffs' initial request for certification as to both the solder and delamination defects under the Product Warranty, and the power loss under the Performance Warranty.  Plaintiffs subsequently abandoned their request for certification of damages as to the power loss theory.  Plaintiffs' briefing as a whole, and the reports of their experts, establish that cost of replacement is a viable damages model for Bosch's warranty claims for breach of the Product Warranty.  "At this stage, Plaintiffs need only show that such damages can be determined without excessive difficulty and attributed to their theory of liability, and have proposed as much here."  *Just Film*, 847 F.3d at 1121.

Contrary to Bosch's assertion, *Comcast* does not require more.  In *Comcast*, the plaintiffs initially relied on four theories of antitrust liability and calculated aggregate damages based on those four theories.  *See Comcast*, 569 U.S. at 36-37.  However, the district court certified the

class based on only one of the four theories.  *See id.* at 35.  Plaintiff did not offer a method of calculating damages for liability stemming from that theory alone.  *See id.*  Pointing out that "a model purporting to serve as evidence of damages in this class action must measure only those damages attributable to that [surviving] theory," the Supreme Court determined that "[i]f the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)."  *Id.*  The Ninth Circuit has "interpreted *Comcast* to mean that plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability."  *Vaquero*, 824 F.3d at 1154 (internal quotation marks and citation omitted).  Plaintiffs' proposed damages in the form of replacement costs for the 119 Panels clearly flow from Bosch's allege breach of the Product Warranty.

Bosch quibbles with Mr. Garcia's calculations, relying on its own expert's opinion that Mr. Garcia did not take all relevant factors into account, such as regional labor cost variations and market survey data, and that Mr. Garcia improperly assumed that the entire installation would have to be replaced.  Mr. Garcia's expertise in the field of solar panel systems and installation qualifies him to opine as to the cost of replacing 119 Panels, and Bosch does not challenge that expertise.  Mr. Garcia unequivocally states his opinion that the replacement cost of each 119 Panel is $1,079.00.  *See* Garcia Report at 5.  "[E]ven if the measure of damages proposed here is imperfect, it cannot be disputed that the damages (if any are proved) stemmed from *Defendants'* actions."  *Vaquero*, 824 F.3d at 1155.  Moreover, the presence of some individualized questions regarding each putative class member's specific recovery "cannot, by itself, defeat class certification under Rule 23(b)(3)."  *Leyva*, 716 F.3d at 514.

The Court finds that Plaintiffs have satisfied the Rule 12(b)(3) commonality requirement with respect to damages.

### 3.    Superiority of Class Action

To satisfy Rule 23(b)(3), Plaintiffs also must demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Rule 23 lists the following factors that Courts should consider in making this determination:  "(A) the class members' interests in individually controlling the prosecution or

26

United States District Court
Northern District of California

1   defense of separate actions; (B) the extent and nature of any litigation concerning the controversy

2   already begun by or against class members; (C) the desirability or undesirability of concentrating

3   the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a

4   class action." Fed. R. Civ. P. 23(b)(3).

5       Plaintiffs assert that a class action is superior to other methods for adjudicating the

6   controversy. As Plaintiffs point out, the cost of litigation would be relatively high in comparison

7   to the individual recovery of each class member (factor A). Plaintiffs are not aware of any other

8   litigation concerning the 119 Panels (factor B). Estimating that at minimum, there are hundreds of

9   putative class members, Plaintiffs contend that litigation in a single forum would be most efficient

10  for the class and the federal courts (factor C). Even as limited to a California class, the Court

11  agrees that litigation of the claims of forty-plus claimants would be more efficient than requiring

12  putative class members to pursue their claims individually. Finally, Plaintiffs foresees no

13  difficulties in managing a class action in this forum (factor D). The Court agrees that the class

14  action would be manageable, particularly given the reduction of the putative class from a

15  nationwide or multi-state class to a California class.

16      In opposition, Bosch contends that a class action is not superior to their voluntary recall,

17  and that the Court should deny certification on the basis that the recall is the most appropriate

18  method for resolving the controversy. District courts within the Ninth Circuit are split as to

19  whether private processes should be considered when determining whether a class action is the

20  superior method for adjudicating a controversy. Some have concluded that, "Pursuant to the plain

21  language of Fed. R. Civ. P. 23(b)(3), [t]he analysis is whether the class action format is superior to

22  other methods of adjudication, not whether a class action is superior to an out-of-court, private

23  settlement program." *Martin v. Monsanto Co.*, No. ED CV 16-2168-JFW (SPx), 2017 WL

24  1115167, at *9 (C.D. Cal. Mar. 24, 2017) (internal quotation marks and citation omitted); *see also*

25  *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 672 (C.D. Cal. 2014) (finding that defendants' voluntary

26  refund program was not a method for *adjudicating* the controversy). Others have found that

27  voluntary remedial measures instituted by the defendant may be considered in the context of

28  determining superiority and other Rule 23 requirements. In *Waller v. Hewlett-Packard Co.*, 295

1    F.R.D. 472, 487 (S.D. Cal. 2013), cited by Bosch, the district court found it appropriate to

2    consider Hewlett-Packard's release of a free software update that addressed the plaintiff's

3    grievance that was the basis of the class action.

4           Assuming without deciding that Bosch's voluntary recall appropriately can be considered

5    when evaluating the Rule 23(b)(3) superiority requirements, the Court cannot conclude on this

6    record that the recall is the superior method for adjudicating the claims of the putative class

7    members.  The Court's analysis is quite simple:  the recall was implemented in 2017, and a

8    relatively small number of the 119 Panels have been replaced to date.  If the recall has not worked

9    to resolve the controversy in the last five years, there is no basis to conclude that it would be

10   superior to class certification going forward.

11          Bosch voluntarily recalled all roof-mounted 119 Panels due to the solder defect and

12   potential fire hazard on April 13, 2017.  *See* Recall Summary, Birka-White Decl. Exh. X, ECF

13   166-24.  As of April 30, 2020, Bosch had replaced only 12,276 of the 44,500 panels shipped to the

14   United States.  See Def.'s Resp. to Interrog. No. 9, Birka-White Reply Decl. Exh. F, ECF 196-7.

15   With respect to California, the record indicates that 4,086 119 Panels were sold to distributers and

16   installers in California.  *See* Birka-White Reply Decl. ¶ 13 & Exh. N, ECF 196-1, 196-4.  There is

17   evidence that Bosch has replaced at least 66 panels in California.  *See* Rodio Decl. ¶¶ 1, 12-16,

18   ECF 170.  Plaintiffs represent that Bosch replaced and destroyed an additional 300 panels in

19   California, for a total of 366 panels replaced in California out of 4,086 panels distributed in

20   California.  *See* Reply at 1, ECF 202.  Plaintiffs argue that Bosch's replacement of only 9% of the

21   119 Panels distributed in California in almost five years does not inspire confidence in the recall.

22   The Court agrees.

23          Bosch presents substantial evidence on the favorability of the recall terms, asserting that

24   the recall affords more complete relief.  However, it does not matter how favorable the terms of

25   the recall are if it is not effective.  Bosch does not offer evidence, or even argue, that it has

26   replaced more than 9% of the 119 Panels in California to date.  Under these circumstances, the

27   Court concludes that going forward, class certification is the superior method of adjudicating the

28   controversy.

1

## IV.    ORDER

2      (1)     Plaintiffs' motion for class certification is GRANTED IN PART AND DENIED IN

3  PART, as set forth herein.  Class certification is GRANTED with respect to a California class as to

4  Claims 1, 2, and 3, to the extent those claims are based on the Product Warranty, and as to Claim

5  5.  Class certification is DENIED as to Claims 1, 2, and 3, to the extent those claims are based on

6  the Performance Warranty.

7      (2)     The following class is certified ("the Class"):

8      All persons or entities in the State of California who are the consumers, final customers,

9  end users, subsequent buyers, and subsequent owners of Bosch solar panels module number

10 NA30119, on claims for breach of the Product Warranty and unjust enrichment.

11     (3)     The Court appoints Steve R. Rojas and Andrea N. Rojas as class representatives

12 for the Class ("Class Representatives"). proposed plan for providing notice to the Classes

13 pursuant to Rule 23(c)(2) within 30 days of the issuance of this Order.

14     (4)     The Court finds that Birka-White Law Offices, Farella Braun + Martel LLP, and

15 Levin Sedran and Berman satisfy the requirement of Rule 23(g) and are hereby appointed as

16 Class Counsel.

17     (5)     Plaintiffs shall submit a proposed plan for providing notice to the Class pursuant to

18 Rule 23(c)(2) within 30 days of the issuance of this Order.

19

20 Dated:  March 9, 2022

21                                            _____

22                                            BETH LABSON FREEMAN
                                             United States District Judge
23

24

25

26

27

28