## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| STEVE R. ROJAS and ANDREA N. ROJAS, on behalf of themselves and all others similarly situated | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 5:18-cv-5841BLF |
| vs. | ) ) | |
| BOSCH SOLAR ENERGY CORPORATION; and DOES 1-20 inclusive, | ) ) ) ) | |
| Defendants. | ) | |

## DECLARATION OF NOTICE EXPERT TODD B. HILSEE
## ON SETTLEMENT NOTICE EFFECTIVENESS

I, TODD B. HILSEE, have personal knowledge of the matters set forth herein, and I believe them to be true and correct.  If I were to testify at length, my testimony would be the same as that contained in this Declaration.   Upon my oath, I state as follows:

### I.      <u>INTRODUCTION</u>

1.      The opinions I express in this Declaration are based on the facts in this Declaration, are the product of my training and experience, and are based on reliable principles and methods that I have applied to the facts in this case.  These methods are regularly relied upon by professionals in my field.

2.      My firm, The Hilsee Group LLC, specializes in analyzing legal notification issues on behalf of courts, special masters and lawyers.  I am familiar with, or have been directly responsible

for, many of the largest class action notice programs. I was the first notice expert recognized by a court in the United States (1992), and the first recognized by a court in Canada (2000). I collaborated with the Federal Judicial Center ("FJC") to write and design its illustrative Plain-Language Notice Models (2002) (the "FJC Model Notices")[1] pursuant to revised Rule 23(c)(2) of the Fed. R. of Civ. P. I also wrote the FJC's "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide" (2010) (the "FJC Judges' Checklist")[2], and I was commended by the then-Director of the FJC for my update to the notice and claims process sections of the FJC's class action "Pocket Guide for Judges" (2010)[3]. I brought to courts the use of audience data to quantify the "net reach" of notice to class members, as well as "noticeable" notice designs using bold headlines and graphics (1990). My c.v., attached as **Exhibit 1**, identifies more than 250 cases in which I was responsible for creating and disseminating notices to classes in some 209 countries, and 53 different languages. I have presented before judges, lawyers, special masters and students, including at the invitation of the American Bar Association, law schools including Harvard Law School, and also by the Federal Judicial Center and the Northern District of California Judicial Conference. I have been appointed as a neutral expert by courts directly, for example by Judge Gottschall of the Northern District of Illinois in *Kaufman v. American Exp. Travel Related Servs. Co., Case No. 07-01707*. My c.v. lists the cases in which I have testified by deposition or at trial, contains judicial and academic/practitioner comments citing my

---

[1] *See* the FJC Model Notices at: https://www.fjc.gov/content/301309/illustrative-forms-class-action-notices-acknowledgments, last visited 10/1/21.

[2] *See* the FJC Judges' Checklist at: https://www.fjc.gov/content/301350/illustrative-forms-class-action-notices-notice-checklist-and-plain-language-guide, last visited 10/1/21.

[3] *See* the FJC Pocket Guide at: https://www.fjc.gov/content/managing-class-action-litigation-pocket-guide-judges-third-edition-0, last visited 10/1/21.

DECLARATION OF NOTICE EXPERT TODD B. HILSEE

credentials and expertise, and lists my publications, which include law review articles in the GEORGETOWN JOURNAL OF LEGAL ETHICS, THE TULANE LAW REVIEW, and the SUPREME COURT LAW REVIEW of Canada. My credentials are further detailed below my opinions in this matter.

3.     On November 4, 2021, I submitted an expert report in this case on notice issues pertinent to class certification (ECF No. 196-12).  I expressed concerns that notice to a class of solar panel customers could and should be done through a robust and careful individual notice process, explaining in my submission numerous facts and evidence about how and why individual notice by mail done properly is the best practicable notice to such a class—by far.

4.     Now in the context of settlement, I have consulted with both parties as they have developed plans to effectively notify class members individually.  I have also carefully drafted the notices to be issued to class members, which are attached as **Exhibits 2 to 5** of this Declaration.  As explained in this Declaration, I have determined that the notice effort described herein will be an effective and comprehensive individual notice program.

5.     To prepare for this Declaration, I studied the Settlement Agreement, and I have engaged in multiple discussions with counsel for both parties.  I studied the declaration of Oliver Steinig, a Bosch Solar director (the "Steinig Dec."), and I also performed my own independent research.

6.     I am being paid my standard hourly rates, which, for analysis of notice issues and provision of expert testimony, is $750 per hour.  To avoid the appearance of any bias in my analyses in the era of notice provider "bidding," I no longer execute notice plans and do not seek to do so here. I have no contingent or vested interest in the outcome of this matter.

7.     In addition to applying my education, training, and court recognition as a notice and claims process expert, I applied my experience in authoring, at the request of the FJC, the FJC Model

Notices and the FJC Judges' Checklist, as discussed herein.  I also applied my prior research into the relative effectiveness of various notification methods, including as I provided to the Advisory Committee on Civil Rules of the Judicial Conference of the United States (the "Rules Committee") and to the Federal Trade Commission ("FTC"), and from my prior cases involving analysis of product recall/consumer redress-related notifications before the CPSC, National Highway Traffic Safety Commission ("NHTSA"), and FTC, as well as my presentation of notice standards to the 2016 Northern District of California Judicial Conference prior to 2018 adoption of the N.D. Cal. notice guidelines.[4]

8.    My opinions are described below, followed by a more detailed summary of my qualifications to render these opinions, and finally, my conclusions.

## II.    OPINIONS

9.    Defendant's efforts to locate class members during the recall and in preparation for settlement notice is at this time proving to be effective based on the Steinig Dec.:  Bosch Solar's requests to distributors/installers for customer installation location information have now generated substantive responses such that out of the 41,400 Bosch NA30119 solar modules that were sold and installed in the United States, only 7,111 remain to be located by Bosch Solar and replaced.  Based on an average installation size of twenty-five modules per customer according to the Steinig Dec., there are only approximately 284 remaining customers left to identify and locate in the U.S.  From the Steinig Dec. I can also determine that when Defendant Bosch Solar secures installation location information from distributors/installers, its warranty department is upwards of 75% effective in engaging end-users in complying with the Bosch Solar process to achieve replacement, and 95%

---

[4] *See* https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/, last visited August 24, 2022.

effective once a response is received from a customer.

10.     Going forward, and following settlement negotiations, Bosch Solar is now beginning to issue subpoenas to distributors/installers to <u>require</u> them to provide any remaining installation locations and customer contact information to Bosch Solar to be processed and used for settlement notification.  Based on Bosch Solar's track record, after the time necessary to follow the trail from subpoena issuance to tracing the information provided in what will now be <u>required</u> responses rather than relying on the voluntary responses to requests, this process will allow an effective and comprehensive individual notice campaign, which again, is the best form of notice by far.

11.     Therefore, I am convinced that notice under the requirements of Federal Rule of Civil Procedure 23(c)(2) will adequately inform Bosch solar panel consumers by achieving what the rule <u>requires:</u> clear, concise, easily understood notice, by way of individual notice to <u>all reasonably identifiable class members</u>.  Such notice will achieve what *Due Process* requires: relying on a means for notice "such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."[5]

### *The Distributor/Installer Subpoena Process*

12.     After completing all recall-related solar panel claims and replacements, the Steinig Dec. indicates that Bosch Solar has previously made informal requests for customer installation location information from thirty-seven (37) distributors/installers known to have sold the affected Bosch solar panels to consumers, in order to reach and replace as many of the remaining units as possible.

13.     Out of those 37 requests, Bosch Solar received twenty (20) substantive responses.

---

[5] *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 315

DECLARATION OF NOTICE EXPERT TODD B. HILSEE

Steinig indicates that in total, 372 installations have been identified as possible NA30119 locations.

14.     Of those 372 customers identified by the informal requests, 30 were thus far identified as "false positives."  A "false positive" is a customer installation location of solar panels that were not in fact NA30119 installations and thus not in fact affected by the alleged defect and the voluntary recall.[6]  Steinig further indicates that Bosch Solar received end-user contact information for ninety (90) potential NA30119 installation locations who have not yet responded.

15.     The results of the recall-related replacement effort, plus the informal request process to obtain contact information in preparation for settlement, leaves only 7,111 panels remaining in the field according to the Steinig Dec.

16.     Based on 25 panels per installation site as per the Steinig Dec., this indicates that approximately 284 additional customer installation locations must still be located (some of which may be among the 90 locations identified as potential NA30119 locations, but which have not yet responded to verify inclusion or initiate replacement).  To accomplish this, the settlement notice effort relies on a robust <u>subpoena</u> process being launched by Bosch Solar to seek and require distributors/installers to provide any customer installation locations not already provided to Bosch Solar through the informal request process.

17.     Bosch Solar's counsel has represented to me that it began the subpoena process in early September 2022.  I was informed by Bosch Solar's counsel that subpoenas seek any customer installation location and other contact information for owners.  Subpoenas will also be issued to all distributors/installers of any of the affected Bosch solar panels that has not already provided customer

---

[6] Bosch informs me that these false positives have been scrutinized, and there is no indication that there has been, nor is there any expectation that there will be, any significant fraud whereby customers seek to have functional un-affected panels replaced under the recall or settlement replacement program.

DECLARATION OF NOTICE EXPERT TODD B. HILSEE

installation data or other contact information to Bosch Solar through the informal request process.

18.     To prepare for the possibility that certain distributors/installers (who may have consumer data or could find consumer data in their records) may assert an objection relating to an undue burden or expense to comply, and thus fail to produce their data without compensation, Bosch Solar has indicated to me that it will provide reasonable compensation to the distributors/installers that raise a legitimate objection in this regard.  Finally, should a subpoena recipient not respond, Bosch Solar's counsel has informed me that Bosch Solar will move to compel production of the requested information.

19.     Bosch Solar's counsel has explained to me that extensive tracking and tracing efforts are now made by its warranty unit, Robert Bosch Tool Co. ("Bosch Tool"), in preparation to effectively process the settlement and the existing recall replacement effort, in order to follow leads from information provided by distributors/installers.  Bosch Solar has thus far shown that it is upwards of 75% successful in arranging for replacement once in possession of an installation location.  The Steinig Dec. makes clear that once Bosch Tool receives a response to notice, they are 95% successful in completing replacement.  This success, I am informed by Bosch Solar's counsel, is perhaps also a function of the fact that Bosch Tool now performs and will continue to perform multiple "reach-outs" and skip tracing on the customer contacts it identifies, in order to encourage and ensure that a replacement is initiated and completed.  To demonstrate the success ratio, The Steinig Dec. explains that of the 342 potential NA30119 panel installation locations identified by the informal request process, 241 of the 252 who have thus far responded to outreach have already received the requisite panel replacements, and the other 11 are in the process of being replaced.

20.     Because of the time required to send the subpoenas, receive responses, follow up on responses and non-responses, and trace and research nuggets of information provided by distributors

DECLARATION OF NOTICE EXPERT TODD B. HILSEE

and installers, Bosch Solar's counsel estimates that approximately three (3) months will be required from the start of the subpoena process until a full list of class members is compiled from the data it receives in order to send notice of the settlement together with a settlement claim form.

21.     To provide further assurance of the comprehensiveness of the class member mailing list that will be achieved by this subpoena process, Bosch Solar has indicated to me that it recognizes the possibility that the responsible party for an affected solar panel installation location may not receive mail at the panel installation address (*e.g.*, the property is a rental or a second home, *etc*.) Accordingly, and in furtherance of Rule 23 notice requirements, Bosch Solar will also, during the three (3) months it is developing the consumer list, research the mailing addresses of current owners of the installation addresses, if different, so that a notice can be mailed to both addresses.

22.     Accordingly, it is my expectation that the comprehensive mailing list would be ready following the subpoena process and then available for the Notice Provider to print and mail notices to the class members by mid-December 2022.

***Preparing and Mailing Notices.***

23.     Upon receiving the mailing list as described above, the Notice Provider will print and mail the notices for each customer address and installation location.

24.     As a precaution, it is my expectation that the Notice Provider will search the Postal Service's National Change of Address database to identify any updated addresses of the current owners of the affected solar panels.  Of course, notices will be sent to the installation locations as well, in care of the current owner, even if there is an alternate address where research may indicate the current owner receives mail.  Bosch Solar's counsel informs me that further notice and "reach out" and skip tracing efforts will be undertaken by Bosch Solar to prompt action by class members responsible for any NA30119 installations among the 90 installation locations identified as potential

NA30119 locations, but who have thus far failed to respond to prior recall notices issued by Bosch Solar.

25.     All notice mailings will be sent by first class mail in a stamped, personalized envelope, designed to capture the attention of recipients by conforming to FJC and NDCA standards and guidelines as described below.

26.     The mailing will consist of a clear, concise, easily-understood detailed notice conforming to FJC and NDCA standards and guidelines as described below, together with a very simple claim form together with a stamped, return envelope for claim submission convenience.

27.     Under the timeline above, it is expected then that notices can be mailed by mid-December 2022.  Then, in accordance with notice standards designed to provide adequate time to reply and exercise legal rights and options, class members would be given 45 days to opt out or object according to the instructions in the notice, *i.e.*, the deadlines for those options would be at the end of January, 2023.

28.     In my opinion, a fairness hearing could thus be scheduled as early as mid-February 2023.

***Forms of Notice: Attention-Getting, Easy to Understand and Act-Upon.***

29.     Several notice documents have been drafted to communicate the requisite information to class members leading up to the fairness hearing.

30.     A detailed notice, attached as **Exhibit 2**, will contain the necessary information, and will conform to the highest standards of best practices.  It carries an attention-getting headline to be recognized as significant and relevant to the recipient, as well as denote the importance of acting on the panel replacement offer.  It will itself summarize the "gist" of the notice on the first page.  It is designed in a question-and-answer format with a table of contents for easy reference.  The pertinent

DECLARATION OF NOTICE EXPERT TODD B. HILSEE

information is in logical sections including information summarizing the class action, what the settlement is all about, how to claim a replacement, how to opt out, how to object, and about the fairness hearing.

31.     The detailed notice will conform to the FJC Notice and Claims Process Checklist explaining the FJC notice models that I wrote and designed, and which are held out by the FJC on the www.fjc.gov website to federal judges as templates.  The content of the detailed notice also conforms to the guidelines adopted by, and displayed on, the NDCA website since 2018.  The detailed notice will be mailed to the comprehensive class list developed through the subpoena process.

32.     A summary notice, attached as **Exhibit 3**, will also be prepared and posted at the informational website established for the settlement (described below). The Notice Provider will also seek to publish it on various solar industry websites as may be available at the time of Preliminary Approval.  Note: given the extensive and comprehensive individual notice effort described herein, my opinion on the effectiveness of notice in this case is not dependent on any such solar industry publication, especially given that consumers are not expected to frequent such websites with content designed for solar industry professionals; however, such efforts may ultimately serve as a reminder to distributors/installers to assist in replacement efforts.

33.     The summary notice highlights all rights and options, and includes all deadlines and instructions for acting upon rights.  It carries an attention-getting headline to garner readership and a call-out and photo to capture affected consumers, just as the FJC model notices prescribe.

34.     A carefully worded outside envelope, attached as **Exhibit 4**, has been designed to ensure that recipients know it is important, official, and relevant, and thus help to ensure that they decide to read it and not discard it unopened.  This also conforms to FJC and NDCA guidelines.

35.     A claim form, attached as **Exhibit 5**, will be included in the mailing to class members.

DECLARATION OF NOTICE EXPERT TODD B. HILSEE

This claim form is extremely simple and is not burdensome in any way.  In as much as Bosch Solar warranty personnel have indicated through its counsel that only two primary pieces of information and material are needed to process a settlement claim: a) an installation location, and b) a photograph to help avoid wasting time on "false positives" (units that are not subject to replacement) this will help encourage response, and avoid delays, so that Bosch Solar may complete replacements on the affected units as quickly as possible.  Included with the claim form and detailed notice will be an addressed and stamped return envelope to make it convenient for consumers to respond and submit claims.

*__Other Notice Activities.__*

36.     In conjunction with the notice being issued upon the completion of the subpoena process, the Notice Provider will: a) perform address updates as necessary and as described above; b) establish a toll-free phone number with live operators available to field calls from class members; c) launch a neutral informational website to house pertinent documents and frequently asked questions about the settlement, and provide updates as the settlement progresses—such website to remain active for several years following notice due to the claim deadline that is long into the future;[7] d) remail any notices returned by the Postal Service to better addresses that may be available after performing best-practice lookups on such pieces; e) intake the claim forms from class members after they receive the mailings and subsequently provide them to Bosch Solar to process; f) prepare and disseminate the required notice to State and Federal officials under the Class Action Fairness Act of 2005; and g) perform other duties and provide reports to counsel and the Court as may be required under the

---

[7] Claimants have until 2038 or 25 years from installation whichever is earlier.  Bosch Solar also makes the point that its recall and the separate CPSC and Bosch websites associated with that recall are at the top of Google search lists for Bosch solar panel recall and other search terms.  This factors favorably into my opinion as to the effectiveness of all notice and awareness activities combined, and which ascribe to the benefit of Class members into the future.

DECLARATION OF NOTICE EXPERT TODD B. HILSEE

Settlement Agreement and/or Preliminary Approval Order.

## III.   <u>QUALIFICATIONS</u>

37.     My firm, The Hilsee Group LLC, serves courts, special masters, and lawyers as a class action notice and claims process expert.  An independent expert on notice and claims issues, The Hilsee Group is not paid to administer notice programs. With experience and impartiality, The Hilsee Group assists courts by providing analysis and testimony that may benefit their determinations.

38.     Courts have recognized me as an expert dozens of times over the last nearly 30 years since Judge Marvin Shoob, in *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 548 (N.D. Ga. 1992) stated in his opinion in that case:

> *The Court finds Mr. Hilsee's testimony to be credible. Mr. Hilsee's experience is in the advertising industry. It is his job to determine the best way to reach the most people. Mr. Hilsee answered all questions in a forthright and clear manner. Mr. Hilsee performed additional research prior to the evidentiary hearing in response to certain questions that were put to him by defendants at his deposition . . . The Court believes that Mr. Hilsee further enhanced his credibility when he deferred responding to the defendant's deposition questions at a time when he did not have the responsive data available and instead utilized the research facilities normally used in his industry to provide the requested information.*

39.     I have since received some 70 judicial comments on my expertise—recognizing me by name—in making favorable rulings following my declarations and affidavits or live testimony.

40.     I worked with the Federal Judicial Center ("FJC") at the request of the Advisory Committee on Civil Rules of the Judicial Conference of the United States to develop their illustrative, noticeable, clear, concise, plain-language notices for class actions.  These FJC-endorsed models (with attribution to my contribution) have been posted at <u>www.fjc.gov</u> since 2002, to illustrate how to comply with Fed. R. Civ. P. 23 ("Rule 23")—specifically its December 2003 plain-language revision to section (c)(2) of Rule 23.  Pursuant to my testimony at the January 22, 2002 public hearing in

Washington, D.C. on the proposed changes to Rule 23, Judge Lee H. Rosenthal of the Advisory Committee on Civil Rules of the Judicial Conference of the United States, who later became the Chairperson of the Committee, stated to me:

> *I want to tell you how much we collectively appreciate your working with the Federal Judicial Center to improve the quality of the model notices that they're developing. That's a tremendous contribution and we appreciate that very much ... You raised three points that are criteria for good noticing, and I was interested in your thoughts on how the rule itself that we've proposed could better support the creation of those or the insistence on those kinds of notices.*

41.     When working with courts and parties in litigation, I analyze issues relating to class notice using accepted tools and techniques that have been employed in many other cases and accepted by numerous other courts.  I have used these accepted tools and techniques in providing expert testimony on class notice in dozens of major high-profile cases.  For example, in *In re Dow Corning Corp.*, the Bankruptcy Court for the Eastern District of Michigan endorsed and adopted my proposed notice plan for class members who had received faulty, medically unsafe breast implants.  Bankr E.D. Mich., 95-20512-11-AJS.

42.     As an additional example, in *In re Holocaust Victim Assets Litig.,* (Swiss Banks)*,* the Eastern District of New York endorsed and adopted my proposed notice plan for class members whose money and property had been illegally obtained and converted by various Swiss financial institutions. 314 F. Supp. 2d 155, 161-162 (E.D.N.Y. 2004).   Specifically, I was the expert responsible for the analysis of the overall effectiveness of international notice in over forty (40) countries.

43.     As a further example, I was responsible for the notice efforts and plan in *In re Royal Ahold Securities & "ERISA" Litig.*, a global securities fraud case against various "Swiss Banks" involving class members all around the world.  2006 WL 132080 (D. Md. Jan. 9, 2006).

DECLARATION OF NOTICE EXPERT TODD B. HILSEE

44.    As another example, the court in the Eastern District of Louisiana endorsed and adopted my notice plan in *Turner v. Murphy Oil USA, Inc.,* which involved class members impacted and harmed by an oil spill caused by Hurricane Katrina. 472 F. Supp. 2d 830 (E.D.La. 2007). In *Murphy Oil*, Judge Eldon Fallon stated as follows about my testimony and proposed notice plan:

> *Mr. Hilsee is a highly regarded expert in class action notice who has extensive experience designing and executing notice programs that have been approved by courts across the country. Furthermore, he has handled notice plans in class action cases affected by Hurricanes Katrina, Rita, and Wilma, see In re High Sulfur Content Gasoline Products Liability Litigation, MDL 1632, p. 15-16 (E.D.La. Sept. 6, 2006) (Findings of Fact and Conclusions of Law in Support of Final Approval of Class Settlement), and has recently published an article on this very subject, see Todd B. Hilsee, Gina M. Intrepido & Shannon R. Wheatman, <u>Hurricanes, Mobility and Due Process: The "Desire to Inform" Requirement for Effective Class Notice is Highlighted by Katrina</u>, 80 Tul. L.Rev. 1771 (2006) (detailing obstacles and solutions to providing effective notice after Hurricane Katrina).*

472 F. Supp. 2d at 841 n. 10.

45.    I have also been recognized as an expert in class actions where additional class notice efforts became necessary. For example, I was appointed as the Court's notice expert by Judge Joan Gottschall in *Kaufman v. American Express,* No. 07 C 1707, a certified nationwide class action for settlement purposes involving fees and value deductions on consumer gift card balances, after an unsuccessful initial notice had an incredibly low reach and a woefully low response.  Subsequent to her Order recognizing and citing the FJC Judges' Checklist (which I helped develop, as described below) and declining to grant final settlement approval, Judge Gottschall appointed me to serve as the Court's expert. After my detailed analyses of the issues that caused the problems and drafts of new notices to solve the issues, Judge Gottschall stated during a hearing as follows:

> *". . . I want to thank Mr. Hilsee. I think we've come to a position where we may be on the cusp of saving the settlement. . . it certainly makes me happy*

14

DECLARATION OF NOTICE EXPERT TODD B. HILSEE

*and I really appreciate all your assistance."*

Later, the parties in *Kaufman*—which had opposed my appointment in favor of their administrator for the initial failed notice—reported as follows when seeking final approval of the class settlement: "*Ultimately Hilsee assisted in developing a supplemental notice program . . . [that resulted in] a 1200% improvement in total claims submitted over the Initial Notice Program*." Doc. 504.[8]

46.     Additionally, several of my articles on class notice issues have been accepted and published in law reviews. *See*, Hilsee *et al.*, *Do You Really Want Me to Know My Rights? The Ethics Behind Due Process in ClassAction Notice Is More Than Just Plain Language: A Desire to Actually Inform*, 18 GEORGETOWN JOURNAL OF LEGAL ETHICS 1359 (Fall 2005). *See also*, Hilsee et al., *Hurricanes, Mobility and Due Process: The "Desire to Inform" Requirement for Effective Class Notice is Highlighted by Katrina*, 80 TULANE LAW REVIEW 1771 (June 2006).

47.     I was asked by the FJC to draft, and collaborate through the editing process of, the 2010 release (still the current version) of its <u>FJC Judges' Checklist</u> which identifies important considerations for judges on topics, including all of those that my work in this case centered around.

48.     I am also cited as a contributor to the FJC's <u>Managing Class Actions: A Pocket</u>

---

[8]  Among other problems, I found individual notice mailings were rendered ineffective as implemented.  I consistently advised re-mailings in addition to other notice strategies, including emails (*See also* ECF No.'s 420, 421, 426, 430, and 542).  After a new notice program was approved (ECF No. 449), the parties argued that planned re-mailings were not necessary (ECF No. 466).  Nonetheless, the Court then required additional notice, and I proposed 1.97 million postal mailings plus emails (ECF No. 542).  I summarized my plan (ECF No. 581-2), the Court approved it (ECF No. 582), and it was executed. *See also* transcript, ECF No. 436, Jun. 8, 2013, PageID#:5355-5356: "HILSEE: My position is that I'm anxious to see the mailing list work be performed properly so that I can understand whether we can boost the reach by individual notice substantially.  And I'm focused on that because that is the primary and simplest and best way of increasing the response rate. E-mail notice and publication notice, your Honor, I'm gravely concerned that you're going to be disappointed with the response rate if that is what is relied upon."

DECLARATION OF NOTICE EXPERT TODD B. HILSEE

Guide for Judges, 3rd Edition (2010), which includes expanded information on notice and communications issues from past editions.  In the introduction to the FJC Pocket Guide, then-FJC Director Judge Barbara J. Rothstein wrote:

> *This pocket guide is designed to help federal judges manage the increased number of class action cases filed in or removed to federal courts as a result of the Class Action Fairness Act of 2005. . . Todd Hilsee, a class action notices expert with The Hilsee Group, supplied pro bono assistance in improving the sections on notices and on claims processes.*

49.      I have also been published on improving response and consumer ease of obtaining relief in my paper entitled, *Creating Effective Class Action Claim Forms*, WESTLAW CLASS ACTION JOURNAL, Vol. 17, Iss. 5, p. 7.

50.      As indicated in my c.v., both in my academic articles and in my cases, I have previously published and opined on, and I have been recognized over the years for, my work on class member registration and participation rate issues.

51.      I have provided *pro bono* expert services regarding model notices for Canadian class actions pursuant to a Canadian government-funded study of notice models and claims processes in class action cases. Additionally, pursuant to Canadian government initiatives, I have provided detailed reports on flaws and potential improvements in claims processes that would improve the binding effect of class action notices.

52.      I have spoken on notice and communications issues at law schools, judges' conferences, and national and state bar association symposiums. My educational materials have been utilized at Columbia Law School, New York University School of Law, Temple Law School, University of Windsor (Canada) Law School, Cleveland-Marshall College of Law, Tulane Law School, Georgetown Law School, and at Harvard Law School where I lectured on Holocaust notice

claims process, ascertainability, manageability, and related communications issues.

53.     In addition to my publications, I have been qualified to write, speak and teach on the communications issues underlying the legal issues in class actions.  Professor Arthur R. Miller, a Fed. R. Civ. P. 23 drafter in 1966, and the former Bruce Bromley Professor of Law at Harvard Law School, stated in a letter addressed to me dated June 2, 2004 (referring to my analyses of the failed publication effort that led to the seminal *Due Process* decision in *Mullane v. Central HanoverBank & Trust,* 339 U.S. 306 (1950)):

> *"I read your piece on Mullane with great interest and am delighted to learn the details. Indeed, I will probably incorporate some of it in my teaching next fall.  I think your analysis is rock solid."*

54.     Both within and outside of the class action context, I have served the United States government, the Canadian government, as well as international commissions and non-governmental organizations, to develop and implement effective notice programs. For example, I oversaw notice in the $10 billion Tobacco Transition Payment Program for the United States Department of Agriculture (then the largest claims process in history); the advertising media in the multi-billion dollar German Slave Labor Fund outreach program for the International Organization for Migration; the Nazi-era European insurance policy foreign media notice program for United States Secretary of State Emeritus Lawrence S. Eagleburger's International Commission on Holocaust Era Insurance Claims; and the overall notice effort in the multi-billion dollar Canadian Indian Residential Schools settlement notice campaign (the most complex claims notice effort in North American history).

55.     Focusing on communications issues involving recognition and understanding of inclusion in class actions has been a focus of mine.  I have chaired national conference panels for the American Bar Association's Section of Litigation, where I spoke on issues of class members' ability

to understand their inclusion in class actions and their rights thereunder.[9]

56.     I have also lectured at the FJC's national quarterly Judge Workshops (2010), speaking on notice, communications, recall, and class participation issues.  I was also invited to lecture on class action notice best practices and FJC notice guidelines before the judges attending the Northern District of California Judicial Conference (2016), prior to the NDCA adopting Procedural Guidance for Class Action Settlements, including notice guidelines (https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/) in 2018.

57.     Before I started to work in the class action notice field in 1990, I served as Account Director for Foote, Cone & Belding, then the largest domestic advertising agency. My education, training, and experience has included direct response, advertising, communications, and consumer behavior. I formed Hilsoft Notifications in 1994 where I designed and implemented class action notice programs until 2008. Since 2008, my teaching, speaking, and notice expert work has continued with The Hilsee Group LLC.  Additional qualifications, judicial recognition and case experience can be found at www.hilseegroup.org and in my attached c.v.

58.     Owing to my court recognition and frequent involvement with the FJC, I consider myself a neutral expert with a duty to provide unbiased evidence to courts.  Besides my work by court appointment pursuant to rules allowing for court- appointed experts, I have worked for defense lawyers from approximately 45 of the top 50 defense firms as well as for virtually every large and prominent

---

[9]   *See* e.g. *U.S. Courts Overseeing Multi-National Class Actions: The Notice Issues are Everywhere*, Course Materials, Todd B. Hilsee, AMERICAN BAR ASSOCIATION, Annual CLE Conference (2010); *Global Class Actions: Lasting Peace or Ticking Time Bombs?*, Todd B. Hilsee, 11 CLASS ACTION LITIG. REP. 394-396 (2010).

DECLARATION OF NOTICE EXPERT TODD B. HILSEE

class action plaintiffs' firm.

59.      In October 2019, I participated as a panelist in the Federal Trade Commission's public workshop to discuss their 2019 study on improving class action notice and response rates to which I had contributed.   FTC staff had obtained a sample of more than 140 consumer class action cases from large class action administrators, which unsurprising found that individual direct postal mail notice was the best at generating response—by far.

## IV.      CONCLUSIONS

60.      In my opinion, the notice effort reflects the "best practicable" notice, and is Rule 23-complaint, conforming to all of its requirements and safeguards, as bolstered by the *Eisen* directive requiring first-class mail to all those reasonably "identifiable" (notably not simply to those already "identified").  Here, individual notice instead of cheaper alternatives will ensure the effectiveness of the notice effort.[10]

61.      My earlier November 2021 expert report (ECF No. 196-12) outlined numerous factual and research findings supporting the efficacy and superiority of a careful and robust individual notice research and list compilation effort, in lieu of other wasteful and less effective means, and this is being done in connection with this settlement, continuing the efforts now underway at Bosch Solar.

---

[10] Eisen v. *Carlisle & Jacquelin,* 417 U.S. 156, 176 (1974).  The Supreme Court found "*The short answer to these arguments is that individual notice to identifiable class members is not a discretionary consideration to be waived in a particular case. It is, rather, an unambiguous requirement of Rule 23. As the Advisory Committee's Note explained, the Rule was intended to insure that the judgment, whether favorable or not, would bind all class members who did not request exclusion from the suit. 281 U.S.C. App. pp. 7765-7768. Accordingly, each class member who can be identified through reasonable effort must be notified that he may request exclusion from the action and thereby preserve his opportunity to press his claim separately or that he may remain in the class and perhaps participate in the management of the action. There is nothing in Rule 23 to suggest that the notice requirements can be tailored to fit the pocketbooks of particular plaintiffs.*"

DECLARATION OF NOTICE EXPERT TODD B. HILSEE

62.     This process here, given the track-record Bosch Solar is showing in tracking down class members for list development purposes, renders other means of ancillary notice unnecessary and even wasteful.  There is no point to a shotgun social media or advertising approach which would only provide a "mere gesture" of notification, when instead, each of only 280 customers can be identified and reached directly and individually through reasonable effort as described herein.

63.     The notice expert understands that class action notice must satisfy the "desire to actually inform" requirement of *Due Process* and that is being accomplished. Under *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 315 (emphasis added):

> "*But when notice is a person's due, process which is a mere gesture is not Due Process. <u>The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it</u>. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself <u>reasonably certain to inform those affected</u>, compare Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091, with Wuchter v. Pizzutti, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446, 57 A.L.R. 1230, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes*."

64.     In my opinion, after the careful completion of the subpoena process for list development as described herein, the notice program will be reasonably certain to inform those affected by directly informing them of their rights through an attention-getting, clearly-worded, and easy-to-act-upon notice, arriving directly in their mailboxes.  After completion of notice, the Notice Provider should provide a report, upon completion, indicating that notice was executed according to this plan and using the forms of notice designed as attached, and if so, notice will satisfy Rule 23 and *Due Process* in my opinion.  I reasonably anticipate that the notice will be effective at informing the class members of their rights and be effective in achieving the relief sought, including removing from the consuming public the hazard that the solar panels pose.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed at Philadelphia, PA, this 12th day of September 2022.

Todd B. Hilsee

DECLARATION OF NOTICE EXPERT TODD B. HILSEE

# EXHIBIT 1

THE HILSEE GROUP LLC                            WWW.HILSEEGROUP.ORG

SERVING COURTS · PROMOTING DUE PROCESS                    PHILADELPHIA,PENNA.

## TODD B. HILSEE C.V

**Summary**

Todd Bruce Hilsee was the first person judicially recognized as an expert on class action notice in published decisions in the United States and in Canada, *See In re Domestic Air Transp. Litig.*, 141 F.R.D. 534, (N.D. Ga., 1992) and *Wilson v. Servier Canada, Inc.*, 49 C.P.C. (4th) 233, [2000] O.J. No. 3392), among many other judicial citations.  Mr. Hilsee's ground-breaking work to establish today's notice standards included Holocaust victims' claims programs as well as international securities, asbestos, human rights, and hurricane victims' matters.  Hilsee has been cited favorably more than any other notice expert, and has testified in court more often and more successfully than any other person in the field.  Hilsee brought to courts the use of media audience data to quantify the "net reach" of class members, and brought "noticeable" notice designs as well.

Mr. Hilsee was the only notice expert invited to testify before the Advisory Committee on Civil Rules of the Judicial Conference of the United States regarding the 2003 plain language amendment to Federal Rule of Civil Procedure 23.  He subsequently collaborated to write and design the illustrative "model" plain language notices for the Federal Judicial Center (FJC), including detailed notices, summary notices and envelopes, now at www.fjc.gov.  He collaborated to create the FJC's "Notice and Claims Process Checklist and Guide" and contributed with attribution to the FJC's "Managing Class Action Litigation: A Pocket Guide for Judges."

Mr. Hilsee has authored and co-authored numerous articles on notice and due process, including law review and journal articles such as "*Do You Really Want Me to Know My Rights? The Ethics Behind Due Process in Class Action Notice Is More Than Just Plain Language: A Desire to Actually Inform,*" 18 Georgetown Journal of Legal Ethics 1359 (Fall 2005); and "*Hurricanes, Mobility and Due Process. The 'Desire to Inform' Requirement for Effective Class Notice is Highlighted by Katrina,*" 80 Tulane Law Review 1771 (June 2006).  Hilsee has lectured and/or been featured in educational DVD's and materials used during many judicial and bar association panels and symposiums, and at law schools including Harvard, Columbia, Temple, Cleveland-Marshall, and Tulane.  He has lectured at the FJC's "District Judge Workshops," and served as an editor for the ABA's International Litigation committee.

As a communications professional, he served with Foote, Cone & Belding, the largest U.S. domestic advertising firm, where he was awarded the American Marketing Association's award for effectiveness. He received his B.S. in Marketing from the Pennsylvania State University. Todd can be reached at thilsee@hilseegroup.com.

**Judicial Recognition**

**Judge Lee Rosenthal,** ***Advisory Committee on Civil Rules of the Judicial Conference of the United States*** (Jan. 22, 2002), addressing Mr. Hilsee in a public hearing on proposed changes to Federal Rule of Civil Procedure 23:

> *I want to tell you how much we collectively appreciate your working with the Federal Judicial Center to improve the quality of the model notices that they're developing. That's a tremendous contribution and we appreciate that very much…You raised three points that are criteria for good noticing, and I was interested in your thoughts on how the rule itself that we've proposed could better support the creation of those or the insistence on those kinds of notices . . .*

**Judge Barbara J. Rothstein,** ***Director, Federal Judicial Center,*** (2010) <u>Managing Class Action Litigation: A Pocket Guide for Judges</u>. (Preface):

> *This pocket guide is designed to help federal judges manage the increased number of class action cases filed in or removed to federal courts as a result of the Class Action Fairness Act of 2005. . . This third edition includes an expanded treatment of the notice and claims processes. . . Todd Hilsee, a class action notices expert with The Hilsee Group, supplied pro bono assistance in improving the sections on notices and on claims processes.*

**Judge Marvin Shoob,** ***In re Domestic Air Transp. Antitrust Litig.,*** 141 F.R.D. 534, 548 (N.D. Ga. 1992):

> *The Court finds Mr. Hilsee's testimony to be credible. Mr. Hilsee's experience is in the advertising industry. It is his job to determine the best way to reach the most people. Mr. Hilsee answered all questions in a forthright and clear manner. Mr. Hilsee performed additional research prior to the evidentiary hearing in response to certain questions that were put to him by defendants at his deposition . . . The Court believes that Mr. Hilsee further enhanced his credibility when he deferred responding to the defendant's deposition questions at a time when he did not have the responsive data available and instead utilized the research facilities normally used in his industry to provide the requested information.*

**Mr. Justice Peter Cumming,** *Wilson v. Servier Canada, Inc.,*, 49
C.P.C. (4th) 233, [2000] O.J. No. 3392:

> *[A] class-notification expert, Mr. Todd Hilsee, to provide advice and
> to design an appropriate class action notice plan for this
> proceeding.  Mr. Hilsee's credentials and expertise are impressive.
> The defendants accepted him as an expert witness.  Mr. Hilsee
> provided evidence through an extensive report by way of affidavit,
> upon which he had been cross-examined.  His report meets the
> criteria for admissibility as expert evidence. R. v. Lavallee, [1990]
> 1 S.C.R. 852.*

**Judge Elaine E. Bucklo,** *Carnegie v. Household International*, (Aug. 28,
2006) No. 98 C 2178 (N.D. Ill.):

> *Class members received notice of the proposed settlement
> pursuant to an extensive notice program designed and
> implemented by Todd B. Hilsee… Mr. Hilsee has worked with the
> Federal Judicial Center to improve the quality of class notice.  His
> work has been praised by numerous federal and state judges.*

**Judge Eldon E. Fallon,** *Turner v. Murphy, USA, Inc.,* 2007 WL 283431, at
*6 (E.D. La.):

> *Mr. Hilsee is a highly regarded expert in class action notice who
> has extensive experience designing and executing notice programs
> that have been approved by courts across the country.
> Furthermore, he has handled notice plans in class action cases
> affected by Hurricanes Katrina, Rita, and Wilma, see In re High
> Sulfur Content Gasoline Products Liability Litigation, MDL 1632, p.
> 15-16 (E.D. La. Sept. 6, 2006) (Findings of Fact and Conclusions of
> Law in Support of Final Approval of Class Settlement), and has
> recently published an article on this very subject, see Todd B.
> Hilsee, Gina M. Intrepido, & Shannon R. Wheatman, <u>Hurricanes,
> Mobility, and Due Process: The "Desire to Inform" Requirement for
> Effective Class Notice is Highlighted by Katrina, 80 Tul. L.Rev.
> 1771 (2006)</u> (detailing obstacles and solutions to providing
> effective notice after Hurricane Katrina).*

**Judge Kirk D. Johnson**, *Zarebski v. Hartford Insurance Company of the
Midwest,* (February 13, 2007) No. CV-2006-409-3 (Cir. Ct. Ark.):

> *Having admitted and reviewed the Affidavit of Todd Hilsee, and
> received testimony from Mr. Hilsee at the Settlement Approval
> Hearing concerning the success of the notice campaign, including
> the fact that written notice reached 91.8% of the potential Class*

*Members, the Court finds that it is unnecessary to afford a new opportunity to request exclusion to individual Class Members who had an earlier opportunity to request exclusion but failed to do so. The Court also concludes that the extremely small number of objections to the Stipulation and Proposed Settlement embodied therein supports the Court's decision to not offer a second exclusion window.*

**Judge William A. Mayhew**, ***Nature Guard Cement Roofing Shingles Cases***., (June 29, 2006) J.C.C.P. No. 4215 (Cal. Super. Ct.):

*The method for dissemination of notice proposed by class counsel and described by the Declaration of Todd Hilsee … constitute the fairest and best notice practicable under the circumstances of this case, comply with the*

**Judge Sarah S. Vance, *In re Educ. Testing Serv. PLT 7-12 Test Scoring Litig.*,** 447 F.Supp.2d 612, 617 (E.D. La. 2006):

*At the fairness hearing, the Court received testimony from the Notice Administrator, Todd Hilsee, who described the forms and procedure used to notify class members of the proposed settlement and their rights with respect to it . . . The Court is satisfied that notice to the class fully complied with the requirements of Rule 23.*

**Judge Douglas L. Combs, *Morris v. Liberty Mutual Fire Ins. Co.*,** (Feb. 22, 2005) No. CJ-03-714 (D. Okla.):

*I want the record also to demonstrate that with regard to notice, although my experience – this Court's experience in class actions is much less than the experience of not only counsel for the plaintiffs, counsel for the defendant, but also the expert witness, Mr. Hilsee, I am very impressed that the notice was able to reach – be delivered to 97 ½ percent members of the class. That, to me, is admirable. And I'm also – at the time that this was initially entered, I was concerned about the ability of notice to be understood by a common, nonlawyer person, when we talk about legalese in a court setting. In this particular notice, not only the summary notice but even the long form of the notice were easily understandable, for somebody who could read the English language, to tell them whether or not they had the opportunity to file a claim.*

**Judge John Speroni,** ***Avery v. State Farm,*** (Feb. 25, 1998) No. 97-L-114 (Ill. Cir. Ct. Williamson Co.):

> *[T]his Court having carefully considered all of the submissions, and reviewed their basis, finds Mr. Hilsee's testimony to be credible.  Mr. Hilsee carefully and conservatively testified to the reach of the Plaintiffs' proposed Notice Plan, supporting the reach numbers with verifiable data on publication readership, demographics and the effect that overlap of published notice would have on the reach figure . . . This Court's opinion as to Mr. Hilsee's credibility, and the scientific basis of his opinions is bolstered by the findings of other judges that Mr. Hilsee's testimony is credible.*

**Judge John D. Allen,** ***Desportes v. American General Assurance Co.,*** (April 24, 2007) No. SU-04-CV-3637 (Ga. Super. Ct.):

> [T]he Parties submitted the Affidavit of Todd Hilsee, the Court-appointed Notice Administrator and one of the preeminent class action notice experts in North America.  After completing the necessary rigorous analysis, including careful consideration of Mr. Hilsee's Affidavit, the Court finds that [the notice] . . .fully satisfied the requirements of the Georgia Rules of Civil Procedure (including Ga. Code Ann. § 9-11-23(c)(2) and (e)), the Georgia and United States Constitutions (including the Due Process Clause), the Rules of the Court, and any other applicable law.

**Judge Michael Maloan,** ***Cox v. Shell Oil,*** 1995 WL 775363, at *6, (Tenn. Ch. Ct.):

> *Cox Class Counsel and the notice providers worked with Todd B. Hilsee, an experienced class action notice consultant, to design a class notice program of unprecedented reach, scope, and effectiveness.  Mr. Hilsee was accepted by the Court as a qualified class notice expert . . . He testified at the Fairness Hearing, and his affidavit was also considered by the Court, as to the operation and outcome of this program.*

**Judge Marina Corodemus,** ***Talalai v. Cooper Tire & Rubber Co.,*** (Oct. 30, 2001) No. MID-L-8839-00-MT (N.J. Super. Ct. Middlesex Co.):

> *The parties have crafted a notice program which satisfies due process requirements without reliance on an unreasonably burdensome direct notification process.  The parties have retained Todd Hilsee... who has extensive experience designing similar notice programs...The form of the notice is reasonably calculated*

> *to apprise class members of their rights.  The notice program is specifically designed to reach a substantial percentage of the putative settlement class members.*

***Currie v. McDonald's Rests. of Canada Ltd.,*** 2005 CanLll 3360 (ON C.A.):

> *The respondents rely upon the evidence of Todd Hilsee, an individual with experience in developing notice programs for class actions.  In Hilsee's opinion, the notice to Canadian members of the plaintiff class in Boland was inadequate . . . I am satisfied that it would be substantially unjust to find that the Canadian members of the putative class in Boland had received adequate notice of the proceedings and of their right to opt out . . . I am not persuaded that we should interfere with the motion judge's findings . . . The right to opt out must be made clear and plain to the non-resident class members and I see no basis upon which to disagree with the motion judge's assessment of the notice.  Nor would I interfere with the motion judge's finding that the mode of the notice was inadequate.*

**Judge Jerome E. Lebarre,** ***Harp v. Qwest Commc'ns*** (June 21, 2002) No. 0110-10986 (Ore. Cir. Ct. Multnomah Co.):

> *So, this agreement is not calculated to communicate to plaintiffs any offer.  And in this regard I accept the expert testimony conclusions of Mr. Todd Hilsee.  Plaintiffs submitted an expert affidavit of Mr. Hilsee dated May 23 of this year, and Mr. Hilsee opines that the User Guide was deceptive and that there were many alternatives available to clearly communicate these matters....*

**Judge Dewey C. Whitenton,** ***Ervin v. Movie Gallery, Inc.,*** (Nov. 22, 2002) No. 13007 (Tenn. Ch.):

> *Based on the evidence submitted and based on the opinions of Todd Hilsee, a well-recognized expert on the distribution of class notices . . .  MGA and class counsel have taken substantial and extraordinary efforts to ensure that as many class members as practicable received notice about the settlement.  As demonstrated by the affidavit of Todd Hilsee, the effectiveness of the notice campaign and the very high level of penetration to the settlement class were truly remarkable . . . The notice campaign was highly successful and effective, and it more than satisfied the due process and state law requirements for class notice.*

**Judge Joe E. Griffin,** ***Beasley v. Hartford Insurance Company of the Midwest,*** (June 13, 2006) No. CV-2005-58-1 (Cir. Ct. Ark.):

> *Additionally, the Court was provided with expert testimony from Todd Hilsee at the Settlement Approval Hearing concerning the adequacy of the notice program.  Based on the Court's review of the evidence admitted and argument of counsel, the Court finds and concludes that the Individual Notice and the Publication Notice, as disseminated to members of the Settlement Class in accordance with provisions of the Preliminarily Approval Order, was the best notice practicable under the circumstances . . . and the requirements of due process under the Arkansas and United States Constitutions.*

**Judge Fred Biery,** ***McManus v. Fleetwood Enter., Inc.,*** (Sept. 30, 2003) No. SA-99-CA-464-F (W.D. Tex.):

> *Based upon the uncontroverted showing Class Counsel have submitted to the Court, the Court finds that the settling parties undertook a thorough notice campaign designed by Todd Hilsee . . . a nationally-recognized expert in this specialized field . . . The Court finds and concludes that the Notice Program as designed and implemented provided the best practicable notice to the members of the Class, and satisfied the requirements of due process.*

**Judge Richard G. Stearns,** ***In re Lupron Marketing and Sales Practice Litig.,*** 228 F.R.D. 75, 96 (D. Mass. 2005):

> *With respect to the effectiveness of notice, in the absence of any evidence to the contrary, I accept the testimony of Todd Hilsee that the plan he designed achieved its objective of exposing 80 percent of the members of the consumer class. . .*

**Mr. Justice Maurice Cullity,** ***Parsons/Currie v. McDonald's Rests. of Can.,*** (Jan. 13, 2004) 2004 Carswell Ont. 76, 45 C.P.C. (5th) 304, [2004] O.J. No.83:

> *I found Mr. Hilsee's criticisms of the notice plan in Boland to be far more convincing than Mr. Pines' attempts during cross-examination and in his affidavit to justify his failure to conduct a reach and frequency analysis of McDonald's Canadian customers. I find it impossible to avoid a conclusion that, to the extent that the notice plan he provided related to Canadian customers, it had not received more than a perfunctory attention from him.  The fact that the information provided to the court was inaccurate and misleading and that no attempt was made to advise the court after*

> *the circulation error had been discovered might possibly be disregarded if the dissemination of the notice fell within an acceptable range of reasonableness.  On the basis of Mr. Hilsee's evidence, as well as the standards applied in class proceedings in this court, I am not able to accept that it did.*

**Judge Catherine C. Blake,** *In re Royal Ahold Securities & "ERISA" Litig.,* (June 16, 2006) MDL-1539 (D. Md.):

> *In that regard, I would also comment on the notice.  The form and scope of the notice in this case, and I'm repeating a little bit what already appeared to me to be evident at the preliminary stage, but the form and scope of the notice has been again remarkable . . . The use of sort of plain language, the targeting of publications and media, the website with the translation into multiple languages, the mailings that have been done, I think you all are to be congratulated, and Mr. Hilsee and Claims Administrator as well.*

**Judge Paul H. Alvarado,** *Microsoft I-V Cases,* (July 6, 2004) J.C.C.P. No. 4106 (Cal. Super. Ct.):

> *[T]he Court finds the notice program of the proposed Settlement was extensive and appropriate.  It complied with all requirements of California law and due process.  Designed by an expert in the field of class notice, Todd B. Hilsee, the notice plan alone was expected to reach at least 80% of the estimated 14.7 million class members. (Hilsee Decl. Ex. 3, ¶28).  The Settlement notice plan was ultimately more successful than anticipated and it now appears that over 80% of the class was notified of the Settlement.*

**Judge Denise L. Cote**, *In re SCOR Holding (Switzerland) AG Litig.,* (October 24, 2007) No. 04-CV-7897 (S.D. NY):

> *I should say I have not had a case before, that I remember, at least, in which an issue of the extent to which notice would effectively be made outside this country, and that seems to be the principal point of the affidavit of Mr. Hilsee, which is the first exhibit to the October 12 submission, and I've reviewed it.  It seems as if it proposes something reasonable in terms of a plan of action to obtain notice that would be consistent with the constitutional requirements of due process so a judgment could be effectively entered in this litigation, including a bar order.*

**Judge Marina Corodemus,** ***Talalai v. Cooper Tire & Rubber Co.,*** (Sept. 13, 2002) No. L-008830.00 (N.J. Super. Ct. Middlesex Co.):

> *Here, the comprehensive bilingual, English and Spanish, court-approved Notice Plan provided by the terms of the settlement meets due process requirements.  The Notice Plan used a variety of methods to reach potential class members.  For example, short form notices for print media were place . . .throughout the United States and in major national consumer publications which include the most widely read publications among Cooper Tire owner demographic groups . . . Mr. Hilsee designed the notification plan for the proposed settlement in accordance with this court's Nov. 1, 2001 Order.  Mr. Hilsee is . . . well versed in implementing and analyzing the effectiveness of settlement notice plans.*

**Judge Lewis A. Kaplan,** ***In re Parmalat Securities Litig.,*** (March 1, 2007) MDL No. 1653-LAK (S.D. N.Y.):

> *The court approves, as to form and content, the Notice and the Publication Notice, attached hereto as Exhibits 1 and 2, respectively, and finds that the mailing and distribution of the Notice and the publication of the Publication Notice in the manner and the form set forth in Paragraph 6 of this Order and in the Affidavit of Todd B. Hilsee meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Securities Exchange Act of 1934, as emended by Section 21D(a)(7) of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(7), and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons and entities entitled thereto.*

**Judge Richard J. Shroeder,** ***St. John v. Am. Home Prods. Corp.,*** (Aug. 2, 1999) No. 97-2-06368-4 (Wash. Super. Ct. Spokane Co.):

> *[T]he Court considered the oral argument of counsel together with the documents filed herein, including the Affidavit of Todd B. Hilsee on Notice Plan…The Court finds that plaintiffs' proposed Notice Plan is appropriate and is the best notice practicable under the circumstances by which to apprise absent class members of the pendency of the above-captioned Class Action and their rights respecting that action.*

**Judge Carter Holly, *Richison v. Am. Cemwood Corp.,*** (Nov. 18, 2003) No. 005532 (Cal. Super. Ct. San Joaquin Co.):

> *The parties undertook an extensive notice campaign designed by a nationally recognized class action notice expert.   See generally, Affidavit of Todd B. Hilsee on Completion of Additional Settlement Notice Plan.*

**Judge Kirk D. Johnson**, ***Sweeten v. American Empire Insurance Co.,*** (August 20, 2007) Cir. Ct. Ark., No. CV-2007-154-3:

> *Let [Mr. Hilsee] be so admitted for the purposes of this hearing, having been previously admitted by the Court and the Court having found his qualifications exemplary in this field.*

**Judge Robert Wyatt**, ***Gunderson v. F.A. Richard & Associates, Inc.,*** (July 19 2007) Cir. Ct. 14th Jud. D. Ct. La., No. 2004-2417-D:

> *The Court will so accept [Mr. Hilsee as an expert] on issues of the content and dissemination of legal notices, including Class Action Notices and notice campaigns.*

**Judge John R. Padova, *Rosenberg v. Academy Collection Service, Inc.*** (Dec. 19, 2005) No. 04-CV-5585 (E.D. Pa.):

> *[U]pon consideration of the Memorandum of Law in Support of Plaintiff's Proposed Class Questionnaire and Certification of Todd Hilsee, it is hereby ORDERED that Plaintiff's form of class letter and questionnaire in the form appended hereto is APPROVED. F.R.Civ.P. 23(c).*

**Judge Bernard Zimmerman, *Ting v. AT&T,*** 182 F.Supp.2d 902, 912-913 (N.D. Cal. 2002) (Hilsee had testified on the importance of wording and notice design features):

> *The phrase 'Important Information' is increasingly associated with junk mail or solicitations . . . From the perspective of affecting a person's legal rights, the most effective communication is generally one that is direct and specific.*

**Judge David De Alba, *Ford Explorer Cases***, (Aug. 19, 2005) J.C.C.P. Nos. 4226 & 4270 (Cal. Super. Ct., Sacramento Co.):

> *It is ordered that the Notice of Class Action is approved.  It is further ordered that the method of notification proposed by Todd B. Hilsee is approved.*

10

**Judge Louis J. Farina,** ***Soders v. General Motors Corp.*** (Oct. 31, 2003) No. CI-00-04255 (Pa. C.P. Lancaster Co.):

> *In this instance, Plaintiff has solicited the opinion of a notice expert who has provided the Court with extensive information explaining and supporting the Plaintiff's notice plan…After balancing the factors laid out in Rule 1712(a), I find that Plaintiff's publication method is the method most reasonably calculated to inform the class members of the pending action.*

**Judge Eldon E. Fallon,** ***Turner v. Murphy, USA, Inc.,*** 2007 WL 283431, at *5 (E.D. La.):

> *Most of the putative class members were displaced following hurricane Katrina . . . With this challenge in mind, the parties prepared a notice plan designed to reach the class members wherever they might reside. The parties retained Todd Hilsee . . . to ensure that adequate notice was given to class members in light of the unique challenges presented in this case.*

**Judge Ronald B. Leighton,** ***Grays Harbor Adventist Christian School v. Carrier Corporation,*** (May 29, 2007) No. 05-05437 (W.D. Wash):

> *The Court has considered this motion, the Affidavit of Todd B. Hilsee on Class Certification Notice Plan and the exhibits attached thereto, and the files and records herein. Based on the foregoing, the Court finds Plaintiffs' Motion for Approval of Proposed Form of Notice and Notice Plan is appropriate and should be granted.*

**Judge Richard J. Holwell,** ***In re Vivendi Universal, S.A. Securities Litig.,*** 2007 WL 1490466, at *34 (S.D.N.Y.):

> *In response to defendants' manageability concerns, plaintiffs have filed a comprehensive affidavit outlining the effectiveness of its proposed method of providing notice in foreign countries. (See Affidavit of Todd B. Hilsee on Ability to Provide Multi-National Notice to Class Members, Dec. 19, 2005 ("Hilsee Aff.") ¶ 7.) According to this . . . the Court is satisfied that plaintiffs intend to provide individual notice to those class members whose names and addresses are ascertainable, and that plaintiffs' proposed form of publication notice, while complex, will prove both manageable and the best means practicable of providing notice.*

**Judge Catherine C. Blake,** ***In re Royal Ahold Securities & "ERISA" Litig.,***
2006 WL 132080, at *4 (D. Md.):

> *The Court further APPROVES the proposed Notice Plan, as set forth*
> *in the Affidavit of Todd B. Hilsee On International Settlement*
> *Notice Plan, dated December 19, 2005 (Docket No. 684). The Court*
> *finds that the form of Notice, the form of Summary Notice, and the*
> *Notice Plan satisfy the requirements of* <u>*Fed.R.Civ.P. 23*</u>*, due*
> *process, constitute the best notice practicable under the*
> *circumstances, and shall constitute due and sufficient notice to all*
> *members of the Class.*

**Judge John D. Allen,** ***Carter v. North Central Life Ins. Co.,*** (April 24, 2007)
No. SU-2006-CV-3764-6 (Ga. Super. Ct.):

> [T]he Parties submitted the Affidavit of Todd Hilsee, the Court-
> appointed Notice Administrator and one of the pre-eminent class
> action notice experts in North America. After completing the
> necessary rigorous analysis, including careful consideration of
> Mr. Hilsee's Affidavit, the Court finds that . . . The Notices
> prepared in this matter were couched in plain, easily understood
> language and were written and designed to the highest
> communication standards. The Notice Plan effectively reached a
> substantial percentage of Class Members and delivered
> noticeable Notices designed to capture Class Members' attention;

**Judge Louis J. Farina,** ***Soders v. General Motors Corp.,*** (Oct. 31,
2003) No. CI-00-04255 (Pa. C.P. Lancaster Co.):

> *Plaintiff provided extensive information regarding the reach of their*
> *proposed plan. Their notice expert, Todd Hilsee, opined that their*
> *plan will reach 84.8% of the class members. Defendant provided*
> *the Court with no information regarding the potential reach of their*
> *proposed plan . . . There is no doubt that some class members will*
> *remain unaware of the litigation, however, on balance, the*
> *Plaintiff's plan is likely to reach as many class members as the*
> *Defendant's plan at less than half the cost. As such, I approve the*
> *Plaintiff's publication based plan.*

**Judge Paul H. Alvarado,** ***Microsoft I-V Cases,*** (July 6, 2004) J.C.C.P. No.
4106 (Cal. Super. Ct.):

> *The notification plans concerning the pendency of this class action*
> *were devised by a recognized class notice expert, Todd B. Hilsee.*
> *Mr. Hilsee devised two separate class certification notice plans*

12

*that were estimated to have reached approximately 80% of California PC owners on each occasion.*

**Judge Robert E. Payne, *Fisher v. Virginia Electric & Power Co.,*** (Feb. 12, 2004) No. 3:02-CV-431 (E.D. Va.):

*The expert, Todd B. Hilsee, is found to be reliable and credible.*

**Judge Sarah S. Vance, *In re Educ. Testing Serv. PLT 7-12 Test Scoring Litig.,*** 447 F.Supp.2d 612, 627 (E.D. La. 2006):

*At the fairness hearing, class counsel, the Special Master, notice expert Todd Hilsee, and the Court Appointed Disbursing Agent detailed the reasons for requiring claims forms . . . As Todd Hilsee pointed out in his testimony, because plaintiffs had the choice of either individualized damages or an expedited payment, to send the expedited payments with the notice has the potential of encouraging plaintiffs to forego individualized recovery for far less than value, merely by cashing the check.   The obvious undesirability of this suggestion gives the unmistakable appearance that the objection was captious.  The objection to the claims process for expedited payments is overruled.*

**Judge Richard G. Stearns, *In re Lupron® Marketing and Sales Practice Litig.,*** 228 F.R.D. 75, 96 (D. Mass. 2005):

*I have examined the materials that were used to publicize the settlement, and I agree with Hilsee's opinion that they complied in all respects with the "plain, easily understood language" requirement of Rule 23(c).  In sum, I find that the notice given meets the requirements of due process.*

**Judge John R. Padova, *Nichols v. SmithKline Beecham Corp.,*** (Apr. 22, 2005) No. 00-CV-6222 (E.D. Pa.):

*As required by this Court in its Preliminary Approval Order and as described in extensive detail in the Affidavit of Todd B. Hilsee on Design Implementation and Analysis of Settlement Notice Program...Such notice to members of the Class is hereby determined to be fully in compliance with requirements of Fed. R. Civ. P. 23(e) and due process and is found to be the best notice practicable under the circumstances and to constitute due and sufficient notice to all entities entitled thereto.*

13

**Judge Sarah S. Vance,** *In re Babcock & Wilcox Co.,* (Aug. 25, 2000) No. 00-0558 (E.D. La.):

> *Furthermore, the Committee has not rebutted the affidavit of Todd Hilsee. . . that the (debtor's notice) plan's reach and frequency methodology is consistent with other asbestos-related notice programs, mass tort bankruptcies, and other significant notice programs…After reviewing debtor's Notice Plan, and the objections raised to it, the Court finds that the plan is reasonably calculated to apprise unknown claimants of their rights and meets the due process requirements set forth in Mullane . . . Accordingly, the Notice Plan is approved.*

**Judge Joe E. Griffin,** *Beasley v. Hartford Insurance Company of the Midwest,* (June 13, 2006) No. CV-2005-58-1 (Cir. Ct. Ark.):

> *[R]eceived testimony from Mr. Hilsee at the Settlement Approval Hearing concerning the success of the notice campaign, including the fact that written notice reached 97.7% of the potential Class members, the Court finds that it is unnecessary to afford a new opportunity to request exclusion to individual Class Members who had an earlier opportunity to request exclusion, but did not do so. The Court also concludes that the lack of valid objections also supports the Court's decision to not offer a second exclusion window . . . Although the Notice Campaign was highly successful and resulted in actual mailed notice being received by over 400,000 Class Members, only one Class Member attempted to file a purported objection to either the Stipulation or Class Counsels' Application for Fees. The Court finds it significant that out of over 400,000 Class Members who received mailed Notice, there was no opposition to the proposed Settlement or Class Counsels' Application for Fees, other than the single void objection. The lack of opposition by a well-noticed Class strongly supports the fairness, reasonableness and adequacy of the Stipulation and Class Counsels' Application for Fees.*

**Judge James R. Williamson, Kline v. The Progressive Corp.,** (Nov. 14, 2002) No. 01-L-6 (Cir. Ct. Ill. Johnson Co.):

> *The Court has reviewed the Affidavit of Todd B. Hilsee, one of the Court-appointed notice administrators, and finds that it is based on sound analysis. Mr. Hilsee has substantial experience designing and evaluating the effectiveness of notice programs.*

14

**Judge Ross P. LaDart,** *Meckstroth v. Toyota Motor Sales USA, Inc.,* (February 7, 2007) No. 583-318 (24th Jud. D. Ct. La.):

> [U]nless there's any objection, the Court is aware of Mr. Hilsee's reputation. I'm aware of the most recent Tulane Law Review and other publications by you and members of your staff.  He's so accepted as an expert as tendered.

**Judge Joseph R. Goodwin,** *In re Serzone Products Liability Litig.,* 231 F.R.D. 221, 236 (S.D. W. Va. 2005):

> As Mr. Hilsee explained in his supplemental affidavit, the adequacy of notice is measured by whether notice reached Class Members and gave them an opportunity to participate, not by actual participation. (Hilsee Supp. Aff. ¶ 6(c)(v), June 8, 2005)...Not one of the objectors support challenges to the adequacy of notice with any kind of evidence; rather, these objections consist of mere arguments and speculation.  I have, nevertheless, addressed the main arguments herein, and I have considered all arguments when evaluating the notice in this matter.  Accordingly, after considering the full record of evidence and filings before the court, I FIND that notice in this matter comports with the requirements of Due Process under the Fifth Amendment and Federal Rules of Civil Procedure 23(c)(2) and 23(e).

**Judge Kirk D. Johnson**, *Zarebski v. Hartford Insurance Company of the Midwest,* (February 13, 2007) No. CV-2006-409-3 (Cir. Ct. Ark):

> Additionally, the court was provided with expert testimony from Todd Hilsee at the Settlement Approval Hearing concerning the adequacy of the notice program . . . Based on the Court's review of the evidence admitted and argument of counsel, the Court finds and concludes that the Class Notice, as disseminated to members of the Settlement Class in accordance with provisions of the Preliminary Approval Order, was the best notice practicable under the circumstances to all members of the Settlement Class.

**Judge Alfred G. Chiantelli,** *Williams v. Weyerhaeuser Co.,* (Dec. 22, 2000) No. 995787 (Cal. Super. Ct. San Francisco Co.):

> The Class Notice complied with this Court's Order, was the best practicable notice, and comports with due process . . . Based upon the uncontroverted proof Class Counsel have submitted to the Court, the Court finds that the settling parties undertook an extensive notice campaign designed by Todd Hilsee . . . a nationally recognized expert in this specialized field.

**Judge Kirk D. Johnson**, ***Sweeten v. American Empire Insurance Co.,*** (August 20, 2007) Cir. Ct. Ark., No. CV-2007-154-3:

> *[T]he Court . . . of course has recognized the testimony of Todd Hilsee . . . which was given here today in open court, and Mr. Hilsee being admitted as an expert in this particular field . . .*

**Judge Ivan L.R. Lemelle**, ***In re High Sulfur Content Gasoline Prods. Liability Litig.,*** (November 8, 2006) MDL No. 1632 (E.D. La.):

> *[T]his Court approved a carefully-worded Notice Plan. . . See Affidavit of Todd B. Hilsee on Motion by Billy Ray Kidwell, attached as Exhibit A; see also, Affidavit of Todd B. Hilsee, attached as Exhibit C to the Joint Motion for Final Approval of Class Settlement (Record Doc. No. 71); Testimony of Todd Hilsee at Preliminary Approval Hearing, Tr. pp 6-17, attached as Exhibit B; Testimony of Todd Hilsee at Final Fairness Hearing, Tr. pp. 10-22, attached as Exhibit C.*

**Regional Senior Justice Winkler, *Baxter v. Canada (Attorney General),*** (March 10, 2006) No. 00-CV-192059- CPA (Ont. Super. Ct.):

> *The plaintiffs have retained Todd Hilsee, an expert recognized by courts in Canada and the United States in respect of the design of class action notice programs, to design an effective national notice program . . . the English versions of the Notices provided to the court on this motion are themselves plainly worded and appear to be both informative and designed to be readily understood.  It is contemplated that the form of notice will be published in English, French and Aboriginal languages, as appropriate for each media vehicle.*

**Judge James T. Genovese, *West v. G&H Seed Co.,*** (May 27, 2003) No. 99-C-4984-A (La. Jud. Dist. Ct. St. Landry Parish):

> *The court finds that, considering the testimony of Mr. Hilsee, the nature of this particular case, and the certifications that this court rendered in its original judgment which have been affirmed by the – for the most part, affirmed by the appellate courts, the court finds Mr. Hilsee to be quite knowledgeable in his field and certainly familiar with these types of cases...the notice has to be one that is practicable under the circumstances.  The notice provided and prepared by Mr. Hilsee accomplishes that purpose . . .*

**Judge Milton Gunn Shuffield,** ***Scott v. Blockbuster Inc.,*** (Jan. 22, 2002) No.
D 162-535 (Tex. Jud. Dist. Ct. Jefferson Co.):

> *In order to maximize the efficiency of the notice . . .Todd Hilsee . . .*
> *prepared and oversaw the notification plan.   The record reflects*
> *that Mr. Hilsee is very experienced in the area of notification in*
> *class action settlements…This Court concludes that the notice*
> *campaign was the best practicable, reasonably calculated, under*
> *all the circumstances, to apprise interested parties of the*
> *settlement and afford them an opportunity to present their*
> *objections . . . The notice campaign was highly successful and*
> *effective, and it more than satisfied the due process and state law*
> *requirements for class notice.*

**Judge Richard G. Stearns,** ***In re Lupron Marketing and Sales Practice***
***Litig.***, 228 F.R.D. 75, 84 (D. Mass. 2005):

> *Todd B. Hilsee . . . has served as a notice expert in more than 175*
> *class action cases, including In re Holocaust Victims Assets Litig.,*
> *No. CV-96-4849 (E.D.N.Y.); In re Domestic Air Transp. Antitrust*
> *Litig., MDL 861 (N.D.Ga.); In re Dow Corning Corp., 95-20512-11*
> *(Bankr.E.D.Mich.); In re Synthroid Mktg., MDL 1182 (N.D.Ill.); and*
> *In re Bridgestone/Firestone Tires Prods. Liab. Litig., MDL No. 1373*
> *(S.D.Ind.). Hilsee was the only notice expert invited to testify*
> *before the Advisory Committee on Civil Rules on the amendment to*
> *Rule 23 requiring "clear, concise, plain language notices." Hilsee*
> *was also asked by the Federal Judicial Center to design model*
> *notices to illustrate Rule 23 plain language "best practices."…*

**Judge Susan Illston** (N.D. Cal.), on Todd Hilsee's presentation at the ABA's
7th Annual National institute on Class Actions, Oct. 24, 2003, San Francisco,
Cal.:

> *The notice program that was proposed here today, I mean, it's*
> *breathtaking.   That someone should have thought that clearly*
> *about how an effective notice would get out.   I've never seen*
> *anything like that proposed in practice . . . I thought the program*
> *was excellent.   The techniques available for giving a notification is*
> *something that everyone should know about.*

**Madam Justice Joan L. Lax,** ***Donnelly v. United Technologies,*** (October 27,
2008) No. 06-CV-320045CP (Ont. Super. Ct.):

> *. . .Todd Hilsee, an expert recognized by courts in Canada and the*
> *United State in respect of the design of class action notice*
> *programs, described the Canadian Notice Plan. . .I am satisfied*

*that Mr. Hilsee's plan is comprehensive, that it will have a high 'reach'. . .*

**Madam Justice Joan L. Lax,** ***Wong v. TJX,*** (February 4, 2008) No. 07-CT-000272CP (Ont. Super. Ct.):

*Mr. Hilsee has been recognized as a notice expert in Canadian class proceedings as well as in the United States. The proposed notice plan not only comports with Canadian standards, but it has virtually the same coverage as in the United States.*

**Oregon Court of Appeals,** ***Froeber v. Liberty Mutual,*** (September 10, 2008) No. A132263 (Judge Rex Armstrong):

*As to the notice issue, defendants introduced the testimony of Hilsee, an expert on notice who helped the parties in this case draft, create, and disseminate the notice. Hilsee testified, among other things, that the format of the notice followed standards set in national model notices, that the content of the notice adequately informed readers of the claims that the settlement released, and that including specific information about the putative Delaware action would have fostered confusion rather than clarity. After counsel for defendants and for objectors presented arguments, the trial court rejected objectors' notice argument by finding that "the notice is adequate. I feel the testimony by Mr. Hilsee is persuasive. . ." [T]hose conclusions had support in Hilsee's expert testimony, which--although such expert testimony is not strictly required to support a determination that notice is adequate--lent persuasive support that objectors did not counter or controvert with evidence of their own.*

**Judge Colleen Mary O'Toole,** ***West v. Carfax,*** (December 24, 2009) 2009-Ohio-6857, (Ohio Court of Appeals); 2009 WL 5064143 (Ohio App. 11 Dist.):

*[Appellants] question the effectiveness of email notice to post-2003 customers, observing that many people simply delete unsolicited emails as spam. Further, through the affidavit testimony of their expert, Todd B. Hilsee, they question whether mail notice was not possible to the balance of Carfax customers. Mr. Hilsee is a nationally-recognized expert in designing notices for class actions. . . Mr. Hilsee testified that similar procedures are routine in automotive litigation. Mr. Hilsee also questioned the efficacy of the publication notice given in Investor's Business Daily and USA Today, testifying that these papers were unlikely to be read by the population demographic which dominates the used car market.*

> *We agree with appellants that, pursuant to Eisen, the notice provided in this case was defective.*

**Mr. Justice J.R. Henderson,** ***Smith v. Inco,*** (November 13, 2009) No. 12023/01 (Ontario Super. Ct.):

> *I also find that Hilsee is qualified to provide an opinion on these Issues. Hilsee has been accepted as an expert witness in many courts in the United States of America as to the design and implementation of notice programs created to notify class members of their rights with respect to class actions.  He has also provided prospective and retrospective analyses of such notice programs, both in Canada and the USA. . .Given his education, work experience, and prior court involvement, I accept that Hilsee has an expertise in the fields of comprehension, dissemination, and readability of public documents.*

**Judge David S. Gorbaty,** ***Orrill v. AIG,*** *Orrill v. AIG, Inc.*, 38 So. 3d 457, 462-466 (La.App. 4 Cir. 2010):

> *It is our opinion that the persons who were suddenly subsumed into Orrill settlement class did not receive adequate notice and were not adequately represented. . . The appellants also presented the testimony of Todd Hilsee, who the court accepted as an expert in communications and notice. . . Appellants' expert, Todd Hilsee, opined that the notice in this case was woefully inadequate in terms of what a qualified professional would use to actually inform the class of its rights and options.*

**Judge F. Pat VerSteeg,** ***Weber v. Mobil Oil,*** (March 21, 2011) Case No. CJ-2001-53 (District Court of Custer County, State of Oklahoma):

> *Based upon testimony of the class notice expert, Todd Hilsee, approximately 40% of the putative class resides outside of the State of Oklahoma. No provision of the notice distribution plan suggests a methodology to reach those absent class members residing outside the State of Oklahoma, or for that matter, outside Dewey and Custer Counties. To be adequate, the notice plan and design must include a methodology whereby the Court can objectively determine the effectiveness of the class members reached. This is measured by a percentage of at least 70% or more. Without a calculation methodology the court has no objective basis from which a notice plan can be evaluated.*

**Judge M. Joseph Tiemann,** ***Billieson v. Housing Authority of New Orleans,*** (May 27, 2011) Case No. 94-19231 (Civil District Court for The Parish Of Orleans, State Of Louisiana):

> [T]he Court also gave consideration to the following…The fact that Mr. Hilsee is a highly-regarded Notice Expert, and has provided thoughtful, scientific, carefully researched and detailed reports, analyses, and ultimately, his <u>Affidavit</u>. His recommendations are grounded in relevant experience regarding communicating complex legal information to class members in class action litigation. He was a lead author of the Federal Judicial Center's (the "FJC") Model Plain Language Notices, as well as the FJC publication entitled 2010 Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, and he contributed content on the subject of notice to the FJC's 2010 3rd edition of Managing Class Actions: A Pocket Guide for Judges (all of which may be found at <u>www.fjc.gov</u>.)

**Judge Joan B. Gottschall,** ***Kaufman v. American Express,*** (August 2, 2012) Case No. 07-01707 (United States District Court for the Northern District of Illinois):

> After considering several proposed notice experts for the purpose of undertaking a second round of notice in this case, the court gave the Settling Parties an opportunity to respond to the proposed appointment of Todd B. Hilsee. The court has reviewed the Settling Parties' objections to Mr. Hilsee's appointment as well as the resumes of all proposed experts. The court does not view the objections to Mr. Hilsee's appointment as substantial. Mr. Hilsee appears to be the most qualified and experienced expert of those proposed, and the court concludes that he is an appropriate expert for this type of case

**Judge Joan B. Gottschall,** ***Kaufman v. American Express,*** (August 9, 2013) Case No. 07-01707 (United States District Court for the Northern District of Illinois):

> With regard to the limited opposition filed by the intervenors, the court agrees with the position taken by Mr. Hilsee, the court-appointed notice expert, that references to the intervenors' objections in the Supplemental Notice would not be neutral and would potentially prejudice class members, who can decide for themselves whether to object to or opt out of the settlement.

**Academic and Practitioner Comments**

20

**Arthur R. Miller,** Professor of Law, Harvard Law School:

> *I read your piece on <u>Mullane</u> with great interest and am delighted to learn the details.  Indeed, I will probably incorporate some of it in my teaching next fall.  I think your analysis is rock solid.*

**Dianne M. Nast,** Partner, RodaNast, P.C.:

> *Your testimony in Atlanta on Tuesday was exceptional.  Rarely does one find a witness so well prepared, so thoughtful, careful and accurate in response to questioning, and so sincerely committed to careful preparation and accurate testimony.  We are all appreciative of the extra effort you brought to the task.  If the court rules in our favor, it will surely be in some measure as a result of your testimony.  If the court does not rule in our favor, it certainly will not be as a result of anything you omitted or failed to do.*

**Eugene I. Goldman,** Partner, McDermott, Will & Emery LLP:

> *Hilsee was the defendant MCI's notice expert in two consolidated consumer class actions filed in Augusta, Georgia.  Hilsee recognized that the socio-economics of class members indicated that the "traditional" media vehicles for notice, i.e., Wall Street Journal, would not reach many class members.  Hilsee provided an affidavit and in-court testimony in favor of a plan that involved easy to understand notice in multiple publications. . . He also testified against an alternative plan presented by plaintiffs, which he felt was inferior.  Hilsee was questioned by counsel for the parties as well as the Court.  The Judge was impressed by Mr. Hilsee's expertise and accepted Mr. Hilsee's advice by ordering the implementation of Mr. Hilsee's notice plan.*

**Darren E. Baylor,** Associate Director, American Bar Association Center for Continuing Legal Education:

> *Todd has definitely developed an entertaining and informative presentation on effective notice techniques that creatively connect the class member to class action claims. He presents his information in a way that educates and engages the audience while providing a refreshing perspective on claims notification.*

**F. Paul Bland, Jr.,** Staff Attorney, Public Justice:

> *Hilsee has a deep and extensive knowledge of communications strategies and marketing for consumers.   In several hotly contested cases, he has served as an expert witness on behalf of my clients, and his thoughtful, thorough and careful analyses stood up brilliantly through white-hot cross-examinations and probing.  I've also seen a good deal of his work in the class action notice area, and he's a nationally recognized leader in that field.*

**Elizabeth J. Cabraser,** Partner, Lieff, Cabraser, Heimann & Bernstein, LLP, at Tulane Law School, February 2008:

> *Todd Hilsee understands and appreciates the profound implications of notice on due process more than many, many lawyers. . . He is a notice expert; he is a communications expert; but his dedication to the idea of due process through communication transcends his work assignments and his living. . . He is a low key, personable person; very matter of fact about what he does.  Do not be fooled; he is a giant in the field.*

**Robert J. Niemic,** Senior Staff Attorney, Federal Judicial Center:

> *Todd Hilsee deserves one of the strongest endorsements I can give for his expertise on class action notice processes, his hands-on contributions to revising notices into plain language documents that now serve as "models" for the industry, and his colleagues' widespread recognition of him as a foremost world expert.  All the work that Todd did for the Federal Judicial Center (my employer) was pro bono.  His commitment to the cause of creating more understandable and complete notices for class action plaintiffs is unparalleled, in my experience. The resulting illustrative notices (posted at www.fjc.gov) reflect significant improvements, in terms of form, clarity, and plain language.  Todd has had a huge national impact on the field of class actions that will endure and continue.  He is enthusiastic and it's inspiring and enjoyable working with him.*

**Publications**

*Effective Class Action Notice Promotes Access to Justice: Insight from a New U.S. Federal Judicial Center Checklist,* Chapter in treatise published by LexisNexis <u>Accessing Justice – Appraising Class Actions Ten Years After Dutton, Hollick and Rumley</u>, 23 SUPREME COURT LAW REVIEW 275 (2011).  Chapter Author: Todd B. Hilsee, Treatise General Editor: Jasminka Kalajdzic

*Analysis of the FJC's 2010 Judges' Class Action Notice and Claims Process Checklist and Guide: A Roadmap to Adequate Notice and Beyond*, 12 CLASS ACTION LITIG. REP. 165-172 (2011).  Author: Todd B. Hilsee

*Creating Effective Class Action Claim Forms*, WESTLAW CLASS ACTION JOURNAL, v. 17, iss. 5. (2010); WESTLAW EMPLOYMENT JOURNAL, v. 24, iss. 21.  (2010). Authors: Todd B. Hilsee and Barbara Coyle Hilsee

*Analysis of Effectiveness of Class Action Claim Forms*, OPTION CONSOMMATEURS, (2010).  Authors: Todd B. Hilsee and Barbara Coyle Hilsee

*Global Class Actions: Lasting Peace or Ticking Time Bombs?* 11 CLASS ACTION LITIG. REP. 394-396 (2010); AMERICAN BAR ASSOCIATION, CLASS ACTIONS AND DERIVATIVE SUITS COMMITTEE, Website (2010).  Author: Todd B. Hilsee

*U.S. Courts Overseeing Multi-National Class Actions: The Notice Issues are Everywhere*, Course Materials, AMERICAN BAR ASSOCIATION, Annual CLE Conference (2010).  Author: Todd B. Hilsee

*Nationwide Class Actions: Shine a light on (another) bad notice*, 9 CLASS ACTION LITIG. REP. 113-126 (2008); 36 PRODUCT SAFETY AND LIABILITY. REP. 346-59 (2008); AMERICAN BAR ASSOCIATION, 11th Annual Institute on Class Actions (2007).  Author: Todd B. Hilsee

*Seven Steps to a Successful Class Action Settlement,* AMERICAN BAR ASSOCIATION, SECTION OF LITIGATION, CLASS ACTIONS TODAY 16 (2008). Authors: John B. Isbister, Todd B. Hilsee, & Carla A. Peak

*Canadian Class Action Notice - A Rising Tide of Effectiveness?* OSGOODE HALL LAW SCHOOL, YORK UNIVERSITY, 4th National Symposium on Class Actions (2007). Author: Todd B. Hilsee

*The "Desire to Inform" Is in Your Hands: Creatively Design Your Notice Program to Reach the Class Members and Satisfy Due Process*, AMERICAN BAR ASSOCIATION, 10th Annual Institute on Class Actions (2006). Author: Todd B. Hilsee

*Hurricanes, Mobility and Due Process:  The "Desire-to-Inform" Requirement for Effective Class Action Notice Is Highlighted by Katrina*, 80 TULANE LAW REV. 1771 (2006); reprinted in course materials for: AMERICAN BAR ASSOCIATION, 10th Annual National Institute on Class Actions (2006); NATIONAL BUSINESS INSTITUTE, Class Action Update: Today's Trends & Strategies for Success (2006); CENTER FOR LEGAL EDUCATION INTERNATIONAL, Class Actions: Prosecuting and Defending Complex Litigation (2007). Authors: Todd B. Hilsee, Gina M. Intrepido, & Shannon R. Wheatman

*Do You Really Want Me to Know My Rights?*  The Ethics Behind Due Process in Class Action Notice Is More Than Just Plain Language:  A Desire to *Actually Inform*, 18 GEORGETOWN JOURNAL LEGAL ETHICS 1359 (2005). Authors: Todd B. Hilsee, Shannon R. Wheatman, & Gina M. Intrepido

Notice Provisions in S. 1751 Raise Significant Communications Problems, 5 Class Action LITIG. REP. 30 (2004). Author: Todd B. Hilsee

*Plain Language is Not Enough*, FEDERAL TRADE COMMISSION, Protecting Consumer Interests in Class Actions (2004). Author: Todd B. Hilsee

*The Federal Judicial Center's Model Plain Language Class Action Notices:  A New Tool for Practitioners and the Judiciary*, 5 CLASS ACTION LITIG. REP. 182 (2003). Authors: Todd B. Hilsee & Terri R. LeClercq

*So you think your notice program is acceptable?  Beware: it could be rejected*, AMERICAN BAR ASSOCIATION CLASS ACTIONS (2003). Author: Todd B. Hilsee

*Class Action Notice*, CALIFORNIA CLASS ACTIONS PRACTICE AND PROCEDURE, 8-1 (Elizabeth Cabraser ed., 2003). Chapter Author: Todd B. Hilsee

*Creating the Federal Judicial Center's New Illustrative "Model" Plain Language Class Action Notices*, 13 CLASS ACTIONS & DERIVATIVE SUITS 10 (2003). Authors: Todd B. Hilsee & Terri R. LeClercq

*It Ain't Over 'Til It's Over—Class Actions Against Microsoft*, 12 CLASS ACTIONS & DERIVATIVE SUITS 2 (2002). Authors: David Romine & Todd Hilsee

*Class Action Notice—How, Why, When and Where the Due Process Rubber Meets the Road*, LOUISIANA STATE BAR ASSOCIATION, 3rd Annual Class Action/Mass Tort Symposium (2002). Author: Todd B. Hilsee

*A Communications Analysis of the Third Circuit Ruling in MDL 1014: Guidance on the Adequacy of Notice*, 2 CLASS ACTION LITIG. REP. 712 (2001). Author: Todd B. Hilsee

*Off of the Back Pages:  The Evolution of Class Action Notice:  An Analysis of Notice in <u>Mullane v. Central Hanover Trust</u> more than 50 years later*, MEALEY'S Judges & Lawyers in Complex Litigation Conference (1999). Author: Todd B. Hilsee

*Class Action Notice to Diet-Drug Takers: A Scientific Approach*, FEN-PHEN LITIG. STRATEGIST (1999). Author: Todd B. Hilsee

*Class Action: The Role of the Media Expert*, EMPLOYMENT LITIG. REP. 19524 (1995); ASBESTOS LITIG. REP. 33279 (1995); AUTOMOTIVE LITIG. REP. 23193

(1995); MEDICAL DEVICES REPORTER 24 (1995); ASBESTOS PROPERTY LITIG. REP. 20845 (1995); TOXIC CHEMICALS LITIG. REP. 22280 (1995); DES LITIG. REP. 24310 (1995); SECURITIES AND COMMODITIES LITIG. REP. 15 (1996); AIDS LITIG. REP. 15559 (1996); LEVERAGED BUYOUTS & ACQUISITIONS LITIG. REP. 24 (1996); WRONGFUL DISCHARGE REPORT 16 (1996); CORPORATE OFFICERS AND DIRECTORS LIABILITY LITIG. REP. 19561 (1996); SEXUAL HARASSMENT LITIG. REP. 22 (1996). Author: Todd B. Hilsee

**Other Published Cites to Hilsee Articles**

77 U. Cin. L. Rev 63
69 U. Pitt. L. Rev. 727
60 Fla. L. Rev. 1
80 Tul. L. Rev. 1593
253 F.R.D. 69
22 Loy. Cons. L. Rev. 139
622 ANNALS, AAPSS 51 (2009)

**Panels, Speaking and Education**

*Civil Pretrial Issues and Complex Litigation,* FEDERAL JUDICIAL CENTER*, National Workshops for District Judges (2010).  Speaker: Todd B. Hilsee*

*Global Class Actions: Lasting Peace or Ticking Time Bombs?* AMERICAN BAR ASSOCIATION*, Section of Litigation Annual National Meeting (2010).  Panel Chair and Speaker: Todd B. Hilsee*

*Holocaust Litigation Notice,* HARVARD LAW SCHOOL*, (2010).  Speaker: Todd B. Hilsee*

*Class Action Notice,* TULANE LAW REVIEW SYMPOSIUM*, The Problem of Multidistrict Litigation (2008).  Speaker: Todd B. Hilsee*

*The Nationwide Class: White Elephant, Endangered Species, or Alive and Well?,* AMERICAN BAR ASSOCIATION, 11th Annual National Institute on Class Actions (2007).  Speaker: Todd B Hilsee.

*The Settlement Process:* Notice and Claims Administration, CENTER FOR LEGAL EDUCATION INTERNATIONAL, Class Actions: Prosecuting and Defending Complex Litigation (2007).  Speaker: Todd B. Hilsee.

*Notice to Class Members: Is too Little Money Being Spent on Notice and will the Tide Turn?,* OSGOODE HALL LAW SCHOOL, YORK UNIVERSITY, 4TH NATIONAL SYMPOSIUM ON CLASS ACTIONS (2007).  SPEAKER: TODD B HILSEE.

*Man on the Street - Interviews with Class Members, Notice & Settlement Participation*: AMERICAN BAR ASSOCIATION, 10th Annual National Institute on Class Actions (2006); NATIONAL BUSINESS INSTITUTE, Class Action Update: Today's Trends & Strategies for Success (2006); GEORGETOWN UNIVERSITY LAW SCHOOL (2006); TULANE LAW SCHOOL (2007).  Host/Presenter: Todd B. Hilsee.

*Class Action Notice*, NATIONAL BUSINESS INSTITUTE, Class Action Update: Today's Trends & Strategies for Success (2006).  Speaker:  Todd B. Hilsee.

*If You Build It, They Will Come—Crafting Creative, Coupon-Free Settlements*, AMERICAN BAR ASSOCIATION, 10th Annual National Institute on Class Actions (2006).  Speaker: Todd B Hilsee.

*Man on the Street - Interviews with Class Members, Plain Language*: COLUMBIA LAW SCHOOL (2005); NEW YORK UNIVERSITY SCHOOL OF LAW (2005); TEMPLE LAW SCHOOL (2006); CLEVELAND-MARSHALL COLLEGE OF LAW (2006); TULANE LAW SCHOOL (2007).  Host/Presenter: Todd B. Hilsee.

*How to Construct Effective Notice Campaigns to Best Protect Class Action Settlements*, Lecture at: CLEVELAND-MARSHALL COLLEGE OF LAW (3/28/06).  Guest Lecturer: Todd B. Hilsee.

*Judges Round Table*, SUPERIOR COURT OF CALIFORNIA, County of Los Angeles, Central Civil West Court House (3/21/06).  Speaker: Todd B. Hilsee.

*Do You Really Want Me to Know My Rights? The 'Ethics' Behind Due Process in Class Action Notice Is More Than Just Plain Language: A Desire to Actually Inform*, NATIONAL ASSOCIATION OF SHAREHOLDER AND CONSUMER ATTORNEYS (NASCAT), (2005).  Speaker: Todd B. Hilsee.

*Will the Settlement Survive Notice and Associated Due Process Concerns?* LOUISIANA BAR ASSOCIATION, 5th Annual Class Action/Mass Tort Symposium (2004).  Speaker: Todd B. Hilsee.

*Let's Talk—The Ethical and Practical Issues of Communicating with Members of a Class*, AMERICAN BAR ASSOCIATION, 8th Annual National Institute on Class Actions (2004).  Speaker: Todd B Hilsee.

*Clear Notices, Claims Administration and Market Makers*, FEDERAL TRADE COMMISSION, Protecting Consumer interests in Class Action Workshop (2004).  Speaker: Todd B. Hilsee.

*I've Noticed You've Settled—Or Have You*, AMERICAN BAR ASSOCIATION, 7th Annual National Institute on Class Action (2003).  Speaker: Todd B. Hilsee.

*Class Action Notice—How, Why, When And Where the Due Process Rubber Meets The Road,* LOUISIANA BAR ASSOCIATION, 3rd Annual Class Action/Mass Tort Symposium (2002).  Speaker: Todd B. Hilsee.

*Plain English Notices called for in August, 2003 proposed amendments to Rule 23,* ADVISORY COMMITTEE ON CIVIL RULES OF THE JUDICIAL CONFERENCE OF THE UNITED STATES, Hearing on Rule 23 (2002).  Witness: Todd B. Hilsee.

*Generation X on Trial,* AMERICAN BAR ASSOCIATION, Section of Litigation Annual Meeting (2001).  Speaker: Todd B. Hilsee.

*Tires, Technology and Telecommunications,* Class Action and Derivative Suits Committee, AMERICAN BAR ASSOCIATION, Section of Litigation Annual Meeting (2001).  Speaker: Todd B. Hilsee.

*Class Actions,* MEALEY'S Judges and Lawyers in Complex Litigation Conference (1999).  Speaker: Todd B. Hilsee.


## Case Experience

Todd B. Hilsee's case experience includes the following partial listing of cases (inclusive of all cases in which testimony provided at deposition or trial in past 4 years as marked with *):

| | | |
|---|---|---|
| *Acacia Media Techs. Corp. v. Cybernet Ventures* | | C.D. Cal., SACV03-1803 GLT (Anx) |
| *Accounting Outsourcing v. Verizon Wireless* | | M.D. La., No. 03-CV-161 |
| *Allen v. Monsanto* | | Cir. Ct. W.Va., No 041465 |
| *Allison v. AT&T* | | 1st Jud. D.C. N.M., No. D-0101-CV-20020041 |
| *AMA v. United Healthcare* | * | S.D.N.Y., 00-CV-2800 |
| *Anderson v. Attorney General of Canada* | | Supr. Ct., Newfoundland, No. 2007 01T4955CP |
| *Andrews v. MCI* | | S.D. Ga., CV 191-175 |
| *Anesthesia Care Assocs. v. Blue Cross of Cal.* | | Cal. Super. Ct., No. 986677 |
| *Angel v. U.S. Tire Recovery* | | Cir. Ct. W. Va., No. 06-C-855 |
| *Avery v. State Farm Auto. Ins.* | | Cir. Ct. Ill., 97-L-114 |

| | | |
|---|---|---|
| *Bacardi v. Bertram Yachts* | * | S.D. Fla., No. 1:11-cv-21722 |
| *Baiz v. Mountain View Cemetery* | | Cal. Super. Ct., No. 809869-2 |
| *Baker v. Jewel Food Stores & Dominick's Finer Foods* | | Cir. Ct. Ill. Cook Co., No. 00-L-9664 |
| *Barbanti v. W.R. Grace* | | Wash. Super. Ct., 00201756-6 |
| *Bardessono v. Ford Motor* | | Wash. Super. Ct., No. 32494 |
| *Barnes v. Am. Tobacco* | | E.D. Pa., 96-5903 |
| *Barnett v. Wal-Mart Stores* | | Wash. Super. Ct., No. 01-2-24553-8 SEA |
| *Beasley v. Hartford Insurance Co. of the Midwest* | | Cir. Ct. Ark., No. CV-2005-58-1 |
| *Beasley v. Reliable Life Insurance* | | Cir. Ct. Ark., No. CV-2005-58-1 |
| *Becherer v. Qwest Communications Int'l* | | Cir. Ct. Ill., Clair Co., No. 02-L140 |
| *Beringer v. Certegy Check Services* | | M.D. Fla., No. 8:07-CV-1434-T-23TGW |
| *Billieson v. City of New Orleans* | | C.D.C. Orleans Par., La., No. 94-19231 |
| *Bond v. American Family Insurance* | | D. Ariz., CV06-01249-PXH-DGC |
| *Bowden v. Phillips Petroleum* | | Dist. Ct., Ft. Bend Co., Tex., No. 107968 |
| *Bowling, et al. v. Pfizer* | | S.D. Ohio, No. C-1-91-256 |
| *Bownes v. First USA Bank* | | Cir. Ct. Ala., CV-99-2479-PR |
| *Brookshire Bros. v. Chiquita* | | S.D. Fla., No. 05-CIV-21962 |
| *Brown v. Am. Tobacco* | | Cal. Super. Ct., J.C.C.P. 4042 No. 711400 |
| *Brown v. Credit Suisse First Boston* | | C.D. La., No. 02-13738 |
| *Bruno v. Quten* | | C.D. Cal., No. SACV 11-00173 |
| *Bryant v. Wyndham Int'l.* | | Cal. Super. Ct., Nos. GIC 765441, GIC 777547 (Consolidated) |
| *Burgess v. Farmers Insurance* | | Dist. Ct. Comanche Co., Okla., CJ-2001-292 |
| *Carnegie v. Household Int'l* | | N. D. Ill., No. 98-C-2178 |

| | | |
|---|---|---|
| *Carson v. Daimler Chrysler* | | W.D. Tenn., No. 99-2896 TU A |
| *Carter v. North Central Life Ins.* | * | Ga. Super. Ct., No. SU-2006-CV-3764-6 |
| *Castano v. Am. Tobacco* | | E.D. La., CV 94-1044 |
| *Castillo v. Mike Tyson* | | N.Y. Super. Ct., 114044/97 |
| *Cazenave v. Sheriff Charles C. Foti* | | E.D. La., No. 00-CV-1246 |
| *Chambers v. Daimler Chrysler* | | N.C. Super. Ct., No. 01:CVS-1555 |
| *Chapman v. Butler & Hosch, P.A.* | | 2nd Jud. Cir. Fla., No. 2000-2879 |
| *Chestnut v. Progressive Casualty Ins.* | | Ohio C.P., No. 460971 |
| *Chisolm v. Transouth Fin.* | | 4th U.S. Cir. Ct., 97-1970 |
| *Ciabattari v. Toyota Motor Sales* | | N.D. Cal., No. C-05-04289-BZ |
| *Claims Conference–Jewish Slave Labour Outreach Program* | | German Government Initiative |
| *Clark v. Pfizer* | * | C.P. Pa. Phila. Co., No. 9709-3162 |
| *Clark v. Tap Pharmaceutical Prods.* | | 5th Dist. App. Ct. Ill., No. 5-02-0316 |
| *Clearview Imaging v. Progressive Consumer Ins.* | | Cir. Ct. Fla. Hillsborough Co., No. 03-4174 |
| *Cotten v. Ferman Mgmt. Servs.* | | 13th Jud. Cir. Fla., 02-08115 |
| *Cox v. Shell Oil* | | Tenn. Ch., 18,844 |
| *Crane v. Hackett Assocs.* | | E.D. Pa., 98-5504 |
| *Crawley v. Chrysler* | | Pa. C.P., CV-4900 |
| *Curtis v. Hollywood Entm't* | | Wash. Super. Ct., No. 01-2-36007-8 SEA |
| *Daniel v. AON* | | Cir. Ct. Ill., No. 99 CH 11893 |
| *Davis v. Am. Home Products* | * | Civ. D. Ct. La., No. 94-11684 |
| *Defrates v. Hollywood Entm't* | | Cir. Ct. Ill., St. Clair. Co., No. 02L707 |
| *Delay v. Hurd Millwork* | | Wash. Super. Ct., 97-2-07371-0 |
| *Desportes v. American General Assurance Co.* | * | Ga. Super. Ct., No. SU-04-CV-3637 |

| | | |
|---|---|---|
| *Dietschi v. Am. Home Products* | | W.D. Wash., No. C01-0306L |
| *Dimitrios v. CVS* | | Pa. C.P., No. 99-6209 |
| *Donnelly v. United Technologies* | | Ont. Super. Ct., No. 06-CV-320045CP |
| *Efthimiou v. Cash Money* | * | Ct. of Queens Bench, Alberta, No. 1001-04191 |
| *Ervin v. Movie Gallery* | | Tenn. Ch. Fayette Co., No. CV-13007 |
| *Fields v. Great Spring Waters of Am.* | | Cal. Super. Ct., No. 302774 |
| *First State Orthopaedics et al. v. Concentra, Inc., et al.* | | E.D. Pa. No. 2:05-CV-04951-AB |
| *Fisher v. Virginia Electric & Power Co.* | | E.D. Va., No 3:02-CV-431 |
| *Ford Explorer Cases* | * | Cal. Super. Ct., JCCP Nos. 4226 & 4270 |
| *Foultz v. Erie Ins. Exchange* | | C.P. Pa., No. 000203053 |
| *Friedman v. Microsoft* | | Ariz. Super. Ct., No. CV 2000-000722 |
| *Froeber v. Liberty Mutual Fire Ins.* | * | Cir. Ct. Ore., No. 00C15234 |
| *Fry v. Hoechst Celanese* | | Cir. Ct. Fla., 95-6414 CA11 |
| *Fulghum v. Embarq* | | D. Kansas, No. 07-CV-2602 |
| *Gardner v. Stimson Lumber* | | Wash. Super. Ct., No. 00-2-17633-3SEA |
| *Garrett v. Hurley State Bank* | | Cir. Ct. Miss., No. 99-0337 |
| *Gastke v. Louisiana Clerks of Court* | | E.D. La., 2:06 CV0257 |
| *Gaynoe v. First Union* | | N.C. Super. Ct., No. 97-CVS-16536 |
| *George v. Ford Motor* | | M.D. Tenn., No. 3:04-0783 |
| *Goldenberg v. Marriott PLC* | | D. Md., PJM 95-3461 |
| *Gordon v. Microsoft* | | 4th Jud. D. Ct. Minn., No. 00-5994 |
| *Govt. Employees Hospital Assoc. v. Serono* | | D. Mass., 06-CA-10613-PBS |
| *Gray v. New Hampshire Indemnity* | | Cir. Ct. Ark., No. CV-2002-952-2-3 |

| | | |
|---|---|---|
| *Grays Harbor v. Carrier Corporation* | | W.D. Wash., No. 05-05437-RBL |
| *Gunderson v. F.A. Richard & Associates* | * | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *Gunderson v. Focus Healthcare Management* | * | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *Gustafson v. Bridgestone/Firestone* | | S.D. Ill, Civil No. 00-612-DRH |
| *Gutterman  v. Am. Airlines* | | Cir. Ct. Ill., 95CH982 |
| *Hammer v. JP's Southwestern Foods* | | W.D. Mo., No. 08-0339-CV-W-FJG |
| *Harp v. Qwest Communications* | | Circ. Ct. Ore., No. 0110-10986 |
| *Harper v. Equifax* | | E.D. Pa., No. 2:04-CV-03584-TON |
| *Harper v. MCI* | | S.D. Ga., CV 192-134 |
| *Hensley v. Computer Sciences* | | Cir. Ct. Ark., No. CV-2005-59-3 |
| *Hershey v. ExxonMobil* | | D. Kansas, No. 6:07-cv-1300-JTM-KMH |
| *Hill v. Galaxy Cablevision* | | N.D. Miss., No. 1:98CV51-D-D |
| *Hill v. State Farm Mutual Auto Ins.* | | Cal. Super. Ct., No. BC 194491 |
| *Hoeffner v. The Estate of Alan Kenneth Vieira* | | Cal. Super. Ct., No. 97-AS 02993 |
| *Homeless Shelter Compensation Program* | | City of New York |
| *Hunsucker v. American Standard Ins. Co. of Wisconsin* | | Cir. Ct. Ark., No. CV-2007-155-3 |
| *In re Alstom SA Securities Litig.* | | S.D. N.Y., No. 03-CV-6595 VM |
| *In re Amino Acid Lysine Antitrust Litig.* | | N.D. Ill., MDL No. 1083 |
| *In re Babcock and Wilcox Co.* | | E.D. La., 00-10992 |
| *In re Bausch & Lomb Contact Lens Litig.* | | N.D. Ala., 94-C-1144-WW |
| *In re Baycol Litig.* | | D. Minn., MDL No. 1431 |
| *In re Bolar Pharm. Generic Drugs Consumer Litig.* | | E.D. Pa., MDL No. 849 |
| *In re Bridgestone Securities Litig.* | | M.D. Tenn., No. 3:01-CV-0017 |

| | | |
|---|---|---|
| *In re Bridgestone/Firestone Tires Prods. Liability Litig.* | | S.D. Ind., MDL No. 1373 |
| *In re Columbia/HCA Healthcare* | | M.D. Tenn., MDL No. 1227 |
| *In re Conagra Peanut Butter Products Liability Litig.* | | N.D. Ga., 1:07-MDL-1845 (TWT) |
| *In re Domestic Air Transp. Antitrust Litig.* | | N.D. Ga., MDL No. 861 |
| *In re Dow Corning Corp.* | | E.D. Mich., 95-20512-11-AJS |
| *In re Educ. Testing Serv. PLT 7-12 Test Scoring Litig.* | * | E.D. La., MDL-1643 |
| *In re Ephedra Prods. Liability Litig.* | | D. N.Y., MDL-1598 |
| *In re Estate of Ferdinand Marcos* | | D. Hawaii, MDL No. 840 |
| *In re Factor Concentrate Blood Prods. Litig.* | | N.D. Ill., MDL No. 986 |
| *In re The Flintkote Company* | | D. Del. Bankr., No. 04-11300 |
| *In re Ford Ignition Switch Prods. Liability Litig.* | | D. N.J., 96-CV-3125 |
| *In Re Ford Motor Co. E-350 Van Products Liability Litigation* | * | D.N.J., MDL No. 1687 |
| *In re Ford Motor Co. Vehicle Paint Litig.* | | E.D. La., 95-0485, MDL No. 1063 |
| *In re GM Truck Fuel Tank Prods. Liability Litig.* | | E.D. Pa., MDL No. 1112 |
| *In re Graphite Electrodes Antitrust Litig.* | | E.D. Pa., 97-CV-4182, MDL No. 1244 |
| *In re Guidant Corp. Plantable Defibrillators Products Liab. Litig.* | | D. Minn., MDL No. 05-1708 (DWF/AJB) |
| *In re High Sulfur Content Gasoline Prods. Liability Litig.* | * | E.D. La., MDL No. 1632 |
| *In re Holocaust Victims Assets Litig.* | | E.D. N.Y., CV-96-4849 |
| *In re Lupron Marketing & Sales Practices Litig.* | | D.  Mass., MDL No.1430 |
| *In re Mutual Funds Investment Litig.* | | D. Md., MDL No. 1586 |
| *In re Oil Spill by the Oil Rig "Deepwater Horizon"* | | E.D. La., MDL No. 2179 |
| *In re PA Diet Drugs Litig.* | | C.P. Pa. Phila. Co., No. 9709- |

| | | |
|---|---|---|
| | | 3162 |
| *In re Parmalat Securities Litig.* | | S.D. N.Y., MDL No. 1653 (LAK) |
| *In re Pharmaceutical Industry Average Wholesale Price Litig.* | | D. Mass., MDL 1456 |
| *In re Pittsburgh Corning* | | Bankr. W.D. Pa., No. 00-22876-JKF |
| *In re PRK/LASIK Consumer Litig.* | | Cal. Super. Ct., CV-772894 |
| *In re Residential Doors Antitrust Litig.* | | E.D. Pa., MDL No. 1039 |
| *In re Residential Schools Class Action Litig.* | * | Ont. Super. Ct., 00-CV-192059 CPA |
| *In re Royal Ahold Securities and "ERISA" Litig.* | | D. Md., MDL 1539 |
| *In re SCOR Holding AG Litig.* | | S.D. N.Y., 04 Civ. 7897 |
| *In re Serzone Prods. Liability Litig.* | | S.D.  W. Va., MDL No. 1477 |
| *In re Silicone Gel Breast Implant Prods. Liability Litig.* | | N.D. Ala., MDL No. 926 |
| *In re Solutia Inc.* | | S.D. N.Y., No. 03-17949-PCB |
| *In re Steel Drums Antitrust Litig.* | | S.D. Ohio, C-1-91-208 |
| *In re Steel Pails Antitrust Litig.* | | S.D. Ohio, C-1-91-213 |
| *In re Synthroid Mktg. Litig.* | | N.D. Ill., MDL No. 1182 |
| *In re Television Writers Cases* | | Cal. Super. Ct., LA County, NO. BC 268 836 |
| *In re Texaco* | | S.D. N.Y. Nos. 87 B 20142, 87 B 20143, 87 B 20144. |
| *In re TJX Companies Retail Security Breach Litig.* | | D. Mass., MDL No. 1838 |
| *In re Tobacco Cases II* | | Cal. Super. Ct., J.C.C.P. No. 4042 |
| *In re Unum Provident Corp.* | | D. Tenn. No. 1:03-CV-1000 |
| *In re USG Corp.* | | Bankr. D. Del., No. 01-02094-RJN |
| *In re Vivendi Universal, S.A. Securities Litig.* | | S.D. N.Y., No. 02-CIV-5571 RJH |
| *In re W.R. Grace & Co.* | * | Bankr. D. Del., No. 01-01139-JJF |

| | | |
|---|---|---|
| *In re: Propulsid Products Liability Litig.* | | E.D. La., MDL No. 1355 |
| *In re: Whirlpool Corp. Frontloading Washer Products Liability Litigation* | * | N.D. Ohio, 1:08-wp-65000 |
| *Int'l Commission on Holocaust Era Ins. Claims – Worldwide Outreach Program* | | Former Secretary of State Lawrence Eagleburger Commission |
| *Int'l Org. of Migration – German Forced Labour Compensation Programme* | | Geneva, Switzerland |
| *Jacobs v. Winthrop Fin. Assocs.* | | D. Mass.,  99-CV-11363 |
| *Johnson v. Ethicon* | | Cir. Ct. W. Va. Kanawha Co., Nos. 01-C-1530, 1531, 1533, 01-C-2491 to 2500 |
| *Johnson v. Norwest Fin. Alabama* | | Cir. Ct. Ala., CV-93-PT-962-S |
| *Johnson v. Progressive* | | Cir. Ct. Ark., No. CV-2003-513 |
| *Jones v. Hewlett-Packard* | | Cal. Super. Ct., No. 302887 |
| *Jordan v. A.A. Friedman* | | M.D. Ga., 95-52-COL |
| *Kalhammer v. First USA* | | Cir. Ct. Cal., C96-45632010-CAL |
| *Kapustin v. YBM Magnex Int'l* | | E.D. Pa., 98-CV-6599 |
| *Kellerman v. MCI* | | Cir. Ct. Ill., 82 CH 11065 |
| *Kent v. Daimler Chrysler* | | N.D. Cal., No. C01-3293-JCS |
| *Kline v. Progressive* | | Cir. Ct. Ill., Johnson Co., No. 01-L-6 |
| *Krebs v. Safeco* | * | Wash. Super. Ct., No. 10-2-17373-1 SEA |
| *Kunhel v. CNA Ins. Companies* | | N.J. Super. Ct., ATL-C-0184-94 |
| *Larson v. AT&T Mobility* | * | D.N.J., 07-05325 |
| *Lee v. Allstate* | | Cir. Ct. Ill., Kane Co., No. 03 LK 127 |
| *Lee v. Carter-Reed* | | N.J. Super. Ct., No. UNN-L-3969 |
| *Leff v. YBM Magnex Int'l* | | E.D. Pa., 95-CV-89 |
| *Lewis v. Bayer AG* | | 1st Jud. Dist. Ct. Pa., No. 002353 |

34

| | | |
|---|---|---|
| *Linn v. Roto-Rooter* | | C.P. Ohio, No. CV-467403 |
| *Lozano v. AT&T Wireless* | | C.D. Cal., CV-02-00090 |
| *Luikart v. Wyeth Am. Home Products* | | Cir. Ct. W. Va., No. 04-C-127 |
| *Madsen v. Prudential Federal Savings & Loan* | | 3rd Jud. Dist. Ct. Utah, No. C79-8404 |
| *Mangone v. First USA Bank* | | Cir. Ct. Ill., 99AR672a |
| *Mantzouris v. Scarritt Motor Group* | | M.D. Fla., No. 8:03-CV-0015-T-30-MSS |
| *McCall v. John Hancock* | | Cir. Ct. N.M., No. CV-2000-2818 |
| *McCurdy  v. Norwest Fin. Alabama* | | Cir. Ct. Ala., CV-95-2601 |
| *McManus v. Fleetwood Enter.* | | D. Ct. Tex., No. SA-99-CA-464-FB |
| *McNall v. Mastercard* | | 13th Tenn. Jud. Dist. Ct. Memphis |
| *Meckstroth v. Toyota Motor Sales* | * | 24th Jud. D. Ct. La., No. 583-318 |
| *Meers v. Shell Oil* | | Cal. Super. Ct., M30590 |
| *Mehl v. Canadian Pacific Railway* | | D. N.D., No. A4-02-009 |
| *Microsoft I-V Cases* | | Cal. Super. Ct., J.C.C.P. No. 4106 |
| *Miller v. Basic Research* | | D. Utah, No. 2:07-cv-00871 |
| *Morris v. Liberty Mutual Fire Ins.* | | D. Okla., No. CJ-03-714 |
| *Morrow v. Conoco* | * | D. La., No. 2002-3860 |
| *Mostajo v. Coast Nat'l Ins.* | | Cal. Super. Ct., No. 00 CC 15165 |
| *Moyle v. Liberty Mutual* | | S.D. Cal., No. 10cv2179 DMS |
| *Multinational Outreach - East Germany Property Claims* | | Claims Conference |
| *Munsey v. Cox Communications* | | Civ.  D. Ct., La., No. 97 19571 |
| *Murray v. IndyMac Bank. F.S.B.* | | N.D. Ill., No. 04 C 7669 |
| *Myers v. Rite Aid of PA* | | C.P. Pa., No. 01-2771 |
| *Naef v. Masonite* | | Cir. Ct. Ala., CV-94-4033 |
| *National Assoc. of Police Orgs. v.* | | Cir. Ct. Mich. Antrim Co., 04- |

| | | |
|---|---|---|
| *Second Chance Body Armor* | | 8018-NP |
| *National Socialist Era Compensation Fund* | | Republic of Austria |
| *Nature Guard Cement Roofing Shingles Cases* | | Cal. Super. Ct., J.C.C.P. No. 4215 |
| *Navarro-Rice v. First USA* | | Cir. Ct. Ore., 9709-06901 |
| *Nichols v. SmithKline Beecham* | | E.D. Pa., No. 00-6222 |
| *Oborski v. United Healthcare* | | S.D.N.Y., 00-CV-7246 |
| *Olinde v. Texaco* | | M.D. La., No. 96-390 |
| *Orrill v. Louisiana Citizens* | * | C.D.C. Orleans Par., La., No. 2005-11720 |
| *Oubre v. Louisiana Citizens* | * | 24th Jud. Dist. Ct., La., No. 625-567 |
| *Palace v. Daimler Chrysler* | | Cir. Ct. Ill., Cook Co., No. 01-CH-13168 |
| *Parsons/Currie v. McDonalds Rest's.* | | Ont. Sup. Ct.,  No. 02-CV-235958CP/No. 02-CV-238276 |
| *Paul and Strode v. Country Mutual Ins.* | | Cir. Ct. Ill., 99-L-995 |
| *Pease v. Jasper Wyman & Son, Merrill Blueberry Farms Inc., Allen's Blueberry Freezer Inc. & Cherryfield Foods Inc.* | | Me. Super. Ct., No. CV-00-015 |
| *Peek v. Microsoft* | | Cir. Ct. Ark.., No. CV-2006-2612 |
| *Pennington v. Coca Cola* | | Cir. Ct. Mo. Jackson Co., No. 04-CV-208580 |
| *Perrine v. E.I. Du Pont De Nemours* | | Cir. Ct. W. Va., No. 04-C-296-2 |
| *Perry v. Mastercard Int'l* | | Ariz. Super. Ct., No. CV2003-007154 |
| *Peters v. First Union Direct Bank* | | M.D. Fla., No. 8:01-CV-958-T-26 TBM |
| *Peterson v. State Farm Mutual Auto. Ins.* | | Cir. Ct. Ill., No. 99-L-394A |
| *Peyroux v. The United States of America* | | E.D. La., No. 06-2317 |
| *Providian Credit Card Cases* | | Cal. Super. Ct., J.C.C.P. No. 4085 |

| | | |
|---|---|---|
| *Ragoonanan v. Imperial Tobacco* | | Ont. Super. Ct., No. 00-CV-183165 CP |
| *Raysick v. Quaker State Slick 50* | | Dist. Tex., 96-12610 |
| *Reynolds v. Hartford Financial Group* | | D. Ore., No. CV-01-1529 BR |
| *Richison v. Am. Cemwood* | | Cal. Super. Ct., No. 005532 |
| *Robinson v. Marine Midland* | | N.D. Ill., 95 C 5635 |
| *Rogers v. Clark Equipment* | | Cir. Ct. Ill., No. 97-L-20 |
| *Rolnik v. AT&T Wireless Servs.* | | N.J. Super. Ct., No. L-180-04 |
| *Rosenberg v. Academy Collection Service* | | E.D. Pa., No. 04-CV-5585 |
| *Salkin v. MasterCard Int'l* | | Pa. C.P., No. 2648 |
| *Sanders v. Great Spring Waters of Am.* | | Cal. Super. Ct., No. 303549 |
| *Santos v. Government of Guam* | | D. Guam, No. 04-00049 |
| *Sauro v. Murphy Oil USA* | | E.D. La., No. 05-4427 |
| *Schlink v. Edina Realty Title* | | 4th Jud. D. Ct. Minn., No. 02-018380 |
| *Schwab v. Philip Morris* | | E.D. N.Y., CV-04-1945 |
| *Scott v. Am. Tobacco* | | La. Civ. Dist. Ct., 96-8461 |
| *Scott v. Blockbuster* | | 136th Tex. Jud. Dist. Jefferson Co., No. D 162-535 |
| *Sims v. Allstate Ins.* | | Cir. Ct. Ill., No. 99-L-393A |
| *Singleton v. Hornell Brewing Co.* | | Cal. Super. Ct., No. BC 288 754 |
| *Small v. Lorillard Tobacco* | | N.Y. Super. Ct., 110949/96 |
| *Smith v. Inco Ltd.* | * | Ont. Super. Ct., 12023/01 |
| *Soders v. General Motors* | | C.P. Pa., No. CI-00-04255 |
| *Spence v. Microsoft* | | Cir. Ct. Wis. Milwaukee Co., No. 00-CV-003042 |
| *Spitzfaden v. Dow Corning* | | La. Civ. Dist. Ct., 92-2589 |
| *Splater v. Thermal Ease Hydronic Systems* | | Wash. Super. Ct., 03-2-33553-3-SEA |
| *Springer v. Biomedical Tissue* | | Cir. Ct. Ind. Marion Co., No. |

| | | |
|---|---|---|
| *Services* | | 1:06-CV-00332-SEB-VSS |
| *St. John v. Am. Home Products* | | Wash. Super. Ct., 97-2-06368 |
| *Stefanyshyn v. Consol. Indus.* | | Ind. Super. Ct., No. 79 D 01-9712-CT-59 |
| *Stern v. AT&T Mobility* | | C.D. Cal., CV-05-08842 |
| *Stetser v. TAP Pharm. Prods. & Abbott Laboratories* | | N.C. Super. Ct., No. 01-CVS-5268 |
| *Stewart v. Avon Prods.* | | E.D. Pa., 98-CV-4135 |
| *Sunderman v. Regeneration Technologies* | | S.D. Ohio, No. 1:06-CV-075-MHW |
| *Sweeten v. American Empire Insurance* | * | Cir. Ct. Ark., No. 2007-154-3 |
| *Talalai v. Cooper Tire & Rubber* | | N.J. Super. Ct., Middlesex County, No. MID-L-8839-00 MT |
| *Tawney v. Columbia Natural Res.* | | Cir. Ct. W. Va. Roane Co., No. 03-C-10E |
| *Tempest v. Rainforest Café* | | D. Minn., 98-CV-608 |
| *Thibodeau v. Comcast* | | E.D. Pa., No. 04-CV-1777 |
| *Thibodeaux v. Conoco Philips* | | D. La., No. 2003-481 |
| *Thompson v. Metropolitan Life Ins.* | | S.D. N.Y., No. 00-CIV-5071 HB |
| *Ting v. AT&T* | | N.D. Cal., No. C-01-2969-BZ |
| *Tobacco Farmer Transition Program* | | U.S. Dept. of Agric. |
| *Tuck v. Whirlpool & Sears, Roebuck* | | Cir. Ct. Ind. Marion Co., No. 49C01-0111-CP-002701 |
| *Turner v. Murphy Oil USA* | * | E.D. La., No. 2:05-CV-04206-EEF-JCW |
| *Walker v. Rite Aid of PA* | | C.P. Pa., No. 99-6210 |
| *Walker v. Tap Pharmaceutical Prods.* | | N.J. Super. Ct., No. CV CPM-L-682-01 |
| *Walls v. Am. Tobacco* | | N.D. Okla., 97-CV-218-H |
| *Walton v. Ford Motor* | | Cal. Super. Ct., No. SCVSS 126737 |
| *Webb v. Liberty Mutual Insurance* | | Cir. Ct. Ark., No. CV-2007-418-3 |
| *Weber v. Mobil Oil* | * | Dist. Ct. Okla., No. CJ-2001-53 |

| | | |
|---|---|---|
| *Wells v. Chevy Chase Bank* | | Cir. Ct. Md. Balt. City, No. C-99-000202 |
| *West v. Carfax* | | Ohio C.P., No. 04-CV-1898 (ADL) |
| *West v. G&H Seed* | | 27th Jud. D. Ct. La., No. 99-C-4984-A |
| *Westman v. Rogers Family Funeral Home* | | Cal. Super. Ct., No. C-98-03165 |
| *Whetman v. IKON* | | E.D. Pa., Civil No. 00-87 |
| *White v. Washington Mutual* | | 4th Jud. D. Ct. Minn., No. CT 03-1282 |
| *Williams v. Weyerhaeuser* | | Cal. Super. Ct., CV-995787 |
| *Wilson v. Servier Canada* | | Ont. Super. Ct., 98-CV-158832 |
| *Withrow v. Enterprise* | | Cir. Ct. of St. Louis, Mo., No. 10SL-CC01712 |
| *Wong v. TJX* | | Ont. Super. Ct., No. 07-CT-000272CP |
| *Woodard v. Andrus* | | E.D. La., 2:03 CV2098 |
| *World Holdings v. Federal Republic of Germany* | | S.D. Fla., 1:08-cv-20198 |
| *Yacout v. Federal Pacific Electric* | | N.J. Super. Ct., No. MID-L-2904-97 |
| *Zarebski v. Hartford Insurance Co. of the Midwest* | * | Cir. Ct. Ark., No. CV-2006-409-3 |

**Work Experience**

| | | |
|---|---|---|
| The Hilsee Group LLC | Feb. 2008 - Present | Principal |
| Hilsoft Notifications | Oct. 1994 – Feb. 2008 | President |
| Foote Cone & Belding | 1987 – 1994 | Account Director |
| Greenwald/Christian | 1985 – 1987 | Account Executive |
| McAdams & Ong | 1983 – 1985 | Media Planner |

**Education**

The Pennsylvania State University      1982  B.S. Marketing Management

# EXHIBIT 2

# Class action settlement notice: Bosch solar panels model c-Si M NA30119 were recalled due to fire risk.  Act now to have your panels replaced for free.

*A court authorized this notice.  This is not a solicitation from a lawyer.  Read this carefully.*

- A proposed settlement has been reached in a class-action lawsuit about an alleged defect in Bosch Solar Energy Corporation ("Bosch Solar") solar panels model c-Si M NA30119 ("NA30119") claiming the solder joints pose a fire safety risk.  Other Bosch Solar panels are not affected.  Bosch Solar started a voluntary recall of NA30119 units and under the settlement will replace roof and ground mounted NA30119 units at no cost to current owners who submit claims.

- Act now to submit a claim form and a photo of your panels, or to exercise other rights.

- If you are included, your legal rights are affected whether you act or not.

| CLASS MEMBER RIGHTS AND OPTIONS: | |
|---|---|
| **SUBMIT A CLAIM FORM** | Request free replacement panels, as described in this notice. |
| **ASK TO BE EXCLUDED** | Also called "opting out."  The only option that allows you to sue Bosch Solar over the claims resolved by this settlement. |
| **OBJECT** | Write to the Court about why it should reject the settlement. |
| **GO TO A HEARING** | Ask to speak in Court about an objection. |
| **DO NOTHING** | Get no replacement panels.  Give up rights to sue. |

- If you own these panels—OR own a property on which they are installed (for example you might be leasing them from a solar company) you have **25 years** from when they were purchased OR until **December 31, 2038** (whichever is earlier) to submit a claim.  But act soon to make sure the panels are replaced as quickly as possible.

- If you want to be Excluded (opt out) or Object you must do so by **Month, 00 0023.**

- The Court in charge of this case will listen to any objections and decide whether to approve the settlement, and it will hold a hearing on **Month, 00, 2023**.

# WHAT THIS NOTICE CONTAINS

**Page**

**BASIC INFORMATION** ..........................................................................................................**3**
1.    Why was this notice issued?     3
2.    What is this lawsuit about?     3
3.    Is there something wrong with the NA30119 Panels?     3
4.    What is a class action?     3
5.    Why is there a settlement?     3

**WHO IS IN THE SETTLEMENT** .............................................................................................**3**
6.    How do I know if I am part of the settlement?     3
7.    Which solar panels are included?     4
8.    What do the solar panels look like?     4
9.    If I own a property where they are installed, but lease the panels, am I included?     4
10.    Are there exceptions to being included?     4
11.    I'm still not sure I'm included.     5

**THE SETTLEMENT BENEFITS—WHAT YOU GET** ................................................................**5**
12.    What benefits does the settlement provide?     5
13.    How much time do I have to request replacement?     5
14.    Will the replacement panels work the same way?     5
15.    Can I get money instead of replacement?     5

**HOW TO GET YOUR PANELS REPLACED—SUBMITTING A CLAIM FORM** ...........................**5**
16.    How can I request replacement of my panels?     5
17.    How will my claim be evaluated?     5
18.    When will my panels be replaced?     5
19.    What am I giving up if I stay in the Class and/or request replacement?     6

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ...............................................................**6**
20.    How do I get out of the settlement?     6
21.    If I don't exclude myself, can I sue Bosch Solar for the same thing later?     6
22.    If I exclude myself, can I get my NA30119 solar panels replaced?     6

**THE LAWYERS REPRESENTING YOU** ..................................................................................**6**
23.    Do I have a lawyer in this case?     6
24.    How will the lawyers be paid?     6
25.    Will the Class Representatives receive a cash payment?     7

**OBJECTING TO THE SETTLEMENT** ....................................................................................**7**
26.    Why would I object to the settlement?     7
27.    How do I object to the settlement?     7
28.    What do I have to include in an objection?     7
29.    What's the difference between objecting and asking to be excluded?     7

**THE COURT'S FAIRNESS HEARING** ...................................................................................**7**
30.    When and where will the Court decide whether to approve the settlement?     7
31.    How do I request to appear at the Fairness Hearing?     8
32.    Do I have to come to the Fairness Hearing?     8
33.    May I speak at the Fairness Hearing?     8

**IF YOU DO NOTHING** .........................................................................................................**8**
34.    What happens if I do nothing at all?     8

**GETTING MORE INFORMATION** ........................................................................................**8**
35.    How do I get more information about the settlement?     8

# BASIC INFORMATION

## 1.      Why was this notice issued?

A Court authorized this notice because you have a right to know about a proposed settlement of this class action, including the right to request free replacement panels, and about all your other options, before the Court decides whether to give "final approval" to the settlement.  This notice explains the lawsuit, the settlement, your legal rights, what benefits are available, who may be eligible for them, and how to get them.

Judge Beth Labson Freeman is overseeing this class action.  The case is known as *Rojas v. Bosch Solar Energy Corp.*, Case No. 5:18-cv-5841BLF in the United States District Court for the Northern District of California, San Jose division.  The people who sued are called the "Plaintiffs," and the companies they sued, together referred to as "Bosch Solar," are called the "Defendants."

## 2.      What is this lawsuit about?

The lawsuit claimed the NA30119 panels were defective and pose a fire risk.  The suit said Bosch Solar breached its warranty, was unjustly enriched, and the suit sought replacement of all roof and ground mounted panels.  Bosch Solar denies these claims, maintains that it acted lawfully, and voluntarily recalled all roof mounted panels.

## 3.      Is there something wrong with the model NA30119 panels?

Bosch Solar determined that where electrical contacts to the solder had degraded, the resulting resistance could result in heat, and that it was theoretically possible for a fire to result.  No fires have been reported.  Bosch Solar voluntarily recalled roof mounted panels under the United States Consumer Product Safety Commission ("CPSC") Fast Track Recall process.  The CPSC says the solar panels can overheat, posing a risk of fire.

## 4.      What is a class action?

In a class action, one or more people called "Class Representatives" (in this case, Steve R. Rojas and Andrea N. Rojas), sue on behalf of people who have similar claims.  All these people are a "Class" or "Class members." One court resolves the issues for everyone except those who exclude themselves from the Class.

## 5.      Why is there a settlement?

The Court did not decide who is right.  Instead, both sides agreed to settle.  That way, they avoid a costly trial, and all the affected panels can be replaced for free.  The Class Representatives and their attorneys think the settlement is best for all Class members.  The settlement does not mean that Bosch Solar did anything wrong.

# WHO IS IN THE SETTLEMENT

To see if you can get benefits from this settlement, you first must decide if you are a Class member.

## 6.      How do I know if I am part of the settlement?

Judge Freeman decided that everyone who fits this description is a Class Member:  *All persons or entities in the United States who are the current owners of Bosch c-Si M 60 NA30119 solar modules or the current owners of premises on which Bosch c-Si M 60 NA30119 solar modules are installed.*  Continue reading to learn more.

**7.      Which solar panels are included?**

The solar panels are Bosch model c-Si M 60 NA30119, which were sold through distributors and commercial installers nationwide from October 2011 through May 2013 for about $300 per panel.  At this time, Bosch Solar believes most of the remaining NA30119 solar panels are installed in southern California.

**8.      What do the solar panels look like?**

Each panel measures approximately 65 inches by 39 inches by 1.65 inches. Each c-Si M 60 NA30119 panel contains 60 cells, arranged in 10 rows of 6 cells. Each cell is marked with the Bosch brand logo. The frame edge of the panel is smooth, with no grooves.  These pictures may help you identify the panels:






| Closeup of one of the sixty (60) cells (above).  Closeup of the Bosch logo that appears in the corner of each cell (below). | The front of one entire NA30119 panel showing the sixty (60) cells. | The frame edge showing its smooth flat surface, without grooves. |
| --- | --- | --- |

**9.      If I own a property where they are installed, but lease the panels, am I included?**

Yes.  You are a class member and may file a claim for replacement if you own the property where the NA30119 panels are installed even if you lease the panels from a solar company.  You are also a class member if you own the panels but not the property on which they are installed.

**10.     Are there exceptions to being included?**

You are not a class member if you already had your NA30119 panels replaced under the recall or warranty.  Also, you are not a class member if you own an array of one hundred (100) or more ground mounted NA30119 panels.  There are other exclusions listed in the Settlement Agreement to be found at the website listed below.

**11.      I'm still not sure I'm included.**

If you are not sure whether you are included, call the toll-free number: 1-800-000-0000.

## THE SETTLEMENT BENEFITS—WHAT YOU GET

**12.      What benefits does the settlement provide?**

The settlement provides full replacement of NA30119 panels that are still installed on the roofs of structures or that are mounted on the ground.  A Settlement Agreement, available at www._____.com, describes all of the details about the proposed settlement.

**13.      How much time do I have to request replacement?**

If you have the NA30119 panels, you have 25 years from the date they were originally purchased, or until December 31, 2038, whichever is earlier.  The panels were sold between 2011 and 2013.  If you don't know when they were purchased, you should submit your claim anyway, as soon as possible.

**14.      Will the replacement panels work the same way?**

The new panels may differ in size, color, shape, model number, or manufacturer, but the output of your replacement panels will provide the same or greater power than your Bosch Solar NA30119 solar array.

**15.      Can I get money instead of replacement?**

No.  The settlement provides for replacement panels to remedy the claims made in the lawsuit.

## HOW TO GET A PAYMENT—SUBMITTING A CLAIM FORM

**16.      How can I request replacement of my panels?**

Complete and submit a claim form to request replacement.  The claim form is attached to this notice if you received it in the mail.  You may also find one at www._____.com.  Be sure to include pictures of your solar panels and other helpful information requested in the claim form.  Send your submission to:

|                | Before **Month 00, 0000**       | After **Month 00, 0000**          |
|                |                                 |                                   |
|                | [Notice Provider Address]       | [Claims Administrator Address]    |

**17.      How will my claims for replacement be evaluated?**

The Claims Administrator will review your claim form and then possibly inspect your array to confirm you have NA30119 panels.  If so, they will be replaced.  Otherwise, they will not be.

**18.      When will my panels be replaced?**

If your panels are NA30119 panels, Bosch Solar will replace them as soon as practicable after receipt of your claim form.  Bosch Solar will not delay the replacement of the panels based on any objections to the settlement.

**19.    What am I giving up if I stay in the Class or request replacement?**

Unless you exclude yourself, you are staying in the Class, and that means that you can't sue Bosch Solar over the claims in this case.  It also means that all the Court's orders will apply to you and legally bind you. Whether you submit a claim form not, if you do not opt out of the Class (*see* below), you will agree to "release and discharge" Bosch Solar as described in the Settlement Agreement.  The Settlement Agreement can be obtained at www._____.com, and it specifically describes the released claims in necessarily accurate legal terminology.  Talk to Class Counsel (*see* below), or your own lawyer, if you have questions about the released claims.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you want to keep the right to sue Bosch Solar about the issues in this case, then you must take steps to get out, called "excluding yourself" from—sometimes referred to as "opting out" of—the Settlement Class.

**20.    How do I get out of the settlement?**

To exclude yourself from the settlement, you must send a letter by mail saying that you want to be excluded from *Rojas v. Bosch Solar Energy*.  Be sure to include your full name, address, telephone number, and your signature.  Include the address where your NA30119 panels are installed and how many you own.  You must mail your exclusion request postmarked by **Month 00, 2023** to:

> Rojas Exclusions
> P.O. Box _____
> _____

You can't exclude yourself on the phone, by email, or at the website.

**21.    If I don't exclude myself, can I sue Bosch Solar for the same thing later?**

No.  If you do not exclude yourself, you may never sue (or be part of any other class action against) Bosch Solar over the claims resolved by this settlement.  Remember, the exclusion deadline is **Month 00, 2023**.

**22.    If I exclude myself, can I get my NA30119 solar panels replaced?**

Yes.  If you exclude yourself, you may still ask for replacement panels under the recall process.

## THE LAWYERS REPRESENTING YOU

**23.    Do I have a lawyer in this case?**

The Court has appointed Birka-White Law Offices, 178 E. Prospect Ave, Danville, CA 94526; Levin Sedran & Berman LLP, 510 Walnut Street, Suite 500, Philadelphia, PA 19106; and Farella Braun + Martel, 235 Montgomery Street, San Francisco, CA 94104 to represent you and other Class members.  Together they are called "Settlement Class Counsel."  You do not have to pay them.  If you want to be represented by your own lawyer (perhaps to have that lawyer appear in Court for you), you may hire one at your own expense.

**24.    How will the lawyers be paid?**

If the Court approves the settlement, Bosch Solar will pay Settlement Class Counsel $1,400,000 to cover their fees and expenses.  Class members will not be charged for this payment, and it will not affect panel replacements.  Bosch Solar will also separately pay the costs to identify and notify Class members, and to administer the settlement.

**25.      Will the Class Representatives receive a cash payment?**

If the Court approves the settlement, Settlement Class Counsel will ask the Court to approve an incentive award of up to $10,000 total to be paid by Bosch Solar to Steve and Andrea Rojas, in recognition of the time and effort they spent helping counsel pursue the class action and settlement on behalf of all other Class members.  The Rojas' are also entitled to claim replacement panels like other Class members.  There is no other agreement to provide payments to Plaintiffs or other parties.

## OBJECTING TO THE SETTLEMENT

Class members may object to the settlement and ask the Court to reject it.  The Court will consider your views.

**26.      Why would I object to the settlement?**

If you are opposed to the settlement, you can object to its approval.  You can't ask the Court to order a different settlement; the Court can only approve or reject this settlement.  If the Court denies approval, you will not be bound by it, and the lawsuit will continue.  If that is what you want to happen, you should object.

**27.      How do I object to the settlement?**

To object, you must write a letter to the Court **and include the information in Question 28**.  The Court will enter it into the electronic filing system for the public record.  If you want to object, be sure to send your objection by **Month 00, 2023** to:

Clerk of Court
San Jose Courthouse
Courtroom 3, 5th Floor
280 South 1st Street
San Jose, CA 95113

**28.      What do I have to include in an objection?**

You must indicate the case name: *Rojas v. Bosch Solar Energy,* and the case number: 5:18-cv-5841BLF.  State your full name, address, telephone number, and signature.  You must provide the address where your NA30119 panels are installed, and how many you own.  You must state the specific grounds for your objection, whether it affects only you, a specific subset of Class members, or the whole Class.  You must also indicate whether you intend to appear at the Fairness Hearing (*See below*).

**29.      What's the difference between objecting and asking to be excluded?**

Objecting is telling the Court that you oppose approval of the settlement.  You can object only if you stay in the Class.  This means that you may not exclude yourself and also object.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement.  You may attend and you may ask to speak, but you don't have to.

**30.      When and where will the Court decide whether to approve the settlement?**

The Court has scheduled a Fairness Hearing at **00:00 _.m.** on **Month 00, 2023**, at the San Jose Courthouse, Courtroom 3, 5th Floor, 280 South 1st St., San Jose, CA 95113.  You may also attend by zoom using the

instructions at www._____.com.   At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate.   If there are objections, the Court will consider them.   The Judge will listen to people who have asked to speak about an objection.   At or after the hearing, the Court will decide whether to approve the settlement.   We do not know how long this decision will take.   The hearing may be moved to another day, time, or location, so check www._____.com for updates.

**31.      How do I request to appear at the Fairness Hearing?**

If you or your separate attorney (if you have one) wish to appear at the Fairness Hearing, send a signed letter with your name/address/phone number, and your attorney's name/address/phone number/bar number.   Include a list of any witnesses you intend to call at the Fairness Hearing, the address of each witness, a summary of his or her proposed testimony, and copies of all exhibits you intend to introduce at the Fairness Hearing.   Note: you do not need a lawyer to ask to appear at the Fairness Hearing.   Send your request by **Month 00, 2023** to:

Clerk of Court
San Jose Courthouse
Courtroom 3, 5th Floor
280 South 1st Street
San Jose, CA 95113

**32.      Do I have to come to the Fairness Hearing?**

No.   Settlement Class Counsel and the lawyers for Bosch will answer questions that the Judge may have.   But you are welcome to come at your own expense.   If you send an objection, you don't have to come to Court to talk about it.   If you filed and mailed your written objection on time, the Court will consider it.   You may also pay your own lawyer to attend, but it's not necessary.

**33.      May I speak at the Fairness Hearing?**

If you submitted an objection to the settlement and you asked to appear at the Fairness Hearing (be sure you provide all the information identified in this notice), you may ask the Court for permission to speak at the Fairness Hearing.   You cannot speak at the hearing if you exclude yourself.

## IF YOU DO NOTHING

**34.      What happens if I do nothing at all?**

If you do nothing, you will not have the solar panels replaced, leaving a potential fire risk in place.   But you'll release Bosch Solar and never be able to sue Bosch Solar for the claims in this case.

## GETTING MORE INFORMATION

**35.      How do I get more information about the settlement?**

This notice summarizes the proposed settlement. For the precise terms of the settlement, please see the Settlement Agreement at www._____.com, by contacting class counsel through that website, by accessing the Court docket in this case for a fee through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, 280 South 1st Street, San Jose, CA 95113, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.   **Please do not telephone the Court or the Court Clerk's office to inquire about this settlement or the claim process**.

# EXHIBIT 3

<u>LEGAL NOTICE</u>

# Class action settlement notice:
# Bosch solar panels model c-Si M NA30119 were recalled due to fire risk. Act now to have your panels replaced for free.

There is a proposed settlement in a class-action lawsuit about an alleged defect in Bosch solar panels model c-Si M NA30119, claiming the solder joints pose a fire safety risk. Other Bosch solar panels are not affected. Bosch Solar had started a voluntary recall, and now will replace roof and ground mounted NA30119 units at no cost to owners who submit claims.

### WHO'S INCLUDED?

The settlement includes all current owners of NA30119 panels or the properties on which they are installed. In other words, you are included if you are leasing the panels, for example. You are not included if you already had these panels replaced under warranty or the recall. Owners of 100 panel or greater ground-mounted arrays are not included. Not sure if you are included? Get the detailed notice at www._____.com. It tells you even more about who is included and excluded.

### ABOUT THE SETTLEMENT.

If you are included, you have 25 years from when they were purchased OR until December 31, 2038 (whichever is earlier) to submit a claim. Get the claim form at www._____.com. You simply need to provide the address where the panels are installed and a photo of the panels. Bosch Solar will investigate your claim and replace them at no cost to you if they are NA30119 panels. But act soon to make sure the panels are replaced as quickly as possible. Learn more by calling 1-800-000-0000 or at www._____.com.



EACH BOSCH SOLAR NA30119 PANEL HAS SIXTY CELLS, AND EACH CELL HAS THE BOSCH LOGO IN THE LOWER LEFT CORNER. THE EDGES ARE SMOOTH, NOT GROOVED.

### WHAT ARE YOUR OTHER OPTIONS?

If don't want to be legally bound by this settlement, you must exclude yourself by **Month 00, 2023** or you won't be able to sue Bosch Solar about the claims in this case ever again. If you don't exclude yourself, you may object to it by **Month 00, 2023**. The detailed notice explains how. The United States District Court for the Northern District of California will hold a hearing in this case (*Rojas v. Bosch Solar*, Case No. 5:18-cv-5841BLF) on **Month 00, 2023,** to consider whether to approve the settlement. If so, the lawyers representing Class members (including Birka-White Law Offices, Danville, CA; Levin Sedran & Berman LLP, Philadelphia, PA; and Farella Braun + Martel, San Francisco, CA) will be paid $1,400,000 by Bosch Solar for fees and expenses. The Court may also approve a payment of up to $10,000 total to two Class members, Steve and Andrea Rojas, who worked with the lawyers to represent other Class members. You or your own lawyer may appear and ask to speak at the hearing, at your own cost, but you don't have to. If the Court approves the settlement, Bosch Solar will be released from all liability for the claims in this case. The settlement agreement explains this fully. To learn more, call or visit the website:

## 1-800-000-0000
## www._____.com

# EXHIBIT 4

Notice Administrator for U. S. District Court
Northern District of California
P.O. Box 0000
City, ST 0000

# Class action notice about fire risk in Bosch model c-Si M NA30119 solar panels.

# **<u>Court settlement</u>:**
# **If you still own recalled Bosch model c-Si M NA30119 solar panels, get them replaced at no cost.**

EXHIBIT 5

*Claim Form*                                                    *Rojas v. Bosch Solar*

## For replacement of Bosch solar panels model c-Si M NA30119

This claim form is to request replacement of Bosch solar panels model c-Si M NA30119.  Read the detailed notice at www._____.com to get information describing the panels and pictures of what they look like.  Each panel is 65 inches high by 39 inches wide by 1.65 inches thick.  Each panel contains 60 cells, arranged in 10 rows of 6 cells.  Each cell is marked with the Bosch brand logo.  The edge of the panel's frame is smooth, with no grooves.

## Where are your Panels Installed?

| Street Address: | City: | |
|---|---|---|
| Street Address: | State: | Zip: |

## System Information

**How many Bosch NA30119 solar panels are installed in your solar array:**  ____

**Are your Bosch NA30119 solar panels:**   ☐ roof mounted   ☐ ground mounted

**If you know the name of the company that installed your system, please provide:**

**If you know the approximate date your system was installed, please provide (month/day/year): ____ /____ /_____**

## Photographs

Please send clear photographs of the building or the location of the solar panel array on which the Bosch Solar NA30119 panels are installed.  If you are filling this form out online, follow instructions to upload them.  The ideal photos will show:

- The front of a Bosch NA30119 solar panel showing all sixty (60) cells arranged in 10 rows of six each.
- A close-up of one of the sixty (60 cells) showing the Bosch logo in the corner.
- The side of the panel showing it is flat and smooth and does not have a groove.

**Do you know of any co-owners of the Panels?**  (Provide name and address; use a separate sheet if necessary)

## Documents

If you have it, please send the original purchase documentation for your Bosch NA30119 solar panel array.  This will expedite your replacement.  If you don't have it, please submit your claim form anyway.

## Customer/Owner Information

| Name: | State: | Zip: |
|---|---|---|
| Street Address: | Cell Phone #: | |
| Street Address: | Other Phone #: | |
| City: | Email Address: | |

## Signature

I will provide all information and/or additional materials reasonably requested by Bosch Solar.  The information above is accurate.

_____          _____
Date                                                     Signature

                                                         _____
                                                         Printed Name

**Please send this Claim Form as soon as possible to:**

Claims Administrator
Address 1
Address 2
City, ST 00000

**Questions?**

**1-800-000-0000**
**www._____.com**