1   David M. Birka-White (State Bar # 85721)          Charles E. Schaffer (State Bar # PA76259)
2   dbw@birka-white.com                                cschaffer@lfsblaw.com
    Laura A. Carrier (State Bar # 220154)              David C. Magagna, Jr. (State Bar # PA322436)
3   lcarrier@birka-white.com                           dmagagna@lfsblaw.com
    BIRKA-WHITE LAW OFFICES                            LEVIN SEDRAN & BERMAN, LLP
4   178 E. Prospect Avenue                             510 Walnut Street, Suite 500
    Danville, CA 94526                                 Philadelphia, PA 19106
5   Telephone: (925) 362-9999                          Telephone: (215) 592-1500
                                                       Facsimile: (215) 592-4663
6

7   John D. Green (State Bar # 121498)
    jgreen@fbm.com
8   FARELLA BRAUN & MARTEL LLP
    235 Montgomery Street, 17th Floor
9   San Francisco, California 94104
    Telephone: (415) 954-4400
10  Facsimile: (415) 954-4480

11
    Attorneys for Individual and Representative
12  Plaintiffs STEVE R. ROJAS and ANDREA N.
    ROJAS, on behalf of themselves and all others
13  similarly situated

14                  **UNITED STATES DISTRICT COURT**

15                  **NORTHERN DISTRICT OF CALIFORNIA**

16                         **(SAN JOSE DIVISION)**

17

18  STEVE R. ROJAS and ANDREA N.             Case No.  5:18-cv-5841BLF
    ROJAS, on behalf of themselves and all
19  others similarly situated,
                                              **DECLARATION OF DAVID M. BIRKA-**
20                      Plaintiffs,           **WHITE IN SUPPORT OF PLAINTIFFS'**
                                              **NOTICE OF MOTION AND UNOPPOSED**
21         vs.                                **MOTION FOR PRELIMINARY APPROVAL**
                                              **OF CLASS ACTION SETTLEMENT**
22  BOSCH SOLAR ENERGY
    CORPORATION; and DOES 1-20,               DATE:      September 21, 2022
23  inclusive,                                TIME:      9:00 a.m.
                                              LOCATION: Courtroom 3, 5th Floor
24                      Defendants.                      280 S. First Street
                                                         San Jose, CA  95113
25
                                              The Honorable Judge Beth Labson Freeman
26
                                              Action Filed:       September 24, 2018
27

28

                                        1
                                              Case No. 5:18-cv-5841BLF
DECLARATION OF DAVID M. BIRKA-WHITE IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION
AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

I, DAVID M. BIRKA-WHITE, declare as follows:

1.     I am the principal attorney at Birka-White Law Offices and counsel to Plaintiff Steve R. Rojas and Andrea N. Rojas ("Plaintiffs").

2.     I am a member in good standing of the California State Bar, and am admitted to practice in the United States District Court, Northern District and in numerous district courts around the country.  I respectfully submit this Declaration in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.  Except as otherwise noted, I have personal knowledge of the facts set forth in this Declaration, and could testify competently to them if called upon to do so.

3.     To briefly summarize my experience, I have been the principal attorney at Birka-White Law Offices ("BWLO") for over 43 years and during that time, most of my practice has been devoted to complex litigation, product liability class actions, consumer claims and personal injury matters.  I have served as court-appointed class counsel in more than 30 class actions, most involving defective products and consumer claims.  For the last 16 years, I have been recognized by San Francisco Magazine as a Northern California Super Lawyer in the field of class actions/mass torts.  For nearly 35 years, I have been AV-rated and included in The Bar Registrar of Prominent Lawyers published by Martindale-Hubbell.  From 2012 to the present, I have been recognized as the "Top 100" Civil Plaintiffs attorneys by the National Trial Lawyers.

4.     Birka-White Law Offices, has served as lead or co-lead counsel throughout the pendency of this litigation.  I have performed a primary role in all aspects of the action, including client retention, pleadings, discovery, expert witnesses, settlement and notice to class members.

5.     I have served as lead counsel in three other solar panel class action cases: *Allagas v. BP Solar International, Inc. et al.,* U.S. District Court, Northern District of California, Case No. 3:14-cv-00560-SI; *Kuffner v. Suntech America, Inc., et. al.,* Contra Costa County Superior Court, Case No. C13-01328 and *Richard Ziccarello, et.al. v. Sanyo Energy (U.S.A.) Corporation; Sanyo North America Corporation; Panasonic Corporation of North America; et.al.*, United States District Court (District of New Jersey), Case No. 2:19-cv-16623-ES-CLW.

/ / /

DECLARATION OF DAVID M. BIRKA-WHITE IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

6.      The *Allagas v. BP Solar* case was filed on February 6, 2014 and received final settlement approval for a national class action on December 22, 2016.  My office remains actively involved in overseeing the administration of the BP settlement, which has been operating for approximately six years and has replaced thousands of solar arrays throughout the United States.

7.      The *Kuffner v. Suntech* action was filed on June 21, 2013 and received final settlement approval on March 7, 2016.  My office oversaw the entirety of the litigation, settlement and the distribution of the settlement benefits, which included the replacement of approximately 18,000 panels, covering roughly 600 residential units.

8.      The *Ziccarello v. Sanyo* case was filed on April 12,  2019 and received final settlement approval for a national class action on July 8, 2021.  My office remains actively involved in overseeing the administration of the Panasonic settlement.

9.      In the process of handling these cases, BWLO has devoted thousands of hours to the investigation, litigation, settlement and administration of these solar panel class actions.

10.     My co-counsel in this case are Farella Braun & Martel ("FBM") and Levin, Sedran & Berman, LLP ("LEVIN").  I have worked with both firms over the course of many years on numerous class action cases, including solar panel cases.

11.     BWLO, FMB and LEVIN have been appointed as class counsel in this case.  ECF 213, pg. 29, lines 14-16.

12.     Class Counsel BWLO, FBM and LEVIN are particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases involving defective products such as those at issue here. In negotiating this settlement, counsel had the benefit of years of relevant experience as well as a thorough familiarity with the facts of this case.

13.     Attached hereto as **Exhibit A** is Plaintiffs' Third Amended Complaint which modifies the class definition as follows:

> All persons or entities in the United States who are the current owners of Bosch c-Si M 60 NA30119 solar modules or the current owners of premises on which Bosch c-Si M 60 NA30119 solar modules are installed.

DECLARATION OF DAVID M. BIRKA-WHITE IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION
AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## A.    BACKGROUND.

14.    The settlement follows four years of hard-fought litigation, including three motions to dismiss, production and review of 15,000 pages of documents, numerous discovery disputes, several of which required Court intervention, and investigations of roof- and ground-mounted modules installed in California, Hawaii, Arizona and North Carolina.

15.    Plaintiffs' counsel retained nationally recognized solar experts Bill Brooks and Eric Daniels, fire safety expert Joseph Zicherman, and solar installation expert Michael Garcia, who performed extensive,  and expensive, root cause analyses of the NA30119 panels, revealing multiple defects triggering fire safety risks, defects requiring removal and replacement of the panels.

16.    In addition, Plaintiffs' counsel conducted a thorough analysis of the Underwriters Laboratory "UL" certification process for the NA30119 panels, which involved UL specialists, including UL counsel and staff, to confirm that all of the NA30119 modules, whether roof- or ground-mounted, were contractually required to be uniformly manufactured to the same specifications, further confirming that the defects were common to all of the modules.  Bosch agrees that all NA30119 modules were manufactured to the same specifications and that all modules should be replaced.

17.    From the outset of the case, Plaintiffs challenged the scope of the of the April 3, 2017 Bosch recall through the United States Consumer Product Safety Commission ("CPSC"), which limited the recall to *roof*-mounted NA30119 panels, and excluded *ground*-mounted panels. Plaintiffs further challenged the adequacy of the Bosch recall notice program.

18.    Plaintiffs filed their Motion for Class Certification on May 24, 2021. (ECF 165) The hearing took place on January 6, 2022.  After the hearing, the Court issued its Order Requiring Parties to Participate in ADR. (ECF 207).  On January 21, 2022, the parties filed a Notice of Agreement to Mediation with Private Mediator (ECF 212)  On March 9, 2022, the Court issued its Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification (ECF 213).  Having received certification of a California class, and armed with this detailed knowledge of the case, the parties engaged a well-respected mediator, but failed to reach

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

4

Case No. 5:18-cv-5841BLF

DECLARATION OF DAVID M. BIRKA-WHITE IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION
AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    agreement during the mediation held on March 22, 2022.

2        19.    On April 18, 2022, Plaintiffs filed a motion to expand the class definition to a

3    nationwide class (ECF 220); and also on April 18, 2022 Bosch Solar filed a Motion for Partial

4    Decertification and to Dismiss requesting decertification of portions of the certified class and

5    dismissal of Plaintiffs' Magnuson-Moss claim.  (ECF 219)

6        20.    After extensive further negotiations, the parties reached an agreement in principle.

7    Thereafter the parties negotiated for over three more months to work out the details of the

8    Settlement Agreement, notice plan, claims process and attorneys' fees, before Plaintiffs filed this

9    unopposed motion.  A copy of the Settlement Agreement in this case is attached as **Exhibit B**.

10       21.    The settlement provides significant and substantial relief.  Settlement class

11   members, who currently own NA30119 modules, whether roof- or ground-mounted, will have

12   their solar arrays replaced at Bosch's expense.  There will be no cap on the cost of replacing the

13   panels, no matter where they are located in the United States.

14       22.    In addition, with the assistance of nationally recognized notice expert Todd Hilsee,

15   the parties have designed and agreed upon a direct notice program, in order to achieve the best

16   and most productive notice possible under the circumstances FRCP 23(c)(2)(B).  See Declaration

17   of Notice Expert Todd B. Hilsee on Settlement Notice Effectiveness.

18       23.    Class Counsel believes that the proposed settlement meets all criteria for

19   preliminary approval and dissemination of class notice.  The settlement is well within the range of

20   reasonableness given the consideration offered to class members and the risk of ongoing

21   litigation.

22       **B.    PROCEDURAL HISTORY.**

23       24.    On September 24, 2018, Plaintiffs Steve R.  Rojas and Andrea N. Rojas filed a class

24   action complaint on behalf of all purchasers of the Bosch Solar NA30119 modules, asserting that

25   the panels suffered from a manufacturing defect that caused serious safety risk, including the risk

26   of fire. (ECF 1 at ¶ 1)

27       25.    On November 19, 2018, Bosch Solar filed its Motion to Dismiss Plaintiffs'

28   Complaint. (ECF 21) On January 4, 2019, Plaintiffs filed their First Amended Complaint against

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

                                                    5                    Case No. 5:18-cv-5841BLF
───────────────────────────────────────────────────────────────────────────────
DECLARATION OF DAVID M. BIRKA-WHITE IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION
AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Bosch Solar. (ECF 32) On February 20, 2019, Bosch Solar filed a Motion to Dismiss Plaintiffs' First Amended Complaint.  (ECF 36)  On May 29, 2019, the Court issued an Order Granting in Part and Denying in Part the Motion to Dismiss the First Amended Complaint, with leave to amend. (ECF 49)

26.     On June 19, 2019, Plaintiffs filed their Second Amended Complaint. (ECF 53)  On August 7, 2019, Bosch Solar filed a Motion to Dismiss Plaintiffs' Second Amended Complaint. (ECF 62) On March 6, 2020, the Court issued an Order Granting in Part and Denying in Part Defendant's Motion to Dismiss the Second Amended Complaint, without leave to amend.  (ECF 89)

27.     On May 24, 2021, Plaintiffs moved for class certification, filing a detailed memorandum of points and authorities accompanied by numerous declarations, including four expert declarations and extensive exhibits.  (ECF 165)  On March 9, 2022, the Court issued an Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification certifying a California class. (ECF 213)

28.     On April 18, 2022, Bosch Solar filed a Motion for Partial Decertification and a Motion to Dismiss. (ECF 219)  Also on April 18, 2020, Plaintiffs filed a Motion to Modify Scheduling Order, For Leave to Amend Complaint and Requesting Modification of Court's Certification Order, requesting expansion of the scope of the certified class to nationwide.  (ECF 220) On April 25, 2022, the parties filed a Joint Motion to Reserve Implementation of Notice Plan (ECF 221), and a Stipulation and Proposed Order Setting Briefing Schedule on Cross-Motions (ECF 222). On April 28, 2022, the Court issued an Order Granting the Joint Motion to Reserve Implementation of the Notice Plan and Vacating Hearing.  (ECF 223) On May 17, 2022, the Court issued an Order Vacating the June 2, 2022 Hearing Date for Dispositive Motions.  (ECF 227)  On June 2, 2022, the Court issued an Order Terminating All Motions and Vacating All Dates and Setting a Hearing Date for Motion for Preliminary Approval of Class Action Settlement. (ECF 231) On July 26, 2022, the Court issued an Order Continuing the Hearing on Motion for Preliminary Approval of Class Action Settlement from August 4, 2022 to September 21, 2022.  (ECF 233)

DECLARATION OF DAVID M. BIRKA-WHITE IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1

**C.**     **DISCOVERY.**

2       29.     The parties have engaged in extensive, contentious discovery practice and related

3  motions.  This included multiple document requests and interrogatories from both sides; production

4  and review of approximately 15,000 pages of documents; numerous site inspections of the

5  NA30119 modules, ranging from Hawaii to North Carolina; collection, inspection and storage of

6  over 400 NA30119 modules for defect analysis; expert inspection of nearly 10,000 panels; and an

7  extensive expert root cause analysis of the defects in the NA30119 modules. Throughout the

8  discovery process, there were numerous motions to compel before Magistrate Judge Nathaniel

9  Cousins, including multiple reviews by this Court.

10       **D.**     **EXPERT DISCOVERY.**

11       30.     Expert discovery in this case was robust and overlapped significantly with merits

12  discovery.  Plaintiffs disclosed four experts as part of their class certification briefing.  They

13  included preeminent experts in solder design and fatigue, solar panel failure investigation, solar

14  panel design and manufacture, fire safety, and damages. Plaintiffs' expert witnesses prepared four

15  separate reports based upon their respective analysis of documentation, photographs, infrared

16  images, x-rays and other advanced imaging, internal Bosch Solar documents, sample modules, fire

17  safety materials, relevant literature, on-site inspection of approximately 10,000 installed NA30119

18  modules, on-site inspection of approximately 400 removed panels, and destructive testing of dozens

19  of panels during the root cause analysis.

20       **E.**     **SETTLEMENT NEGOTIATIONS.**

21       31.     On March 22, 2022, the parties conducted a one-day mediation with retired Superior

22  Court Judge Bonnie Sabraw.  The parties did not reach a settlement at the mediation. The parties

23  engaged in numerous telephonic discussions and email correspondence over the course of the next

24  four months.  The parties set about negotiating the specifics of the settlement, including hashing

25  out the key terms, establishing a mutually agreeable claims process and protocol, selecting a notice

26  provider, selecting a claims administrator, and working with the notice provider to develop a notice

27  plan.  This process required extensive back-and-forth between the parties and repeated consultation

28  between  defense  counsel  and  their  client,  and  stretched  for  over  three  months  before  a  final

DECLARATION OF DAVID M. BIRKA-WHITE IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION
AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1   agreement was reached.

2        32.     The attorneys' fees were negotiated only after all material provisions of the proposed

3   settlement were agreed on, and were ultimately resolved pursuant to a mediator's proposed

4   compromise.

5        **F.     SETTLEMENT TERMS.**

6        33.     **The Settlement Class.**  The settlement class consists of:

7        All persons or entities in the United States who are the current owners of Bosch c-SI M 60

8   NA30119 solar modules or the current owners of premises on which Bosch c-SI M 60 NA30119

9   modules are installed.

10       34.     **Claim Period.**  To receive a settlement remedy, a settlement class member must

11  submit a claim form to the notice provider before January 1, 2025, or to the claims administrator

12  within the earlier of: (i) twenty-five (25) years of the original purchase date of the settlement panels

13  that are the subject of the claim; or (ii) December 31, 2038 (the "Claim Period").

14       35.     **Substantive Relief.**  Settlement class members who own NA30119 modules are

15  eligible for full replacement of all their settlement panels. Under the settlement, Bosch will pay the

16  cost of removal and disposal of the settlement panels, and the cost of purchase and installation of

17  replacement panels. The new panels will have a 25-year warranty. This includes ancillary costs that

18  could potentially be required depending on each class member's specific circumstances, such as

19  building permits and panel racking. There is no cap on either the per panel cost of replacement or

20  the total cost necessary to replace all solar arrays owned by settlement class members. Of the

21  approximately 7,054 remaining NA30119 modules, based on an average installation size of 25

22  modules, there are approximately 282 residential installations of NA30119 modules remaining to

23  be located and replaced in the United States.

24       36.     **Notice Provider and Claims Administrator.**  The proposed notice provider will

25  be Richard Simmins of Analytics LLC.  The Claims Administrator, who will manage the removal

26  and replacement of the NA30119 panels will be Bosch Tool.  Bosch Tool was selected because

27  they have been performing the same task as part of the Bosch Recall since 2017.  Bosch Tool will

28  provide quarterly reports to Plaintiffs' Counsel of all progress removing the remaining class panels.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

8

Case No. 5:18-cv-5841BLF
DECLARATION OF DAVID M. BIRKA-WHITE IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION
AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

In addition, Bosch Tool will appoint a liaison to Class Counsel to provide updates and respond to inquiries from Class Counsel and Class Members.

**G.    SERVICE AWARDS.**

37.    A service award is commonly awarded to the named plaintiffs in class actions, who have devoted time and effort to represent a class. The parties agreed that, subject to the Court's final approval, Plaintiffs Steve R. Rojas and Andrea N. Rojas will each receive a $5,000.00 service award (for a total of $10,000.00) for their active participation in the litigation, including responding to multiple sets of requests for document production; responding to numerous interrogatories; sitting for depositions; opening their home to a site inspection by Plaintiffs' expert Bill Brooks; developing familiarity with the relevant solar technology; extensively communicating with Class Counsel David M. Birka-White over a period of four years; reviewing and approving the proposed settlement terms.  Bosch has agreed to pay the service award.

**H.    ATTORNEYS' FEES AND COSTS.**

38.    Subject to the Court's approval, Defendant agrees to pay Class Counsel $1,400,000.00 in attorneys' fees and costs.  The requested award is substantially below the actual lodestar of Plaintiffs' counsel which is approximately $4,300,000.00. Plaintiffs' counsel has incurred cost to date in the approximate sum of $385,000.00.  The requested award will be significantly below the accepted range of the awards in similar class actions.  Plaintiffs' counsel will submit their motion for an award of attorneys' fees and costs in a separate motion, and at that time will provide a summary of all hours and costs to support the request.

39.    Given the value of the settlement and the strengths and weaknesses of Plaintiff's claims, it is the opinion of Plaintiff's counsel that the Settlement Agreement is fair, reasonable, and adequate, and will provide valuable benefits to the settlement class.  The settlement provides certain relief for the settlement class and avoids protracted and costly litigation.  The settlement class is ascertainable, because the Sanyo Settlement Panels can be identified by the Sanyo panel model numbers and serial numbers.

40.    There are no conflicts between the named Plaintiffs and the absent Class Members.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

9    Case No. 5:18-cv-5841BLF
DECLARATION OF DAVID M. BIRKA-WHITE IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION
AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    41.    On behalf of Plaintiff and proposed Class Counsel, I respectfully request that the

2  Court grant preliminary approval of the settlement.

3    I declare under penalty of perjury, under the laws of the State of California, that the

4  foregoing is true and correct.

5    This declaration is executed this 12th day of September, 2022, at Danville, California.

6

7                                                 */s/ David M. Birka-White*
                                                  DAVID M. BIRKA-WHITE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                  10          Case No. 5:18-cv-5841BLF

DECLARATION OF DAVID M. BIRKA-WHITE IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION
AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# EXHIBIT A

David M. Birka-White (State Bar # 85721)
dbw@birka-white.com
Laura A. Carrier (State Bar # 220154)
lcarrier@birka-white.com
BIRKA-WHITE LAW OFFICES
178 E. Prospect Avenue
Danville, CA 94526
Telephone: (925) 362-9999

Charles E. Schaffer (State Bar # PA76259)
cschaffer@lfsblaw.com
David C. Magagna, Jr. (State Bar # PA322436)
dmagagna@lfsblaw.com
LEVIN SEDRAN & BERMAN, LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663

John D. Green (State Bar # 121498)
jgreen@fbm.com
FARELLA BRAUN & MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

Attorneys for Individual and Representative
Plaintiffs STEVE R. ROJAS and ANDREA N.
ROJAS, on behalf of themselves and all others
similarly situated

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

STEVE R. ROJAS and ANDREA N.
ROJAS, on behalf of themselves and all
others similarly situated,

Plaintiffs,

vs.

BOSCH SOLAR ENERGY
CORPORATION; and DOES 1-20,
inclusive,

Defendants.

Case No.  5:18-cv-5841-BLF

**THIRD AMENDED COMPLAINT FOR
DAMAGES**

**DEMAND FOR JURY TRIAL**

**CLASS ACTION**

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

1

TABLE OF CONTENTS

2

PAGE

3

I.    INTRODUCTION .................................................................................................. 1

4

    A.    Bosch Solar c-Si M 60 NA30119 Modules.......................................... 1

    B.    Backsheet Delamination Defect............................................................ 3

5

    C.    Bosch Solar Panels With the "Standard Test Conditions" Requirement to Prove a

6

        Warranty Claim.................................................................................... 4

7

II.    PARTIES AND VENUE ..................................................................................... 6

8

III.    FACTUAL ALLEGATIONS............................................................................. 8

    A.    The Benefit of the Bargain of the Bosch Solar Warranty ..................... 8

9

10

IV.    THE WARRANTY ............................................................................................. 9

V.    THE RECALLED MODULES .......................................................................... 12

11

    A.    The Bosch Solar Recall and Product Safety Recall Notice................... 12

12

    B.    All Bosch Solar c-Si M 60 NA30119 Panels Are Defective, Dangerous and Must

13

        Be Replaced ......................................................................................... 15

    C.    Bosch's Refusal To Pay The Reasonable Expenses of Inspecting Recalled,

14

        Defective and Underperforming Panels ............................................... 16

15

VI.    THE BOSCH SOLAR WARRANTY DEPRIVED PLAINTIFFS AND THE CLASS OF

        THE BENEFIT OF THE BARGAIN ............................................................... 18

16

    A.    The Backsheet Delamination Defect..................................................... 18

17

    B.    Safety Risk and Fire Hazard of Delamination ....................................... 23

    C.    Arc Fault Failure .................................................................................. 24

18

    D.    Failure To Adequately Test Before Sale .............................................. 24

19

VII.    THE UNCONSCIOUNABILITY OF THE WARRANTY CLAIM VERIFICATION

20

        AND PROCEDURE ........................................................................................... 25

21

VIII.    SULLIVAN WAS BOSCH'S AGENT ........................................................... 32

22

IX.    PLAINTIFFS' INDIVIDUAL ALLEGATIONS............................................. 33

    A.    Rojas Facts ........................................................................................... 33

23

    B.    The Warranty Was Not Delivered......................................................... 35

24

    C.    There Was No Market Alternative For Plaintiff ................................... 36

25

    D.    Plaintiffs Provided Notice of Their Warranty Claim to Bosch............. 37

26

27

X.    STATUTE OF LIMITATION ISSUES

    A.    The Latent Defects Are Not Discoverable by the Consumer................ 42

28

    B.    Plaintiffs Are the Beneficiaries of the Bosch Solar Limited Warranty…    44

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-i-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

XI.     CLASS ALLEGATIONS    ……………………………………………………45

XII.    DAMAGE ................................................................................................. 48

FIRST CLAIM FOR RELIEF................................................................................. 48

SECOND CLAIM FOR RELIEF ............................................................................ 53

THIRD CLAIM FOR RELIEF ................................................................................ 54

FOURTH CLAIM FOR RELIEF ............................................................................ 56

FIFTH CLAIM FOR RELIEF ................................................................................. 61

SIXTH CLAIM FOR RELIEF ................................................................................ 63

PRAYER FOR RELIEF.......................................................................................... 66

PLAINTIFFS' DEMAND FOR JURY TRIAL ...................................................... 67

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

1        Plaintiffs STEVE R. ROJAS and ANDREA N. ROJAS ("Plaintiffs" or "Rojas"), on

2   behalf of themselves and all others similarly situated, allege as follows:

3   **I.      INTRODUCTION**

4        1.      This case arises out of the manufacture and sale of Bosch Solar photovoltaic

5   modules.  All of the solar panels that are the subject of this lawsuit were either manufactured by

6   Bosch Solar or were manufactured at the request of Bosch Solar by third-party companies and

7   sold under the Bosch Solar name by Defendant Bosch Solar Energy Corporation ("Bosch Solar").

8        2.      The Bosch Solar panels that are the subject of this lawsuit are the Bosch Solar

9   modules c-Si M 60 NA30119 (also referred to as "NA30119 Panels").

10       3.      All of the Bosch Solar NA30119 Panels were constructed using the same materials

11  and manufactured to the same specifications.  The defects in the panels are universal and common

12  to all Class Member panels.

13       4.      There is no way to repair the defects in the Bosch Solar panels and restore their

14  promised and warranted functionality.  The only means of addressing the defects in the Bosch

15  Solar panels is to remove and replace them with other panels.

16       5.      Bosch Solar no longer manufactures solar panels and has exited the solar business.

17  Bosch Solar maintains no inventory of comparable non defective panels.

18       **A.      Bosch Solar c-Si M 60 NA30119 Modules**

19       6.      The total number of Bosch Solar c-Si M 60 NA30119 modules involved in this

20  case is approximately 44,500.  Of these 44,500 Bosch Solar c-Si M 60 NA30119 Panels, 28,000

21  are roof-mounted.  The remainder of approximately 16,500 Bosch Solar c-Si M 60 NA30119

22  Panels are ground-mounted.

23       7.      The Bosch Solar c-Si M 60 NA30119 Panels suffer from two fatal defects.  The

24  first defect relates to defective solder joints.  The second defect relates to a defective backsheet.

25       8.      Both defects reduce power output and create unreasonable fire and safety risks.

26       9.      On April 13, 2017, twenty-eight thousand (28,000) *roof-mounted* c-Si M 60

27  NA30119 Panels became the subject of a voluntary recall between Bosch Solar and the United

28  States Consumer Product Safety Commission ("CPSC") as discussed more fully herein below.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-1-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

1   These panels are referred to as the "Recalled Panels." For purposes of the recall, Bosch Solar

2   arbitrarily distinguished between roof-mounted and ground-mounted panels. Bosch Solar omitted

3   approximately 16,500 ground-mounted c-Si M 60 NA30119 modules from the recall.

4        10.   Whether roof-mounted or ground-mounted, all c-Si M 60 NA30119 Panels are

5   defective and all 44,500 panels pose a serious fire and safety risk to all consumer and commercial

6   end users of these panels because there are defects in solder joints that generate excessive heat.

7   This excessive heat poses a known safety risk, admitted by Bosch, in that the heat can ignite

8   roofing materials, or any cellulose materials or debris below or near ground-mounted

9   installations.

10        11.   While Bosch Solar concedes that the roof-mounted panels can ignite roofing

11   materials and potentially injure inhabitants, it incorrectly contends that overheating solder joints

12   do not pose a safety risk in ground-mounted installations. In seeking CPSC's approval of the

13   exclusion of ground-mounted panels from the recall, Bosch's representative stated that **"even if**

14   **grass or some other material on the ground were to ignite, the damage would be solely to**

15   **property and not persons, who could run or walk away from any fire…"**

16        12.   The recent Carr, Paradise and Tubbs wildfires near Redding, in Paradise,

17   California, and in Sonoma County, respectively, reveal the devastation that can result from

18   wildfires caused by the proximity of electrical equipment to dry grass and brush. Each of these

19   fires are alleged to have been caused, in part, by sparks from poorly maintained electrical

20   equipment and wires. The potential of the defective ground-mounted panels to ignite surrounding

21   grass or brush due to the generation of excessive heat poses a serious risk of a similar costly and

22   deadly chain of events.

23        13.   The Carr Fire resulted in $1.5 billion of insurance losses and $158.7 million

24   dollars of suppression costs. A total of 1,079 residences, 22 commercial structures and 503

25   outbuildings were completely destroyed. Many more buildings were damaged. Three firefighters

26   and five civilians were killed.

27        14.   The Paradise Fire, a/k/a the Camp Fire, was the costliest global disaster for 2018,

28   according to the Los Angeles Times. Total damages were an estimated 16.5 billion

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-2-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

1    dollars.  Eight-five (85) civilians died in the fire.  A total of 18,804 structures were completely

2    destroyed and 564 structures were damaged.

3        15.    The 2017 "Tubbs Fire" in Sonoma County was caused by a private electrical

4    system "adjacent" to a residence, according to the official CalFire investigation.  The Tubbs Fire

5    resulted in $1.2 billion of damage in the City of Santa Rosa alone, as well as $100 million of

6    suppression costs.  Twenty-two (22) people are believed to have died as a result of the Tubbs

7    Fire.

8        16.    As more fully described hereinafter, although Bosch Solar did implement a recall

9    notice plan, which Bosch Solar convinced the CPSC to accept, the plan itself was a sham in that it

10   failed to notify the vast majority of the end users of the 28,000 roof-mounted Recalled Panels.

11       17.    Bosch Solar represented to the CPSC that the consumers of the Recalled Panels

12   could be notified *directly;* but in fact, Bosch Solar did not do so.  As a result, the majority of the

13   Recalled Panels remain installed and the safety risks caused by the defects remain unabated.

14       18.    Plaintiffs seek recovery on behalf of themselves and all owners and end-users of

15   all 44,500 c-Si M 60 NA30119 Panels, for breach of the warranty and violations of the Magnuson

16   Moss Warranty Act.  Plaintiffs also seek recovery and injunctive relief for violation of consumer

17   protection statutes for unfair, unlawful, deceptive and fraudulent business practices for a

18   California class only.

19       **B.    Backsheet Delamination Defect**

20       19.    In addition to the defective solder joints that led to Bosch Solar initiating the

21   voluntary recall with the CPSC, all c-Si M 60 NA30119 Panels suffer from an additional

22   undisclosed defect.  As more fully discussed below, the Bosch Solar modules have a defective

23   backsheet.  The backsheet is a plastic sheet that is necessary to encapsulate and protect the

24   module from moisture penetration.  The backsheets installed on all Bosch Solar c-Si M 60

25   NA30119 Panels are defective in that they have delaminated, cracked and degraded.

26       20.    Similar to the defective solder joints precipitating the recall, the cracking and

27   failing backsheets are not repairable, and the panels must be removed and replaced.

28   Both the solder defect and the backsheet defect have resulted in a breach of the Bosch Solar

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-3-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

Product and Performance Warranty, and pose fire and safety risks to the end-user.

C.     **Bosch Solar Panels With the "Standard Test Conditions" Requirement to Prove a Warranty Claim**

21.     The second category of relief for which Plaintiffs seek recovery relates to an unconscionable and fraudulent provision universally included as part of the "Warranty Claim Verification and Procedure" in all Bosch Solar express warranties for all solar panels manufactured and sold under the name Bosch.  These solar panels include, but are not limited to all Bosch Solar Crystalline Series Modules listed as part of the Warranty Appendix to the Bosch Solar Limited Warranty for photovoltaic modules and are as follows:

"**Warranty Appendix: List of Covered Bosch Solar Crystalline Series Modules**

c-Si M 60 -16

c-Si M 60 NA30117

c-Si M 60 NA42117

c-Si M 60 NA44117

c-Si M 60 NA30119

c-Si P 72 NA21126"

A copy of the Bosch Solar Limited Warranty is attached hereto and marked **Exhibit A**. The Warranty is also referred to as the Bosch Solar "Express Warranty."  The dates and volume of production of these panels are unknown and will be established through discovery.

22.     As more fully discussed herein below, Bosch Solar seeks to enforce an unconscionable warranty provision that requires that all end-users who submit a warranty claim must independently prove, at the end user's cost, that "the performance of the Module no longer meets the minimum performance warranted by Bosch."  The Bosch Solar Express Warranty requires that all modules that are the subject of a performance warranty claim shall be measured under "standard test conditions."  Unbeknownst to end users of Bosch Solar panels, the "standard test conditions," to which Bosch Solar requires adherence to assert a warranty claim, are enormously costly and technically complex and must be performed in the controlled environment of a solar laboratory utilizing sophisticated equipment and machinery.  The cost of such testing

THIRD AMENDED COMPLAINT FOR DAMAGES

1   likely exceeds the entire cost of the solar array itself, thus creating and unconscionable barrier to

2   legitimate warranty claims.

3       23.    This misleading and underhanded Standard Test Conditions ("STC") warranty

4   provision is hidden and intentionally deceptive.  It shifts the entire burden of proving a defect or

5   performance claim, and the cost thereof, to the consumer.

6       24.    By analogy to the world of automobile repair, where a car owner is to assert a

7   warranty claim, rather than the manufacturer inspecting and diagnosing the problem, the car

8   owner would have to hire an expert to perform the tests and secure the equipment to diagnose the

9   vehicle pursuant to the manufacturer's specifications.  The costs of performing the tests would

10  likely exceed the value of the car, for which the consumer is not reimbursed even if the consumer

11  proves the defect.  Further, if the manufacturer chooses to perform separate diagnostic tests, then

12  the manufacturer would be entitled to reimbursement of the entire cost of conducting such tests

13  from the party submitting the warranty claim.

14      25.    The Paragraph 24 analogy fairly describes the hidden and deliberately deceptive

15  impact of the "Bosch Solar Warranty Claim Procedure."  The Bosch Solar warranty suppression

16  and cost shifting scheme was fraudulently concealed from the consumers by Bosch Solar and is

17  unconscionable and unenforceable.

18      26.    The STC warranty provision causes the limited remedy to fail of its essential

19  purpose because a claimant cannot perfect the STC requirements and therefore be entitled to the

20  remedy of panel replacement or refund.  Plaintiffs are entitled to all consequential damages,

21  including but not limited to, labor to remove and replace the panels, the cost of new panels and

22  the difference of value between the power production promised and the power actually received.

23      27.    As to the c-Si M 60 NA30119 class, Plaintiffs seek all consequential damages

24  including the cost of new panels, labor to install and value of lost power.

25      28.    As to the end users of all other of Bosch Solar Crystalline panels as set forth in

26  paragraphs 2 and 21 herein, Plaintiffs seek recovery for injunctive relief pursuant to consumer

27  protection statutes to enjoin Bosch Solar from enforcing the warranty claim "standard test

28  conditions" requirement.  Plaintiffs further seek injunctive relief to compel Bosch, and not the

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-5-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

1  warranty claimant, to pay for and perform for inspection and testing of all panels subject to

2  warranty claims.

3  **II.      PARTIES AND VENUE**

4          29.     Defendant Bosch Solar is a corporation organized and existing under the laws of

5  the State of Michigan since December 2010, which maintains executive offices at 38000 Hills

6  Tech Drive, Farmington, Michigan.   Bosch Solar has been registered to transact business in

7  California since January 2011, with a principal place of business in California located at 4009

8  Miranda Avenue, Palo Alto, California 94304.

9          30.     Bosch Solar was incorporated on December 29, 2010, following the conversion on

10  December 23, 2010, of Bosch Solar Energy Corp., a Delaware corporation that maintained a

11  principal place of business in California at 4009 Miranda Avenue in Palo Alto, into Bosch Solar

12  Energy Corp., the existing Michigan corporation.

13          31.     Although Bosch Solar has officially reported a business address at various

14  Michigan locations since its incorporation, Information Updates filed annually with the State of

15  Michigan for the years during which the Bosch Solar panel warranties were issued list the

16  business address of all of Bosch's officers and directors as 2988 Campus Drive, San Mateo,

17  California, demonstrating that the operational and *de facto* headquarters of Bosch Solar Energy

18  Corporation were always located in California during the period relevant to the complaint.

19          32.     Plaintiffs Steve R. Rojas and Andrea N. Rojas reside at 29294 Juniper Avenue,

20  Moreno Valley, California.  On or about October 28, 2012, Plaintiffs entered into a Prepaid Solar

21  Power Agreement with Kilowatt Systems, LLC ("Kilowatt") to acquire and use forty-two (42)

22  Bosch Solar c-Si M 60 NA30119 Panels at a cost of Twenty-Five Thousand Three Hundred

23  Thirty-Nine and 22/Dollars ($25,339.22).  Kilowatt was the initial purchaser of these 42 panels

24  and initially held title to the Panels.  The Bosch Solar warranties alleged herein were part of the

25  "basis of the bargain" of the purchase of the 42 Panels by Kilowatt, and Kilowatt also relied upon

26  the existence of the warranty in entering the transaction, as otherwise, Kilowatt would not have

27  entered into the Prepaid Solar Power Agreement with Plaintiffs.  Plaintiffs have always been

28  intended beneficiaries of the warranty provided in conjunction with the purchase of the Panels by

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

THIRD AMENDED COMPLAINT FOR DAMAGES

1    Kilowatt, as Plaintiffs have been the "end-users" of the panels as defined by the Bosch Solar

2    Express Warranty.  Subsequently, Plaintiffs obtained title for these panels from Kilowatt and

3    became the end users of the forty-two (42) Bosch Solar panels installed on their property.  As

4    such, they also qualify as intended beneficiaries by virtue of the status as subsequent owners. See

5    paragraphs 209 to 214 for further explanation.

6          33.     Plaintiffs are unaware of the true names and capacities of the Defendants sued

7    herein as DOES 1 through 20, and therefore sue these Defendants by such fictitious names.

8    Plaintiffs will amend this complaint to allege their true names and capacities when they are

9    ascertained.  Plaintiffs are informed and believe that each of the fictitiously named Defendants is

10   responsible in some manner for the occurrences herein alleged and that the damages suffered by

11   Plaintiffs and the Class, were proximately caused by their conduct.

12         34.     Plaintiffs are informed and believe that all Defendants, including the fictitious

13   DOE Defendants 1 through 20, were at all relevant times acting as actual or ostensible agents,

14   conspirators, partners, joint venturers or employees of all other Defendants and that all acts

15   alleged herein occurred within the course and scope of that agency, employment, partnership, or

16   enterprise, and with the express or implied permission, knowledge, consent, authorization and

17   ratification of their Co-Defendants.

18         35.     This Court has jurisdiction over this action pursuant to the Class Action Fairness

19   Act, 28 U.S.C. § 1332(d), because this is a class action in which (1) there are at least 100 class

20   members in the proposed class; (2) the combined claims of the proposed class members exceed

21   Five Million and 00/100 Dollars ($5,000,000.00) exclusive of interest and costs; and (3) there is

22   minimal diversity as Plaintiffs and certain members of the proposed class are citizens of the State

23   of California and Defendant is a citizen of Michigan.

24         36.     This Court has personal jurisdiction over Bosch Solar pursuant to 28 U.S.C. §

25   1391(a)(1) because its principal place of business in California is located in Palo Alto.  Bosch

26   Solar has purposefully availed itself of the privilege of conducting business activities in the State

27   of California by selling and warranting solar panels and has maintained systematic and

28   continuous business contacts within the State of California, thus rendering the exercise of

-7-

THIRD AMENDED COMPLAINT FOR DAMAGES

1    jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

2        37.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1), (c)(2) & (d)

3    because Defendant's principal place of business is located in Palo Alto, California.

4    **III.    FACTUAL ALLEGATIONS**

5        **A.    The Benefit of the Bargain of the Bosch Solar Warranty**

6        38.    Purchasing a Bosch Solar panel system represents a multi-decade investment.  The

7    decision to install a Bosch Solar system was a major financial commitment and investment for

8    Plaintiffs and all class members.

9        39.    Plaintiffs, and all class members, made the commitment to invest in a Bosch Solar

10   system based upon three fundamental warranty promises from Bosch: 1) that the panels would be

11   free from defects in material and workmanship; 2) that the panels would perform for 20-25 years;

12   and 3) that the panels would be safe.  All three of these promises have been broken.

13       40.    Plaintiffs Steve and Andrea Rojas paid Twenty-Five Thousand Three Hundred

14   Thirty-Nine and 22/Dollars ($25,339.22) for their Bosh solar system.  The purchase amount was

15   one of the most significant and largest financial commitments made by Plaintiffs in the course of

16   their thirty-six year marriage.

17       41.    Approaching the age of retirement, Plaintiffs, like all class members, were

18   attempting to reduce their future electric bills as part of their financial planning.

19       42.    Investment in a solar power system required that the Plaintiffs pay "upfront" for

20   electricity that the Bosch Solar promised would be generated for the next 25 years.

21       43.    No one would pay for electricity in advance were it not for the fact that the

22   warranty period substantially exceeds the time it would take to receive the return on their

23   investment.  Generally, it takes between 5 and 10 years for the upfront investment to be returned

24   through savings on electric bills.

25       44.    The return on that investment is directly related to the amount of electricity the

26   Bosch Solar energy system generates year after year.  If the panels are defective or prematurely

27   fail, the solar system degrades and the value from the solar system is lost.

28       45.    Kilowatt , and other companies that purchase the Panels and enter into Prepaid

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-8-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

1   Power Purchase agreements with end-users also understand the warranties alleged herein to form

2   part of the basis of the bargain, and rely upon the existence of the warranty, in entering such

3   contracts with end-users, so that the continued supply of power, as provided by the Prepaid Power

4   Purchase agreement, can be maintained, and so that defective or underperforming panels may be

5   replaced.  Indeed, the agreement between Kilowatt and Sullivan defines the "Consumer" as the

6   "homeowner…who owns (or own) a Host Site."

7          46.     Moreover, Bosch Solar intended the warranties to be part of the basis of the

8   bargain.  The warranties themselves have a listing of the model numbers to which they apply,

9   including the model number used and now owned by Plaintiffs.  Moreover, Bosch Solar

10  manifested its understanding and intent that the warranties were part of the basis of the bargain,

11  by responding to Plaintiffs' warranty claim, including the written agreement (never performed by

12  Bosch Solar or Baker to replace the plaintiffs Panels, even though they were not part of the recall.

13  **IV.    THE WARRANTY**

14         47.     The Bosch Solar Limited Warranty for photovoltaic modules provides, in part, as

15  follows:

16         **"Limited Warranty for photovoltaic modules**

17
18         Bosch Solar Energy Corp. provides a product warranty and a performance
           warranty for its photovoltaic modules (hereinafter "Module" or
19         "Modules") listed is [*sic*] the Appendix.  The product warranty (the
           "Product Warranty") covers the material and workmanship of the Modules
20         (see section A below).  The performance warranty (the "Performance
           Warranty) covers loss of performance (degradation) and minimum output
21         of the Modules (see section B below).

22         **A:     Product Warranty**

23         Bosch Solar Energy Corp. warrants to the Consumer (defined below) that
24         the Module is free of defects in material and workmanship for a period of
           ten (10) years from the date of delivery, subject to the Warranty
25         Conditions.  The Consumer is the final customer or end-user that properly
           places the Modules into operation for the first time.  The date of delivery
26         as used in this Limited Warranty shall be the earlier of (i) the date of
           installation by the Consumer, or (ii) ninety (90) days after delivery of the
27         Module by Bosch Solar Energy Corp. to the Consumer.

28

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-9-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

**B:    Performance Warranty**

Bosch Solar Energy Corp. warrants to the Consumer that the Module will:

a)      within a period of ten years from the date of delivery provide at least 90%; and

b)      within a period of 25 years from the date of delivery provide at least 80%

of the minimum performance set forth in the data sheet (defined as the lower sorting limit of the respective module power class less the power measurement tolerance).

**C:    Warranty Conditions**

**1.    General**

1.1     These Warranties are granted to the Consumer or shall transfer from the Consumer to subsequent buyers / end users for the remainder of the warranty period, provided the subsequent buyers / end users can show that the Modules have not been modified or relocated from their originally installed location.

**2.    Disclaimers/Liability Limitations**

2.3     These Warranties are exclusive and in lieu of all other express and implied Warranties whatsoever, including but not limited to the implied Warranties of merchantability and fitness for particular purpose.  The liability of Bosch Solar Energy Corp. under these Warranties shall not exceed the purchase price paid by the Consumer for the Module(s), and under no circumstances shall Bosch Solar Energy Corp. or any of its affiliates, be liable to the Consumer or any other third party for any consequential, incidental, indirect, commercial (loss of use, revenue, profits, or down time) or punitive damages whatsoever.

2.4     The sole obligation of Bosch Solar Energy Corp. under these warranties shall be, at its sole discretion, to (i) replace the Module with a functional module of the same type, (ii) remedy the defects, or (iii) refund the unamortized portion of the purchase price of the Module.  In the event that the type of Module is no longer available at the time of the warranty claim, Bosch Solar Energy Corp. may replace such Module with another type of solar Module (different size, shape, color and/or capacity).

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-10-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

**3.    Warranty Claim Verification and Procedure**

3.2    All warranty claims must be accompanied by (i) the original bill of sale for the Module, and (ii) proof that (a) there is a defect in the materials and/or workmanship of the Module, or (b) the performance of the Module no longer meets the minimum performance warranted by Bosch Solar Energy Corp.

3.3    Bosch Solar Energy Corp. or its authorized representative(s) reserve the right to verify the claim that the performance of the Module no longer meets the minimum performance warranted under the Performance Warranty.

Module Performance shall be measured by Bosch Solar Energy Corp. under standard test conditions (25° C cell temperature, irradiation 1000 W/m$^2$ and spectrum AM 1.5).  Output will be measured in each case at the ends of the pre-assembled connector on the rear of the module.  The Consumer is responsible for maintaining the standard test conditions while producing evidence that the performance has fallen below the guaranteed minimum performance.

3.4    Claims submitted under these warranties must be submitted within three (3) months of the occurrence of an event placing the Consumer on notice that a claim under one of the warranties has or may have arisen.  The burden of showing compliance with this time limitation lies with the Consumer.  Claims not submitted within this period will not be considered.

3.5    All disputes arising from this warranty shall be governed by the laws of the State of Michigan and conflict of law rules shall not apply."

48.    In order to entice consumers and end-users to purchase or use the Bosch Solar system, Bosch Solar provided a product warranty and a performance warranty.  Under the product warranty, Bosch Solar Energy Corp. warrants to the consumer or subsequent owner and end-user that the panels would be "free from defects in materials and workmanship" as part of its 10 year "Product Warranty."

49.    Bosch Solar also promised as part of its "performance warranty" that the panels would not lose more than 10% to 20% of their power output capacity over the first 25 years. Bosch Solar guaranteed that their panels would produce electricity at 80% - 90% of their power output rating for 25 years.  In the absence of the warranties, Plaintiffs, and all class members

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

1   would not have purchased the Bosch Solar panels.

2   **V.     THE RECALLED MODULES**

3         **A.     The Bosch Solar Recall and Product Safety Recall Notice**

4         50.     On April 3, 2017, in conjunction with the CPSC, Bosch Solar Services recalled

5   approximately 28,000 solar panels "due to fire hazard."

6         51.     **Total Number of Products Involved**.  According to information obtained by

7   Plaintiffs' counsel through the Freedom of Information Act ("FOIA") approximately 44,500

8   Bosch Solar modules were manufactured with the defect, 28,000 of which have been recalled are

9   the subject of this lawsuit.

10        52.     **Dates of Manufacture and Sale**.  The Bosch Solar c-Si M 60 NA30119 Panels

11  were manufactured between September 15, 2011 and March 31, 2012 and were sold in the United

12  States beginning October 2011 and continuing through May 2013 and possibly beyond, according

13  to proof.

14        53.     The Bosch Solar Product Safety Recall Notice reads as follows:

15             "**Why is Bosch Solar Services replacing the modules?**

16             Bosch Solar observed that a small number of c-Si M 60 NA30119

17             modules exhibited what appeared to be heat marks near some solder

18             joints.  Bosch Solar then conducted a detailed technical review to

19             determine the cause of the marks.  Through this analysis, Bosch Solar

20             determined that where electrical contacts to the solder had degraded,

21             the resulting contact resistance could result in heat.  If the heat were

22             great enough, and if the mounting structure or embedding material

23             were flammable, Bosch Solar determined that it was theoretically

24             possible for a fire to result.  Although no such fires have been

25             reported, Bosch Solar commenced this recall to ensure the quality of

26             its products and the safety of its customers."

27        54.     According to the CPSC "Recall Handbook," the objectives of a recall are:

28             a.      to locate all defective products as quickly as possible;

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-12-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

b.    to remove defective products from the distribution chain

and from the possession of consumers; and

c.    to communicate accurate and understandable information in

a timely manner to the public about the product defect, the

hazard, and the corrective action.  Companies should

design all informational material to motivate retailers and

media to get the word out and consumers to act on the

recall."  (Recall Handbook published by the Consumer

Product Safety Commission (March 2012)).

55.    The Recall Handbook further states:

"A company that undertakes a recall should develop a

comprehensive plan that reaches throughout the entire distribution

chain to consumers who have the product. The company must

design each communication to reach affected consumers, motivate

people to respond to the recall and take the action requested by the

company."  (Recall Handbook published by the Consumer Product

Safety Commission (March 2012)).

56.    **Failed Recall Notice Plan.**  The recall notice plan implemented by Bosch Solar

accomplished no direct notice to the end-user.  The notice plan involved little more than Bosch

Solar sending a letter to its forty-two (42) distributors requesting their distributors to contact

installers who sold Bosch Solar panels to end-users, and then, provide Bosch Solar with the

names and contact information of persons to whom they had sold the Bosch Solar NA30119

Panels.

57.    This attenuated notice plan was therefore fully contingent on the willingness of

distributors to expend their own time and resources to contact the contractors to whom they sold

the panels.  The cooperation of the distributors, even for the limited task of sending a letter to

their customers, who were the contractor/installers and not the end-users, was entirely voluntary.

Nothing under the rules of the CPSC mandated the cooperation of the distributors.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

58.     Making it even less likely that the distributors would voluntarily implement the Bosch Solar notice plan was the fact that Bosch Solar refused to pay the distributors or installers for the considerable time and expense they would be required to expend in order to send letters to their installer customers.

59.     Nowhere does the notice program indicate that Bosch Solar had access to the addresses of any end-users.  Yet Bosch Solar successfully argued to the CPSC that "...because these *consumers can be identified, direct communications with the consumers makes press releases, point of sale posters, and other indirect means of communication unnecessary*." (November 3, 2016 letter from Bosch Solar counsel Creighton R. Magid to Sheela Kadambi, Compliance Officer, Defect Investigations Division, Office of Compliance and Field Operations, U.S. Consumer Product Safety Commission.)

60.     In fact, consumers could not be identified by Bosch Solar without a more extensive and expensive notice program.  Bosch Solar did not achieve "direct communication" with its end-users.

61.     According to recall reports submitted by Bosch Solar to the CPSC regarding the impact of the recall notice plan, a sum total of reported responses to the Bosch Solar noticed program consisted of 13 phone calls and 13 emails and no response letters.  It is unknown what entities generated these responses.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-14-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

62.     The following Corrective Action Plan Summary, prepared by the CPSC indicates that Bosch Solar "notified their dealers about the recall," not consumers and end-users.

Corrective Action Plan Summary

| DATE | FIRM AND PRODUCT | ALLEGED HAZARD | CORRECTION NARRATIVE |
|---|---|---|---|
| May 17, 2017 | Bosch Solar Energy Corporation 2988 Campus Drive Suite 100 San Mateo, CA 94403 Bosch Solar Roof-Mounted Solar Panels, model number: c-Si M 60 NA30119 | Fire Hazard | The firm notified their dealers about the recall. They will offer all their consumers a free replacement. They conducted a Joint PR with the Commission. |

63.     The Bosch Solar CPSC recall notice program was ineffectual and inconsistent with commonly accepted practices for achieving direct notice to consumers.

**B.     All Bosch Solar c-Si M 60 NA30119 Panels Are Defective, Dangerous and Must Be Replaced**

64.     The fact that Bosch Solar entered into a voluntary recall program with the CPSC does not alter the admission by Bosch Solar that the panels are defective and present a serious fire and safety risk to end-users.

65.     Nor does the recall excuse Bosch Solar from performing its obligations pursuant to the Express Warranty which provides "...that the modules are free from defects in materials and workmanship for a period of ten (10) years from the date of delivery…"  The recall is an admission by Bosch Solar that the c-Si M 60 NA30119 Panels are defective and that Bosch Solar has breached the Express Warranty.

66.     All Bosch Solar c-Si M 60 NA30119 Panels, whether roof-mounted or ground-mounted must be removed and replaced pursuant to the terms and conditions of the Bosch Solar Express Warranty.

/ / /

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

C.     **Bosch's Refusal To Pay The Reasonable Expenses of Inspecting Recalled, Defective and Underperforming Panels**

67.     Bosch Solar has also failed to design or implement an adequate replacement protocol, in that, in the limited number of instances where the Recalled Panels have been located and identified, Bosch Solar fails to replace the panels or there are substantial and unjustified delays in doing so.  This occurs because Bosch Solar failed to hire a competent administrator to implement the recall or to secure an adequate number of solar contractors to actually remove and replace the Bosch Solar panels.

68.     In addition, Bosch Solar refuses to hire and pay solar contractors to ascend roofs to confirm the presence of the Recalled Panels.  Bosch Solar also refuses to pay end-users for the inspection related costs to determine if a person has the Recalled Panels or other Bosch Solar Crystalline series modules that are underperforming or defective.  This imposes an unreasonable burden of identifying the panels upon the end-user as a condition for securing the benefits of the warranty or the recall and forces the end-user to incur substantial expense that should be paid by Bosch.

69.     This is true because it is unsafe for an end user/customer to climb a ladder, often 15 to 25 feet high, to photograph and identify panels.

70.     In addition, the module number can only be found on a label located on the back side of the panel.  This requires that each and every panel be removed from its brackets on the roof in order to see the identifying label.  It also requires the cable which conducts high powered and dangerous electricity to be detached because the panel cannot otherwise be turned over to see the label.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-16-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

The photograph below depicts a label on the back side of a panel from the Rojas solar array.



Label on the back side of a panel reflecting the
Bosch Solar serial number identified as "c-Si M 60 NA30119"

71.    Both the Bosch Solar recall notice plan and the warranty procedure not only put the burden and risk of identifying the Recalled Panels on the homeowner, it instructs or encourages the homeowner to summon the installers of the Bosch Solar panels, who may or may not still be in business, to perform the costly and time consuming task of identifying the panels. Bosch Solar will not pay installers for the expensive task of identifying its panels.

72.    The same is true for panels subject to a warranty claim.  Bosch Solar will not pay for a qualified solar contractor to conduct an inspection made necessary by the defective and unsafe panels.  In this way, Bosch Solar unfairly, unlawfully and fraudulently shifts the burden of warranty inspections to the consumers.

/ / /

/ / /

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-17-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

VI.     **THE BOSCH SOLAR WARRANTY DEPRIVED PLAINTIFFS AND THE CLASS OF THE BENEFIT OF THE BARGAIN**

A.      **The Backsheet Delamination Defect**

73.     The second Bosch Solar panel defect, common to all Bosch Solar Panels, purchased by Plaintiffs and the Class, is known as delamination.

74.     A solar panel consists of several layers of material that is vacuum sealed in order to prevent water and air from coming in contact with the cells which generate electricity, a condition essential to the successful operation of the panel.

75.     The layers of the Bosch Solar panels are depicted below:



76.     The Bosch Solar panels consist of five layers: glass, the plastic coating encapsulant (commonly known as EVA), solar cells, backsheet, and the back EVA plastic coating encapsulant.

77.     Delamination is the detachment of the laminated components of a solar panel. Delamination occurs when the bond between the plastics on the back side of the panel separate. In the case of the Bosch Solar c-Si M 60 NA30119 Panels, the delamination causes the backsheet to flex and crack.

/ / /

/ / /

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-18-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

1

78.      The photographs below depict panels from the Rojas solar array.

2

Delaminated and Cracked Backsheet
in Bosch Solar c-Si M 60 NA30119 Module at the Rojas Property



Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-19-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Cracked Backsheet Running the Length of the
Bosch Solar c-Si M 60 NA30119 Module at the Rojas Property



Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-20-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

1

2

Cracked Backsheet Running the Length of the
Bosch Solar c-Si M 60 NA30119 Module at the Rojas Property

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-21-                                    Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cracked Backsheet Running the Length of the
Bosch Solar c-Si M 60 NA30119 Module at the Rojas Property



Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

79.     Delamination destroys the safe and effective functionality of the solar panel because it allows air and moisture to creep inside of the panel in between the layers of the components of the solar panels.  It is undisputed among the solar industry experts that solar panels must remain hermetically sealed to properly function.  The symptoms of delamination in the Bosch Solar panels are bubbles and cracks on the backsheet.

80.     Ultimately, the delamination is due to weakening chemical adhesion of the layers of the panel which degrade the capacity of the cell to produce electricity.

81.     Delamination is obvious to solar panel experts but Plaintiffs and average consumers are not aware how to identify delamination or of its significance.

82.     Delamination is a condition that is continuous and progressive.  Over time, delamination and the associated bubbling and cracking of the backsheet become larger and more propagated on the Bosch Solar panels.  The delamination cannot be arrested or repaired.  The power production of the Bosch Solar panel will decrease in direct correlation to the increasing delamination.  This condition will inevitably cause corrosion, degradation of power, safety risks and imminent failure.  The consequences of delamination are undisputed among experts in the solar industry.

83.     The delamination failures are systemic throughout Plaintiffs' solar system and are caused by a common and universal defect in the Bosch Solar panels.  An inspection of Plaintiffs' property on Wednesday, December 19, 2018 revealed that approximately 30 of Plaintiffs' 42 panels have experienced delamination and cracking in the backsheet.

84.     All of the Bosch Solar NA30119 Panels have either experienced delamination failure or will experience delamination failure before the end of their useful life.  The delamination has caused or will cause the panels to perform under the minimum requirements within their useful and warranted life.

### B.     Safety Risk and Fire Hazard of Delamination

85.     Delamination causes serious safety and fire hazards.  Delamination causes moisture, water and air to come in contact with the wires that conduct electricity.  When moisture enters the panel from the edges of the module, it causes electrical hazards.  Delamination can

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

THIRD AMENDED COMPLAINT FOR DAMAGES

1   cause the electric current to leak to the frame.

2       86.     Leaking electric current to the frame can be significant enough to "energize" the

3   frame and cause it to conduct electricity.  In this event, there is a shock hazard and imminent risk

4   of electrocution to anyone who comes in contact with the solar panel.

5       87.     If the back side of the panel delaminates, bare wires conducting electricity are

6   exposed to the elements and are a dangerous safety risk.  These panels must be inspected by

7   experts, not Class Members.

8       **C.     Arc Fault Failure**

9       88.     In addition, delamination can cause the electric current to "arc".  This condition is

10  known as an "arc fault failure".  Arc fault failures can generate temperatures in excess of 2000° -

11  3000°F.

12      89.     An "arc fault" is a high power discharge of electricity between two or more

13  conductors.  This discharge translates into heat and can trigger an electrical fire.  A common

14  cause of arc faults includes faulty connections due to corrosion.  Delamination is known to cause

15  corrosion in the electrical circuitry of solar panels.  Corrosion causes gaps or breaks in the

16  electrical circuitry.  Arc faults occur when the electrical current jumps the gap in the circuitry

17  conductors.  Because of the delamination on Plaintiffs' and Class Member's panels, the

18  conductors have been corroded and damaged and create an imminent safety risk and fire hazard to

19  roofing materials on roof-mounted arrays.

20      90.     Furthermore, because dry cellulose materials such as grass, leaves, weeds and

21  twigs are often in contact with or in close proximity with the surface of solar panels, this

22  inevitably and commonly creates a serious risk of fire and must be eliminated.  This condition

23  also creates a serious safety risk to anyone near the panel.  Bosch Solar has failed to warn end

24  users of the serious and dangerous risks.

25      **D.     Failure To Adequately Test Before Sale**

26      91.     This systemic delamination and poor solder joints are a result of, among other

27  things, Bosch's failure to adequately test its solar panels for long-term performance.

28      92.     Bosch Solar has universally represented and warranted that its panels will produce

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

1    a minimum of 80% of the maximum output power stated in its specification for 25 years.

2        93.     This representation is without adequate technical support because it was never

3    based upon a testing sample that would justify and support its unfounded power output promises.

4    In the absence of that promise, Plaintiffs and the Class, would never have purchased the panels.

5    **VII.    THE UNCONSCIOUNABILITY OF THE WARRANTY CLAIM VERIFICATION
         AND PROCEDURE**

6

7        94.     The Warranty Appendix consists of a list of covered Bosch Solar Crystalline

8    Series Modules Series Modules as set forth in paragraph 3.5 of the Warranty.

9        95.     The Bosch Solar Warranty Claim Verification and Procedure which applies to all

10   modules listed in the Warranty Appendix is procedurally and substantively unconscionable.

11       96.     The exclusions, and Warranty Claim Verification and Procedure in the Bosch

12   Solar warranty were not bargained.  The Bosch Solar Express Warranty is a contract of adhesion.

13       97.     The terms and conditions required by Bosch Solar to submit and perfect a claim

14   that the performance of the module no longer meets the minimum performance warranted by

15   Bosch Solar are oppressive.

16       98.     The Warranty Claim Verification and Procedure is incomprehensible to any

17   consumer and requires the expertise of a solar engineer to understand and implement.

18       99.     No part of the warranty explains what the consumer has to undertake in order to

19   submit a warranty claim that the module no longer meets the minimum performance.

20       100.    Bosch Solar reserves the right to verify the claim that the performance of the

21   module no longer meets the minimum performance.  In doing so Bosch Solar states the following:

22           "Bosch Solar Energy Corp. or is authorized representative(s) reserve the
             right to verify the claim that the performance of the module no longer
23           meets the minimum performance warrantee under the performance
             warranty."
24

25           "Module performance shall be measured by Bosch Solar Energy Corp.
             Under standard test conditions (25° C cell temperature, irradiation 1000
26           $W/m^2$ and spectrum AM 1.5).  Output will be measured in each case at the
             ends of the pre-assembled connector on the rear of the module."

27

28

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-25-                                              Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

101.    Initially, the above language states that if a consumer makes a claim that the performance of the module no longer meets the minimum performance warranty, Bosch Solar reserves the right to test the panels "under standard test conditions…"  In other words, if a claim is made Bosch Solar may perform tests on the panels "under standard tests conditions."

102.    Then Bosch Solar employs language that reverses the burden of the cost and responsibility for performing the "standard test conditions" on the modules to the consumer.

103.    The warranty states:

> "The consumer is responsible for maintaining the standard test conditions while producing evidence that the performance has fallen below the guaranteed minimum performance."

104.    By this language, Bosch Solar is requiring the consumer, who makes a claim that the module no longer meets minimum performance, to test the modules to "standard test conditions."

105.    Nowhere in the Bosch Solar warranty does Bosch Solar explain how the "standard test conditions" are to be performed or what steps the consumer would have to undertake in order to test panels.

106.    When the warranty refers to "standard test conditions" the only modifying language is as follows:

> "(25C cell temperature, irradiation 1000 W/M$^2$ and spectrum AM 1.5)."

107.    This language in the first instance is fundamentally ambiguous.  In addition, the language is highly technical in nature and is incomprehensible to anyone other than a solar expert.

108.    In fact, it is impossible for even an expert to maintain "standard test conditions" while testing the output performance of the modules, unless the modules are tested in a certified and accredited laboratory capable of performing the test in a controlled laboratory environment.

109.    The consumer cannot perform the requirements of the "standard test conditions" unless the panels are: 1) removed from their property; 2) packaged to manufacturers specifications to avoid damage; 3) shipped to an accredited laboratory; 4) tested with the oversight of a solar engineer expert; 5) repackaged; and 6) shipped back to the end users property and reinstalled by qualified experts.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-26-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

110. The Warranty is silent to the question of how and when Bosch Solar would test the panels should it exercise its "reserved" right to do so.

111. The "standard test conditions" can only be found in:

1)   IEC 60904–1, photovoltaic devices – part 1: Measurement of photovoltaic current and voltage characteristics.  IEC stands for International ElectroTechnical Commission, and

2)   ASTM E927-10 Standard Specification for Solar Simulation for Photovoltaic Testing.  The American Society for Testing and Materials (ASTM).

112. These standards articulate the guidelines for how to conduct performance tests to the "standard test conditions" required by the Warranty.  These standards were not mentioned in the Warranty.

113. The standard test conditions are designed to test the performance of PV modules and specifies a cell temperature of 25° C and irradiance of 1000 W/$M^2$ with an air mass of 1.5 (AM1.5) spectrum.  These correspond to the irradiance and spectrum of sunlight incident on a clear day upon a sun-facing 37°- tilted surface with the sun at an angle of 41.81° above the horizon.

114. This condition approximately represents solar noon near the spring and autumn equinox in the continental United States with the surface of the cell aimed directly at the sun. However, these conditions are rarely encountered in the real world.  STC-based performance measurements are applied in what is commonly referred to as solar flash testing which manufacturers conduct in a laboratory controlled environment during the manufacturing process.

115. Under STC conditions, the cells are maintained at 77°F (25° C).

116. The normal operating cell temperature which is typically found in a solar array is 113°F (45° C).  PV modules in the field operate over a wide range of temperatures, irradiance, and spectrum.  It is therefore impossible to conduct testing as required by the Bosch Solar warranty at the site of the installation.  All such testing, by definition, is required by the standard, and in turn the Bosch Solar Warranty, to be performed in the laboratory under a scientifically controlled environment and with highly sophisticated equipment.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-27-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

117.    Maintaining "standard test conditions" is impossible on the site of any solar array, and is only achievable in a laboratory environment.

118.    To adhere to the "standard test conditions," the consumer would be required to have the expertise of knowing what laboratory would have the necessary equipment in order to perform the tests.

119.    The appliance used for measuring the output performance conformity of a solar PV module is called a flash test machine or solar simulator.

120.    During a flash test the PV module is exposed to a short (1 MS 230 MS), bright (100 mW per sq. cm) flash of light from a xenon filled arc lamp.  The output spectrum of this lamp is as close to the spectrum of the sun as possible.  The output is collected by a computer and the data is compared to an exactly calibrated reference solar module.

121.    The reference data is geared to the power output calibrated to standard solar irradiation.  The results of the flash test are compared to the manufacturer's specifications.

122.    In short, in order to perform testing to these standard test conditions, a laboratory is required to have a solar simulator, a $75,000.00 - $100,000.00 price of equipment, a reference PV module and a computer for collecting data.  Ultimately the test compares the data from the reference PV module to the data from the newly manufactured modules.

123.    It is impossible for a consumer to understand the complexity of the standard test conditions which the Bosch Solar warranty mandates adherence to in order to verify a warranty claim that the performance of the module no longer met the minimum performance warranted by Bosch.

124.    It is not feasible or reasonable for a consumer or solar contractor to acquire the equipment or knowledge to perform the task as required under the standard test conditions.

125.    The total cost of testing Plaintiffs' array can range from $15,000.00 to $30,000.00 and may exceed the cost of purchasing and installing the Bosch Solar array or a new array altogether.

126.    No consumer could have understood that the Bosch Solar warranty, should they assert a claim for performance degradation, would require the consumer to spend an amount that

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

1    could approach the entire value of the array.

2         127.   The Bosch Solar "standard testing conditions" are impossible to adhere to in order

3    to pursue a performance claim under the Bosch Solar warranty.

4         128.   Bosch's attempt to allocate the cost and burden of proving a warranty claim to the

5    end-user or final customer has no social or principled purpose other than to secretly shift the risk

6    of the failures of the panels back to the consumer, notwithstanding Bosch's 25-year performance

7    warranty, the fundamental reason for purchasing the panels.

8         129.   The impact of the "standard testing conditions" warranty provision is unreasonably

9    one sided.

10        130.   The Bosch Solar warranty reallocates the risk of the bargain in an objectively

11   unreasonable and completely unexpected manner.  This is true because the cost of asserting a

12   warranty claim exceeds the value of the remedy.   Moreover, Bosch Solar has erected other

13   artificial barriers to impede the consumer's ability to assert a claim, such as   the 90-day notice

14   clause; Bosch Solar can assert that provision to avoid payment of a claim and most consumers

15   will be unaware that such a notice clause is enforceable only if Bosch Solar is prejudiced by the

16   late notice.

17        131.   The hidden extraordinary costs of proving a warranty claim surprised and shocked

18   Plaintiffs in that their Bosch Solar system is only five years old and has failed.  Plaintiffs have

19   made inquiries about the requirements of the Warranty Claim Procedure and the requirement of

20   testing their panels to "standard test conditions."  The cost of doing so is so expensive that it

21   would likely be more than the cost of replacing their entire Bosch Solar array.  The remedies of

22   the Bosch Solar Limited Warranty fail of their essential purpose.  The system also presents fire

23   and safety risks which Bosch Solar has publicly admitted.  Plaintiffs should not be forced to run

24   for their lives—as Bosch Solar callously suggests—if their system catches fire.

25        132.   When Plaintiffs' Bosch Solar array was first installed, they had virtually no

26   electric bills.  In the year 2017, their electric bill jumped to nearly $3,000.00.  The bill for 2017

27   was received in April, 2018 and Plaintiffs were therefore unaware of an increase in their 2017

28   electricity bill until April, 2018.  Even with the increased bill Plaintiffs are unaware of the cause

-29-

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

of the decreased power production without the advice of an expert which Bosch Solar refuses to provide.  See also paragraphs 203 to 208 regarding estoppel to assert statute of limitations.  In 2017 alone, Plaintiffs have lost approximately $200.00-$250.00 a month because of the breaches of warranty.  Because the panels are defective, and since Bosch Solar has refused to repair or replace the panels, Plaintiffs have incurred higher electrical bills than they otherwise would have with functioning panels.  Plaintiffs will continue to incur higher electrical bills unless and until Bosch Solar repairs or replaces the solar panels.

133.    Plaintiffs relied on the representations of Sullivan regarding the reliability, durability and terms of the long-term warranty of Bosch Solar which was held out as a reputable and trustworthy company and would not have otherwise entered into the transaction.

134.    The unconscionability of the warranty extends to all of the purported limitations and exclusions including, but not limited to 1) the "standard test conditions" provision; 2) the limitations of liability to the purchase price; 3) the refusal to pay consequential damages; 4) the refusal to pay for loss of use; 5) the refusal to pay punitive damages even in the case of fraud; and 6) the purported 90-day notice period. .

135.    Given the complexity of the terms of the Bosch Solar warranty and Bosch's failure to direct its customers' attention to the limitations of the warranty and the warranty claim procedure, the burden is on Bosch Solar to show that the consumers who purchased its panels had knowledge of the highly unusual and unconscionable terms contained in the warranty.

136.    Plaintiffs and the class request that the court find as a matter of law that all the Disclaimers/Limitations of liability and the Warranty Claim Procedure are unconscionable. Plaintiffs, and the class, request that the Court enforce the 10-year product warranty and the 25-year performance warranty but sever the limitations of liability and Warranty Claim Verification and Procedure.

137.    Further evidence that the Bosch Solar limitations in the warranty are procedurally and substantively unconscionable are the final three provisions of the warranty.  First of all, the warranty asserts at paragraph 3.3 that if the testing performed by the consumer demonstrates that

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

1  the modules meet the minimum performance warranted, that Bosch Solar "shall be entitled to

2  reimbursement of the cost of conducting such tasks from the party submitting the warranty

3  claim."  How and when such tests would be accomplished is never mentioned in the Warranty.

4      138.    Because testing modules to the standard test conditions is extraordinarily

5  expensive, for a consumer to be billed by Bosch Solar for the cost of Bosch's test after having

6  already incurred the extreme expense of performing their own test is additional evidence of

7  unconscionability.

8      139.    Notwithstanding the requirement of the standard test conditions that the panels be

9  removed from the installation and tested in a laboratory environment, the Bosch Solar warranty

10 states at paragraph 2.1 under "Disclaimers/Liability Limitations" that if diminished performance

11 is caused by "removal and/or reinstallation of modules (not in compliance with current

12 installation manual)" then Bosch Solar would have no responsibility to perform under the

13 warranty - again an unconscionable limitation because to maintain the standard test conditions,

14 the panels have to be removed and reinstalled which would allow Bosch Solar to invoke this

15 limitation and deny any warranty claim.

16     140.    Bosch Solar then attempts to enforce an unconscionably short notice provision.

17 Paragraph 3.4 states:

18     "Claims submitted under these warranties must be submitted within
       three (3) months of the occurrence of an event placing the Consumer
19     on notice that a claim under one of the warranties has or may have
       arisen.  The burden of showing compliance with this time limitation
20     lies with the Consumer.  Claims not submitted within this period will
       not be considered."
21

22     141.    Given the complexity, cost and impossibility of adhering to the "standard test

23 conditions" a 90-day notice period is unconscionable.

24     142.    Nonetheless, Plaintiffs serendipitously complied with the 90 days of their learning

25 that their ground-mounted panels were potentially defective.  Moreover, even if Bosch Solar were

26 to contend the 90-day period had not been met, such a provision is only enforceable in the event

27 of prejudice, and there is no basis on which Bosch Solar could claim prejudice here.

28     143.    Lastly, Bosch Solar asserts that the warranty shall be governed by the laws of the

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999
-31-
Case No. 5:18-cv-5841-BLF
THIRD AMENDED COMPLAINT FOR DAMAGES

1   State of Michigan and that "conflict of laws rules shall not apply," again, unenforceable and

2   unconscionable provisions.

3   **VIII.   SULLIVAN WAS BOSCH'S AGENT**

4        144.   At all times relevant herein, end-users of the solar panels relied on installers of

5   solar panels to advise them concerning the advantages of purchasing solar panels generally and of

6   the unique benefits of products produced by particular manufacturers, such as Bosch.

7   Accordingly, Bosch Solar knew that if it wanted end-users to select Bosch Solar panels it had first

8   to convince installers that they should recommend Bosch Solar panels rather than solar panels

9   manufactured by others.

10       145.   The Bosch Solar distributors sold the panels to solar *contractors*.  In most instances, as

11  here, only the solar contractors had direct contract with the end-users of the panels, namely the individuals

12  or entities that paid the contractors for the cost of the panels and the cost of installation.  The Bosch Solar

13  business model required that installers make representations on behalf of Bosch Solar regarding the Bosch

14  Solar Warranty and quality of the modules.

15       146.   Bosch's marketing plan for the solar panels relied almost exclusively on installers

16  like Sullivan to promote its products and recommend the Solar Panels to end-users as they did

17  with Plaintiffs.  Bosch Solar authorized and expected installers to make representations to

18  potential Bosch Solar customers regarding the durability and economic benefits of its solar panels

19  and that they would satisfactorily perform for 25 years and that end-users would have warranty

20  protection for 25 years as set forth below.

21       147.   According to representations made by Bosch Solar to the Consumer Product

22  Safety Commission pursuant to its recall, the subject Bosch Solar panels "were sold exclusively

23  to dealers/installers[.]"  Bosch Solar proposed to send recall notices via "dealer letters" to its

24  dealers rather than to the public or end users as part of its recall "notice" program.

25       148.   Per documents submitted by Bosch Solar to the CPSC in the recall, Sullivan

26  Electric was the second largest authorized dealer of the Bosch Solar Model #c-Si M 60 NA30119

27  panels in California (narrowly behind the largest Bosch Solar dealer).  Sullivan purchased and

28

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-32-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

installed the NA30119 Bosch Solar panels for many homes.  According to documents filed by Bosch Solar with the CPSC, Sullivan purchased and installed nearly 1,000 of said panels for roof top installations alone.  As the second largest Bosch Solar dealer in California, Sullivan was knowledgeable and had significant expertise about the features of the Bosch Solar panels, and specifically general terms of the warranty that covered the panels.

149.    Sullivan is a substantial solar contractor in California with multiple offices. Sullivan Solar Electric have been licensed by the State of California to install solar systems for many years.  In recent years, Sullivan has installed over 8,000 solar systems, primarily on residential properties much like Plaintiffs' property.

150.    Sullivan installed Plaintiffs' Bosch Solar system.

151.    Because Bosch Solar sold its panels "exclusively to dealers/installers," and not directly to end users, Bosch Solar relied on Sullivan and its other dealers/installers to sell the panels to consumers and to relay the general terms of its warranty to the consumers.

152.    Sullivan was in fact an authorized dealer and preferred vendor of the Bosch Solar NA 30119 panels.

153.    The only means by which Bosch Solar communicated information about its NA30119 panels to Plaintiffs was through Sullivan Electric.

154.    Bosch, intentionally or by want of ordinary care, caused or allowed Plaintiffs to believe that Sullivan possessed the authority to represent to Plaintiffs the terms of the written warranty herein.

155.    Bosch Solar knew that Sullivan was an important California dealer of its panels and authorized Sullivan to sell its panels and educate consumers and end users about the terms of the warranty in order to sell its product.

IX.    **PLAINTIFFS' INDIVIDUAL ALLEGATIONS**

A.    **Rojas Facts**

156.    For many years, Plaintiffs Steve R. Rojas and Andrea N. Rojas had been interested

THIRD AMENDED COMPLAINT FOR DAMAGES

1   in solar power as a way to reduce their electric bills and to save money.

2       157.    Mr. Rojas learned of Sullivan Electric in an article in the local newspaper, The

3   Press Enterprise.  Rojas contacted Sullivan Electric to inquire about purchasing a solar power

4   system.

5       158.    During October 2012, Mr. Rojas made arrangements with Sullivan Electric come

6   to his home, inspect the property and discuss how a solar array could be purchased and installed.

7   On October 23, 2012 Hans Berg, an employee of Sullivan Electric, met Plaintiff Steve Rojas at

8   his residence.  Mr. Berg was a salesman and solar engineer for Sullivan and was knowledgeable

9   about Bosch Solar NA30119 panels.  Mr. Berg spent approximately two hours with Plaintiffs at

10  their home.

11      159.    Mr. Berg conducted an inspection of the Rojas premises and property.  He also

12  examined prior electrical bills of the Rojas's to determine what size of solar array would be

13  necessary to eliminate or substantially reduce the Rojas's electrical bill.  Mr. Berg informed Mr.

14  Rojas that he would gather the necessary information and design a ground-mounted solar system

15  and call him back with a quote for the cost of the system.

16      160.    On October 28, 2012, five days after meeting with Plaintiffs, Mr. Berg called Mr.

17  Rojas to discuss the information and data he had put together for a ground-mounted array to be

18  installed on the Rojas property and convey the terms of the warranty

19      161.    During the October 28, 2012 telephone conversation, Mr. Berg advised Mr. Rojas

20  that the "best deal" would be to enter into a "prepaid lease."  At that time Mr. Berg informed Mr.

21  Rojas that they would be installing Bosch Solar panels.  Mr. Berg had considerable solar expertise

22  and was very knowledgeable about the Bosch Solar panels recommended to Plaintiffs.

23      162.    There were no choices or alternatives regarding what panels Sullivan was going to

24  install on the property.  Plaintiffs were simply informed that Bosch Solar panels would be used

25  for their solar array.

26      163.    On October 28, 2012, Mr. Berg advised Mr. Rojas that the Bosch Solar panels

27  were of the "highest quality" and a "premium" product.  Mr. Rojas was familiar with the Bosch

28  Solar name as a manufacturer of tools and appliances.  At the time Mr. Rojas held the Bosch

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

Solar name and reputation in high regard and did not consider asking for a different model brand.

164.   During the October 28, 2012 phone call, Mr. Berg told Mr. Rojas that the panels would be backed by a Bosch Solar warranty and explained the essential terms of the warranty. Mr. Berg said the panels were guaranteed to be "free from defects."

165.   Mr. Berg also said that the panels would lose approximately 1% of their power output capacity each year but they were guaranteed to produce 90% of the promised power for the first 10 years and then 80% for the duration of the warranty.

166.   Mr. Berg also told Mr. Rojas that if anything went wrong with the panels that Bosch Solar would repair or replace the panels.  For Mr. Rojas, the assurance of a Bosch Solar warranty was critical to his decision to continue with the transaction.

167.   In fact, Mr. Berg's assurances made to Plaintiffs regarding the substance of the Bosch Solar Limited Warranty were accurate and precisely mirrored the written language of the Bosch Solar Express Limited Warranty.

**B.**     **The Warranty Was Not Delivered**

168.   Mr. Berg did not deliver a copy of the Bosch Solar Limited Warranty to Plaintiffs.

169.   The Bosch Solar Express Warranty was never delivered to Plaintiffs Steve R. Rojas and Andrea N. Rojas.  Plaintiffs allege, on information and belief that Bosch Solar did not deliver written warranties to the Plaintiff Class and had no system in place to ensure reliable delivery of the warranty.

170.   Plaintiffs have never had access to the applicable Bosch Solar Express Warranty, in effect at the time of their purchase of the Bosch Solar panels, until this lawsuit was initiated, when Plaintiffs' counsel obtained a copy of what is believed to be the warranty applicable to the c-Si M 60 NA30119 modules. Bosch's intent to provide a warranty as part of the basis of the bargain is shown by the warranty itself, which lists the series of panels intended to be covered by the warranty.  The warranty provides:

> "Bosch Solar Energy Corp. provides a product warranty and a performance warranty for its photo-voltaic modules (hereinafter "Module" or "Modules") listed is the Appendix.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-35-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

1

2    In turn, the Appendix provides:

3              Warranty Appendix: List of Covered Bosch Solar Crystalline Series Modules

             c-Si M 60 -16
4
             c-Si M 60 NA30117
5
             c-Si M 60 NA42117
6
             c-Si M 60 NA44117
7
             **c-Si M 60 NA30119**
8
             c-Si P 72 NA21126

9    (emphasis added)

10        **C.        There Was No Market Alternative For Plaintiff**

11        171.    Bosch's written warranty is a standardized, pre-printed form drafted by Bosch.  No

12   negotiation occurred between Bosch Solar and Plaintiffs regarding the contents of the written

13   warranty.  Bosch Solar does not negotiate the contents of the written warranty with installers,

     consumers or end users.
14
          172.    Plaintiffs were first-time consumers and users of solar energy and had no
15
     knowledge or expertise in the solar energy industry. Due to Bosch's failure to provide a copy of
16
     the written warranty, the limitations and unconscionable terms were unknown to Plaintiffs until
17
     long after their purchase. The terms relating to the standard test conditions were not seen by
18
     Plaintiffs.  Even if they had, the conditions are not explained in the written warranty in plain
19
     language that the average consumer could understand.
20
          173.    Plaintiffs were unaware of any need to investigate market alternatives because they
21
     were unaware of the unconscionable warranty claim procedure and other unconscionable terms.
22
          174.    Plaintiffs did not have any opportunity to review or reject the unconscionable
23
     terms in the written warranty.  As a result, Plaintiffs were surprised, shocked and humiliated once
24
     they actually saw the terms of the written warranty, and never had an opportunity to reject the
25
     solar panels.  As a result, Plaintiffs had no reasonably available sources of supply from which to
26
     obtain their solar panels free of the unconscionable terms and  did not have any reason or
27
     incentive to seek out market alternatives because Plaintiffs were unaware of the existence of the
28

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-36-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

1    unconscionable terms. Even if the consumer were able to review the warranty before purchase,

2    however, the true meaning and onerous effect of the STC provision would not be readily apparent

3    or understood by any consumer.

4        175.    Plaintiffs did not become aware of the existence of the unconscionable terms until

5    after this case was filed.  Removing the panels to avoid the unconscionable terms was not

6    possible as their solar panels were installed and connected to the electrical grid for over five

7    years.  For example, as part of the recall process, Bosch Solar wrote a letter to the Consumer

8    Product Safety Commission stating "the complexity of the task" as follows:

9
             [[R]eplacing solar panels] is very different from that involving, say,
10           toasters, in which a replacement product may simply be shipped to the
             customer; an entire system, connected to the electric grid, has to be
11           replaced.

12       176.    The assertion of the market alternative defense to the claim of unconscionability

13   presupposes that the claimant saw the warranty terms and could reject the product before installed

14   or return the product after installed.  Neither condition existed in Plaintiffs' case. Plaintiffs had

15   not seen the warranty before installation, and removal of the panels after installing was

16   unrealistic, impractical, if not impossible.

17       177.    Plaintiffs were informed by Sullivan that Bosch Solar panels were to be installed

18   on their property and no market alternatives were known to Plaintiffs or suggested to Plaintiffs by

19   Sullivan.  Hans Berg told Steve Rojas that "We will be installing 'Bosch' panels on your roof."

20   Plaintiffs effectively had no choice but to accept from Sullivan the Bosch Solar panels Sullivan

21   informed Plaintiffs that it would be installing on their property.

22       **D.**     **Plaintiffs Provided Notice of Their Warranty Claim to Bosch Solar**

23       178.    After Plaintiff Steve Rojas became aware of the Bosch's recall, Mr. Rojas

24   contacted Sullivan Electric in mid-September 2017, to inquire whether Sullivan was aware of the

25   recall.  He spoke with Scott Barber, Quality Control Technician, and was advised by Mr. Barber

26   that Sullivan was unaware of the Bosch Solar recall.

27       179.    On September 25, 2017, Scott Barber advised Mr. Rojas that he had been in

28   contact with Spruce Financial, sometimes referred to as Kilowatt, who initially sold the power to

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

Mr. Rojas. At that time, Spruce Financial was also unaware of the Bosch Solar recall. Mr. Barber indicated that he would research the question of whether Mr. Rojas's panels were part of the recall.

180. On September 26, 2017, Mr. Barber was informed by Sharonda Grimes at Spruce Financial that they were researching whether Mr. Rojas's panels were registered for the recall.

181. Based upon their communications with Sullivan and Spruce, Plaintiffs understand that Sullivan and Spruce were in communication with Bosch Solar on Plaintiffs' behalf regarding Plaintiffs' desire to have their panels replaced. Over the course of October 2017, neither Mr. Barber nor Ms. Grimes provided Mr. Rojas of any developments with regard to their contact with Bosch Solar regarding Mr. Rojas's panels.

182. Concerned about the delays, Mr. Rojas researched the Bosch Solar website and located a phone number for the recall advice. On November 1, 2017, Mr. Rojas contacted Bosch Solar by telephone.

183. Mr. Rojas immediately informed Bosch Solar that his panels were ground-mounted and not part of the recall. Bosch Solar verbally confirmed that his panels were not included in the recall. He explained that although his panels were ground-mounted, he believed they were the same as the roof mounted panels and that and according to the recall, the panels were defective and a fire hazard. Mr. Rojas also advised Bosch Solar that the power output of the panels was variable and seemed to be underperforming. Mr. Rojas told Bosch Solar that he was making a claim and that he wanted all of his panels replaced.

184. Fully aware that Mr. Rojas's ground-mounted panels were excluded from the recall, Bosch Solar then informed Mr. Rojas that they would process his claim. Bosch Solar instructed Mr. Rojas to send photographs to confirm the model number and that his claim would be processed. On the same date, November 1, 2017, Bosch Solar emailed Mr. Rojas a form letter requesting: 1) copy of Invoice or Bill of Sale from Original Installer; 2) Telephoto pictures of your photovoltaic system, one per roof where modules are mounted. Mr. Rojas provided Bosch Solar with the requested photographs and information.

185. Immediately after receiving Bosch's request for proof of ownership, Mr. Rojas

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-38-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

contacted Sullivan asking for the Bill of Sale or the Interconnector Agreement.  Mr. Barber

informed Mr. Rojas that he would search his records and forward a copy to Mr. Rojas and Bosch.

186.    On the same day, November 1, 2017, Mr. Rojas took a photo of his ground-

mounted Bosch Solar array and a photo of the label on the backside of the panel which confirmed

that the panels were the NA30119 model and emailed the photos to Bosch.

Mr. Rojas's November 1, 2017 email is inserted below.

**From:** Steve Rojas <srrojas@aol.com>
**Date:** November 1, 2017 at 1:36:16 PM PDT
**To:** Bosch Solar Replacement Service <boschsolar.services@us.bosch.com>
**Subject: Re: Bosch Solar Module Replacement Program**





-39-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

187.    On November 3, 2017 Mr. Rojas received a letter from Bosch Solar confirming that it would replace his array.  This letter followed his conversation with Bosch Solar that his ground-mounted array was not part of the recalled panels confirmed by the photographs he provided to Bosch.  The November 3, 2017 Bosch Solar correspondence is attached as **Exhibit B**.

188.    The November 3, 2017 Bosch Solar form letter incorrectly refers to Mr. Rojas's array as being "roof mounted."

189.    Upon seeing that misstatement, Mr. Rojas immediately called Bosch Solar and explained that the letter incorrectly referred to it as "roof mounted."  He was told by the Bosch Solar representative to ignore the reference to roof mounted, that Bosch Solar was aware his array was ground-mounted and not part of the recall, that the letter was a form letter.  He was informed by Bosch Solar that his claim had been approved and that his entire array would be replaced.

190.    Bosch Solar never amended its recall filings to include ground-mounted panels.

191.    The Bosch Solar November 3, 2017 letter also informed Mr. Rojas that he would be contacted by a Bosch Solar approved installer to replace his panels.

192.    On November 28, 2017, Mr. Rojas spoke with Thom Brodie of Baker Electric Solar, the Bosch Solar approved solar installer.  Mr. Brodie informed Mr. Rojas that it would be Sullivan Electric, his original installer, that would inspect and replace his system.

193.    Unbeknownst to Plaintiffs, Plaintiffs now suspect that a dispute arose between Sullivan and Bosch.  Bosch Solar was apparently trying to force Sullivan, the original installer of the Rojas's system, to replace the system instead of Bosch.  This legal maneuvering apparently lead to an additional six months delay without activity.  During that time, Mr. Rojas contacted Baker Electric for an explanation.  He was informed that Baker Electric, as Bosch's representative, had tried without success, to have Sullivan to replace his system.

194.    Finally, on May 31, 2018, seven months after Bosch Solar agreed to replace the Rojas's system, Thom Brodie of Baker Electric emailed Mr. Rojas expressing his appreciation for Mr. Rojas's "patience," scheduled a survey of his property for June 6, 2018 and enclosed a "Baker-Bosch Solar Construction Contract for Sullivan Customers," for the full replacement of the Rojas's panels.  A copy of Mr. Brodie's email is attached as **Exhibit C**.  A copy of the

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-40-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

"Baker-Bosch" contract is attached as **Exhibit D**.  The contract makes no mention of the recall and is a separate agreement wherein Bosch Solar hired Baker to replace the defective panels on the Rojases' property.

195.    The May 31, 2018 letter set June 6, 2018 as an inspection date to survey the Rojas property.  On June 6, 2018 survey was conducted by Baker Electric.

196.    Baker Electric observed that the panels were ground-mounted (as Rojas had already advised Bosch) and Baker Electric informed Mr. Rojas that at least 10 of his panels were not functioning.  Prior to this inspection, Plaintiffs had no information regarding why their panels seemed to be underperforming.  Mr. Rojas signed the contract to replace all of the Bosch Solar panels and emailed the executed copy to Baker on June 6, 2018.  Weeks passed.

197.    Four months passed with no progress.  Mr. Rojas complained to Baker Electric that they had broken their agreement to replace his panels.

198.    Then on August 31, 2018 Bosch Solar advised Plaintiffs by email that the panels were owned by a third party and that their qualified installer would contact them about replacing the modules as soon as "practicable."  Another month passed with no progress.

199.    Finally, ten months after Bosch Solar agreed to accept the Rojas's claim to replace his ground-mounted system, with Bosch Solar having reneged on its promise to replace the Rojas's system, Mr. Rojas sent Bosch Solar his September 24, 2018 CLRA Notice and Breach of Warranty Notice and filed suit.

200.    Plaintiffs have complied with the contractual notice provisions of the Bosch Solar Limited Warranty as alleged above.  In the alternative, Bosch Solar has waived any such technical non-compliance.  Bosch Solar knew of defects in this model of panel generally and received actual notice that Plaintiffs' panels in particular were defective and underperforming.  Bosch Solar received actual notice that the transaction with Plaintiffs was troublesome and that Plaintiffs wished to have their panels replaced.  Plaintiffs communicated with Bosch Solar directly and indirectly regarding the replacement of the panels for approximately one year between September, 2017 and August 31, 2018.  During this one year, Plaintiffs provided to Bosch Solar all documents and information requested by Bosch.  At times, including in early November 2017,

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

THIRD AMENDED COMPLAINT FOR DAMAGES

1   Bosch Solar promised to replace the panels, but ultimately failed to keep its promise.  On August

2   31, 2018, after nearly a year, Bosch Solar advised Plaintiffs that it would not be replacing the

3   panels for an indefinite period of time.  At that time, Bosch Solar provided no indication of when

4   the panels might be replaced.  Bosch Solar had approximately a one year period in which it had

5   an opportunity to cure and failed to avail itself of the opportunity to cure.

6       201.    Kilowatt, and other companies that purchase the Panels and enter into Prepaid

7   Power Purchase agreements with end-users also understand the warranties alleged herein to form

8   part of the basis of the bargain, and rely upon the existence of the warranty, in entering such

9   contracts with end-users, so that the continued supply of power, as provided by the Prepaid Power

10  Purchase agreement, can be maintained, and so that defective or underperforming panels may be

11  replaced.

12      202.    Although Plaintiffs paid nearly $3,000.00 for electricity in 2017, that information

13  was not made available to Plaintiffs until March, 2018 because Southern Edison bills on an

14  annual basis for properties which contain solar arrays.

15  **X.      STATUTE OF LIMITATIONS ISSUES**

16      **A.      The Latent Defects Are Not Discoverable by the Consumer**

17      203.    The Bosch Solar Express Warranty explicitly extends to future performance of the

18  Bosch Solar panels.  Pursuant to Cal. Com. Code § 2725(1), the cause of action accrues when the

19  breach is or should have been discovered.

20      204.    The defects in the Bosch Solar panels are latent and not discoverable until the final

21  customer or end-user becomes aware of a defect or substantial reduction in power.   Even when

22  there is a degradation in power output, substantial time will pass between the failure or loss of

23  power and discovery thereof.  When customers have made inquiries or warranty claims to Bosch,

24  Bosch Solar intentionally withheld information about the cause of the panel failure and loss of

25  power from Plaintiffs and class members and the fire and safety risks associated therewith.  In

26  order to assert a warranty claim, Bosch Solar requires end users to prove their warranty claim on

27  a panel by panel basis.  The failure of a given panel does not inform the end user that other panels

28  have failed.  In fact, the process of assessing and proving performance reduction is so complex

1    that it is far beyond the knowledge and comprehension of the end users of Bosch Solar panels.

2    In this context, end-users rarely have awareness of whether they have a claim; whether it relates

3    to one or more panels or some other part of their solar system and how to go about researching a

4    potential problem.  This is particularly true because Bosch Solar refuses to assist with the

5    investigation of legitimate warranty claims, leaving the consumer to fend for themselves

6    regarding highly technical and potentially dangerous equipment.

7         205.    The defect does not become apparent until a sufficient number of Bosch Solar

8    panels have had a degradation of power or failed, resulting in a loss of power and significant

9    increase in utility bills.  Even when such failures occur, it is difficult for members of the Class to

10   determine the actual cause of the failure or if one or more panels caused the power loss.  In

11   addition, as with Plaintiffs further delays in discovery result from the fact that electricity bills are

12   often sent out annually when solar systems are in place.  Accordingly, Plaintiffs did not and

13   members of the Class do not become aware of the potential claims or breaches of warranty

14   alleged herein until the defects in the Bosch Solar panels become manifest and the property owner

15   does sufficient investigation and becomes educated about complex electrical issues necessitating

16   solar expert advice in order to identify the source and scope of the problem.  No statute of

17   limitation has run as against Plaintiffs.

18        206.    For the reasons addressed above, Bosch Solar was under a continuous duty to

19   disclose to distributors, sellers, installers and end-users, including Plaintiffs and the Class, the

20   defect, the safety issues related thereto, and the existence of numerous returns of product related

21   to the defect.

22        207.    Despite this duty and the Notice of Product Recall, Bosch Solar has not

23   implemented an adequate notice program to inform end-users of the defect.  The Bosch Solar

24   Recall Notice is misleading and inaccurate and fails in substantial part to notify end users of the

25   defect.

26        208.    As a result, members of the Class are unable to assert claims against Bosch Solar

27   until they became aware of the failure of the Bosch Solar Panels and its cause.  Accordingly,

28   Bosch Solar is estopped to rely on any statutes of limitation in defense of this action.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-43-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

The recall notice was not posted by Bosch Solar until April 13, 2017.  The recall purports not to include Plaintiffs' panels because they are ground-mounted.  Plaintiffs did not learn of the recall until several months after the notice of the recall was published.  Plaintiffs did not learn that virtually all of their c-Si M 60 NA30119 Panels suffer from a backsheet delamination defect until so advised by a solar engineer on or about December 19, 2018.

### B.   Plaintiffs Are the Beneficiaries of the Bosch Solar Limited Warranty

209.    Plaintiffs' ground-mounted Bosch Solar array remains in its originally installed location at Plaintiffs' residence located at 29294 Juniper Avenue, Moreno Valley, California. The array was installed by Sullivan on or about March, 2013 and has "not been modified or relocated from their originally installed location."

210.    Plaintiffs have always been the "end-users" of the Bosch Solar panels. The panels were installed on Plaintiffs' property as required by a "Prepaid Solar Power Agreement" dated October 28, 2012 with which Plaintiffs entered with Kilowatt.

211.    On October 18, 2018, for valuable consideration, Kilowatt transferred all rights, title and interests that it had in the Bosch Solar array installed on Plaintiffs' property to Plaintiffs.

212.    In addition to being the original end-users of the Bosch Solar array, Plaintiffs are the subsequent buyers and owners of the 42 c-Si M 60 NA30119 Panels originally installed on their residential property in 2013.

213.    Plaintiffs were always the intended beneficiaries of the Bosch Solar Express Warranty whether as end-user or third-party beneficiaries, and, following their purchase of the panels, as subsequent buyers.

214.    Defendant Bosch Solar issued the warranty and extended the warranty to Plaintiffs and the class.

215.    The holding of *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017) does not apply in the class action context.  Among others, the California Federal District Court case of *In Re Morning Song Bird Food Litigation*, No. 12CV01592, 2018 WL 1382746, at *5 (S.D. CA March 19, 2018), provides that "claims of unnamed class members are

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-44-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

irrelevant to the question of specific jurisdiction" and that the court "declines to extend the holding of <u>Bristol-Myers</u> to this case involving a class action."

**XI.     CLASS ALLEGATIONS**

216.   The Class which Plaintiffs seek to represent is as follows.

> All persons or entities in the United States who are the current owners of Bosch c-Si M 60 NA30119 solar modules or the current owners of premises on which Bosch c-Si M 60 NA30119 solar modules are installed.

217.   Plaintiffs reserve the right to modify or amend the Class definition, as appropriate.

218.   Among other things, individual and representative Plaintiffs bring this lawsuit as a class action, on behalf of themselves and all others similarly situated, in part, pursuant to CCP § 382.

219.   Under CCP § 382 a class action is proper where the Class is ascertainable, there is a well-defined community of interest among class members, the question is one of a common or general interest or the parties are numerous and it is impracticable to bring them all before the court.

220.   Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis and because this case meets the requirements of and CCP § 382.

221.   **Numerosity.**  The members of the Class are so numerous that individual joinder of all the members is impracticable.  Plaintiffs are informed and believe, and thereon allege, that there are at least thousands of purchasers who have been damaged by the conduct alleged herein.

222.   **Commonality and Predominance.**  This action involves common questions of law and fact which predominate over any questions affecting individual class members including, without limitation, the following:

> a.   Whether Defendant Bosch Solar violated California's Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq.*, by, among other things, engaging in unfair, unlawful, or fraudulent practices;
>
> b.   Whether Defendant Bosch Solar violated California's Consumer

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

Case No. 5:18-cv-5841-BLF

Legal Remedies Act, Civ. Code §1750 *et seq.*, by falsely

advertising the Solar Panels were of a certain quality when in fact,

they were not;

c.    Whether Defendant Bosch Solar breached its express warranties to

Plaintiffs and the Class;

d.    Whether Plaintiffs and the Class are entitled to compensatory

damages, and the amount of such damages;

e.    Whether Defendants should be declared financially responsible for

the costs and expenses of removal and replacement of all solar

panels as well as compensation for the lost energy generation

capacity of the solar panels;

f.    Whether the Bosch Solar Limited Warranty failed of its essential

purpose; and

g.    Whether the Disclaimers and Liability Limitations are

unconscionable and should be severed from the Limited Warranty.

223.    **Typicality.**  Plaintiffs' claims are typical of the claims of the Class because Plaintiffs, like all members of the Class, have been damaged by Defendants' unlawful conduct, in that Plaintiffs will incur the cost of removing and replacing the defective Bosch Solar Panels, and have and will incur the increased costs of electricity resulting from the loss of electricity generation during the period between the failures and replacement.  The factual basis and causes of action for Plaintiffs' claims are common to all members of the Class and represent a common course of misconduct resulting in injury to all Class members.

224.    **Adequacy of Representation.**  Plaintiffs are an adequate representative of the Class because their interests do not conflict with the interests of the Class and they have retained counsel competent and experienced in complex class action litigation and who specialize in class actions involving defective construction products.   Plaintiffs intend to prosecute this action vigorously and the interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-46-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

225. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy in that:

    a.    The prosecution of separate actions by individual members of the Class would create a foreseeable risk of inconsistent or varying adjudications which would establish incompatible results and standards for Defendants;

    b.    Adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their own separate interests;

    c.    Class action treatment avoids the waste and duplication inherent in potentially thousands of individual actions, and conserves the resources of the courts; and

    d.    The claims of individual class members are not large when compared to the cost required to litigate such claims.  The individual Class members' claims are on average approximately Twenty-Five Thousand Dollars ($25,000.00).  Given the high cost of litigation, it would be impracticable for the members of the Class to seek individual redress for Defendant's wrongful conduct.  The class action device provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.  The case presents no significant management difficulties which outweigh these benefits.

    e.    Furthermore, the Bosch Solar Recall Notice plan is entirely inadequate and underfunded.  It therefore failed of its essential purpose to locate the defective panels.  Then, after the Bosch Solar Recall Notice was sent out, Bosch Solar failed to put in place a

THIRD AMENDED COMPLAINT FOR DAMAGES

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

1   replacement program that would reasonably implement the recall.

2   As a result, the recall was a sham and neither located, inspected or

3   replaced the defective and dangerous panels which were the

4   subject and purpose of the recall.

5       f.    The Bosch Solar Recall Notice, at the minimum defines a class of

6   end users  and end users of at least 28,000 defective Bosch Solar

7   panels.  The class action procedure is necessary to assert the claims

8   that are the basis of the recall in that the recall class was never

9   provided adequate notice of the recall and the recall remedy of

10   replacing the panels was never implemented.

11   **XII.   DAMAGE**

12   226.   As a result of the facts alleged herein, Plaintiffs and the Class have been damaged

13   in an amount equal to the cost to remove and replace their solar systems and the difference in

14   value between the solar panels had they been as represented by Bosch Solar and the value of the

15   Bosch Solar panels as actually delivered by Bosch.  In addition, Plaintiffs and the Class have been

16   or will be compelled to incur cost and expense to, *inter alia*, investigate the reasons for the failure

17   of their Bosch Solar panels, remove and replace the Bosch Solar panels, and pay increased

18   electricity costs resulting from the loss of electricity generated by the Bosch Solar panels.  These

19   amounts include sums necessary to repair damage to the roof which occurs because the mounts

20   for the Bosch Solar panels must be removed, as well as the cost of building permits and the cost

21   to replace the inverters for the solar system.

22

23   **FIRST CLAIM FOR RELIEF**
**(For Breach of Express Warranty)**
**(Common Law of Arizona, California, Hawaii, Missouri, North Carolina)**

24

25   227.   Plaintiffs incorporate by reference each allegation set forth in the preceding

26   paragraphs.

27   228.   Plaintiffs are direct beneficiaries to the Bosch Solar Express Warranty in that by its

28   express terms, the warranty is extended to "final customers or end-users" of the solar panels.  The

-48-

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

1  warranty drafted by Bosch Solar does not condition warranty benefits on the purported purchase

2  of the solar panels nor on purported ownership of the panels.  Plaintiffs are final customers and

3  end-users of the solar panels in that the acquisition of the solar panels was initiated by Plaintiffs.

4  229.    Plaintiffs paid in full, up front, to facilitate the transaction, the solar panels were

5  originally intended to be and were installed on Plaintiffs' property and Plaintiffs were intended to

6  consume and did consume the power generated by the solar panels.

7  230.    In the alternative, if Plaintiffs are construed not to be the direct beneficiaries of the

8  Bosch Solar Express Warranty, then Plaintiffs are intended third party beneficiaries of the Bosch

9  Solar Express Warranty. The intent to benefit Plaintiffs appears from the face of the warranty,

10  which indicates that it benefits "consumers", "final customers", "end-users" and "subsequent

11  buyers".  Plaintiffs are consumers, final customers, end-users and subsequent buyers.  Nothing in

12  the warranty conditions benefits on being an "owner" or "purchaser" of the panels.

13  231.    The Bosch Solar Express Warranty was drafted solely by Bosch Solar and

14  ambiguity in its terms, if any, are to be construed against Bosch.

15  232.    The warranty was made expressly for the benefit of persons, like Plaintiffs, who

16  (a) initiated the transaction; (b) made the choice to go forward with the installation; (c) paid the

17  purchase price in full upfront; (d) allowed the panels to be installed on their property; (e) actually

18  consume the power produced; (f) suffer the loss when the panels do not produce the promised

19  power; and (g) face the safety risk when defective panels are unsafe.

20  233.    The benefit to persons like Plaintiffs is a motivating factor for the existence of the

21  warranty because the warranty entices Plaintiffs to enter into these substantial financial

22  transactions and without persons like Plaintiffs deciding to install solar panels on their property,

23  there is no transaction at all.

24  234.    Plaintiffs are a member of a class that is specifically referred to in the warranty

25  (i.e., consumers, final customers, end-users and/or subsequent buyers) and are identifiable.

26  Bosch Solar extends the warranty knowing that its solar panels will be used by homeowners with

27  whom it does not have a direct relationship and the warranty is not intended for the benefit of

28  intermediaries.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-49-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

235.   As relevant, Plaintiffs refer to the specific factual allegations supporting each element of the claim alleged herein.

236.   Bosch Solar made the written express warranties described herein.  Those warranties were part of the basis of the bargain, and the purchasers relied upon such warranties.

237.   Bosch Solar is not entitled to enforce the Warranty Disclaimers and Liability Limitations described herein because they are unconscionable and violate the provisions of applicable law.  This includes, but is not limited to, the purported requirement that warranty claimants are required to incur extraordinary costs for expert testing in order to submit a warranty claim and that warranty claimants will be liable to Bosch Solar for Bosch's testing expenses if Bosch Solar determines that, in its view, the warranty claim was without merit.  This violates the Magnuson-Moss Warranty Act in that pursuant to 15 U.S.C. § 2304(b)(l), a warrantor is prohibited from imposing any duty on a consumer as a condition of securing a remedy other than a duty of notification and is unconscionable.

238.   On November 1, 2017 Plaintiffs provided direct notice to Bosch Solar of its warranty claims for both the product and performance warranties.

239.   Bosch Solar has breached the Product Warranty because the panels have solder joint and delamination defects, as alleged above.  Bosch Solar has admitted that the solder joint defect causes a fire hazard and safety risk.  The delamination defect also causes a fire and safety risk.  The defects adversely affect the function of the panels and expose Plaintiffs to an admitted fire hazard, which creates the risk of potentially catastrophic and/or deadly fire.

240.   Bosch Solar has breached the Performance Warranty because Plaintiffs have experienced a degradation of power below the output promised by Bosch.  Bosch Solar has further breached the Performance Warranty because implicit in the power output promise is that such power output will be generated safely.

241.   Bosch Solar has admitted that the panels present a fire hazard and Plaintiffs cannot be reasonably expected to face the risk of a potentially catastrophic and/or deadly fire in the course of generating the promised power output.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-50-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

242.   Because the Bosch Solar panels either have failed or are certain to fail within their expected useful life, Bosch Solar has breached both the Product Warranty and the Performance Warranties contained in the Warranty.

243.   Bosch Solar has failed to remedy the breach of the Warranty for either Plaintiffs or the Classes.  Bosch Solar had ample opportunity to cure after Plaintiffs provided notice of their claim.  Plaintiffs' defective and unsafe NA30119 solar panels remain installed on Plaintiffs' property after Bosch Solar reneged on its promise to replace Plaintiffs' panels thereby breaching the warranty.

244.   Although Plaintiffs do not believe that notice to Bosch Solar of its warranty claim and breaches of warranty are required under applicable law, Plaintiffs have notified Bosch Solar of its breaches of the warranty.  As set forth in detail in paragraphs 178 to 200, Plaintiffs notified Bosch Solar directly of its claim within 90 days of learning that their ground-mounted panels suffered on November 1, 2017 from a defect.  Bosch Solar was given ample opportunity to cure the defect and, in fact, agreed to do so.

245.   On August 31, 2018, ten months after Plaintiffs patiently waited for Bosch Solar to cure the defect, Bosch Solar reneged on its promise to replace Plaintiffs' solar array and Plaintiffs filed suit.

246.   The Limited Warranty does not require Plaintiffs to file a lawsuit within 90 days, rather a claim purportedly should be submitted within 90 days of some set of undefined events that would ostensibly place Plaintiffs on notice of a potential claim.

247.   Plaintiffs have complied with the 90-day notice provisions.  Plaintiffs provided Bosch Solar with timely notice of its warranty claim within 90 days of being made aware of the defect through the recall.  Until Bosch Solar disclosed the defect in its recall, Plaintiffs had no knowledge that the panels suffered from a defect.

248.   In addition, the purported 90-day notice provision should be excused for all class members, including Plaintiffs, as Bosch Solar did not deliver the warranty to consumers, end users or subsequent owners.  Plaintiff and class members who have no knowledge of the 90-day claim provision cannot be held to compliance to an unreasonably short claim deadline about

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-51-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

1    which they have no knowledge.  Moreover, conditions such as the notice condition are not

2    enforceable in the absence of prejudice.

3         249.    Approximately a year passed from when Plaintiffs contacted Bosch Solar and the

4    filing of this litigation.  During this time, Bosch Solar has had further opportunity to cure the

5    defects and has not availed itself of the opportunity.  Although Bosch Solar made promises to

6    replace the panels, Bosch Solar did not keep its promises   Further delay in replacing the unsafe

7    and underperforming panels would be unreasonable and dangerous.

8         250.    Furthermore, Bosch Solar is estopped from asserting the 90-day claim notice

9    provision as it withheld information of the defect from consumers, end users and subsequent

10   owners and failed to provide any reasonably notice of the defect that would inform or notify a

11   person of any obligation to assert a claim.

12        251.    Further notice to Bosch Solar of its breach of the Warranty would be futile because

13   Bosch Solar is aware of and has acknowledged the defects in the Bosch Solar panels and has

14   recalled the Bosch Solar panels.  The only remedy to Plaintiffs and the Class is the replacement of

15   all Bosch Solar panels with other suitable panels and to compensate Plaintiffs and the Class for

16   the difference between the power output guaranteed by the Performance Warranty and the power

17   output actually received as well as all consequential damages including labor and disposal.

18        252.    As set forth above, the purported exclusions and limitations in the warranty are

19   contrary to the reasonable expectations of the consumer, and also are unconscionable.  Therefore,

20   the Court should sever such exclusions and limitations from the warranty as unenforceable and

21   enforce the remainder of the Warranty.

22        253.    Furthermore, the limited warranty remedies have failed their essential purpose

23   because the contractual remedy as interpreted by Bosch Solar is insufficient to make Plaintiffs or

24   Class members whole and because Bosch Solar has failed and/or has refused to adequately

25   provide sufficient remedies within a reasonable time.  Accordingly, Plaintiffs and Class members

26   should not be limited in their remedies and seek all remedies allowed by law.

27

28

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-52-                                                    Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

254.    As a result of Bosch's breach of the warranty and the warranties detailed herein, Plaintiffs and the Class have suffered damages as alleged herein and in an amount to be proven at trial including all consequential damages according to proof.

**SECOND CLAIM FOR RELIEF**
**(Breach of Express Warranty - Magnuson-Moss Warranty Act)**

255.    Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

256.    The allegations of this Claim for Relief are based on the breaches of warranty addressed fully in the First Claim for Relief.  The specific allegations of the Complaint relevant to that claim are detailed therein.

257.    The Bosch Solar panels are a consumer product as defined in 15 U.S.C. § 2301(1).

258.    Plaintiffs and the members of the Consumer Subclasses are consumers as defined in 15 U.S.C. § 2301(3).

259.    Bosch Solar is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

260.    The Warranty contains "written warranties" within the meaning of 15 U.S.C. § 2301(6).

261.    As alleged previously, Bosch Solar has breached the Warranty.

262.    Additionally, pursuant to 15 U.S.C. § 2304(d)(1), Bosch Solar may not assess Plaintiffs or the Consumer Subclasses any costs the warrantor or his representatives incur in connection with the required remedy of a warranted product…"  [I]f any incidental expenses are incurred because the remedy is not made within a reasonable time or because the warrantor imposed an unreasonable duty upon the consumer as a condition of securing remedy, then the consumer shall be entitled to recover reasonable incidental expenses which are so incurred in any action against the warrantor."  Bosch Solar has refused to pay all costs associated with the inspection, diagnosis of power output defect, removal and replacement of the Bosch Solar panels.

263.    Plaintiffs have provided Bosch Solar with notice of breach of the Warranty and a reasonable opportunity to cure the breach.  In addition, the Notice that Plaintiff afforded Bosch Solar on September 24, 2018 on behalf of the Consumer Subclasses of its breach of the Warranty

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

provided Bosch Solar with a reasonable opportunity to remedy the breach as to ground-mounted end users.  This is true because to provide Bosch Solar with a longer time to cure would be futile as Bosch Solar had no intention of replacing ground-mounted panels and publicly so stated in its recall notice.  Bosch Solar has failed to remedy the breach of its obligations to the Class or Subclasses under the Warranty.

264.    In addition, further notice to Bosch Solar of its breach of the Warranty would be futile because Bosch Solar is aware of and has acknowledged the defects in the Bosch Solar panels and has recalled the Bosch Solar panels.

265.    Bosch Solar cannot provide to Plaintiffs and the Consumer Subclasses any remedy other than replacement of the Bosch Solar panels with other panels and to compensate Plaintiffs and the Class for the difference between the power output guaranteed by the Performance Warranty and the power output actually received.

266.    As a result of Bosch's breach of the Warranty, Plaintiffs and the Consumer Subclasses have been damaged in an amount to be proven at trial, including consequential damages.

267.    Bosch Solar has violated the Magnuson-Moss Warranty Act in that pursuant to 15 U.S.C. § 2304(b)(l), in that a warrantor is prohibited from imposing any duty on a consumer as a condition of securing a remedy other than a duty of notification and is unconscionable.

**THIRD CLAIM FOR RELIEF**
**(Breach of Express Warranty)**
**(Ariz. Rev. Stat. § 47-2313; Cal. Com. Code § 2313;**
**Haw. Rev. Stat. § 490:2-313; Mo. Rev. Stat. § 400.2-313;**
**N.C. Gen. Stat. § 25-2-313)**

268.    Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

269.    The allegations of this Claim for Relief are based on the breaches of warranty addressed herein above.  The specific allegations of the Complaint relevant to that claim are detailed therein.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-54-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

270.    Bosch Solar was at all times relevant hereto a "merchant" with respect to solar panels, as that term is defined under the Uniform Commercial Code as adopted in Arizona, California, Hawaii, Missouri, or North Carolina, *see, e.g.*, California Commercial Code § 2104.

271.    An express warranty by affirmation was created by Bosch Solar in favor of Plaintiff by Hans Berg of Sullivan who made assurances to Plaintiffs as an end user of the product the terms of the warranty.

272.    During the October 28, 2012 phone call, Mr. Berg told Mr. Rojas that the panels would be backed by a Bosch Solar warranty and explained the essential terms of the warranty. Mr. Berg said the panels were guaranteed to be "free from defects."

273.    Mr. Berg also said that the panels would lose approximately 1% of their power output capacity each year but they were guaranteed to produce 90% of the promised power for the first 10 years and then 80% for the duration of the warranty.

274.    Mr. Berg also told Mr. Rojas that if anything went wrong with the panels that Bosch Solar would repair or replace the panels.  For Mr. Rojas, the assurance of a Bosch Solar warranty was critical to his decision to continue with the transaction.

275.    For the reasons alleged hereinabove, Plaintiffs are direct beneficiaries of the Bosch Solar Express Warranty as end users.  In the alternative, Plaintiffs are intended third party beneficiaries.  Also, Plaintiffs are beneficiaries of the Bosch Solar Express Warranty by virtue of being successor end users  of the Bosch Solar panels.

276.    Bosch Solar is not entitled to enforce the Warranty Exclusions described above because they are unenforceable under the Uniform Commercial Code as adopted in Arizona, California, Hawaii, Missouri, or North Carolina, *see, e.g.,* the California Commercial Code § 2719, and for the reasons set forth hereinabove.

277.    As alleged previously, in paragraphs 178 to 200, Plaintiff gave notice to Bosch Solar of its warranty claim; Bosch Solar had ample opportunity to cure the breach, promised to do so, the reneged on its promise thus breaching the warranty.

278.    Plaintiffs have provided Bosch Solar with notice of breach of the Warranty and a reasonable opportunity to cure the breach.  Bosch Solar has been given notice on behalf of the

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-55-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

Class of its breach of the Warranty and a reasonable opportunity to remedy the breach.  Bosch Solar has failed to remedy the breach of warranty for Plaintiffs or the classes as defined herein.

279.    As a result of Bosch's breach of the Warranty, Plaintiffs and the Classes have been damaged in an amount to be proven at trial, including consequential damages.

280.    Plaintiffs relied on the representations of Sullivan regarding the reliability, durability and terms of the long-term warranty of Bosch Solar which was held out as a reputable and trustworthy company and would not have otherwise entered into the transaction.

## FOURTH CLAIM FOR RELIEF
### (For Violation of California's Unfair Competition Law)

281.    Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

282.    Pursuant to Bus. & Prof. Code § 17200, "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

283.    Bosch's actions, as alleged herein, constitute deceptive, unfair, fraudulent, and unlawful practices committed in violation of the Bus. & Prof. Code § 17200, *et seq.*

284.    All of the conduct and representations alleged herein occurred in the course of Bosch's business and were part of a pattern or generalized course of conduct.

285.    Bosch's conduct was unlawful in that it systematically included an unlawful provision in its standardized warranty.  Specifically, Bosch Solar includes in its Warranty Claims Procedure a requirement that warranty claimants to incur substantial expense for expert testing in order to submit a warranty claim and also provides that if, in Bosch's view, the warranty claim was without merit, the warranty claimant will be liable to Bosch Solar for Bosch's own testing expenses.

286.    Bosch's conduct was unfair in that it systematically included an unlawful provision in its standard form warranty, as alleged above.  Also, Bosch Solar crafted its warranty language to give the appearance of warranty coverage when, in fact, the warranty would fail to

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

1    provide any meaningful coverage because the cost of invoking coverage equals or exceeds the

2    value of the solar system and the cost to replace it.  Consumers are unable to recover this expense

3    even if their claims are shown to be meritorious.  Moreover, Bosch Solar fails to disclose this

4    hidden expense in plain language that the reasonable consumer can understand.  Thus, the

5    reasonable consumer is deceived by the warranty coverage being provided by Bosch.  Also,

6    Bosch Solar fails to disclose with sufficient specificity, the testing procedures that consumers

7    would be required to comply with or the cost thereof.   Bosch's failure to disclose the meaning of

8    the Standard Test Conditions was intentional.  The omissions were fraudulent and were they to

9    have been disclosed, no one would have purchased Bosch Solar panels.

10          287.    As a result of Bosch's unfair methods of competition and unfair or deceptive acts

11   or practices, Plaintiffs and members of the Original Purchaser Subclass have suffered injury-in-

12   fact, lost money, and lost property, in that they have incurred labor costs, inspection costs and

13   energy loss associated with the faulty solar system resulting in increased electric bills.

14          288.    As alleged hereinabove in paragraphs 94 through 143, Section VII The

15   Unconscionability of the Warranty claim verification and procedure, Bosch Solar has fraudulently

16   and unfairly imposed the obligation on end-users and owners of its panels, who seek to make a

17   performance warranty claim, to maintain "the standard test conditions while producing evidence

18   that the performance has fallen below the guaranteed minimum performance."

19          289.    On December 19, 2018, a consultant hired by Plaintiffs' counsel, serving as

20   Plaintiffs' agent, conducted an investigation of Plaintiffs' Bosch Solar rray.  Among other things,

21   the consultant attempted to gather evidence regarding the power output performance of Plaintiffs'

22   Bosch Solar panels.

23          290.    It was determined that it was not possible for an owner or end-user to maintain

24   "the standard test conditions while producing evidence that the performance has fallen below the

25   guaranteed minimum performance."  Plaintiffs' consultant made use of a sophisticated piece of

26   portable equipment known as I-V curve.  However, that equipment cannot maintain the standard

27   test conditions while performing power output testing. Standard test conditions can only be

28   maintained under laboratory conditions as outlined in paragraphs 103 through 122.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-57-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

291.     The insertion of the unconscionable Standard Test Conditions in the Bosch Solar Limited Warranty has caused and will cause concrete harm to Plaintiffs.  Due to the presence of these terms and in order to evaluate and test Plaintiffs' solar array, Plaintiffs' counsel paid the consultant $5,927.55.  This testing was done in an attempt to satisfy the conditions of the warranty, which specify that the consumer has the burden of maintaining "the standard test conditions while producing evidence that the performance has fallen below the guaranteed minimum performance."   Plaintiffs have a contingent liability to reimburse the $5,927.55, if Plaintiffs and the class prevail in this matter.  The obligation will be paid from settlement or judgment proceeds by Plaintiffs and/or Class members should this matter be resolved.  This obligation constitutes injury-in-fact caused by the unconscionable warranty terms requiring claimants to submit testing data.   The obligation incurred is not hypothetical or based on conjecture.

292.     The presence of the unconscionable STC terms in the Bosch Solar Limited Warranty has an immediate, detrimental and concrete impact on the value of Plaintiff's property.  Although Bosch Solar has suggested a non-binding forbearance of the unconscionable terms, said terms remain in the Bosch Solar Limited Warranty and could be invoked by Bosch Solar at any time.

293.     The present value of Plaintiffs' property depends, in part, on the presence and proper function of the solar panels and the efficacy of the available warranty benefits.  At present, the value of the warranty benefits is contingent upon Bosch Solar voluntary and non-binding calculation to forego enforcement of express warranty terms which, if enforced, would cost the consumer as much or more than the value of the entire solar energy system.

294.     Homebuyers would refuse to purchase, or would require a steep discount to purchase, Plaintiffs' property which is saddled with defective panels that constitute an admitted fire risk while Bosch Solar retains the right to invoke a clause requiring such homebuyers to expend as much as the panels are worth.  Moreover, the Bosch Solar Limited Warranty includes the right of Bosch Solar to *recover* costs against any such homebuyers.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-58-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

295.     The adverse impact that the unconscionable provisions have on home property values distinguishes the present situation from unenforced unconscionable provisions in credit card agreements.  This uncertainty has an immediate reduction on the value of the Rojases' property and constitute injury-in-fact.

296.     A dispute existed and still exists between Plaintiffs and Bosch Solar because Plaintiffs' Bosch Solar panels were and are underperforming.  The panels admittedly present a fire and safety risk.  Bosch Solar has indicated in their Motion to Dismiss that the panels do not qualify for replacement under the recall.  Bosch Solar has indicated that Plaintiffs allegedly do not have a warranty claim because Plaintiffs have not presented "any facts indicating that their panels do not or have not provided 80% of the minimum performance set forth in the data sheet for NA30119 Panels, as warranted under the Performance Warranty."  [Bosch Solar Motion to Dismiss First Amended Complaint, p. 15, lines 11-13].

297.     In other words, despite arguments of convenience, Plaintiffs' failure to obtain and submit their own testing data in accordance with the Standard Test Conditions as a justification for failing to address Plaintiffs' defective, underperforming panels.  During the time that Bosch Solar has failed to cure the defects because of Plaintiffs' alleged failure to submit testing data, Plaintiff have been further damaged by continued loss of power as a result of the unconscionable terms.

298.     The terms of the Limited Warranty require claimants to submit "proof that...the performance of the Module no longer meets the minimum performance" and states that "[t]he Consumer is responsible for maintaining the standard test conditions while producing evidence that the performance has fallen below the guaranteed minimum performance."  As a direct result of the foregoing terms, in an effort to assess testing options and obtain testing data to support a power loss claim, Plaintiff Steven Rojas met with a solar consultant at the subject property for inspection and testing.  Mr. Rojas missed approximately five hours of work in order to accommodate this inspection and testing.  Mr. Rojas is paid $105 per hour for his work and lost approximately $525 as a result of Bosch's requirement that claimant's submit testing data.  The loss of earnings by the Rojas household due to Mr. Rojas attempting to obtain testing data is

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

THIRD AMENDED COMPLAINT FOR DAMAGES

1    injury-in-fact caused by the unconscionable terms requiring Plaintiffs to submit testing data.  The

2    loss of earnings is not hypothetical or based on conjecture.

3         299.    Plaintiffs seek injunctive relief to compel Bosch Solar to notify the Plaintiff class

4    of the defect and to reasonably implement the replacement of the defective Bosch Solar panels as

5    promised in the recall.

6         300.    Additionally, by threatening to enforce and actually enforcing the Warranty

7    Disclaimers/Liability Limitations and the Warranty Claim Verification and Procedure and by

8    understating and failing to disclose the risk of fire resulting from the failure of the Bosch Solar

9    panels, Bosch Solar acted unfairly, unlawfully and fraudulently against all members of the Class.

10   Members of the Class have been injured and will continue to be injured by the enforcement of the

11   Warranty Exclusions, and the understatement of the risk of fire posed by the solar panels.

12        301.    The enforcement and threatened enforcement of the Warranty

13   Disclaimers/Liability Limitations and Warranty Claim Verification and Procedure and the

14   understatement and nondisclosure of the risk of fire resulting from the failure of the Bosch Solar

15   panels are unfair in that they: (1) violate public policy as expressed in the Consumer Legal

16   Remedies Act, the Magnuson-Moss Warranty Act and the Song-Beverly Consumer Warranty

17   action; (2) are immoral, unethical, oppressive, unscrupulous and substantially injurious to

18   consumers and these factors are not offset by the utility of Bosch's conduct since the conduct is

19   intended to and does only provide impediments to the assertion of valid claims for recovery and

20   limit the damages which Bosch Solar is legally obligated to compensate; and (3) inflict

21   substantial injury on consumers which is not outweighed by any countervailing benefits to

22   consumers or competition and the injury to consumers is one consumers could reasonably have

23   avoided.

24        302.    Unless enjoined, Bosch's continued insistence upon the unenforceable Warranty

25   Exclusions and failure to reasonably implement a notice and replacement plan to the end-user of

26   the recalled Bosch Solar panels threaten to harm the public and the class alleged herein, now and

27   in the future.

28

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-60-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

**FIFTH CLAIM FOR RELIEF**
**(For Unjust Enrichment)**
**(Common Law of Arizona, California, Hawaii, Missouri, North Carolina)**

303.    Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

304.    Pleading in the alternative to an express warranty, Bosch Solar has been unjustly enriched in that Bosch Solar received the purchase price of the panels, a benefit which Defendant retained at Plaintiffs' expense.

305.    Plaintiffs paid $25,089.22 to purchase a Solar system which included 43 Bosch Solar panels, model NA30119.

306.    The benefit that Plaintiff conferred on Bosch Solar and that Bosch Solar retained at Plaintiffs' expense was the purchase price of the 43 NA30119 panels. The chain of distribution of Plaintiffs' panels and the monetary compensation for those panels followed a pattern that is typical to all sales of Bosch Solar panels.

307.    Bosch Solar did not sell its NA30119 solar panels directly to residential end users .

308.    All NA30119 Bosch Solar panels, including those purchased by plaintiffs, were sold by Bosch Solar through approved solar panel distributors.

309.    Plaintiffs contacted Sullivan Electric to purchase its solar array. Sullivan electric agreed to install Plaintiffs' ground-mounted solar array on Plaintiffs' property and did so in February, 2013.  Plaintiffs' only contact in the transaction to acquire the Bosch Solar Panels was Hans Berg of Sullivan Electric.

310.    At the suggestion of Sullivan Electric, Plaintiffs purchased their array through a prepaid solar power agreement with Kilowatt.  Plaintiffs paid Kilowatt $25,089.22.  A copy of Plaintiffs' check to Kilowatt is attached hereto and marked **Exhibit E**.

311.    Kilowatt then paid Sullivan, using Plaintiffs' money, for the cost of the Bosch Solar panels and materials to be purchased by Sullivan to build Plaintiffs' solar array.  Sullivan bought the NA30119 panels used on Plaintiffs' property after Plaintiffs paid Kilowatt the $25,089.22 which Kilowatt paid to Sullivan.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-61-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

312.     Sullivan purchased the Bosch Solar panels installed on Plaintiffs' property from Bosch Solar Aleo Solar North America ("Bosch Solar Aleo"), a wholly owned subsidiary of Bosch Solar in 2013.   Plaintiffs' money was used by Sullivan to pay the solar distributor for the Bosch Solar panels installed on Plaintiffs' property.

313.     Using Plaintiffs' money, the Bosch Solar Aleo paid Bosch Solar for all NA30119 solar panels installed on Plaintiffs' property.  Plaintiffs' money to purchase the panels was paid initially to Kilowatt, then to Sullivan, and then to the distributor Bosch Solar Aleo who paid Bosch Solar directly.

314.     In this fashion, the benefit of Plaintiffs' money, namely the purchase price of the 43 NA30119 Bosch Solar panels, was conferred on Bosch Solar and retained by Bosch Solar through the above-described distribution channels for Plaintiffs' solar panels.

315.     All of the Bosch Solar NA30119 solar panels were sold to consumers or end-users in some variation of the above system, namely consumer or end-user pays the power supplier who pays the installer to buy the panels, who buys the panels from the distributor, who pays Bosch. Alternatively, the consumer or end-user pays the installer directly who buys the panels with the end users' money from the distributor who pays Bosch.

316.     Thus, Bosch Solar was paid with Plaintiffs' money indirectly through its distributor Bosch Solar Aleo.  The benefit of the purchase price was conferred on Bosch Solar and retained at Plaintiffs' expense.

317.     As between Plaintiffs and Bosch, it is unjust for Bosch Solar to retain the benefit conferred upon it by Plaintiffs in that Plaintiff paid $25,089.22 for the installation of the Bosch Solar panels based upon the promises from Bosch Solar that the panels would be free from defects and would safely supply certain minimum power output performance, none of which were delivered or fulfilled as promised by Bosch.

318.     Bosch Solar has been further unjustly enriched in that the price paid by Plaintiffs and Class members for the panels did not contemplate that consumers would bear the cost of testing their panels in order to assert a performance warranty claim.  Bosch Solar has refused to perform such testing.  Plaintiffs and Class Members have and will continue to incur unnecessary

-62-

THIRD AMENDED COMPLAINT FOR DAMAGES

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

1   expenses in order to investigate and test their Bosch Solar panels to provide evidence of a

2   performance warranty claim.  All such expenses conferred an unjust benefit on Bosch Solar by

3   virtue of Bosch Solar improperly shifting the burden of such expenses to Plaintiffs and members

4   of the Class.

5         319.    Defendant has been unjustly enriched in that Plaintiffs have expended money in an

6   effort to prove a power output claim have saved Defendant Bosch Solar from that expense or loss.

7   As such, a benefit has been conferred upon Defendant and retained at Plaintiffs' expense.

8    

9   **SIXTH CLAIM FOR RELIEF**<br>**(Consumers Legal Remedies Act)**

10         320.    Plaintiffs incorporate by reference each allegation set forth in the preceding

11   paragraphs.

12         321.    Plaintiffs bring this Claim on behalf of the Consumer Legal Remedies Act

13   Subclass as defined in paragraph 170e.

14         322.    California's Consumer Legal Remedies Act ("CLRA"), California Civil Code §§

15   1750, *et. seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices

16   undertaken by any person in a transaction intended to result or which results in the sale or lease of

17   goods or services to any consumer." *Civil Code* § 1770

18         323.    Where relevant, Plaintiffs also refer to the specific factual allegations supporting

19   each element of the claim alleged herein.

20         324.    The Bosch Solar panels are "goods" as defined by Civil Code § 1761(a).  The

21   Bosch Solar Express Warranty is a service as defined by Civil Code § 1761(b).

22         325.    Defendants are a "person" as defined by Civil Code§ 1761(c).

23         326.    Plaintiffs and Class members are "consumers" as defined by Civil Code§ 1761(d).

24   Plaintiffs are original, direct beneficiaries of the Bosch Solar Express Warranty, which as drafted

25   by Bosch, provides services to "end-users."  The solar panels are for personal, family, and

26   household purposes.

27         327.    The provision of solar panels as described herein and the provision of the Bosch

28   Solar Express Warranty are "transactions" as defined by Civil Code§ 1761(e).

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

Case No. 5:18-cv-5841-BLF

328.   Under the CLRA, Civil Code § 1770, *et seq.*, the following methods of competition are unlawful when any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer:

    a.   "Representing that goods …. Have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have."  Civil Code § 1770(a)(5).

    b.   "Representing that goods… are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.:  Civil Code § 1770(a)(7).

    c.   "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law."  Civil Code § 1770(a)(14).

    d.   "Inserting an unconscionable provision in the contract."  Civil Code § 1770(a)(19).

329.   Defendant Bosch Solar violated Civil Code §§ 1770(a)(5) and (a)(7) when it represented that it provided a 25-year performance warranty with remedies in the event of power output loss.

330.   Defendant violated Civil Code § 1770(a)(19) by including in the Warranty the unconscionable provisions, as more fully described hereinabove.  This includes but is not limited to representing that the solar panels are covered by the warranties without adequately disclosing to consumers the proposed warranty claim system and that the cost of making a warranty claim would likely equal or exceed the cost of the entire solar array.  This also includes providing a provision that violates 15 U.S.C. § 2304(d)(1), as alleged above.

331.   Had Plaintiffs and members of the Consumer Subclasses known that the true facts regarding the STC and proposed warranty claims process, Plaintiffs and members of the Consumer Subclasses would not have purchased the Bosch Solar panels or purchased properties on which the Bosch Solar panels were installed.  Plaintiffs and members of the Consumer Subclasses would not have made these purchases because making a warranty claim would be

1  prohibitively expense and the warranty would fail its essential purpose.  Without a guarantee that

2  the solar panels would perform for the promised period of time, the solar panels would not be

3  cost-justified.  The entire purpose of a warranty is that the business providing a product or service

4  agrees to assume the risk of non-performance of the product or service.  In the present case,

5  Bosch Solar has included language in the warranty that cannot be understood by a reasonable

6  consumer for the purpose of shifting the risk to the consumer while giving consumers the

7  impression that they have warranty coverage.

8      332.    As a result of Defendant's unfair and deceptive acts and practices, Plaintiffs and

9  the CLRA Subclass have been harmed, as alleged hereinabove, and seek actual damages

10  according to proof, attorneys' fees and costs and such other relief as the court deems proper.

11      333.    Plaintiffs served Defendant Bosch Solar with notice of its violations of the CLRA

12  pursuant to Civil Code§ 1782 (the "Notice") by certified mail on September 24, 2018.  A copy of

13  the Notice is attached hereto as **Exhibit F**.  Bosch Solar failed to provide or offer to provide

14  remedies for its violations of the CLRA within 30 days of the date of the Notice.

15      334.    Plaintiffs and other California Members' injuries were proximately caused by

16  Bosch's fraudulent and deceptive business practices.

17      335.    Therefore, Plaintiffs and the other California Class Members are entitled to

18  equitable and monetary relief under the CLRA.

19      336.    In addition, the acts of Bosch Solar in omitting relevant facts concerning the Bosch

20  Solar Express Warranty, deceived Plaintiffs and the Class concerning the benefits that they were

21  purportedly receiving under the Bosch Solar Express Warranty and furthered a strategy of

22  suppressing claims and deceptively shifting the risk back to the consumer.  While Bosch Solar

23  has imposed these obstacles to warranty claims, nearly 44,000 admittedly defective panels remain

24  in place and present a fire risk.  While Bosch Solar has initiated a recall, Bosch Solar

25  misrepresented to the CPSC that it would directly contact consumers but it has not done so.  As

26  more fully alleged above, Bosch Solar has had no contact or virtually no contact with consumers

27  regarding the defect and nearly all of the dangerous panels remain in place.

28

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-65-                                                Case No. 5:18-cv-5841-BLF
THIRD AMENDED COMPLAINT FOR DAMAGES

337.    The conduct as alleged above was: (1) malicious in that they represent "despicable conduct" conduct carried on by Bosch Solar with a willful and conscious disregard of the rights or safety of others; (2) oppressive in that they represent "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights;" and (3) fraudulent. Accordingly, Plaintiffs and the Class are entitled to punitive damages according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray the Court to certify the Class as defined hereinabove, to enter judgment against Defendants and in favor of the Class, and to award the following relief:

1.    For certification of the proposed Class and each Subclass thereof;

2.    For the cost of removal and replacement of the Bosch Solar c-Si M 60 NA30119 solar panels;

3.    For compensatory damages as alleged herein, according to proof;

4.    For an injunction enjoining Bosch Solar from enforcing, threatening to enforce or claiming the right to enforce any of the unconscionable Warranty disclaimers and limitations, and to compel Bosch Solar to:

(a)    advise consumers affirmatively of their rights to all damages to which they are lawfully entitled;

(b)    make full disclosure to all members of the Class concerning the risk of fire resulting from the failure of the Bosch Solar panels;

(c)    establish a protocol, at no charge to Plaintiffs and the Class to determine if they are the end-users or owners of the Bosch Solar panels and the amount of power loss degradation the Bosch Solar panels experienced;

5.    For costs and attorneys' fees, as allowed by law;

6.    For punitive damages;

7.    For such other further legal or equitable relief as this Court may deem appropriate under the circumstances; and

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-66-

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

8.      In the alternative, Plaintiffs pray to recover amounts that Bosch Solar was unjustly enriched, according to proof at trial.

DATED:  September 12, 2022          BIRKA-WHITE LAW OFFICES

By:   /s/ David M. Birka-White
DAVID M. BIRKA-WHITE

David M. Birka-White (State Bar No. 85721)
dbw@birka-white.com
Laura A. Carrier (State Bar # 220154)
lcarrier@birka-white.com
BIRKA-WHITE LAW OFFICES
178 E. Prospect Avenue
Danville, CA 94526
Telephone: (925) 362-9999

John D. Green (State Bar No. 121498)
jgreen@fbm.com
FARELLA BRAUN & MARTEL LLP
235 Montgomery Street, Suite 1700
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile:  (415) 954-4480

Charles E. Schaffer (State Bar No. PA76259)
cschaffer@lfsblaw.com
David C. Magagna, Jr. (State Bar No. PA 322463)
dmagagna@lfsblaw.com
LEVIN SEDRAN & BERMAN, LLP
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106
Telephone: (215) 592 1500
Facsimile: (215) 592-4662

Attorneys for Individual and Representative Plaintiffs
STEVE R. ROJAS and ANDREA N. ROJAS, on behalf
of themselves and all others similarly situated

## PLAINTIFFS' DEMAND FOR JURY TRIAL

Plaintiffs STEVE R. ROJAS and ANDREA N. ROJAS, on behalf of themselves and all others similarly situated, by and through their counsel, hereby demand a jury trial of all issues in the above-captioned matter.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

1    DATED:  September 12, 2022          BIRKA-WHITE LAW OFFICES

2                                        By:___/s/ David M. Birka-White_____

3                                        DAVID M. BIRKA-WHITE

4                                        Attorneys for Individual and Representative
                                         Plaintiffs STEVE R. ROJAS and ANDREA N.
5                                        ROJAS, on behalf of themselves and all others
                                         similarly situated
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

-68-                              Case No. 5:18-cv-5841-BLF

THIRD AMENDED COMPLAINT FOR DAMAGES

# EXHIBIT A

# EXHIBIT A

Solar Energy

 **BOSCH**

## Limited Warranty for photovoltaic modules

Bosch Solar Energy Corp. provides a product warranty and a performance warranty for its photovoltaic modules (hereinafter "Module" or "Modules") listed is the Appendix. The product warranty (the "Product Warranty") covers the material and workmanship of the Modules (see section A below). The performance warranty (the "Performance Warranty") covers loss of performance (degradation) and minimum output of the Modules (see section B below).

### A: Product Warranty

Bosch Solar Energy Corp. warrants to the Consumer" (defined below) that the Module is free of defects in material and workmanship for a period of ten (10) years from the date of delivery, subject to the Warranty Conditions. The Consumer is the final customer or end-user that properly places the Modules into operation for the first time. The date of delivery as used in this Limited Warranty shall be the earlier of (i) the date of installation by the Consumer, or (ii) ninety (90) days after delivery of the Module by Bosch Solar Energy Corp. to the Consumer.

### B: Performance Warranty

Bosch Solar Energy Corp. warrants to the Consumer that the Module will:

a) within a period of ten years from the date of delivery provide at least 90%; and

b) within a period of 25 years from the date of delivery provide at least 80%

of the minimum performance set forth in the data sheet (defined as the lower sorting limit of the respective module power class less the power measurement tolerance).

### C: Warranty Conditions

#### 1. General

1.1 These Warranties are granted to the Consumer or shall transfer from the Consumer to subsequent buyers / end users for the remainder of the warranty period, provided the subsequent buyers / end users can show that the Modules have not been modified or relocated from their originally installed location.

1.2 These warranties are independent of any warranty that may have been provided by the vendor of the Modules, and may not be enhanced, diminished or otherwise changed, modified or altered by the vendor or any other person.

1.3 In the event that these Warranty Conditions deviate from the specifications set forth in the

data sheet, these Warranty Conditions shall prevail.

1.4 These warranties shall apply to Modules sold and delivered in Canada, the United States, Mexico, the Caribbean and Central America by Bosch Solar Energy Corp. Claims arising from or in connection with these warranties must be filed in writing within the applicable warranty period. No extension of the warranty period, regardless of legal basis, will be permitted.

#### 2. Disclaimers / Liability Limitations

2.1 These warranties apply only if (i) the Module was installed correctly, (ii) the Module is used as intended and under normal operating conditions, (iii) the product label and serial number of the Module is completely ascertainable, and (iv) the performance of the modules has not been reduced, diminished or otherwise adversely compromised by actions or events outside the control of Bosch Solar Energy Corp., including, without limitation, the following:

- Diminished performance/damage resulting from force majeure events (storms, hail, fire, power outage, lightning, flooding, snow damage, avalanches, frost, earthquakes, tornadoes, volcanic eruptions, landslides, plagues of insects and other detrimental effects by animals, acts of war, etc.), or from acts committed by third parties such as vandalism and theft;
- Improper installation, commissioning, operation or removal and/or reinstallation of Modules (e.g. not in compliance with current installation manual[1]);
- Installation or use on mobile units such as vehicles and ships;
- Installation or use in corrosive areas, marine environments or under abnormal environmental conditions;
- Interconnection with Modules made by other manufacturers;
- Defects of the system into which the Module is integrated;
- Operation of Modules in excess of the maximum permissible temperatures as set forth in the operations manual due to insufficient ventilation or other cause;
- Changes in the optical characteristics of the Module that do not fundamentally influence the technical function of the Module.

2.2 These warranties may not be assigned or transferred to a third party except in accordance with this Limited Warranty.

---

[1] Current installation manual available at www.bosch-solarenergy.com

Solar Energy                                              BOSCH

2.3 THESE WARRANTIES ARE EXCLUSIVE AND IN LIEU OF ALL OTHER EXPRESS AND IMPLIED WARRANTIES WHATSOEVER, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE. THE LIABILITY OF BOSCH SOLAR ENERGY CORP. UNDER THESE WARRANTIES SHALL NOT EXCEED THE PURCHASE PRICE PAID BY THE CONSUMER FOR THE MODULE(S), AND UNDER NO CIRCUMSTANCES SHALL BOSCH SOLAR ENERGY CORP. OR ANY OF ITS AFFILIATES, BE LIABLE TO THE CONSUMER OR ANY OTHER THIRD PARTY FOR ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT, COMMERCIAL (LOSS OF USE, REVENUE, PROFITS, OR DOWNTIME) OR PUNITIVE DAMAGES WHATSOEVER.

2.4 The sole obligation of Bosch Solar Energy Corp. under these warranties shall be, at its sole discretion, to (i) replace the Module with a functional module of the same type, (ii) remedy the defects, or (iii) refund the unamortized portion of the purchase price of the Module. In the event that the type of Module is no longer available at the time of the warranty claim, Bosch Solar Energy Corp. may replace such Module with another type of solar Module (different size, shape, color and/or capacity).

2.5 The warranty period for replacement or repaired Modules shall be the same as the original Module.

**3. Warranty Claim Verification and Procedure**

3.1 All warranty claims must be submitted in writing to:

    Bosch Solar Energy
    care of:
    Robert Bosch Power Tool Corporation
    Fax: 630-705-7811
    E-mail: claim.se@us.bosch.com
    www.bosch-solarenergy.com

3.2 All warranty claims must be accompanied by (i) the original bill of sale for the Module, and (ii) proof that (a) there is a defect in the materials and/or workmanship of the Module, or (b) the performance of the Module no longer meets the minimum performance warranted by Bosch Solar Energy Corp.

3.3 Bosch Solar Energy Corp. or its authorized representative(s) reserve the right to verify the claim that the performance of the Module no longer meets the minimum performance warranted under the Performance Warranty.

Module performance shall be measured by Bosch Solar Energy Corp. under standard test conditions (25°C cell temperature, irradiation 1,000 W/m$^2$ and spectrum AM 1.5). Output will be measured in each case at the ends of the pre-assembled connector on the rear of the module. The Consumer is responsible for maintaining the standard test conditions while producing evidence that the performance has fallen below the guaranteed minimum performance.

If such testing determines that the Module does in fact meet the minimum performance warranted under the performance Warranty or that the failure to meet such minimum performance level is the result of condition, circumstance or occurrence that is not covered by the Performance Warranty, Bosch Solar Energy Corp. shall be entitled to reimbursement of the cost of conducting such tests from the party submitting the warranty claim.

3.4 Claims submitted under these warranties must be submitted within three (3) months of the occurrence of an event placing the Consumer on notice that a claim under one of the warranties has or may have arisen. The burden of showing compliance with this time limitation lies with the Consumer. Claims not submitted within this period will not be considered.

3.5 All disputes arising from this warranty shall be governed by the laws of the State of Michigan and conflict of law rules shall not apply.

**Warranty Appendix:   List of Covered Bosch Crystalline Series Modules**

c-Si M 60 -16

c-Si M 60 NA30117
c-Si M 60 NA42117
c-Si M 60 NA44117

c-Si M 60 NA30119

c-Si P 72 NA21126

Last Update: March 13, 2014

# EXHIBIT B

# EXHIBIT B

**From:** Bosch Solar Service <solarservice.us@bosch.com>
**Date:** November 3, 2017 at 2:33:40 PM PDT
**To:** "srrojas@aol.com" <srrojas@aol.com>
**Subject: Bosch Solar Module Replacement Program**

Dear valued customer,

Bosch Solar has confirmed that your rooftop photovoltaic system utilizes Bosch c-Si M 60 NA30119 solar modules.  These modules are subject to a voluntary recall program implemented by Bosch Solar, and will be replaced without charge to you. The replacement work will be performed by a qualified installer on behalf of Bosch Solar. The installer will contact you soon to arrange for a site survey and inspect the photovoltaic installation to confirm our records match with the actual installation, and verify accessibility to it as well as site-specific requirements to perform the removal of the existing modules and their replacement with new modules.

Bosch Solar is no longer in the business of producing or selling photovoltaic products. Consequently, Bosch Solar will be replacing your Bosch c-Si M 60 NA30119 solar modules with high-quality modules, manufactured by a company with a 15+ year track record in the solar industry, come with a new 25 year linear power output warranty and a 10 year materials warranty. The replacement of the existing Bosch c-Si M 60 NA30119 solar modules will terminate the existing warranty on those modules. You will have the benefit of the full warranty period on the new modules.

If you have questions your qualified installer might have the answers or call our Customer Service Hotline at (855)-866-8470 or visit www.bosch-solarenergy.com.

Sincerely,
Bosch Solar Customer Service
Toll free hotline 1-855-866-8470 (Monday to Friday 7:00 a.m. and 7:00 p.m. CT) |
boschsolar.services@us.bosch.com | www.bosch-solarenergy.com

# EXHIBIT C

# EXHIBIT C

**From:** Thom Brodie <tbrodie@bakerhomeenergy.com>
**Date:** May 31, 2018 at 12:35:21 PM PDT
**To:** "srrojas@aol.com" <srrojas@aol.com>
**Subject: Bosch PV Module Replacement Project**

Hello Mr. Rojas,

We truly appreciate your patience during this process.

Attached, please find the "Baker-Bosch Construction Contract for Sullivan Customers". We are scheduled to survey the site on 6/6/18. Please review and submit the signed contract to my attention. The project will flow as follows:

- Baker completes site survey of the system
- Baker evaluates the existing system and creates proper engineering documents to replace the Bosch modules with Canadian Solar Modules
- Baker will request the homeowner to complete a customer acknowledgment form to confirm the module count
- Bosch approves the new engineering
- Baker will schedule the PV module replacement with the homeowner and completes the PV module swap
- Baker tests the system and provides confirmation to Bosch

Please let me know if you have any questions or concerns.

Best regards,



**BAKER ELECTRIC**
**HOME ENERGY**

Thom Brodie | Service Coordinator
tbrodie@bakerhomeenergy.com
Desk: 1.760.546.6072   Mobile: 1.760.484.6338

Phone: 1.877.578.8080 | 2140 Enterprise St. | Escondido, CA 92029 | www.bakerhomeenergy.com

© 2018 Baker Electric Home Energy | CA license # 858088 C-10 / C-46 / C-39 / C-20 | Baker Electric Home Energy is a trademark of Baker Electric, Inc. and NB Baker Electric, Inc. DBA Baker Electric Home Energy. The information contained in this message is privileged or confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that

# EXHIBIT D

# EXHIBIT D

CA Contractor License No. 858088



## SOLAR MODULE REPLACEMENT PROGRAM SERVICE AND REPAIR CONTRACT
### Home Improvement

| Customer Information: | Installation Location: | Utility Information: |
|---|---|---|
| [Rohas, Steve] | [29294 Juniper Ave] | [SCE] |
| [29294 Juniper Ave] | [Moreno Valley CA 92555] | |
| [Moreno Valley CA 92555] | | Account No.: |
| [951-751-4802] | | |
| [srrojas@aol.com] | | Meter No.: |

This Solar Module Replacement Program Service and Repair Contract ("**Agreement**") is entered into on _____ ("**Agreement Date**") by NB Baker Electric, Inc., dba Baker Electric Solar ("**Baker**" or "**Contractor**") and the customer(s) listed above ("**Customer**", "**You**", or "**Your**") for the installation of replacement modules described below ("**Project**") for the existing photovoltaic solar system ("**System**") at the installation location listed above ("**Property**") upon the terms and conditions set forth in this Agreement, including all Exhibits attached hereto which are incorporated into this Agreement. You may send notices, including Notices of Cancellation, to Baker at 2140 Enterprise Street, Escondido, CA 92029.

**1.      DESCRIPTION OF PROJECT AND REPLACMENT MATERIALS TO BE USED AND REPLACEMENT EQUIPMENT TO BE INSTALLED.**

1.1      Robert Bosch Tool Corporation ("Bosch") has contracted with Baker to perform the Project at no cost to Customer. Customer has consented to Baker performing the Project.  Baker agrees to perform the Project at the Property upon the terms set forth in this Agreement provided Customer will perform all of its obligations as set forth in this Agreement.

1.2      Description of the Project and Description of the Significant Materials to be Used and Equipment to be Installed:

Baker shall remove existing Bosch c-Si M 60 NA30119 photovoltaic modules currently installed on the Property and shall redesign, install, construct, commission and test replacement modules (e.g. Canadian Solar CS6K-xxxM or comparable) on the Property.

1.3      Customer acknowledges and agrees: (a) Customer has consented to Baker to removing existing modules within the System ("**Existing Modules**") and replacing them with replacement modules that will have sizes and characteristics different from those of the existing modules ("**Replacement Modules**"); (b) the total rated capacity of the Replacement Modules in kilowatts AC will be different than that rated capacity in kilowatts AC of the total number of Existing Modules in kilowatts AC; and (c) the Project will necessarily result in a change in the size and the characteristics of the System.  Baker agrees it shall make commercially reasonable efforts to perform the Project and to do so in a manner that preserves the Customer's right to continue to participate in an existing Net Energy Metering ("NEM") Tariff (i.e. by increasing the System capacity rating by no more than any limitation on such capacity increases permitted under applicable law or utility tariff or rule). If such capacity increases will not jeopardize Customer's right to continue to participate in an Existing NEM Tariff, Baker shall perform the Project in a manner that does not decrease the capacity rating of the System.  However, Customer acknowledges and agrees that Baker will not be held responsible or liable for any decrease to the capacity of a System provided the decrease is reasonably necessary in order to preserve Customer's right to continue to participate in an Existing NEM Tariff.

**2.      CONTRACT PRICE.**

2.1      Baker agrees to accept payment for the performance of the Project from Bosch and not to hold Customer responsible for payments for this work or the Project.

**3.      INSTALLATION TIMELINE.**

3.1      Baker will perform the Project within a reasonable amount of time after Baker signs this Agreement, but in no event later than 30 days from the date of the Agreement.  Baker will schedule the performance of the Project at a mutually convenient date and time.

3.2      Approximate Start Date:          10 days from the Agreement Date

3.3      Approximate Completion Date:          30 days from the Agreement Date

3.4      The above Project timeline is an estimate only and may be adjusted as provided in this Agreement, including for

CA Contractor License No. 858088



delays due to unforeseen conditions.

4.      ARBITRATION OF DISPUTES.

4.1     ANY CONTROVERSY, DISPUTE, CLAIM, OR DISAGREEMENT BETWEEN THE PARTIES RELATING TO OR IN CONNECTION WITH THIS AGREEMENT AND/OR THE PROJECT ("DISPUTE") MUST BE RESOLVED EXCLUSIVELY BY BINDING ARBITRATION IN THE COUNTY IN WHICH THE PROPERTY IS LOCATED.  THE ARBITRATION, INCLUDING SELECTION OF THE ARBITRATOR, WILL BE ADMINISTERED BY JAMS, UNDER ITS STREAMLINED ARBITRATION RULES AND PROCEDURES ("RULES"), AND DECIDED BY A SINGLE NEUTRAL ARBITRATOR AGREED ON BY THE PARTIES WITHIN THIRTY (30) DAYS OF THE COMMENCEMENT OF THE ARBITRATION.  EITHER PARTY MAY INITIATE THE ARBITRATION PROCESS BY FILING THE NECESSARY FORMS WITH JAMS.  TO LEARN MORE ABOUT ARBITRATION, YOU CAN CALL ANY JAMS OFFICE OR REVIEW THE MATERIALS AT WWW.JAMSADR.COM.

4.2     If You initiate the arbitration, You will be required to pay $250 toward the filing fee and Baker will pay the remainder of the arbitration fees and costs.  If Baker initiates the arbitration, Baker will pay all the arbitration fees and costs.  Each party will be responsible for its own attorneys' fees and costs except that the prevailing party in any Dispute will be entitled to recover its attorneys' fees, costs, and expenses from the non-prevailing Party, in addition to any other appropriate relief.

4.3     Arbitration must be on an individual (not class or representative basis) and the arbitrator may not award relief for or against anyone who is not a party.  This means You agree that neither You nor Baker may (a) join or consolidate claims in arbitration by or against any other parties, or (b) litigate in court or arbitrate any Dispute as a representative, member of a class, or in a private attorney general capacity.  The arbitrator will have the authority to award any legal or equitable remedy or relief that a court could order or grant under this Agreement.  However, the arbitrator may not change or alter the terms of this Agreement or make any award that would extend to any transaction other than Yours. All statutes of limitations that are applicable to any Dispute shall apply with respect to any arbitration between the parties.  The arbitrator will issue a decision or award in writing, briefly stating the essential findings of fact and conclusions of law.

4.4     NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THIS "ARBITRATION OF DISPUTES" PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION.  IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE BUSINESS AND PROFESSIONS CODE OR OTHER APPLICABLE LAWS.  YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.  WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION TO NEUTRAL ARBITRATION.  YOU ALSO ACKNOWLEDGE AND AGREE YOU ARE GIVING UP YOUR RIGHTS TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING.

Customer Initial: _____          Baker Initial: _____

5.      LIST OF DOCUMENTS TO BE INCORPORATED INTO THE AGREEMENT.

        Exhibit 1 – General Terms and Conditions
        Exhibit 2 – Limited Warranty
        Exhibit 3 – Notice of Cancellation forms, 2 copies (required by law)
        Exhibit 4 – Notice About Contractors' State License Board (required by law)
        Exhibit 5 – Mechanics Lien Warning (required by law)
        Exhibit 6 – Association Acknowledgement
        Exhibit 7 – Form of Change Order (required by law)

6.      THREE-DAY RIGHT TO CANCEL UNDER CALIFORNIA BUS & PROF CODE § 7159(e)(6)(B).

6.1     You, the buyer, have the right to cancel this contract within three business days. You may cancel by e-mailing, mailing, faxing, or delivering a written notice to the contractor at the contractor's place of business by midnight of the third business day after you received a signed and dated copy of the contract that includes this notice. Include your name, your address, and the date you received the signed copy of the contract and this notice.

CA Contractor License No. 858088



6.2     **If you cancel, the contractor must return to you anything you paid within 10 days of receiving the notice of cancellation. For your part, you must make available to the contractor at your residence, in substantially as good condition as you received them, any goods delivered to you under this contract or sale. Or, you may, if you wish, comply with the contractor's instructions on how to return the goods at contractor's expense and risk. If you do make the goods available to contractor and contractor does not pick them up within 20 days of the date of your notice of cancellation, you may keep them without any further obligation. If you fail to make the goods available to contractor, or if you agree to return the goods to contractor and fail to do so, then you remain liable for performance of all obligations under the contract.**

7.      **BOND NOTICE.**

You have the right to require Baker to have a performance and payment bond.  You must request any such bonds prior to commencement of any work under this Agreement and You will be solely responsible for the extra costs of obtaining such bonds.

8.      **NOTICE REGARDING SULLIVAN INSTALLATION WARRANTY.**

The System was originally installed by Sullivan Solar Power ("Sullivan"). Performance of the Project may void installation and workmanship warranties previously issued in connection with the System by Sullivan ("Sullivan Installation Warranty"). Baker has agreed to provide and honor the Sullivan Installation Warranty, as further described in Section 1(d) of the Limited Warranty attached hereto as Exhibit 2.

9.      **SIGNATURES**

**CUSTOMER:**

Signature: _____

Name:    [Steve Rojas]

Dated: _____ 6-6-18 _____

Signature: _____

Name:    [NAME #2 IF APPLICABLE]

Dated: _____

**CONTRACTOR:**

NB Baker Electric Inc. dba Baker Electric Solar,
a California corporation

Signature: _____

Name: _____

Title: _____

Dated: _____

**You are entitled to a completely filled in copy of this agreement, signed by both You and the Contractor, before any work may be started.**



CA Contractor License No. 858088

EXHIBIT 1

**GENERAL TERMS AND CONDITIONS**

1.  Pricing and Termination Rights.

1.1 Both parties will have the right to terminate this Agreement, without penalty or fee. Except as provided otherwise in this Agreement, such termination right will expire three (3) days prior to scheduled delivery of Your Project materials.

2.  Permits.

Baker will obtain any necessary permits at Baker's cost. You will have the opportunity to review and approve the working plans for the Project. If you do not request any changes to the working plans in writing within three (3) business days of Your receipt of such plans, the working plans will be deemed accepted and Baker will obtain all permits based on the accepted plans. Baker is not responsible for delays in the work due to the actions of any permitting and regulatory agencies or their employees.

3.  Note about Extra Work and Change Orders.

3.1 Extra work and change orders become part of the Agreement once the order is prepared in writing and signed by the parties prior to the commencement of any work covered by the new change order. The order must describe the scope of the extra work or change, the cost to be added or subtracted from the Agreement, and the effect the order will have on the schedule for payment.

3.2 Notwithstanding the foregoing, Customer acknowledges and agrees it has requested Baker to perform the Project for the limited purpose and for the limited scope of work set forth in this Agreement. Accordingly, Customer and Baker agree that there should be no circumstance in which Baker would perform any change order or extra work in connection with this Agreement. In the event Customer desires Baker to perform any extra or additional work at the Property or in connection with the System, Baker may, at its sole discretion, agree to provide an estimate for such work which in all cases will be the subject of a separate contract by and between the Parties. Baker's failure to comply with the requirements of this paragraph does not preclude the recovery of compensation for work performed based on legal or equitable remedies designed to prevent unjust enrichment.

4.  No Guarantee of Utility Bill Savings.

Pricing and savings vary based on location, system size,

government rebates, post-solar kWh usage and consumption, and local utility rates. BAKER EXPRESSLY DOES NOT GUARANTEE ANY SAVINGS ON YOUR ELECTRICITY COSTS OR UTILITY BILLS. SAVINGS (IF ANY) WILL BE BASED UPON SYSTEM PRODUCTION AND YOUR FUTURE ENERGY USE.

5.  No Federal Renewable Energy Tax Credit.

IT IS BAKER'S UNDERSTANDING THAT THIS PROJECT WILL NOT QUALIFY CUSTOMER WILL NOT QUALIFY FOR THE FEDERAL RENEWABLE ENERGY TAX CREDIT OR ANY OTHER FEDERAL OR STATE TAX CREDITS.

6.  Property Conditions.

You will be responsible for the structural integrity of the location where the Project is performed, including structural or electrical modifications necessary to prepare Your Property for the performance of the Project. You agree that Baker is not responsible for any known or unknown defects in the Property including any defects in the System. Baker's ability to timely perform the Project assumes that existing roofing materials and structural supports will be adequate to carry the load of all equipment to be installed and work to be done under this Agreement. If any modification of roofing materials and/or reinforcement of existing structural supports is required, Baker will be entitled to an extension of the completion date. Roofing leaks or compromised roof decking/materials may only become apparent during installation. If these conditions are discovered Baker will notify Customer and Bosch immediately to address the issue.

7.  Existing Electrical Conditions.

Baker is not responsible for and bears no liability for the malfunctioning of existing electrical equipment at the Property, including but not limited to the main electrical service panel, any major electrical devices, or any other fuses or similar devices. You will provide 110 volt electrical power from the existing distribution system on the Property for hand-held portable power tools at no cost to Baker. Baker will not use the existing electric power system for welding machines or other electrical equipment with heavy power requirements.

8.  Cost or Delay Due to Unforeseen Conditions.

Baker is not responsible for failures, delays, or expenses related to any event or circumstance (other than a lack of funds or finances) beyond the control of and without the fault or negligence of Baker that hinders or prevents Baker from

CA Contractor License No. 858088



performing despite using commercially reasonable efforts to perform, including, without limitation acts of God such as storms, fires, floods, lightning and earthquakes, sabotage or destruction by a third party of Project Products, war, riot, acts of a public enemy or other civil disturbance, deterioration of the financing markets, a strike, walkout, lockout or other significant labor dispute (all of which shall be considered "**Force Majeure Events**"). Performance times under this Agreement will be considered extended for a period of time equivalent to the time lost due to such Force Majeure Events.

9.       Property Access.

9.1       You hereby grant to Baker and its employees, agents, and contractors the right to reasonably access all of the Property as necessary for the purposes of (a) removing the Existing Modules and installing, constructing, commissioning, operating, and testing the Replacement Modules (b) installing, using and maintaining electric lines and inverters and meters necessary to interconnect the System to Your existing electrical system at the Property and/or to the utility's electric distribution system; and (c) taking any other action reasonably necessary in connection with the construction, installation, operation, maintenance, removal, or repair of the System.

9.2       In the event Customer authorizes Baker's access to the Property through adjacent properties to complete the Project, Customer is required to obtain written permission from the owner(s) of the adjacent properties for such use, and Customer agrees to be solely responsible and to defend, indemnify, and hold Baker harmless from any and all forms of liability that may arise out of or relate to such use, including but not limited to encroachment or interference thereby upon the property, easements, or rights of any third parties.

10.       Termination and Default.

Baker may, upon seven (7) days written notice to Customer, terminate this Agreement for any material or non-material breach, for any failure of Customer to agree to an appropriate change order, for any failure of Bosch to pay Baker any amount due, or for any hindrance to Baker in the performance process.

11.       Remedies Upon Customer's Breach.

Without limiting any of Baker's other rights and remedies, upon any breach by Customer, Baker shall have the right, to the fullest extent of the law, to: (a) pursue a stop work order at the Property; (b) stop any more work from being done at the Property until the breach is cured; (c) require You to make the Property available to us to remove any Project materials or equipment from the Property; and (e) any other legal remedies including, without limitation, mechanics liens or

similar remedies.

12.       Insurance.

12.1       Commercial General Liability Insurance (CGL): Baker carries commercial general liability insurance written by Alliant Insurance Services. You may call Jim Castle at 619-699-0541 to check Baker's insurance coverage.

12.2       Workers' Compensation Insurance: Baker carries workers' compensation insurance for all employees.

13.       Indemnification.

Contractor agrees to indemnify, defend, and hold harmless Customer from any and all third party claims, actions, costs, expenses (including reasonable attorneys' fees and expenses), damages (including damages to the Property), liabilities, penalties, losses, obligations, demands, and liens of any kind ("Claims") arising out of or relating to Contractor's performance of the Project, including, without limitation Claims arising from or related to the fraud, negligence or willful misconduct of, or violation of laws or breach of this Agreement by Contractor, any subcontractor, or any of their respective directors, officers, employees or agents.  Customer agrees to indemnify, defend, and hold harmless Contractor and its employees, officers, directors, agents, and assigns from any and all third party claims, actions, costs, expenses (including reasonable attorneys' fees and expenses), damages, liabilities, penalties, losses, obligations, demands, and liens of any kind arising out of or relating to Customer's failure to perform its obligations under this Agreement.  Neither party will be required to indemnify the other party for such other party's own negligence, willful misconduct, or fraud.

14.       Governing Law.

The laws of the State of California will govern this Agreement without giving effect to conflict of laws principles.

15.       Entire Agreement.

This Agreement contains the parties' entire agreement regarding the Project.  There are no other agreements regarding this Agreement, either written or spoken.  Any change to this Agreement must be in writing and signed by both parties.  Only an authorized representative of Baker may execute any change to this Agreement on behalf of Baker.  If any portion of this Agreement is determined to be unenforceable or invalid, the remaining provisions shall be enforced in accordance with their terms or shall be interpreted or rewritten so as to make them enforceable. Provisions that should reasonably be considered to survive termination of this Agreement will survive.  Baker may assign or subcontract any of

CA Contractor License No. 858088



its rights or obligations under this Agreement to any successor, partner, or purchaser.

16.    Waiver.

Any delay or failure of a party to enforce any of the provisions of this Agreement, including but not limited to any remedies listed in this Agreement, or to require performance by the other party of any of the provisions of this Agreement, shall not be construed to be a waiver of such provisions or a party's right to enforce that provision or affect the validity of this Agreement.

17.    Exercise of Reasonable Care.

Baker will exercise reasonable care not to damage Your Property during performance of the Project.  In the event of damage to the Property due to Baker's performance of the Project, Baker shall, at the option of the Customer, repair such damage at Baker's cost, or shall bear liability to Customer for the cost of such repairs.

18.    Limited Warranty.

18.1    EXCEPT AS EXPRESSLY SET FORTH IN THE LIMITED WARRANTY ATTACHED AS EXHIBIT 2 TO THE AGREEMENT ("LIMITED WARRANTY"), BAKER DISCLAIMS, AND YOU WAIVE, ALL OTHER WARRANTIES OR GUARANTEES, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION AS TO THE MERCHANTABILITY, FITNESS FOR ANY PURPOSE, CONDITION,    DESIGN,    CAPACITY,    SUITABILITY    OR PERFORMANCE OF THE PROJECT OR ITS INSTALLATION.

18.2    UPON RECEIPT OF PAYMENT IN FULL UNDER THIS AGREEMENT, ALL WARRANTIES THAT ARE PROVIDED BY MANUFACTURERS OF EQUIPMENT USED IN THE PROJECT WILL BE TRANSFERRED DIRECTLY TO YOU.  EXCEPT AS PROVIDED IN SECTION [__] OF THE LIMITED WARRANTY, BAKER SHALL NOT BE LIABLE TO CUSTOMER UNDER THIS WARRANTY IF AN ALLEGED DEFECT IN ANY WORK OR EQUIPMENT WAS CAUSED BY CUSTOMER'S OR ANY THIRD PERSON'S (FOR WHOM BAKER IS NOT RESPONSIBLE AS PROVIDED HEREIN) MISUSE, NEGLECT, UNAUTHORIZED ATTEMPTS TO REPAIR, OR ANY OTHER CAUSE BEYOND THE RANGE OF THE INTENDED USE, OR BY ACCIDENT, FIRE, LIGHTNING OR OTHER HAZARD.

19.    Limitation of Liability.

19.1    EXCEPT WITH RESPECT TO DAMAGES TO THE CUSTOMER'S PROPERTY ARISING FROM THE PROJECT, EACH PARTY'S LIABILITY TO THE OTHER UNDER THIS AGREEMENT SHALL BE LIMITED TO DIRECT, ACTUAL DAMAGES ONLY. BOTH PARTIES AGREE THAT, EXCEPT WITH RESPECT TO DAMAGES TO THE CUSTOMER'S PROPERTY ARISING FROM THE PROJECT, IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR CONSEQUENTIAL, INCIDENTAL, PUNITIVE, EXEMPLARY, SPECIAL OR INDIRECT DAMAGES, INCLUDING WITHOUT LIMITATION (a) PHYSICAL OR MENTAL PAIN AND SUFFERING OR EMOTIONAL DISTRESS DAMAGES; (b) COSTS OF TEMPORARY SHELTER, TRANSPORTATION, FOOD, MOVING, STORAGE, OR SIMILAR INCIDENTAL DAMAGES OR EXPENSES; (c) LOSS OF USE, LOSS OF OPPORTUNITY, LOSS OF FAIR MARKET VALUE, LOSS OF RENTAL VALUE, LOSS OF FINANCING, OR SIMILAR LOSS OF ECONOMIC OPPORTUNITY; OR (d) LOSS OF PROFITS, LOSS OF BUSINESS OPPORTUNITY OR REPUTATION.

20.    Time of the Essence.

The parties agree that time is of the essence in this Agreement.

21.    Execution in Counterparts.

This Agreement may be signed by the parties in multiple counterparts, all of which shall be taken together as a single document.

CA Contractor License No. 858088



EXHIBIT 2

**LIMITED WARRANTY**

THE FOLLOWING DESCRIBES THE TERMS AND CONDITIONS OF THE LIMITED WARRANTY (THE "**WARRANTY**") MADE PURSUANT TO THE REPLACEMENT PROGRAM SERVICE AND REPAIR CONTRACT ("**AGREEMENT**") ENTERED INTO BY AND BETWEEN YOU ("**CUSTOMER**") AND NB BAKER ELECTRIC SOLAR, INC. DBA BAKER ELECTRIC SOLAR ("**BAKER**"). ALL CAPITALIZED TERMS USED BUT NOT DEFINED IN THIS WARRANTY WILL HAVE THE MEANINGS SET FORTH IN THE AGREEMENT.

**1.    What is the Limited Warranty and what does it cover?**

The Limited Warranty is part of the Agreement between You and Baker.  Pursuant to this Limited Warranty Baker agrees to provide You with the following limited warranties in connection with the Replacement Modules and other equipment, as applicable, installed at Your Property by Baker during the Project (collectively, the "**Limited Warranty**"):

(a)    Baker covenants and warrants that: (i) all work is and will be of good quality and installed, constructed and accomplished in a good and workmanlike manner and using skill, care and diligence consistent with all manufacturer's requirements and specifications, design specifications and the practices, methods and acts engaged in or approved by the solar energy industry that at a particular time, in the exercise of reasonable judgment in light of the facts known or that reasonably should have been known at the time a decision was made, would have been expected to accomplish the desired result in a manner consistent with applicable Law, reliability, safety, environmental protection, equipment manufacturers' recommendations economy and expedition ("Prudent Practices"); (ii) the work shall be free from workmanship defects; and (iii)  all work performed complies with all applicable Laws, permits, standards, Prudent Practices and this Agreement.

(b)    5-Year Limited Workmanship and Installation Warranty. With respect to each Replacement Module installed pursuant to this Contract, Baker provides a warranty on all work against defects in design or workmanship and a warranty on all materials incorporated into the work (other than the Replacement Module supplied by Bosch) against design, material, workmanship or manufacture, in each case for a period of five (5) years following final completion of the Project.

(c)    5-Year Limited Roofing Penetration Warranty.  Baker does not anticipate making any new roofing penetrations on your roof, however if new roofing penetrations are required, Baker warrants Your roof against defects in, leaks, or damage caused by, all new roofing penetrations made by Baker for a period beginning when such roofing penetrations are made by Baker and ending upon the earlier of (i) five (5) years after the date performance of the Project is completed by Baker; or (ii) the expiration of the warranty applicable to such roof provided by the installer of such roof.   Baker does not warrant any roofing related issues outside of the scope of the work performed by Baker for the Project, including without limitation, prior roof penetrations, or existing roof conditions.

(d)    Claims Under Limited Warranty.   Claims under this Limited Warranty must be filed in writing within 90 days of the termination of the Limited Warranty period.  Upon receipt of such notice, Baker shall repair or replace the malfunctioning or nonconforming warranted services within five (5) business days, subject (as applicable) to replacement part availability.  During the period covered by the Limited Warranty, Baker will repair any defective parts or services covered at Baker's own expense.  Baker will not charge Customer for parts and labor costs associated with these warranties however any expenses for the remedy of defects for malfunctions of part(s) or system(s) other than those covered by this Limited Warranty shall be paid for by Customer.

(e)    Coverage Under Sullivan Installation Warranty.  The System was originally installed by Sullivan. Performance of the Project may void the Sullivan Installation Warranty. Baker hereby covenants and warrants that, as of the date it has completed a full inspection confirming no pre-existing defects or faults and has completed the module replacement and recommissioning of the System: (i) the System will be free of defects in installation or materials from ten (10) years from the date of System commissioning; (ii) Baker will replace or repair at its sole discretion any items it determines to be faulty as a result of errors and/or omissions on the part of Sullivan in installing the Systems; and (iii) Baker shall provide,

CA Contractor License No. 858088



honor, uphold and bear any liability for the Sullivan Installation Warranty.

**2.    Who warrants the materials and products used by Baker for the Project?**

(a)    Baker will request and provide Customer with the standard warranties and guarantees (if any and where applicable) for any material, equipment, product, or component installed by Baker under the Agreement incorporated into and made a part of the Project (each a "**Project Product**" and collectively the "**Project Products**") that is covered under a warranty provided by any supplier, manufacturer, subcontractor, vendor, or other applicable third party (each a "**Supplier**" and collectively the "**Suppliers**") ("**Project Product Warranties**").  Baker will install all Project Products in such a manner as to not void or otherwise negate any manufacturers' warranty on Project Products.  Baker will register the Project Products with the applicable manufacturer for warranty purposes.  To the extent permitted, Baker will assign the Project Product Warranties directly to the Customer.  Baker will reasonably assist the Customer with obtaining warranty assistance to the extent any Project Products are defective or damaged.  EXCEPT AS PROVIDED ABOVE AND IN SECTION 1(d) ABOVE, BAKER DOES NOT WARRANT THE PROJECT PRODUCTS AND ASSUMES NO LIABILITY UNDER ANY PROJECT PRODUCTS WARRANTIES OR FOR ANY DEFECTS IN THE PROJECT PRODUCTS.

(b)    All Project Product Warranties shall be for the sole benefit of Customer.  If a Customer has a valid claim against a Supplier under a Project Product Warranty Baker shall (a) make such claim on the Customer's behalf and (b) perform the remedial work at no cost to the Customer so long as (i) the Customer allows Baker to retain any funds paid by the Supplier pursuant to such claim and (ii) the Supplier (or its successor) is a viable entity and complies with its warranty obligations that Baker files on the Customer's behalf.

**3.    What is not covered by the Limited Warranty?**

EXCEPT AS EXPRESSLY SET FORTH IN SECTION 1, ABOVE, BAKER DISCLAIMS, AND YOU WAIVE, ALL OTHER WARRANTIES OR GUARANTEES, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION AS TO THE MERCHANTABILITY, FITNESS FOR ANY PURPOSE, CONDITION, DESIGN, CAPACITY, SUITABILITY, OR PERFORMANCE OF THE SYSTEM AND/OR THE SYSTEM INSTALLATION.

In addition, except as provided in Section 1(d) above, the following items and circumstances (without limiting other potential exclusions from coverage) are expressly excluded from coverage under the Limited Warranty: (a) any materials that were modified, altered, repaired, or attempted to be repaired by anyone other than Contractor, a subcontractor of Contractor, or any person acting at Contractor's direction or under Contractor's control; (b) any damages resulting from lack of Customer maintenance; (c) any damages resulting from project site abuse by Customer; (d) aesthetic changes; (e) damages due to animals, weather or natural disasters, or acts of god; (f) damages resulting from mold, fungus and other organic pathogens, unless caused by the negligence of Contractor as a direct result of a breach of the Limited Warranty; (g) shrinking/cracking of grouts and caulking; and (h) fading of paints and finishes exposed to sunlight.

**4.    What circumstances will void this Warranty?**

In addition to the limitations and exclusions set forth above, the Limited Warranty will be void and will not apply to repairs, improvements, corrections, or replacements of the work performed under the Project required by any of the following:

(a)    Your gross negligence or Your intentional damage to the System;

(b)    Your breach of or failure to perform Your obligations under the Agreement and/or this Warranty; or

(c)    Any actual or attempted installation, repair, alteration, replacement, movement, change or modification to the Replacement Modules or any other component of the Project made by anyone other than Baker or without Baker's prior written consent.

**5.    Under what circumstances will Baker's obligation to perform under this Warranty be extended?**

Baker will not be in breach of this Limited Warranty because of any failure or delay in complying with its Limited Warranty if such failure or delay is the result of one or more Force Majeure Events or their effects.  Additionally, the periods allowed for the performance by Baker of its obligations under this Warranty shall be extended for so long as such Force Majeure Events or effects continue.  In order to claim relief due to Force Majeure Events, Baker will provide You with prompt notice of the Force Majeure Event, to the extent reasonably practicable. The suspension of Baker's performance must be of no greater duration and scope than that required by the Force Majeure Event and Baker's excused obligation must not be one which arose before the Force Majeure Event and which should have been fully performed before the Force Majeure Event occurred.

**6.    How do You contact Baker with questions or submit a claim to get service?  How will Baker contact You?**

To ask a question regarding this Warranty, You may call Baker at (760) 546-6000 during normal business hours.

CA Contractor License No. 858088



To submit a claim or provide any other notice under this Warranty, You must send us the request in writing, by email, certified or registered first-class mail, post prepaid, with a return receipt requested, or a reputable courier service requiring signature for receipt, at the following address:

> Baker Electric Solar
> Attn: Warranty Claims
> 2140 Enterprise Street
> Escondido, California 92029
> info@bakerelectricsolar.com

To notify You under this Limited Warranty, Baker may send You a notice in writing in the manner described above, to the email or mailing address provided in the Agreement or any subsequent contact information that You provide under the Agreement or this Limited Warranty.

The parties agree that any emailed document shall be deemed an original document.

### 7.   What happens if You submit a claim?

If Your claim is covered by this Limited Warranty, Baker will make the repair or replacement under the Limited Warranty within five (5) Business Days, at no cost to You.  Baker may use new or reconditioned parts to make repairs.  Baker will use commercially reasonable efforts to replace parts with the same type of equipment but may substitute materials or types of equipment if necessary.  Additionally, at Baker's option (but at no additional cost to You), Baker may elect to make cosmetic repairs that are not covered by the Limited Warranty.

If Your claim is not covered by this Warranty then You may request that Baker make the repair or replacement at Your cost and expense.  Baker will send a representative to Your Property to provide You with a price quote for the requested services.  You may then elect whether to have Baker provide the requested services at the quoted price.  The price quote

will be based on standard pricing terms that are on a time and materials basis.

### 8.   What happens if You sell Your Property?

This Limited Warranty only protects the person that owns the Property including the System.  If You transfer all of Your rights and obligations in connection with the System to a transferee of Your Property in a manner that is permitted by the Agreement, then Your remaining rights and obligations under this Limited Warranty will also transfer to the transferee.  YOU MAY NOT OTHERWISE TRANSFER YOUR RIGHTS OR OBLIGATIONS UNDER THIS LIMITED WARRANTY.  ANY TRANSFEREE OF THE SYSTEM WILL BE BOUND BY ALL REMAINING OBLIGATIONS AND DUTIES OF THE CUSTOMER UNDER THE AGREEMENT AND THIS LIMITED WARRANTY.

### 9.   Can Baker transfer or assign its rights and obligations under this Limited Warranty?

Baker may transfer, sell, or otherwise assign any and all of its rights and obligations under this Limited Warranty to another party, without Your consent and without prior notice to You.  Any assignment of Baker's obligations under this Limited Warranty will be to a creditworthy party that is qualified to perform such obligations and that expressly accepts responsibility in writing for our obligations under this Limited Warranty. Upon such transfer, sale, or assignment, Baker shall be released from all future obligations under this Limited Warranty.

### 10.   How does this Limited Warranty relate to the Agreement?

This Limited Warranty is an exhibit to the Agreement and is subject to all of the terms and conditions of the Agreement.  In the event of any conflict between this Limited Warranty and the terms of the Agreement, the terms of this Limited Warranty will control.

CA Contractor License No. 858088



**EXHIBIT 3**

**NOTICE OF CANCELLATION FORMS**

**NOTICE OF CANCELLATION (Customer Copy)**

[                              ]
Agreement Date

You may cancel this transaction, without any penalty or obligation, within three (3) business days from the above date.

If you cancel, any property traded in, any payments made by you under the contract or sale, and any negotiable instrument executed by you will be returned within 10 days following receipt by the seller of your cancellation notice, and any security interest arising out of the transaction will be canceled.

If you cancel, you must make available to the seller at your residence, in substantially as good condition as when received, any goods delivered to you under this contract or sale, or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.

If you do make the goods available to the seller and the seller does not pick them up within 20 days of the date of your notice of cancellation, you may retain or dispose of the goods without any further obligation.  If you fail to make the goods available to the seller, or if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.

To cancel this transaction, mail or deliver a signed and dated copy of this cancellation notice, or any other written notice, or send a telegram to

NB Baker Electric, Inc. dba Baker Electric Solar,

at 2140 Enterprise Street, Escondido, CA 92029,

not later than midnight of [                          ].
                                   Date (enter date 3 days from Agreement Date)

I hereby cancel this transaction.      _____
                                                        (Date)

                                                  _____
                                                  (Customer's signature) **(SIGN HERE ONLY IF CANCELLING)**

Bosch Service and Repair Contract
Created on [DATE] for [NAME]

CA Contractor License No. 858088



**NOTICE OF CANCELLATION (Contractor Copy)**

[_____]
Agreement Date

You may cancel this transaction, without any penalty or obligation, within three (3) business days from the above date.

If you cancel, any property traded in, any payments made by you under the contract or sale, and any negotiable instrument executed by you will be returned within 10 days following receipt by the seller of your cancellation notice, and any security interest arising out of the transaction will be canceled.

If you cancel, you must make available to the seller at your residence, in substantially as good condition as when received, any goods delivered to you under this contract or sale, or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.

If you do make the goods available to the seller and the seller does not pick them up within 20 days of the date of your notice of cancellation, you may retain or dispose of the goods without any further obligation.  If you fail to make the goods available to the seller, or if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.

To cancel this transaction, mail or deliver a signed and dated copy of this cancellation notice, or any other written notice, or send a telegram to

NB Baker Electric, Inc. dba Baker Electric Solar,

at 2140 Enterprise Street, Escondido, CA 92029,

not later than midnight of [_____].
                          Date (enter date 3 days from Agreement Date)

I hereby cancel this transaction.   _____
                                    (Date)


                                    _____
                                    (Customer's signature) **(SIGN HERE ONLY IF CANCELLING)**

CA Contractor License No. 858088



**EXHIBIT 4**

**NOTICE ABOUT CONTRACTORS' STATE LICENSE BOARD**

California Business & Professions Code § 7159(e)(5):

INFORMATION ABOUT THE CONTRACTORS' STATE LICENSE BOARD (CSLB):

CSLB IS THE STATE CONSUMER PROTECTION AGENCY THAT LICENSES AND REGULATES CONSTRUCTION CONTRACTORS.

CONTACT CSLB FOR INFORMATION ABOUT THE LICENSED CONTRACTOR YOU ARE CONSIDERING, INCLUDING INFORMATION ABOUT DISCLOSABLE COMPLAINTS, DISCIPLINARY ACTIONS AND CIVIL JUDGMENTS THAT ARE REPORTED TO CSLB.

USE ONLY LICENSED CONTRACTORS.  IF YOU FILE A COMPLAINT AGAINST A LICENSED CONTRACTOR WITHIN THE LEGAL DEADLINE (USUALLY FOUR YEARS), CSLB HAS AUTHORITY TO INVESTIGATE THE COMPLAINT.  IF YOU USE AN UNLICENSED CONTRACTOR, CSLB MAY NOT BE ABLE TO HELP YOU RESOLVE YOUR COMPLAINT.  YOUR ONLY REMEDY MAY BE IN CIVIL COURT, AND YOU MAY BE LIABLE FOR DAMAGES ARISING OUT OF ANY INJURIES TO THE UNLICENSED CONTRACTOR OR THE UNLICENSED CONTRACTOR'S EMPLOYEES.

FOR MORE INFORMATION:

VISIT CSLB'S WEBSITE AT  WWW.CSLB.CA.GOV

CALL CSLB AT 800-321-CSLB (2752)

WRITE CSLB AT P.O. BOX 26000, SACRAMENTO, CA  95826

Bosch Service and Repair Contract Created on [DATE] for [NAME]

CA Contractor License No. 858088



**EXHIBIT 5**

**MECHANICS LIEN WARNING**

**NOTICE TO PROPERTY OWNER: If bills are not paid in full for the labor, services, equipment, or materials furnished or to be furnished, a mechanics lien leading to the loss, through court foreclosure proceedings, of all or part of your property being so improved may be placed against the property even though you have paid your contractor in full.  You may wish to protect yourself against this consequence by (1) requiring your contractor to furnish a signed release by the person or firm giving you this notice before making payment to your contractor, or (2) any other method or device that is appropriate under the circumstances.**

California Business & Professions Code § 7159(e)(4):

Anyone who helps improve your property, but who is not paid, may record what is called a mechanics lien on your property. A mechanics lien is a claim, like a mortgage or home equity loan, made against your property and recorded with the county recorder.

Even if you pay your contractor in full, unpaid subcontractors, suppliers, and laborers who helped to improve your property may record mechanics liens and sue you in court to foreclose the lien. If a court finds the lien is valid, you could be forced to pay twice or have a court office sell your home to pay the lien. Liens can also affect your credit.

To preserve their right to record a lien, each subcontractor and material supplier must provide you with a document called a "Preliminary Notice." This notice is not a lien. The purpose of the notice is to let you know that the person who sends you the notice has the right to record a lien on your property if he or she is not paid.

BE CAREFUL. The Preliminary Notice can be sent up to 20 days after the subcontractor starts work or the supplier provides material. This can be a big problem if you pay your contractor before you received the Preliminary Notices.

You will get the Preliminary Notices from your prime contractor or from laborers who work on your project. The law assumes that you already know they are improving your property.

PROTECT YOURSELF FROM LIENS. You can protect yourself from liens by getting a list from your contractor of all the subcontractors and material suppliers that work on your project. Find out from your contractor when these subcontractors started work and when these suppliers delivered goods or materials. Then wait 20 days, paying attention to the Preliminary Notices you receive.

PAY WITH JOINT CHECKS. One way to protect yourself is to pay with a joint check. When your contractor tells you it is time to pay for the work of a subcontractor or supplier who has provided you with a Preliminary Notice, write a joint check payable to both the contractor and the subcontractor or material supplier.

For other ways to prevent liens, visit CSLB's website at  www.cslb.cs.gov or call CSLB at 800-321-CSLB (2752).

REMEMBER, IF YOU DO NOTHING, YOU RISK HAVING A LIEN PLACED ON YOUR HOME. This can mean that you may have to pay twice, or face the forced sale of your home to pay what you owe.

CA Contractor License No. 858088



**EXHIBIT 6**

**ASSOCIATION APPROVAL ACKNOWLEDGEMENT**

**NOTICE REGARDING REQUIREMENT OF ASSOCIATION APPROVAL:**

You are solely responsible for any and all costs and expenses of any nature associated with obtaining any approvals required from any Homeowners Association or any other association or organization (each an "**Association**") with any rights or claims over or with respect to the Property in connection with the installation of Your System under this Agreement.  Baker agrees to provide You with reasonable support and documentation required by any Association in connection with You obtaining any required Association approval.

Association Exists? (mark Yes or No): [Y] _____   [N] _____

Customer Initials: _____

Association Name and Contact Information (if applicable):

_____
_____
_____
_____

**[OR]**

**ALTERNATIVE WAIVER OF ASSOCIATION APPROVAL REQUIREMENT AND INDEMNITY:**

You may, at your own discretion and at Your sole risk, authorize Baker to proceed with installation of Your System <u>without</u> advance written approval from any applicable Association.

By signing below, You hereby direct Baker to proceed with installation of the Your System even though You have not received advance written approval from all applicable Associations.

You agree that You will be solely responsible for, and will immediately reimburse, defend, and indemnify Baker for all costs and expenses incurred directly and indirectly by Baker in connection with or arising out of Your election to waive and not obtain advance written Association approval for the installation of Your System.  Such costs may include, without limitation, the cost of removing and replacing some or all of the installed System and/or the cost to revise the design, and a reasonable mark-up for overhead and profit in connection with any such work**.**

**CUSTOMER:**

Signature: _____
Dated: _____

Signature: _____
Dated: _____

14

CA Contractor License No. 858088



**EXHIBIT 7**

**FORM OF CHANGE ORDER**

THE FOLLOWING CHANGE ORDER CONSTITUTES AN AMENDMENT TO THE HOME IMPROVEMENT AGREEMENT DATED _____ ("**AGREEMENT**") BY AND BETWEEN NB BAKER ELECTRIC, INC. DBA BAKER ELECTRIC ("BAKER") AND _____ ("**CUSTOMER**").

Change to Scope of Work:

Customer and Baker agree that the following scope of work will be added or deleted from the work to be performed by Baker under the Agreement:

_____
_____
_____
_____
_____

Change to Contract Price:

AMOUNT ADDED TO THE CONTRACT PRICE:  $_____

**[OR]**

AMOUNT SUBTRACTED FROM THE CONTRACT PRICE:  ($_____)

Effect of Change Order on Progress Payments:

PAYMENT FOR THE CHANGE ORDER WILL BE ADDED TO (OR SUBTRACTED FROM) APPLICABLE PROGRESS PAYMENT AMOUNTS AND ADJUSTED PAYMENT MUST BE MADE ON THE DATES SCHEDULED FOR PROGRESS PAYMENTS BASED ON A PERCENTAGE OF COMPLETION (OR NONPERFORMANCE) OF THE WORK AUTHORIZED (OR DELETED) BY THE CHANGE ORDER.

Effect of Change Order on Completion Date:

_____
_____

No other terms or conditions of the Agreement shall be negated or changed as a result of this Change Order.

IT IS SO AGREED.

CUSTOMER:

Signature: _____
Name: _____
Dated: _____


Signature: _____
Name: _____
Dated: _____

CONTRACTOR:

NB Baker Electric Inc. dba Baker Electric Solar,
a California corporation

Signature: _____
Name: _____
Title: _____
Dated: _____

# EXHIBIT E

# EXHIBIT E



# EXHIBIT F

# EXHIBIT F



BIRKA-WHITE
L A W   O F F I C E S

178 E. Prospect Avenue
Danville, California 94526
Tel: (925) 362-9999
Fax: (925) 362-9970
www.birka-white.com

DAVID M. BIRKA-WHITE
dbw@birka-white.com

September 24, 2018

## NOTICE OF VIOLATION OF CONSUMER LEGAL REMEDIES ACT
## AND BREACH OF WARRANTY

**VIA CERTIFIED MAIL &
RETURN RECEIPT REQUESTED**

Bosch Solar Energy Corporation
38000 Hills Tech Drive
Farmington, Michigan 48331

Bosch Solar Energy Corporation
4009 Miranda Avenue
Palo Alto, California 94304

RE:   *Steve R. Rojas and Andrea N. Rojas, on behalf of themselves and all others
      similarly situated, v. Bosch Solar Energy Corporation*

To Whom It May Concern:

In accordance with Section 1782 of the California Consumers Legal Remedies Act
("CLRA"), Steve R. Rojas and Andrea N. Rojas, on behalf of themselves and all others similarly
situated, notify you that Bosch Solar Energy Corporation ("Bosch") has violated Civil Code §
1770 by misrepresenting to consumers the attributes of the photovoltaic modules commonly
referred to as the Modules c-Si M60 NA 30119 Series. This conduct violates the following
provisions of Civil Code § 1770:

1.   Bosch violated § 1770 (a)(5) by representing that the solar panels had benefits or
     characteristics that they did not actually have.

2.   Bosch violated § 1770(a)(7) by representing that the solar panels were of a
     particular standard or quality when they were of another.

     As detailed below, the representations referenced in paragraphs 1 and 2 above
     include, without limitation, representations that the solar panels were free from
     defects in materials and workmanship and that they would deliver specified levels
     of power for varying periods of time.

3.   Bosch's written warranties violate § 1770 (a)(19) by including unconscionable
     provisions including, without limitation: (1) purported limitations in the remedies
     available upon breach (such as the exclusion of the cost of labor to repair and
     replace the defective product, the exclusion of incidental and consequential



Bosch Solar Energy Corporation
September 24, 2018
Page 2 of 3

damages and the limitation of the amount of recoverable damages to the amount paid by the purchaser for the panels); (2) failure by Bosch to conduct measurements to determine the actual power output of the product after receipt of a claim; and (3) failure of Bosch to adequately notify end users of the recall or to replace the defective panels subject to the April 13, 2017 Recall through the United States Consumer Product Safety Commission.

Bosch represented in its warranties and various marketing materials that the Bosch solar panels were (1) "free from defect in materials and workmanship" for the term of the warranty (10 years); and (2) the solar panels would produce at least ninety percent (90%) of their minimum peak power output for a specified period of ten (10) years and at least eighty percent (80%) for another fifteen (15) year period from the date of purchase.

The Bosch solar panels have suffered a soldering defect which causes a power output defect and which render the solar panels a safety risk and causes them to fail prematurely. The solder defect presents a risk of overheating, fire and property damage, a condition admitted by Bosch.

There are forty-two (42) c-Si M60 NA 30119 Bosch solar panels installed at the Rojas's residence located at 29294 Juniper Avenue, Moreno Valley, California. The Rojas purchased the panels on or about October 28, 2012. The system was installed in April 2013. The panels are the subject of a recall and have experienced power degradation below ninety percent (90%) of minimum power. Bosch has also refused to pay for the power loss measurements, the cost of labor and materials for replacing the defective panels and the value of the lost power.

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand that Bosch: (1) pay all costs required to investigate and replace all solar panels subject to the recall or or similarly designed and manufactured and installed in the United States; and (2) provide notice to all end users and final customers of the issues addressed in this letter and of their right to present a claim for the full amount of any loss they have sustained, including losses purportedly excluded under the written warranty. Plaintiffs demand that Bosch remedy these defects within thirty (30) days of receipt of this letter. If we do not hear from you within this time period, we will assume that you will not take the corrective action requested.

### Notice of Breach of Warranty

This letter also constitutes a notice on behalf of Plaintiffs and all persons similarly situated of the breach by Bosch of its express warranties and the implied warranties of merchantability and fitness for use; and further constitutes notice of breach of express and implied warranty under Song-Beverly, Magnuson Moss, California warranty law, and the warranty laws of all states in which the Bosch product was sold or installed.



Bosch Solar Energy Corporation
September 24, 2018
Page 3 of 3


This letter also serves as a demand that you preserve and maintain all of the following records, including electronic records and data, pending resolution of this matter:

1.  All internal manuals, written policies, directives, memoranda, correspondence, electronic mail, and other records of communication regarding Bosch solar panels that are subject to the recall as well as all solar panels similarly designed and manufactured.  In other words, if the solder defect identified in the recall could reasonably extend to other panels manufactured by Bosch, the those records must be preserved as well;

2.  All advertisements or marketing information discussing or concerning Bosch solar panels;

3.  Any materials disseminated to consumers, retailers, and/or distributors that discuss or concern the Bosch solar panels;

4.  Any warranty complaints from any source concerning allegedly defective or problematic or poor performing Bosch solar panels including dates and locations;

5.  Any documents or communications between Bosch and its distributors, installers and consumers related to the Bosch solar panels; and

6.  All communications within Bosch or with third parties regarding Bosch solar panels which are the subject of the Bosch recall including similarly manufactured Bosch panels.

If you have any questions regarding this notice and demand, please contact the undersigned counsel at (925) 362-9999.

Sincerely,

BIRKA-WHITE LAW OFFICES

DAVID M. BIRKA-WHITE

DBW:sh

≫|BIRKA-WHITE
178 E. Prospect Ave.
Danville, CA 94526



CERTIFIED MAIL

7015 1520 0001 7549 3529



UNITED STATES POSTAGE
PITNEY BOWES
02 1P                $006.67⁰
0000586157  SEP 24 2018
MAILED FROM ZIP CODE 94526

Bosch Solar Energy Corporation
38000 Hills Tech Drive
Farmington, Michigan  48331

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. ■ Print your name and address on the reverse so that we can return the card to you. ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature  X _Chris By____  ☐ Agent  ☐ Addressee   B. Received by (Printed Name)  _Chris Byers_   C. Date of Delivery |
| 1. Article Addressed to:  _Bosch Solar Energy Corp_  _38000 Hills Tech Drive_  _Farmington, Michigan_  _48331_ | D. Is delivery address different from item 1?  ☐ Yes   If YES, enter delivery address below:  ☐ No |
|  | 3. Service Type  ☒ Certified Mail®   ☐ Priority Mail Express™   ☐ Registered   ☒ Return Receipt for Merchandise   ☐ Insured Mail   ☐ Collect on Delivery |
| 2. Article Number  (Transfer from service label)     7015 1520 0001 7549 3529 | 4. Restricted Delivery? (Extra Fee)     ☐ Yes |
| PS Form 3811, July 2013          Domestic Return Receipt | |

≫|BIRKA-WHITE
178 E. Prospect Ave.
Danville, CA 94526

CERTIFIED MAIL®

7015 1520 0001 7549 3512



UNITED STATES POSTAGE
PITNEY BOWES
02 1P                $006.67⁰
0000586157  SEP 24 2018
MAILED FROM ZIP CODE 94526

Bosch Solar Energy Corporation
4009 Miranda Avenue
Palo Alto, California 94304

NIXIE      .957   DE 1        0016/24/18
                    RETURN TO SENDER
                    NO SUCH STREET
                    UNABLE TO FORWARD

NSS     BC:  94526381278    *1405-02190-25-40
9430941

EXHIBIT B

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered into as of September 13, 2022 (the "Execution Date"), by and between Steve and Andrea Rojas ("Plaintiffs") and Bosch Solar Energy Corporation ("Bosch Solar" or "Defendant"). Each of the Plaintiffs and Bosch Solar are referred to individually as a "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, on September 24, 2018, Plaintiffs filed in the United States District Court for the Northern District of California a putative class action against Bosch Solar, on behalf of all persons or entities who purchased and installed Bosch Solar-brand solar panels with the model number c-Si M 60 NA30119 within the United States, under the caption *Rojas v. Bosch Solar Energy Corporation*, United States District Court (Northern District of California), Case No. 5:18-cv-5841BLF) (the "Action");

WHEREAS, Bosch Solar purchased 42,734 c-Si M 60 NA30119 solar modules (the "NA30119 Modules") from nonparty KISCO, a Korean entity, at least 1,125 of which were never sold and 209 of which were sold in Canada, leaving no more than 41,400 NA30119 Modules that were sold in the United States;

WHEREAS, on November 3, 2016, Bosch Solar submitted a report to the Consumer Products Safety Commission (the "CPSC") regarding a defect that had been discovered in certain NA30119 Modules. Specifically, Bosch Solar reported that "solder joints in some Bosch c-Si M 60 NA30119 panels could possibly degrade to the point at which the electrical contacts to the solder might develop high-ohmic contact resistance. If this were to occur, heat could be generated. If the heat were great enough, it could theoretically ignite flammable materials near the solar modules." Bosch Solar also reported that no fires had been reported. In its report, Bosch Solar proposed a Corrective Action Plan to remedy the problem by recalling and replacing all roof-mounted NA30119 Modules (the "Recall"), and proposed certain monitoring and replacement actions with respect to commercial ground-mounted NA30119 Modules.

WHEREAS, on May 16, 2017, the CPSC approved a modified version of the Corrective Action Plan, including the Recall;

WHEREAS, after CPSC approval of the modified Corrective Action Plan, Bosch Solar made inquiries of purchasers of NA30119 Modules requesting information regarding the owners and locations of those modules, and gave notice of the Recall to any such owners or locations that were identified by Bosch Solar's customers;

WHEREAS, pursuant to the Corrective Action Plan, Bosch Solar and the CPSC issued a press release publicizing the Recall. Also pursuant to the Recall, Bosch Solar has maintained a web site with instructions regarding how to submit Recall claims (either by phone call or email);

WHEREAS, Bosch Solar has reached settlement agreements with the owners of 10,031 commercial ground-mounted NA30119 Modules and is in negotiations to resolve warranty claims with the owners of an additional 7,848 commercial ground-mounted NA30119 Modules, and Bosch Solar is aware of no other commercial ground-mounted NA30119 Modules;

1

WHEREAS, Robert Bosch Tool Corporation ("Bosch Tool") has administered the Recall since it began;

WHEREAS, the Recall has resulted in the replacement (including the repurchase of modules that never were installed) of 16,093 roof-mounted NA30119 Modules;

WHEREAS, Bosch Tool has registered the owners of an addition 320 residential roof-mounted NA30119 Modules and is in the process of arranging for replacement of those modules;

WHEREAS, as a result of commercial settlements and Recall replacements, Bosch Solar believes that there are no more than 7,111 NA30119 Modules remaining to be located in the United States (comprising less than eighteen percent (18%) of the total number of NA30119 Modules sold in the United States), and based on an average installation size of twenty-five modules, there are approximately 295 installations of NA30119 Modules remaining to be located in the United States;

WHEREAS, Plaintiffs allege in the Action that, in 2012 and 2013, Defendant Bosch Solar sold approximately 41,400 NA30119 Modules in the United States; that Bosch Solar exited the solar industry in 2013; that on April 13, 2017, Bosch Solar recalled approximately 23,400 roof mounted NA30119 modules "due to fire hazard"; and that the recall excluded approximately 18,000 ground-mounted NA30119 modules.  Plaintiffs also allege that all NA30119 panels, whether roof- or ground-mounted, are manufactured to the same specifications, and that all NA30119 solar modules suffer from two defects—a soldering defect that causes overheating and power loss, and a "backsheet" defect that causes cracks and allows water penetration—and that both defects create dangerous fire hazards.  Bosch Solar extended identical warranties on all NA30119 solar modules;

WHEREAS, Plaintiffs' Second Amended Complaint asserts claims for Breach of Warranty, Magnuson-Moss Breach of Express Warranty, and Unjust Enrichment (collectively, the "Allegations");

WHEREAS, on March 9, 2022, the Court granted class certification of the following class: "All persons or entities in the State of California who are the consumers, final customers, end users, subsequent buyers, and subsequent owners of Bosch solar panels module number NA30119, on claims for breach of the Product Warranty and unjust enrichment";

WHEREAS, the Parties have engaged in nearly four years of litigation, research, investigation, discovery, expert work, and motion practice to reach this Agreement.  Discovery included production and review of over 15,000 pages of documents.  Plaintiffs engaged numerous experts to inspect, test and analyze the NA30119 Modules and inspected hundreds of NA30119 Modules from numerous locations throughout the United States.  In addition, the Parties fully briefed three motion to dismiss, numerous discovery motions, and Plaintiffs' motion for class certification (supported by nearly 100 exhibits);

WHEREAS, the Parties mediated Plaintiffs' claims with Retired Judge of the California Superior Court Bonnie Sabraw on March 22, 2022.  The Parties engaged in arm's-length negotiations with Judge Sabraw's assistance. At the time of the mediation, Plaintiffs had a pending motion to expand the class definition to a nationwide class; and Bosch Solar had a pending notice

to decertify portions of Plaintiffs' class and to dismiss Plaintiffs' Magnuson-Moss claim. At the mediation, the Parties made progress on some, but not all, of the issues required to resolve the case. Over a period of several weeks, the Parties arrived at an agreement in principle to settle the Action, including attorneys' fees and costs and a service award;

WHEREAS, Bosch Solar specifically denies any wrongdoing or liability alleged in the Action, including all of the Allegations, and maintains that it has valid defenses to all of the claims asserted in the Action, but wishes to avoid the burden and expense of continued litigation;

WHEREAS, Plaintiffs believe the Allegations have merit, but recognize that they face substantial risk in continuing with litigation, including the possibility that some or all of their claims would be denied and/or that the Court might decertify the class;

WHEREAS, the Parties desire to settle the Action in its entirety with respect to all claims, including a nationwide class, relating to Settlement Panels sold in the United States. The Parties intend this Agreement to bind Bosch Solar, the Plaintiffs, and all members of the Settlement Class who do not timely opt out. It is the intention of the Parties that this Agreement shall constitute a full and complete settlement and release of claims as described herein;

WHEREAS, the Parties stipulate that Plaintiffs will file a Conditional Third Amended Complaint ("CTAC") along with their motion for preliminary approval of the Settlement and Notice Plan. The CTAC asserts warranty and unjust enrichment claims substantially similar to those in the Second Amended Complaint on behalf of a nationwide class; however, the class definition in the CTAC will be modified to include NA30119 Modules installed outside of California, and to exclude potential class members who do not own NA30119 Modules or the premises on which such modules are installed. The parties stipulate to certification of this class solely for the purpose of implementing the Settlement provided for in this Agreement;

NOW, THEREFORE, in consideration of the mutual covenants and promises contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, it is hereby agreed by and among the Parties:

## AGREEMENT

1. **Definitions**

    1.1   "Action" shall mean the putative class action filed by Plaintiffs Steve and Andrea Rojas against Defendant on September 24, 2018, in United States District Court for the Northern District of California, under the caption *Rojas v. Bosch Solar Energy Corporation*, United States District Court (Northern District of California), Case No. 5:18-cv-5841BLF.

    1.2   "Agreement" shall mean this Settlement Agreement.

    1.3   "Allegations" shall mean the allegations in the Action, as defined on page 2, *supra*.

    1.4   "Bosch Solar" shall mean Bosch Solar Energy Corporation, the defendant in the Action.

1.5   "Bosch Tool" shall mean third party Robert Bosch Tool Corporation.

1.6   "Claim Form" shall have the meaning set forth in Paragraph 10.2.

1.7   "Claims Administrator" shall have the meaning set forth in Paragraph 9.1.

1.8    "Claims Period" shall have the meaning set forth in Paragraph 3.2.

1.9   "Claims Protocol" shall mean the procedures set forth in Paragraph 10 for the administration of claims under this Agreement.

1.10  "Defendant" shall mean Bosch Solar Energy Corporation, the defendant in the Action.

1.11  "Effective Date" shall have the meaning set forth in Paragraph 8.

1.12  "Execution Date" shall have the meaning set forth on Page 1.

1.13  "Final Approval Motion" shall have the meaning set forth in Paragraph 7.1.

1.14  "Limited Warranty" shall mean the Bosch Solar Module Limited Warranty applicable to c-Si M NA30119 solar cell modules sold in the United States.

1.15  "Mailed Long-Form Notice" shall have the meaning set forth in Paragraph 4.1.2.

1.16  "NA30119 Modules" shall have the meaning set forth on Page 1, *supra*.

1.17  "Notice Date" shall have the meaning set forth in Paragraph 4.1.3.

1.18  "Notice Program" shall have the meaning set forth in Paragraph 4.

1.19  "Notice Provider" shall have the meaning set forth in Paragraph 4.1.

1.20  "Objection" shall have the meaning set forth in Paragraph 6.1.

1.21  "Opt-Out Request" shall have the meaning set forth in Paragraph 5.1.

1.22   "Power Warranty" shall mean the 25-year power output warranty set forth in Paragraphs A & B of the Bosch Solar Limited Warranty attached as **Exhibit A** to the Second Amended Complaint.

1.23  "Plaintiffs" shall mean Steve and Andrea Rojas, the plaintiffs in the Action.

1.24  "Preliminary Approval Motion" shall have the meaning set forth in Paragraph 2.1.

1.25  "Published Summary Notice" shall have the meaning set forth in Paragraph 4.1.3.

1.26   "Released Claims" shall have the meaning set forth in Paragraph 16.3.

1.27  "Released Parties" shall have the meaning set forth in Paragraph 16.2.

4

1.28   "Releasing Parties" shall have the meaning set forth in Paragraph 16.1.

1.29   "Settlement Panels" shall mean Bosch Solar-brand c-Si M NA30119 solar modules sold in the United States ("NA30019") which have not been replaced or repurchased by Bosch Solar and which are not the subject of any settlement agreement between Bosch Solar and a third party.

1.30   "Settlement" shall mean this Agreement, including all Exhibits hereto, and all related implementing documents.

1.31   "Settlement Attorneys' Fees" shall have the meaning set forth in Paragraph 14.1.

1.32   "Settlement Class" shall have the meaning set forth in Paragraph 3.1.

1.33   "Settlement Class Counsel" shall mean the Birka-White Law Offices, 178 E. Prospect Ave, Danville, CA 94526; Levin Sedran & Berman LLP; and Farella Braun + Martel.

1.34   "Settlement Class Member" shall mean each member of the Settlement Class who has not timely and validly elected to be excluded from the Settlement Class.

1.35   "Settlement Remedy" and "Settlement Remedies" shall have the meaning set forth in Paragraph 9.2.

1.36   "Settlement Website" shall have the meaning set forth in Paragraph 4.1.5.

1.37   "Toll-Free Telephone Number" shall have the meaning set forth in Paragraph 4.1.4.

## 2.   Preliminary Approval of Settlement

2.1   Motion for Preliminary Approval.  On September 21, 2022 or any further date ordered by the Court, Plaintiffs shall move the Court for entry of a Preliminary Approval Order providing authorization to disseminate notice of the Settlement and final judgment contemplated by this Agreement to all putative members of the Settlement Class (the "Preliminary Approval Motion"). The contents of the Preliminary Approval Motion and Preliminary Approval Order shall be agreed upon by the Parties before Plaintiffs submit the Preliminary Approval Motion to the Court.  The Preliminary Approval Motion shall, *inter alia*, ask the Court to find that the Notice Program described in Paragraph 4 constitutes valid, due, and sufficient notice to the Settlement Class, constitutes the best notice practicable under the circumstances, and complies fully with the requirements of Federal Rule of Civil Procedure 23.

2.2   Agreement Conditioned Upon Preliminary Approval.  This Agreement is subject to, and conditioned upon, preliminary approval by the Court (in addition to final approval as provided in Paragraph 2.2), including approval of dissemination of notice in substantially the form of the Notice Program described in Paragraph 4.

5

3. **Settlement Class Certification**

3.1   <u>Definition of Settlement Class</u>.  The Parties agree that, in order to effectuate this Settlement, they will ask the Court to certify a settlement class defined as follows (the "<u>Settlement Class</u>"), pursuant to Fed. R. Civ. P. 23:

All persons or entities in the United States who are the current owners of Bosch c-Si M 60 NA30119 solar modules or the current owners of premises on which Bosch c-Si M 60 NA30119 solar modules are installed.

3.2   <u>Definition of Claims Period</u>.  To receive a Settlement Remedy, a Settlement Class Member must submit a Claim form to the Notice Provider before January 1, 2025, or the Claims Administrator within the earlier of: (i) twenty-five (25) years of the original purchase date of the Settlement Panel(s) that are the subject of the claim; or (ii) December 31, 2038 (the "Claims Period").  If the Settlement Class Member cannot supply the original purchase date of the Settlement Panel(s) that are the subject of the claim, the original purchase date shall be treated as one hundred eighty (180) days after the date of manufacture shown on the full backside label of the Settlement Panel(s).

3.3   <u>Exclusions from Settlement Class</u>.  Excluded from the Settlement Class are:

3.3.1   All persons or entities who have entered into agreements with Bosch Solar regarding warranty or Recall claims with respect to NA30119 Modules;

3.3.2   All persons or entities who have claims relating to the NA30119 Module installations located at the addresses listed on **Exhibit A** hereto, which are the subject of ongoing negotiations between Bosch Solar and owners represented by counsel;

3.3.3   All persons or entities in the United States who are the current owners of an array with one hundred (100) or more ground-mounted Bosch c-Si M 60 NA30119 solar modules;

3.3.4   All persons and entities who timely exercise their rights under Fed. R. Civ. P. 23 to opt out of the Settlement;

3.3.5   Defendant, any entity in which Defendant has a controlling interest, and Defendant's legal representatives, heirs and successors;

3.3.6   Settlement Class Counsel and any member of Settlement Class Counsel's immediate family; and

3.3.7   Any judge, including federal District and Magistrate Judges, to whom any aspect of this case is or has been assigned, and any member of such a judge's immediate family.

3.4   <u>No Prejudice to Defendant's Rights to Challenge Class Certification</u>.  In the event that this Agreement is not approved or is terminated, the Parties shall revert to their position

as of the date of this Agreement, Defendant shall be entitled to challenge class certification in this Action, and neither Party will argue that this Agreement supports the certification of a class.

4. **Notice Program**

4.1   <u>Forms of Notice</u>.  Reasonable notice consistent with the due process requirements of the United States Constitution shall be given to the Settlement Class, pursuant to orders of the Court that so provide.  The Parties have agreed to engage a third-party provider to assist with class notice to be identified by the parties in the Preliminary Approval Motion ("<u>Notice Provider</u>").  All expenses associated with notice shall be paid by Bosch Solar.  Such notice shall include, but not be limited to, the following (collectively, the "<u>Notice Program</u>"):

    **4.1.1**   Subpoena process: Bosch Solar has issued subpoenas to the entities comprising original purchasers of NA30119 Modules who have not previously provided information identifying the location of installed NA30119 Module installations, listed in **Exhibit B** hereto.  The Claims Administrator will use the information gained through these subpoenas to (a) contact NA30119 Module owners and owners of premises on which such modules are installed, and (b) make inquiries of and/or subpoena any additional persons or entities who are identified as potentially having information to identify NA30119 Module owners and owners of premises on which such modules are installed.

    4.1.2   Mailed Long-Form Notice:  Long-form notice shall be mailed first-class postage prepaid by the Notice Provider to any member of the Settlement Class that can be identified by the Parties through reasonable efforts (including any potential members of the Settlement Class identified as a result of the efforts specified in Paragraph 4.1.1, and including the entities believed to have been involved in financing solar modules installations in 2012-2013 in substantially the form provided in **Exhibit C** hereto (the "Mailed Long-Form Notice");

    **4.1.3**   Published Summary Notice:  Summary notice shall be published by the Notice Provider in solar industry print media publications in substantially the form provided in **Exhibit D** hereto (the "Published Summary Notice").  The date on which the Published Summary Notice is first published shall be the "Notice Date";

    4.1.4   <u>Toll-Free Telephone Number</u>.  A toll-free telephone number (the "<u>Toll-Free Number</u>") shall be established by the Notice Provider no later than the Notice Date, and shall be maintained by the Notice Provider through January 1, 2025.  The Toll-Free Number shall serve the purpose of allowing the Notice Provider, until January 1, 2025, to provide general information concerning the Settlement, including deadlines for opting out of or objecting to the Settlement, and the dates of relevant Court proceedings.  Reasonable costs associated with maintaining the Toll-Free Number shall be paid by Bosch Solar as part of the Notice Provider's fees, as set forth in Paragraph 4.3.  The Toll-Free Number

shall be listed in each of the forms of notice provided in the Notice Program; and

    4.1.5   Settlement Website: An internet website (the "Settlement Website") shall be established by the Notice Provider no later than the Notice Date, and shall be maintained by the Notice Provider through January 1, 2025. Until January 1, 2025, the Settlement Website shall include substantially the same information contained in the Long-Form Notice. Reasonable costs associated with maintaining the Settlement Website shall be paid by Bosch Solar. The internet address of the Settlement Website shall be listed in each of the forms of notice provided in the Notice Program.

4.2   Proof of Notice Program. On or before the date of the Final Approval Hearing, the Notice Provider shall file proof, by affidavit, of the aforesaid Notice Program. Settlement Class Counsel shall be responsible for ensuring that the Notice Provider complies with this requirement.

4.3   Cost of Notice to be Paid by Bosch Solar. The reasonable costs of providing notice to the Settlement Class Members, including the Published Summary Notice and Mailed Long-Form Notice, as well as the establishment and maintenance of the Settlement Website and Toll-Free Number until January 1, 2025, shall be paid by Bosch Solar.

## 5. Opt-Out Rights

5.1   Settlement Class Members' Opt-Out Rights and Obligations. A putative Settlement Class Member may opt out of the Settlement Class within a specified period to be set by the Court. To exercise this exclusion right, the putative Settlement Class Member must send written notification of the request for exclusion via first class mail to Notice Provider (an "Opt-Out Request"). The Opt-Out Request must bear the signature of the putative Settlement Class Member (even if represented by counsel), state the putative Settlement Class Member's current address and telephone number, state the address of the property on which the putative Settlement Class Member's Settlement Panels are installed, and specify the total number of Settlement Panels owned by the putative Settlement Class Member. Opt-Out Requests must be postmarked or personally delivered on such schedule as the Court directs. Opt-Out Requests sent by any putative Settlement Class Member to incorrect addresses or after the expiration of the deadline set by the Court shall not be valid. Any putative Settlement Class Member who fails to submit a timely Opt-Out Request shall not be permitted to object to or opt out of the Settlement. Putative Settlement Class Members who elect to opt out of the Settlement Class may withdraw their Opt-Out Requests prior to the Effective Date, but only if they accept in writing the benefits and terms of this Agreement, including all waivers and releases herein, and dismiss with prejudice any pending action against Bosch Solar arising from or pertaining in any way to the subject matter of the Action.

5.2   Request for 45-Day Opt-Out Deadline. In seeking preliminary approval of this Settlement, the Parties will request that the deadline for submission of Opt-Out Requests shall be no more than forty-five (45) days after the Notice Date.

5.3 <u>Settlement Binding on Any Putative Settlement Class Member Who Does not Opt Out</u>. Any putative Settlement Class Member who fails to timely and properly file an Opt-Out Request shall be bound by this Settlement and all subsequent proceedings, orders, and judgments in the Action.

5.4 <u>Opt-Outs Not Entitled to Settlement Remedies</u>.  Any putative Settlement Class Member who elects to opt out of the Settlement Class pursuant to this Agreement shall not be entitled to the relief provided by this Agreement, including access to the Claims Protocol and Settlement Remedies.

5.5 <u>Opting Out Does Not Affect Recall</u>.  Any putative Settlement Class Member who elects to opt out of the Settlement Class pursuant to this Agreement shall not be deemed to waive the benefits of the Recall.

5.6 <u>Notification of Opt-Outs</u>.  On a rolling basis, Notice Provider shall notify Settlement Class Counsel and Bosch Solar and its counsel, by electronic mail, of each person or entity who has requested exclusion from the Settlement Class and shall provide copies of all such requests for exclusion.  Within seven (7) days of the closing of the opt-out period, Notice Provider shall provide Settlement Class Counsel and Bosch Solar and its counsel, by electronic mail, with a list identifying each person or entity who has requested exclusion from the Settlement Class and attaching copies of all Opt-Out Requests, as well as all other information and documents received from all persons who have requested exclusion from the Settlement Class.

5.7 <u>Bosch Solar's Walk-Away Rights</u>.  Bosch Solar, at its sole discretion, may terminate this Agreement without prejudice prior to the Final Approval Hearing if the number of Opt-Out Requests received from putative Settlement Class Members during the opt-out period exceeds one hundred (100) putative Settlement Class Members.  If Bosch Solar elects to terminate the Agreement pursuant to this provision, Bosch Solar shall advise Settlement Class Counsel and the Court, in writing, prior to the date of the Final Approval Hearing and shall submit to the Court, under seal, the number of putative Settlement Class Members who have submitted Opt-Out Requests.  In such event, this Agreement may not be offered or received into evidence or utilized for any other purpose in this Action or in any other action, suit, or proceeding.

## 6. **Objection Rights**

6.1 <u>Settlement Class Members' Objection Rights and Obligations</u>.  A putative Settlement Class Member may object to the Settlement within a specified period to be set by the Court.  To exercise this objection right, the putative Settlement Class Member must provide written notice of the objection to the Court (an "<u>Objection</u>").  The Objection must meet the requirements of Fed. R. Civ. P. 23(e)(5), bear the signature of the putative Settlement Class Member (even if represented by counsel), state the putative Settlement Class Member's current address and telephone number, state the address of the property on which the Settlement Panels are installed, and specify: (i) the total number of Settlement Panels owned by the putative Settlement Class Member and their original date of purchase, (ii) the specific grounds of the putative Settlement Class

Member's objection, and (iii) whether the putative Settlement Class Member intends to appear at the Final Approval Hearing. If the putative Settlement Class Member is represented by counsel, the Objection shall also be signed by the attorney who represents the putative Settlement Class Member. Objections must be postmarked or personally delivered on such schedule as the Court directs. Objections sent by any putative Settlement Class Member to incorrect addresses or after the expiration of the deadline set by the Court shall not be valid.

6.2    Request for 45-Day Objection Deadline. In seeking preliminary approval of this Settlement, the Parties will request that the deadline for submission of Objections shall be no more than forty-five (45) days after the Notice Date.

## 7.   Final Order and Judgment of Dismissal

7.1    Motion for Final Approval. At least fourteen (14) days before the Final Approval Hearing, unless this Agreement is terminated earlier by Bosch Solar pursuant to its walk-away rights as set forth in Paragraph 5.7, Settlement Class Counsel shall file a joint motion on behalf of the Parties requesting that the Court grant final approval of the Settlement embodied into his Agreement and that the Court enter a Final Order and Judgment (the "Final Approval Motion"). The contents of the Final Approval Motion shall be agreed upon by the Parties before Plaintiff submits the Final Approval Motion.

7.2    Contents of Final Order and Judgment. If the Court grants final approval of the Settlement, the Court's final order and judgment (the "Final Order and Judgment") shall:

7.2.1    Provide that the Settlement is fair, reasonable, and adequate to the members of the Settlement Class and direct that the Agreement be implemented in accordance with its terms;

7.2.2    Dismiss the Action with prejudice;

7.2.3    Explicitly restate the terms of the Releases provided in Paragraph 16 of this Agreement and give immediate effect to such Releases;

7.2.4    Approve an award of attorneys' fees and expenses for Settlement Class Counsel as set forth in Paragraph 14 of this Agreement;

7.2.5    Provide that the form and manner of notice given to the Settlement Class Members fairly and adequately informed them of all material elements of the above-captioned actions and the proposed Settlement and constitute sufficient notice in accordance with Federal Rule of Civil Procedure 23 and due process requirements;

7.2.6    Reserve jurisdiction over consummation and performance of the Agreement and administration of the Settlement;

      7.2.7   Enjoin any and all pending future actions involving Settled Claims as to Settlement Class Members.

7.3   <u>Dismissal of Action</u>.  Upon entry of the Final Order and Judgment, the Action and all claims and allegations involving the subject matter of the Action shall be dismissed with prejudice.

7.4   <u>Dismissal and Releases Binding on All Settlement Class Members</u>.  Each and every putative member of the Settlement Class who does not submit an Opt-Out Request pursuant to this Agreement submits to the jurisdiction of the Court and will be bound by the terms of the Final Order and Judgment and of this Agreement, including, without limitation, the Releases set forth in Paragraph 16.

7.5   <u>Settlement Conditioned on Occurrence Final Order and Judgment</u>.  The Settlement and the obligations of the Parties under this Agreement shall not become effective until, and are expressly conditioned upon, final approval by the Court of the Settlement in accordance with the contents of final order and judgment.

7.6   <u>Continuing Jurisdiction</u>.  The Court shall retain exclusive and continuing jurisdiction to interpret and enforce the terms, conditions, and obligations of this Agreement and the Court's orders and judgments.  The Court may exercise all equitable powers over the Parties to enforce this Agreement and the Final Order and Judgment.  The Court may enjoin all pending or future actions involving settled matters as to persons or entities that have not opted out of the Settlement.

## 8.  **Effective Date**

8.1   <u>Definition of Effective Date</u>.  The "<u>Effective Date</u>" shall occur on the first date when all of the following conditions have been satisfied:

      8.1.1   The Court has granted final approval of the Settlement following notice to the Settlement Class Members, and has entered a Final Order and Judgment; and

      8.1.2   The Final Order and Judgment has become final. The Final Order and Judgment shall become final when (i) all periods within which to file an appeal from the Final Order and Judgment have expired without the filing of any appeal; (ii) in the event that an appeal from the Final Order and Judgment is filed, a final order has been entered fully disposing of the appeal on the merits, and any time for further appeal.

8.2   <u>Settlement Conditioned on Occurrence of Effective Date</u>.  The Settlement and the obligations of the Parties under this Agreement shall not become effective until, and are expressly conditioned upon, the occurrence of the Effective Date.

## 9.  **Settlement Remedies**

9.1   <u>Criteria to Qualify for Settlement Remedies</u>.  A Settlement Class Member shall be entitled to a Settlement Remedy, as defined in Paragraph 9.2, if the Settlement Class

Member satisfies each and every one of the following criteria:

9.1.1    Within the applicable Claims Period, the Settlement Class Member submits to the Notice Provider a complete Claim Form, in accordance with the Claims Protocol set forth in Paragraph 10, or otherwise provides the information requested on the Claim Form to the Notice Provider or the Claims Administrator;

9.1.2    After the Notice Provider has submitted the Claim Form to the Claims Administrator, the Claims Administrator determines that the panel(s) that are the subject of the claim are Settlement Panel(s), based on a review of the materials included in the Claim Form, proof of ownership, or inspection of the panels on the property on which the panels are installed.

9.1.3    The Claims Administrator determines that the Settlement Class Member currently owns the Settlement Panel(s) that are the subject of the claim are installed. A person or entity who purchased or owned Settlement Panel(s) in the past, but who no longer owns Settlement Panel(s), shall not be eligible for a Settlement Remedy. If the Settlement Panel(s) that are the subject of the claim have multiple co-owners, those co-owners shall only be eligible for one Settlement Remedy between them for each such panel; and

9.1.4    The Claims Administrator determines that Bosch Solar has not previously provided compensation or another remedy under the Limited Warranty or the Recall for the Settlement Panel(s) that are the subject of the claim.

9.2    <u>Definition of Settlement Remedies</u>.  If a Settlement Class Member satisfies the criteria set forth in Paragraph 9.2, Bosch Solar shall provide the following remedies (each a "<u>Settlement Remedy</u>" and together, the "<u>Settlement Remedies</u>") to the Settlement Class Member for each Settlement Panel:

9.2.1    <u>Replacement Panels</u>:  Bosch Solar shall arrange for the removal, replacement and disposal of all NA30119 Modules that are the subject of the Claim, and  the installation of replacement comparable solar modules with a new 25 year power output warranty and a 10 year product warranty, at no cost to members of the Settlement Class. Bosch Solar shall install all replacement panels consistent with applicable laws. This shall be the Settlement Class Member's sole remedy. In no event shall Bosch Solar be required to perform any services or provide any goods required to remedy any conditions on any Settlement Class Member's premises (other than the original design and installation of the NA30119 Module system) that prevent Bosch Solar from removing and replacing the NA30119 Modules.

9.2.2    <u>Repurchase</u>: For any Settlement Panels that were never installed, or were installed but have been de-installed, Bosch Solar will offer to repurchase the Settlement Panels for the price originally paid by the Settlement Class Member or to replace the Settlement Panels with comparable solar modules with a new

25 year power output warranty and a 10 year product warranty.

**10. Claims Protocol**

10.1  Claims to be Submitted to Notice Administrator. A Settlement Class Member who reasonably believes he or she owns Settlement Panel(s) that qualify for a Settlement Remedy may submit a Claim Form to the Notice Provider within the applicable Claims Period.

10.2  Required Contents of Claim Form. A "Claim Form" shall include the following items.

10.2.1  One completed claim form containing the following information (the "Claim Form"), a blank copy of which is attached hereto as **Exhibit E**:

10.2.1.1  The Settlement Class Member's name and, if applicable, the names of any co-owners of the subject Settlement Panel(s);

10.2.1.2  The Settlement Class Member's address and, if applicable, the addresses of any co-owners of the subject Settlement Panel(s);

10.2.1.3  The Settlement Class Member's contact information, including a working telephone number and/or email address;

10.2.1.4  The method of installation of the Settlement Panel(s) (e.g. ground-mounted array, single-story home with roof-mounted array);

10.2.1.5  The address of the property at which the Settlement Panel(s) are installed;

10.2.1.6  Whether the Settlement Class Member is the original purchaser of the Settlement Panel(s) or is a transferee of the underlying warranty; and

10.2.1.7  The approximate number of Settlement Panel(s) that are the subject of the claim.

10.2.2  Proof of ownership or installation of the Settlement Panel(s) which are the subject of the Settlement Class Member's claim, in the form of either:

10.2.2.1  (i) the purchase date; (ii) a copy of the contract for installation of the of the Settlement Panel(s) which are the subject of the claim; and (iii) proof of ownership of the property on which the settlement panels are installed; or

10.2.2.2  Photographs of (i) the building or the location of the solar panel array on which the subject Settlement Panel(s) are installed. If available, a photograph of the panel demonstrating that at least one panel is a Bosch Solar Model c-Si M 60 NA30119. If such a photograph is not available, any available documentation identifying that one or more of the panels

on the array is/are Bosch Solar Model c-Si M 60 NA30119.

10.3   Review by Claims Administrator.  The Claim Form shall be submitted by the Notice Provider to the Claims Administrator.  After receiving a Claim Form, the Claims Administrator shall promptly conduct the following analysis of the Claim Form.

10.3.1   Confirm that the form includes the items necessary to qualify as a Claim Form, and in the event that the form does not contain the required information, request such additional information from the person submitting the form in order to allow the Claims Administrator to determine if the person submitting the form is a member of the Settlement Class;

10.3.2   Confirm that the panel(s) that are the subject of the claim are Settlement Panel(s), and that the claimant is either the same as the owner of the property, or that the panels are owned by a third party lessor or power provider;

10.3.3   Make prompt arrangements with the owner of the property to have the panels inspected;

10.3.4   Make prompt arrangements to remove and replace all NA30119 Modules in accordance with applicable law.

10.4   Objections Process.  The claimant Settlement Class Member shall have the right to object to the Claims Administrator's initial determination on the issue of whether the Claims Administrator correctly decided whether the panel(s) are Settlement Panel. Bosch Solar shall have the right to make reasonable requests for information from claimant Settlement Class Members related to any possible grounds for the Objection, and Settlement Class Members shall comply with such reasonable requests for information from Bosch Solar. The Claims Administrator may pose any reasonable questions it has to either party, for the sole purpose of assisting in the reconsideration of whether a panel is a Settlement Panel.  The Claims Administrator shall then issue a final determination provided in writing.

10.5   Remedy for Settlement Panels.  Bosch Solar shall provide the Settlement Remedy as set forth in Paragraph 9.2.

10.6   Claims Administrator to Maintain Records of Settlement Panels.  The Claims Administrator shall maintain a record of all panels determined to be Settlement Panels for the duration of the Claims Period.  Such records shall include, at a minimum, the serial number of each Settlement Panel; the date on which the Claims Administrator's final determination as to the Settlement Panel was issued; and the name of the Settlement Class Member who received a Settlement Remedy for the Settlement Panel.

## 11. Claims Administrator

11.1   Claims Administrator Duties.  Bosch Tool (or such other third party as Bosch Solar may designate) (the "Claims Administrator") will (i) receive, review, and render a decision as to all Claim Forms, according to the Claims Protocol set forth in Paragraph

9.2.1; and (ii) arrange for the removal, disposal, and replacement of all Settlement Panels.

11.2    <u>Claims Administrator Fees</u>.  Bosch Solar will pay all expenses and fees of the claims administration including all expenses associated with the removal, replacement and destruction of all NA30119 panels.

11.3    <u>Claims Protocol to Begin on the Effective Date</u>.  The Claims Administrator shall begin receiving Claim Forms immediately upon the occurrence of the Effective Date, and begin processing Claim Forms in accordance with the Claims Protocol set forth.

11.4    Beginning on January 1, 2024, and ending on January 1, 2026, the Claims Administrator will provide a status report to the Court annually detailing the number of claims, the status of the claims, and how many Bosch Solar arrays have been replaced.

12. **Claims Period**

12.1    Definition of Claims Period.  The Claims Period shall have the meaning set forth in Paragraph 3.2.

13. **Notification of Status**

13.1    <u>Status Reports</u>.  The Claim Administrator shall provide status reports to Class Counsel on a quarterly basis, beginning ninety (90) days after the Effective Date.  The status reports shall include the name, address and contact information of each claimant and the status of the claim, including the date the claim was received, the progress of the claim, and the replacement date of the Settlement Panels.  The Claims Administrator shall not be required to provide status reports after January 1, 2025.

13.2    <u>Claims Administrator Liaison to Class Counsel</u>.  Class Counsel will be provided with a liaison contact person with the Claims Administrator.  Class Counsel shall have the right to contact the Claims Administrator liaison by email or phone when reasonably necessary to inquire about the status of claims or in response to the inquiry of any Settlement Class Member.

14. **Attorneys' Fees, Costs, and Expenses**

14.1    <u>Attorneys' Fees</u>.  Within ten (10) days after the occurrence of the Effective Date, Bosch Solar shall pay to an account designated by Settlement Class Counsel one million four hundred thousand U.S. dollars ($1,400,000.00) for attorneys' fees, costs, and expenses in connection with this Action and Settlement (the "<u>Settlement Attorneys' Fees</u>").  For avoidance of doubt, Bosch Solar shall have no obligation to pay Settlement Attorneys' Fees if it exercises its termination rights in accordance with Paragraph 5.7, if the Court does not grant preliminary or final approval of the Settlement, if the Court does not approve payment of the Settlement Attorneys' Fees, and/or if the Final Order and Judgment do not become final for any reason.

14.2  <u>Waiver and Release of Other Attorneys' Fees, Costs, and Expenses.</u>  Upon the occurrence of the Effective Date, Settlement Class Counsel shall be conclusively deemed to have waived and fully, finally, and forever released the Released Parties from any and all claims for attorneys' fees, costs, and expenses, other than the Settlement Attorneys' Fees.

14.3  <u>Parties to Bear Their Own Costs.</u>  Except as provided in this Agreement regarding the Settlement Attorneys' Fees, the Parties shall bear their own attorneys' fees, costs, and expenses associated with the Action and this Settlement.

## 15. Class Representative Incentive Award

15.1  <u>Incentive Award.</u>  In recognition of the time and effort expended by Plaintiff in pursuing this litigation, Settlement Class Counsel will ask the Court to approve a single incentive award for Plaintiffs not to exceed $10,000, to be paid by Bosch Solar within ten (10) days after the occurrence of the Effective Date.  Plaintiffs may also seek a Settlement Remedy for any Settlement Panels by submitting a Claim Form in accordance with the Claims Protocol set forth in Paragraph 10.  No other agreement exists between or among the Parties as to payments to be made to Plaintiff.

## 16. <u>Releases</u>

16.1  <u>Definition of Releasing Parties.</u>  As used in this Agreement, the "<u>Releasing Parties</u>" shall mean all Settlement Class Members and their agents, heirs, executors and administrators, successors, attorneys, representatives, and assigns, who have not properly and timely opted out of the Agreement pursuant to its terms,

16.2  <u>Definition of Released Parties.</u>  Except for the remedies provided herein, as used in this Agreement, the "<u>Released Parties</u>" shall mean the Defendant and any and all past, present, and future parent companies, subsidiaries, predecessors, successors, divisions, affiliates, assigns, and their respective past, present, and future officers, stockholders, directors, agents, employees, attorneys, insurers, or representatives; and any third party who played a role in the manufacture, distribution, and/or sale of Settlement Panels.

16.3  <u>Definition of Released Claims.</u>  As used in this Agreement, "<u>Released Claims</u>" shall mean any and all manner of claims, demands, judgments, actions, suits, and causes of action, whether class, derivative, individual, direct, indirect, or otherwise in nature, damages whenever and however incurred, liabilities of any kind, including costs or losses of any kind or nature, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, accrued or unaccrued, asserted or unasserted, contingent or non-contingent, whether in law, in equity, or otherwise, that the Releasing Parties or any one of them ever had, now has, or hereafter can, shall, or may have, claim, or assert in any capacity against the Released Parties that arise from or relate to any claims or Allegations asserted in the Action, or that could have been asserted in the Action, except as provided in Paragraph 16.4 (exclusions from released claims).  The Released Claims include, without limitation, all causes of action related to the design, specification, manufacture, production, promotion, advertising, sale,

representation, distribution, installation, and denial of warranty remedies as to the
Settlement Panels, without regard to whether such causes of action are or could be
brought pursuant to common law, or any federal or state statute, regulation, or
ordinance, including but not limited to federal or state statutes or regulations
concerning unfair competition; unfair or deceptive methods of competition; unfair,
deceptive, fraudulent, unconscionable, false or misleading conduct, acts, advertising or
trade practices; consumer protection; or breach of warranty; or under the common law
of any state as a claim for breach of contract, breach of express and implied warranties,
reformation of warranty, breach of fiduciary duty, fraud, intentional misconduct, unjust
enrichment, misrepresentation (negligent or otherwise), tort, negligence, breach of
constructive trust, breach of the implied covenant of good faith and fair dealing, or any
other common law or statutory basis, except as provided in Paragraph 16.4 (exclusions
from released claims).

16.4  <u>Exclusions from Released Claims</u>.  The Released Claims shall not include claims for
personal injury and/or property damage related to fires; claims against persons or
entities other than the Released Parties; or claims for breach of this Agreement.

16.5  <u>Waiver and Release of Released Claims Upon Effective Date</u>.  Upon the Effective
Date, the Releasing Parties shall be conclusively deemed to have waived and fully,
finally, and forever released, acquitted, and discharged the Released Parties from any
and all Released Claims.

16.6  <u>Waiver and Release of Warranty Rights Upon Effective Date</u>.  Upon the Effective
Date, the Releasing Parties shall be conclusively deemed to have waived and fully,
finally, and forever released any and all provisions, rights, and benefits conferred by
the Limited Warranty with respect to the Allegations.

16.7  <u>Waiver and Release of Section 1542 Rights Upon Effective Date</u>.  Upon the Effective
Date, the Releasing Parties shall be conclusively deemed to have waived and fully,
finally, and forever released any and all provisions, rights, and benefits conferred by (i)
Section 1542 of the California Civil Code, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT
THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR
SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR
HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER
SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY;

or (ii) any equivalent, similar, or comparable present or future law or principle of law
in any jurisdiction; or (iii) any law or principle of law in any State or territory of the
United States, any foreign state or any other jurisdiction that would limit or restrict the
effect or scope of the provisions of the release set forth above.  The Releasing Parties,
and each of them, may hereafter discover facts other than or different from those
which they know or believe to be true with respect to the subject matter of the
Released Claims, but the Releasing Parties hereby expressly waive and fully, finally,

17

and forever settle and release any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim, accrued or unaccrued claim, loss, or damage with respect to the Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such additional or different facts. The foregoing release of unknown, unanticipated, unsuspected, and unaccrued losses or claims with respect to the Released Claims is contractual and intentional, and not a mere recital.

16.8 <u>Covenant Not to Sue</u>. The Releasing Parties covenant not to, directly or indirectly, sue the Released Parties with respect to the Released Claims. The Parties agree that breach of this provision would result in irreparable injury to the Released Parties and, in the event of a breach of this provision, the Released Parties shall, without any requirement of a bond, be entitled to injunctive relief enjoining the assertion of the Released Claims. The Released Parties shall be entitled to recover attorneys' fees and any other cost of defense incurred as a result of a violation of this covenant by a Releasing Party. For avoidance of doubt, if the Defendant is joined as a party or otherwise faces potential liability in connection with an action brought by a Releasing Party against a third party who played a role in the manufacture, distribution, marketing, and/or sale of the Settlement Panels with respect to the Released Claims, that Defendant shall be entitled to recover attorneys' fees and other defense costs from the Releasing Party bringing the action.

16.9 <u>No Waiver of Recall Rights</u>. Nothing herein shall be deemed to waive any right that any member of the Settlement Class may have pursuant to the Recall, or to affect Bosch Solar's obligations under the Corrective Action Plan. To the extent the terms of this Agreement conflict with any obligations that Bosch Solar has or may have under the Corrective Action Plan, the Corrective Action Plan shall govern Bosch Solar's conduct and Bosch Solar shall not be in breach of this Agreement by acting in accordance with the Corrective Action Plan. Termination of the Corrective Action Plan shall not release Bosch Solar from any obligations set forth in this Agreement.

## 17. **Other Terms and Conditions**

17.1 <u>Agreement for Settlement Purposes Only</u>. This Agreement, whether or not consummated, and any actions or proceedings pursuant to this Agreement, are for settlement purposes only. Neither the fact of, nor any provision contained within this Agreement or its Exhibits, nor any action taken hereunder shall constitute, be construed as, or be admissible in evidence as any admission of the validity of any claim or any fact alleged by Plaintiffs in the Action or in any other action, or of any wrongdoing, fault, violation of law, unfair or unlawful business practice or other type of liability of any kind on the part of Defendant, or admission by Defendant of any claim or allegation made in this Action or any other action; or as an admission of Plaintiffs or Settlement Class Members to the validity of any defense asserted against them in the Action or in any other action.

17.2 <u>Effect of Termination of this Agreement</u>. In the event that Bosch Solar exercises its termination rights in accordance with Paragraph 5.7 or the Settlement does not become

effective for any other reason, this Agreement shall become null and void and of no further force and effect. In such instance, this Agreement and any negotiations, statements, communications, or proceedings relating thereto, and the fact that the Parties agreed to the Settlement, shall be without prejudice to Plaintiffs, Defendant, or any Settlement Class Member, shall not be used for any purpose whatsoever in any subsequent proceeding in this Action or in any other action in any court or forum, and shall not be construed as a concession or admission by any party of any fact, matter, or litigation. Notwithstanding the foregoing, if the Court does not approve any material part of this Agreement or if, on appeal, an appellate court fails to affirm the Final Order and Judgment entered pursuant to this Agreement, the Parties may (but are not obligated to) agree in writing to amend this Agreement and proceed with the Settlement so amended.

17.3  Best Efforts to Consummate Settlement. Plaintiffs, Defendant, and their respective counsel agree to cooperate fully in seeking Court approval of this Agreement, to use their best efforts to effect the consummation of the Settlement provided for herein, and to execute all such additional documents as shall be reasonably necessary to carry out the provisions of this Agreement. In the event that Bosch Solar exercises its walk-away rights in accordance with Paragraph 5.7; the Court does not approve any material part of this Agreement; or, on appeal, an appellate court fails to affirm the Final Order and Judgment entered pursuant to this Agreement, the Parties agree to negotiate reasonably and in good faith to reach an appropriate amended Agreement.

17.4  Headings Not To Affect Meaning or Interpretation. The headings and sub-headings contained in this Agreement are inserted for purely for convenience, and shall not affect in any way the meaning or interpretation of this Agreement.

17.5  Notice Pursuant to 28 U.S.C. § 1715. Bosch Solar shall timely submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. The Parties shall request that the Court schedule any Final Approval Hearing be scheduled in compliance with the provisions of 28 U.S.C. § 1715.

17.6  Limitation of Waiver of Breach. The waiver by any of the Parties of any breach of the terms of this Agreement shall not be deemed or construed to be a waiver of any other breach of this Agreement, whether prior, subsequent, or contemporaneous.

17.7  Execution of Agreement. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original. All counterparts shall constitute one Agreement, binding on all Parties hereto, regardless of whether all Parties are signatories to the same counterpart, but the Agreement shall be without effect unless and until all Parties to this Agreement have executed a counterpart.

17.8  No Party to be Considered the Drafter. Settlement Class Counsel and counsel for Defendant have materially participated in the drafting of this Agreement. None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction

that would or might cause any provision to be construed against the drafter.

17.9 <u>Governing Law</u>. This Agreement shall be deemed to have been executed and delivered in the State of Michigan, and shall be construed and enforced in accordance with, and governed by, the laws of the State of Michigan without regard to the conflict of law rules of the State of California or of any other state. Any and all disputes related to the enforcement or interpretation of this Agreement shall be resolved in United States District Court for the Northern District of California.

17.10 <u>Exclusive Jurisdiction</u>. The Court shall have and continue to maintain exclusive jurisdiction to interpret the scope and substance of the release. In the event that a dispute arises in another court or tribunal regarding the scope or substance of any of the provisions of the Release, Class Counsel and Bosch Solar shall cooperate to ensure that the Court issues any collateral orders or judgments required to maintain the validity of this Release and to ensure any such collateral orders or judgments are enforced to the fullest extent of the law in any other court, tribunal, or legal proceeding.

17.11 <u>Entire Agreement</u>. This Agreement and its Exhibits constitute the entire agreement of the Parties with respect to the subject matter herein. The Exhibits attached hereto are incorporated as if fully set forth in the body of this Agreement. The Settlement contemplated by this Agreement is not subject to any condition not expressly provided for herein, and there exist no collateral or oral agreements relating to the subject matter of this Agreement. In entering into this Agreement, none of the Parties is relying on any promise, inducement, or representation other than those set forth herein and in the Exhibits hereto. Any agreement purporting to change or modify the terms of this Agreement or the Exhibits hereto must be in writing, signed by counsel for each of the Parties to this Agreement

IN WITNESS WHEREOF, each of the undersigned signatories has read and understood this Agreement, has executed it, and represents that he or she is authorized to execute this Agreement on behalf of the Party or Parties he or she represents, who or which has agreed to be bound by its terms and has entered into this Agreement.

Dated: 9-12-2022

Steve Rojas

Dated: 9-12-22

Andrea Rojas

20

SIGNATURES CONTINUED FROM PAGE 20 OF BOSCH SOLAR SETTLEMENT
AGREEMENT

Dated: _September 13, 2022_                BIRKA-WHITE LAW OFFICES

                                           By: David M. Birka-White
                                           Title: Class Counsel

Dated:  September 13, 2022                 BOSCH SOLAR ENERGY CORPORATION

pki, BOSCH, US, J,    Digitally signed by pki, BOSCH,
O, Jonathan.Crane     US, J, O, Jonathan Crane
                      Date: 2022.09.13 18:23:40 -04'00'

By: Jonathan Crane

Title: President

pki, BOSCH, US,       Digitally signed by pki, BOSCH,
O, L, Oliver.Steinig  US, O, L, Oliver Steinig
                      Date: 2022.09.13 11:28:09 -04'00'

By: Oliver Steinig

Title: Director

21

# **Exhibit A**

303 East Lipoa Street
Kihei, HI 96753

480 Piilani Highway
Kihei, HI 96753

3300 Honoapiilani Highway
Lahaina, HI 96761

84-439 Ikuone Place
Waianae, HI 96792

84-445 Ikuone Place
Waianae, HI 96792

# **Exhibit B**

Active Solar, Inc.
204 West Spear Street
#2526
Carson City, NV 89703

AMECO Solar LLC
7623 Somerset Blvd
Paramount, CA 90723

Applied Solar Energy Solutions
765 State College Blvd
#H
Fullerton, CA 92831

Citi Green, Inc.
11812 Kemper Road
Auburn, CA 95603

Clean Power Construction LLC
24941 Dana Point Harbor Drive
Suite C-220
Dana Point, CA 92629

Direct Power and Water Corporation
4000 Vassar Drive NE
Suite B
Albuquerque, NM 87107

DwellTek Solar, LLC
967 Roundup Way
Oakley, UT 84055

Esmay Electric, Inc.
2160 W. Acoma Blvd.
#102
Lake Havasu City, AZ 86403

Gen819, Inc.
1235 Activity Dr.
Suite E
Vista, CA 92081

Green Solar Technologies, Inc.
6400 Laurel Canyon Blvd.
#400
North Hollywood, CA 91606

PacificSky Solar, LLC
20640 Bahama Street
Unit B
Chatsworth, CA 91311

Shaw Solar & Energy Conservation LLC
1877 E 3rd St
Durango, CO 81301

Solar Alliance of America, Inc.
82 Richmond Street East
Toronto, Ontario M5C 1P1

Solar Direct LLC
18084 W Pasco Way
Goodyear, AZ 85338

Sunpro Solar, Inc.
38340 Innovation Ct.
#704
Murrieta, CA 92563

The Tri-M Group, LLC
204 Gale Lane
Kennett Square, PA 19348

TMAG Industries, Inc.
6965 El Camino Real
Suite 105-444
Carlsbad, CA 92009

# EXHIBIT C

Notice Administrator for U. S. District Court
Northern District of California
P.O. Box 0000
City, ST 0000

# Class action notice about fire risk in Bosch model c-Si M NA30119 solar panels.

## <u>Court settlement</u>:
## If you still own recalled Bosch
## model c-Si M NA30119 solar panels, get them
## replaced at no cost.

<u>UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA</u>

# Class action settlement notice: Bosch solar panels model c-Si M NA30119 were recalled due to fire risk.  Act now to have your panels replaced for free.

*A court authorized this notice.  This is not a solicitation from a lawyer.  Read this carefully.*

- A proposed settlement has been reached in a class-action lawsuit about an alleged defect in Bosch Solar Energy Corporation ("Bosch Solar") solar panels model c-Si M NA30119 ("NA30119") claiming the solder joints pose a fire safety risk.  Other Bosch Solar panels are not affected.  Bosch Solar started a voluntary recall of NA30119 units and under the settlement will replace roof and ground mounted NA30119 units at no cost to current owners who submit claims.

- Act now to submit a claim form and a photo of your panels, or to exercise other rights.

- If you are included, your legal rights are affected whether you act or not.

| CLASS MEMBER RIGHTS AND OPTIONS: | |
|---|---|
| **SUBMIT A CLAIM FORM** | Request free replacement panels, as described in this notice. |
| **ASK TO BE EXCLUDED** | Also called "opting out."  The only option that allows you to sue Bosch Solar over the claims resolved by this settlement. |
| **OBJECT** | Write to the Court about why it should reject the settlement. |
| **GO TO A HEARING** | Ask to speak in Court about an objection. |
| **DO NOTHING** | Get no replacement panels.  Give up rights to sue. |

- If you own these panels—OR own a property on which they are installed (for example you might be leasing them from a solar company) you have **25 years** from when they were purchased OR until **December 31, 2038** (whichever is earlier) to submit a claim. But act soon to make sure the panels are replaced as quickly as possible.

- If you want to be Excluded (opt out) or Object you must do so by **Month, 00 0023.**

- The Court in charge of this case will listen to any objections and decide whether to approve the settlement, and it will hold a hearing on **Month, 00, 2023**.

## WHAT THIS NOTICE CONTAINS

**Page**

**BASIC INFORMATION** ................................................................................................................. **3**
    1.    Why was this notice issued?    3
    2.    What is this lawsuit about?    3
    3.    Is there something wrong with the NA30119 Panels?    3
    4.    What is a class action?    3
    5.    Why is there a settlement?    3

**WHO IS IN THE SETTLEMENT** ....................................................................................................... **3**
    6.    How do I know if I am part of the settlement?    3
    7.    Which solar panels are included?    4
    8.    What do the solar panels look like?    4
    9.    If I own a property where they are installed, but lease the panels, am I included?    4
    10.    Are there exceptions to being included?    4
    11.    I'm still not sure I'm included.    5

**THE SETTLEMENT BENEFITS—WHAT YOU GET** ............................................................................. **5**
    12.    What benefits does the settlement provide?    5
    13.    How much time do I have to request replacement?    5
    14.    Will the replacement panels work the same way?    5
    15.    Can I get money instead of replacement?    5

**HOW TO GET YOUR PANELS REPLACED—SUBMITTING A CLAIM FORM** .......................................... **5**
    16.    How can I request replacement of my panels?    5
    17.    How will my claim be evaluated?    5
    18.    When will my panels be replaced?    5
    19.    What am I giving up if I stay in the Class and/or request replacement?    6

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ........................................................................... **6**
    20.    How do I get out of the settlement?    6
    21.    If I don't exclude myself, can I sue Bosch Solar for the same thing later?    6
    22.    If I exclude myself, can I get my NA30119 solar panels replaced?    6

**THE LAWYERS REPRESENTING YOU** ............................................................................................. **6**
    23.    Do I have a lawyer in this case?    6
    24.    How will the lawyers be paid?    6
    25.    Will the Class Representatives receive a cash payment?    7

**OBJECTING TO THE SETTLEMENT** ................................................................................................ **7**
    26.    Why would I object to the settlement?    7
    27.    How do I object to the settlement?    7
    28.    What do I have to include in an objection?    7
    29.    What's the difference between objecting and asking to be excluded?    7

**THE COURT'S FAIRNESS HEARING** .............................................................................................. **7**
    30.    When and where will the Court decide whether to approve the settlement?    7
    31.    How do I request to appear at the Fairness Hearing?    8
    32.    Do I have to come to the Fairness Hearing?    8
    33.    May I speak at the Fairness Hearing?    8

**IF YOU DO NOTHING** ................................................................................................................. **8**
    34.    What happens if I do nothing at all?    8

**GETTING MORE INFORMATION** .................................................................................................. **8**
    35.    How do I get more information about the settlement?    8

# BASIC INFORMATION

**1.        Why was this notice issued?**

A Court authorized this notice because you have a right to know about a proposed settlement of this class action, including the right to request free replacement panels, and about all your other options, before the Court decides whether to give "final approval" to the settlement.  This notice explains the lawsuit, the settlement, your legal rights, what benefits are available, who may be eligible for them, and how to get them.

Judge Beth Labson Freeman is overseeing this class action.  The case is known as *Rojas v. Bosch Solar Energy Corp.*, Case No. 5:18-cv-5841BLF in the United States District Court for the Northern District of California, San Jose division.  The people who sued are called the "Plaintiffs," and the companies they sued, together referred to as "Bosch Solar," are called the "Defendants."

**2.        What is this lawsuit about?**

The lawsuit claimed the NA30119 panels were defective and pose a fire risk.  The suit said Bosch Solar breached its warranty, was unjustly enriched, and the suit sought replacement of all roof and ground mounted panels.  Bosch Solar denies these claims, maintains that it acted lawfully, and voluntarily recalled all roof mounted panels.

**3.        Is there something wrong with the model NA30119 panels?**

Bosch Solar determined that where electrical contacts to the solder had degraded, the resulting resistance could result in heat, and that it was theoretically possible for a fire to result.  No fires have been reported.  Bosch Solar voluntarily recalled roof mounted panels under the United States Consumer Product Safety Commission ("CPSC") Fast Track Recall process.  The CPSC says the solar panels can overheat, posing a risk of fire.

**4.        What is a class action?**

In a class action, one or more people called "Class Representatives" (in this case, Steve R. Rojas and Andrea N. Rojas), sue on behalf of people who have similar claims.  All these people are a "Class" or "Class members."  One court resolves the issues for everyone except those who exclude themselves from the Class.

**5.        Why is there a settlement?**

The Court did not decide who is right.  Instead, both sides agreed to settle.  That way, they avoid a costly trial, and all the affected panels can be replaced for free.  The Class Representatives and their attorneys think the settlement is best for all Class members.  The settlement does not mean that Bosch Solar did anything wrong.

# WHO IS IN THE SETTLEMENT

To see if you can get benefits from this settlement, you first must decide if you are a Class member.

**6.        How do I know if I am part of the settlement?**

Judge Freeman decided that everyone who fits this description is a Class Member:  *All persons or entities in the United States who are the current owners of Bosch c-Si M 60 NA30119 solar modules or the current owners of premises on which Bosch c-Si M 60 NA30119 solar modules are installed.*  Continue reading to learn more.

**7.      Which solar panels are included?**

The solar panels are Bosch model c-Si M 60 NA30119, which were sold through distributors and commercial installers nationwide from October 2011 through May 2013 for about $300 per panel.  At this time, Bosch Solar believes most of the remaining NA30119 solar panels are installed in southern California.

**8.      What do the solar panels look like?**

Each panel measures approximately 65 inches by 39 inches by 1.65 inches. Each c-Si M 60 NA30119 panel contains 60 cells, arranged in 10 rows of 6 cells. Each cell is marked with the Bosch brand logo. The frame edge of the panel is smooth, with no grooves.  These pictures may help you identify the panels:






| Closeup of one of the sixty (60) cells (above).<br><br>Closeup of the Bosch logo that appears in the corner of each cell (below). | The front of one entire NA30119 panel showing the sixty (60) cells. | The frame edge showing its smooth flat surface, without grooves. |
| --- | --- | --- |

**9.      If I own a property where they are installed, but lease the panels, am I included?**

Yes.  You are a class member and may file a claim for replacement if you own the property where the NA30119 panels are installed even if you lease the panels from a solar company.  You are also a class member if you own the panels but not the property on which they are installed.

**10.     Are there exceptions to being included?**

You are not a class member if you already had your NA30119 panels replaced under the recall or warranty. Also, you are not a class member if you own an array of one hundred (100) or more ground mounted NA30119 panels.  There are other exclusions listed in the Settlement Agreement to be found at the website listed below.

**11.    I'm still not sure I'm included.**

If you are not sure whether you are included, call the toll-free number: 1-800-000-0000.

## THE SETTLEMENT BENEFITS—WHAT YOU GET

**12.    What benefits does the settlement provide?**

The settlement provides full replacement of NA30119 panels that are still installed on the roofs of structures or that are mounted on the ground.  A Settlement Agreement, available at www._____.com, describes all of the details about the proposed settlement.

**13.    How much time do I have to request replacement?**

If you have the NA30119 panels, you have 25 years from the date they were originally purchased, or until December 31, 2038, whichever is earlier.  The panels were sold between 2011 and 2013.  If you don't know when they were purchased, you should submit your claim anyway, as soon as possible.

**14.    Will the replacement panels work the same way?**

The new panels may differ in size, color, shape, model number, or manufacturer, but the output of your replacement panels will provide the same or greater power than your Bosch Solar NA30119 solar array.

**15.    Can I get money instead of replacement?**

No.  The settlement provides for replacement panels to remedy the claims made in the lawsuit.

## HOW TO GET A PAYMENT—SUBMITTING A CLAIM FORM

**16.    How can I request replacement of my panels?**

Complete and submit a claim form to request replacement.  The claim form is attached to this notice if you received it in the mail.  You may also find one at www._____.com.  Be sure to include pictures of your solar panels and other helpful information requested in the claim form.  Send your submission to:

|  |  |
|---|---|
| Before **Month 00, 0000** | After **Month 00, 0000** |
| [Notice Provider Address] | [Claims Administrator Address] |

**17.    How will my claims for replacement be evaluated?**

The Claims Administrator will review your claim form and then possibly inspect your array to confirm you have NA30119 panels.  If so, they will be replaced.  Otherwise, they will not be.

**18.    When will my panels be replaced?**

If your panels are NA30119 panels, Bosch Solar will replace them as soon as practicable after receipt of your claim form.  Bosch Solar will not delay the replacement of the panels based on any objections to the settlement.

**19.     What am I giving up if I stay in the Class or request replacement?**

Unless you exclude yourself, you are staying in the Class, and that means that you can't sue Bosch Solar over the claims in this case.  It also means that all the Court's orders will apply to you and legally bind you. Whether you submit a claim form not, if you do not opt out of the Class (*see* below), you will agree to "release and discharge" Bosch Solar as described in the Settlement Agreement.  The Settlement Agreement can be obtained at www._____.com, and it specifically describes the released claims in necessarily accurate legal terminology.  Talk to Class Counsel (*see* below), or your own lawyer, if you have questions about the released claims.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you want to keep the right to sue Bosch Solar about the issues in this case, then you must take steps to get out, called "excluding yourself" from—sometimes referred to as "opting out" of—the Settlement Class.

**20.     How do I get out of the settlement?**

To exclude yourself from the settlement, you must send a letter by mail saying that you want to be excluded from *Rojas v. Bosch Solar Energy*.  Be sure to include your full name, address, telephone number, and your signature.  Include the address where your NA30119 panels are installed and how many you own.  You must mail your exclusion request postmarked by **Month 00, 2023** to:

> Rojas Exclusions
> P.O. Box _____
> _____

You can't exclude yourself on the phone, by email, or at the website.

**21.     If I don't exclude myself, can I sue Bosch Solar for the same thing later?**

No.  If you do not exclude yourself, you may never sue (or be part of any other class action against) Bosch Solar over the claims resolved by this settlement.  Remember, the exclusion deadline is **Month 00, 2023**.

**22.     If I exclude myself, can I get my NA30119 solar panels replaced?**

Yes.  If you exclude yourself, you may still ask for replacement panels under the recall process.

# THE LAWYERS REPRESENTING YOU

**23.     Do I have a lawyer in this case?**

The Court has appointed Birka-White Law Offices, 178 E. Prospect Ave, Danville, CA 94526; Levin Sedran & Berman LLP, 510 Walnut Street, Suite 500, Philadelphia, PA 19106; and Farella Braun + Martel, 235 Montgomery Street, San Francisco, CA 94104 to represent you and other Class members.  Together they are called "Settlement Class Counsel."  You do not have to pay them.  If you want to be represented by your own lawyer (perhaps to have that lawyer appear in Court for you), you may hire one at your own expense.

**24.     How will the lawyers be paid?**

If the Court approves the settlement, Bosch Solar will pay Settlement Class Counsel $1,400,000 to cover their fees and expenses.  Class members will not be charged for this payment, and it will not affect panel replacements.  Bosch Solar will also separately pay the costs to identify and notify Class members, and to administer the settlement.

**25.    Will the Class Representatives receive a cash payment?**

If the Court approves the settlement, Settlement Class Counsel will ask the Court to approve an incentive award of up to $10,000 total to be paid by Bosch Solar to Steve and Andrea Rojas, in recognition of the time and effort they spent helping counsel pursue the class action and settlement on behalf of all other Class members.  The Rojas' are also entitled to claim replacement panels like other Class members.  There is no other agreement to provide payments to Plaintiffs or other parties.

## OBJECTING TO THE SETTLEMENT

Class members may object to the settlement and ask the Court to reject it.  The Court will consider your views.

**26.    Why would I object to the settlement?**

If you are opposed to the settlement, you can object to its approval.  You can't ask the Court to order a different settlement; the Court can only approve or reject this settlement.  If the Court denies approval, you will not be bound by it, and the lawsuit will continue.  If that is what you want to happen, you should object.

**27.    How do I object to the settlement?**

To object, you must write a letter to the Court **and include the information in Question 28**. The Court will enter it into the electronic filing system for the public record.  If you want to object, be sure to send your objection by **Month 00, 2023** to:

Clerk of Court
San Jose Courthouse
Courtroom 3, 5th Floor
280 South 1st Street
San Jose, CA 95113

**28.    What do I have to include in an objection?**

You must indicate the case name: *Rojas v. Bosch Solar Energy,* and the case number: 5:18-cv-5841BLF.  State your full name, address, telephone number, and signature.  You must provide the address where your NA30119 panels are installed, and how many you own.  You must state the specific grounds for your objection, whether it affects only you, a specific subset of Class members, or the whole Class.  You must also indicate whether you intend to appear at the Fairness Hearing (*See below*).

**29.    What's the difference between objecting and asking to be excluded?**

Objecting is telling the Court that you oppose approval of the settlement.  You can object only if you stay in the Class.  This means that you may not exclude yourself and also object.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement.  You may attend and you may ask to speak, but you don't have to.

**30.    When and where will the Court decide whether to approve the settlement?**

The Court has scheduled a Fairness Hearing at **00:00 _.m.** on **Month 00, 2023**, at the San Jose Courthouse, Courtroom 3, 5th Floor, 280 South 1st St., San Jose, CA 95113.  You may also attend by zoom using the

instructions at www._____.com.  At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate.  If there are objections, the Court will consider them.  The Judge will listen to people who have asked to speak about an objection.  At or after the hearing, the Court will decide whether to approve the settlement.  We do not know how long this decision will take.  The hearing may be moved to another day, time, or location, so check www._____.com for updates.

**31.     How do I request to appear at the Fairness Hearing?**

If you or your separate attorney (if you have one) wish to appear at the Fairness Hearing, send a signed letter with your name/address/phone number, and your attorney's name/address/phone number/bar number.  Include a list of any witnesses you intend to call at the Fairness Hearing, the address of each witness, a summary of his or her proposed testimony, and copies of all exhibits you intend to introduce at the Fairness Hearing.  Note: you do not need a lawyer to ask to appear at the Fairness Hearing.  Send your request by **Month 00, 2023** to:

Clerk of Court
San Jose Courthouse
Courtroom 3, 5th Floor
280 South 1st Street
San Jose, CA 95113

**32.     Do I have to come to the Fairness Hearing?**

No.  Settlement Class Counsel and the lawyers for Bosch will answer questions that the Judge may have.  But you are welcome to come at your own expense.  If you send an objection, you don't have to come to Court to talk about it.  If you filed and mailed your written objection on time, the Court will consider it.  You may also pay your own lawyer to attend, but it's not necessary.

**33.     May I speak at the Fairness Hearing?**

If you submitted an objection to the settlement and you asked to appear at the Fairness Hearing (be sure you provide all the information identified in this notice), you may ask the Court for permission to speak at the Fairness Hearing.  You cannot speak at the hearing if you exclude yourself.

# IF YOU DO NOTHING

**34.     What happens if I do nothing at all?**

If you do nothing, you will not have the solar panels replaced, leaving a potential fire risk in place.  But you'll release Bosch Solar and never be able to sue Bosch Solar for the claims in this case.

# GETTING MORE INFORMATION

**35.     How do I get more information about the settlement?**

This notice summarizes the proposed settlement. For the precise terms of the settlement, please see the Settlement Agreement at www._____.com, by contacting class counsel through that website, by accessing the Court docket in this case for a fee through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, 280 South 1st Street, San Jose, CA 95113, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.  **Please do not telephone the Court or the Court Clerk's office to inquire about this settlement or the claim process**.

# EXHIBIT D

<u>LEGAL NOTICE</u>

# Class action settlement notice: Bosch solar panels model c-Si M NA30119 were recalled due to fire risk. Act now to have your panels replaced for free.

There is a proposed settlement in a class-action lawsuit about an alleged defect in Bosch solar panels model c-Si M NA30119, claiming the solder joints pose a fire safety risk. Other Bosch solar panels are not affected. Bosch Solar had started a voluntary recall, and now will replace roof and ground mounted NA30119 units at no cost to owners who submit claims.

### WHO'S INCLUDED?

The settlement includes all current owners of NA30119 panels or the properties on which they are installed. In other words, you are included if you are leasing the panels, for example. You are not included if you already had these panels replaced under warranty or the recall. Owners of 100 panel or greater ground-mounted arrays are not included. Not sure if you are included? Get the detailed notice at www._____.com. It tells you even more about who is included and excluded.

### ABOUT THE SETTLEMENT.

If you are included, you have 25 years from when they were purchased OR until December 31, 2038 (whichever is earlier) to submit a claim. Get the claim form at www._____.com. You simply need to provide the address where the panels are installed and a photo of the panels. Bosch Solar will investigate your claim and replace them at no cost to you if they are NA30119 panels. But act soon to make sure the panels are replaced as quickly as possible. Learn more by calling 1-800-000-0000 or at www._____.com.



EACH BOSCH SOLAR NA30119 PANEL HAS SIXTY CELLS, AND EACH CELL HAS THE BOSCH LOGO IN THE LOWER LEFT CORNER. THE EDGES ARE SMOOTH, NOT GROOVED.

### WHAT ARE YOUR OTHER OPTIONS?

If don't want to be legally bound by this settlement, you must exclude yourself by **Month 00, 2023** or you won't be able to sue Bosch Solar about the claims in this case ever again. If you don't exclude yourself, you may object to it by **Month 00, 2023**. The detailed notice explains how. The United States District Court for the Northern District of California will hold a hearing in this case (*Rojas v. Bosch Solar*, Case No. 5:18-cv-5841BLF) on **Month 00, 2023,** to consider whether to approve the settlement. If so, the lawyers representing Class members (including Birka-White Law Offices, Danville, CA; Levin Sedran & Berman LLP, Philadelphia, PA; and Farella Braun + Martel, San Francisco, CA) will be paid $1,400,000 by Bosch Solar for fees and expenses. The Court may also approve a payment of up to $10,000 total to two Class members, Steve and Andrea Rojas, who worked with the lawyers to represent other Class members. You or your own lawyer may appear and ask to speak at the hearing, at your own cost, but you don't have to. If the Court approves the settlement, Bosch Solar will be released from all liability for the claims in this case. The settlement agreement explains this fully. To learn more, call or visit the website:

## 1-800-000-0000

## www._____.com

EXHIBIT E

*Claim Form*                                                                *Rojas v. Bosch Solar*

## For replacement of Bosch solar panels model c-Si M NA30119

This claim form is to request replacement of Bosch solar panels model c-Si M NA30119.  Read the detailed notice at www._____.com to get information describing the panels and pictures of what they look like.  Each panel is 65 inches high by 39 inches wide by 1.65 inches thick.  Each panel contains 60 cells, arranged in 10 rows of 6 cells.  Each cell is marked with the Bosch brand logo.  The edge of the panel's frame is smooth, with no grooves.

### Where are your Panels Installed?

| Street Address: | City: | |
|---|---|---|
| Street Address: | State: | Zip: |

### System Information

How many Bosch NA30119 solar panels are installed in your solar array:  ____

Are your Bosch NA30119 solar panels:  ☐ roof mounted  ☐ ground mounted

If you know the name of the company that installed your system, please provide:

If you know the approximate date your system was installed, please provide (month/day/year): ____ /____ /_____

### Photographs

Please send clear photographs of the building or the location of the solar panel array on which the Bosch Solar NA30119 panels are installed.  If you are filling this form out online, follow instructions to upload them.  The ideal photos will show:

- The front of a Bosch NA30119 solar panel showing all sixty (60) cells arranged in 10 rows of six each.
- A close-up of one of the sixty (60 cells) showing the Bosch logo in the corner.
- The side of the panel showing it is flat and smooth and does not have a groove.

Do you know of any co-owners of the Panels?  (Provide name and address; use a separate sheet if necessary)

### Documents

If you have it, please send the original purchase documentation for your Bosch NA30119 solar panel array.  This will expedite your replacement.  If you don't have it, please submit your claim form anyway.

### Customer/Owner Information

| Name: | State: | Zip: |
|---|---|---|
| Street Address: | Cell Phone #: | |
| Street Address: | Other Phone #: | |
| City: | Email Address: | |

### Signature

I will provide all information and/or additional materials reasonably requested by Bosch Solar.  The information above is accurate.

_____        _____
Date                                                        Signature

_____
Printed Name

**Please send this Claim Form as soon as possible to:**        Claims Administrator
Address 1
Address 2
City, ST 00000

**Questions?**
**1-800-000-0000**
**www._____.com**